**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **Mary Young** | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| | § | |
| **v.** | § | **CASE NO. _____** |
| | § | **JURY TRIAL DEMANDED** |
| **Texas Southern University,** | § | |
| **and Lesia Crumpton-Young,** | § | |
| **Defendants** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND**
**REQUEST FOR JURY TRIAL**

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE AND JURY:**

Plaintiff Mary Young, (hereinafter "Plaintiff") complains about the actions of Defendants, Texas Southern University ("TSU") and Lesia Crumpton-Young ("Crumpton-Young"),[1] for the following reasons[2]:

**I.**
**BRIEF SUMMARY OF ALLEGATIONS**

1.      At all times material to the claims in this case, Plaintiff was serving as the first black female TSU Chief of Police.  She sues Defendants for sex discrimination, harassment, retaliation, and hostile work environment which infringed upon a term or condition of her employment which caused her wrongful termination from TSU.  Crumpton-Young was hired as the TSU president 3 years after Plaintiff had served without incident as the TSU police chief.  Soon

---

[1] At all times relevant to the events in this complaint, Defendant Lesia Crumpton-Young served as the president of TSU.  Subsequent to the time of the events alleged in this suit she resigned from her TSU position.  To avoid confusion with Plaintiff whose surname is also Young, this defendant is referred to as Crumpton-Young.

[2] This lawsuit is related to a previously filed state court action styled Cause No. 2022 - 77744, *Mary Young v. TSU, et al*, which is pending in the 127th Judicial District Court.  The lawsuit alleges state law statutory violations against the defendant state officials, including Crumpton-Young and the TSU General Counsel.  The case is presently stayed and is up on an interlocutory appeal being pursued by TSU in the Texas Supreme Court.

after her arrival at the university, Crumpton-Young advised Plaintiff that she favored male police officers over female officers. And, her subsequent actions as president confirmed this gender bias. For example, she rejected policing recommendations from Plaintiff unless they were endorsed and approved by a male officer, instructing Plaintiff to advise if a male officer had approved her proposals before approving them, calling out-of-state male police officials to approve police advice provided by Plaintiff, and even calling Plaintiff's subordinate male TSU officers instead of Plaintiff to provide governing advice on policing matters for the university. Crumpton-Young's prejudice against female officers was so persistent that Plaintiff started giving her suggested policing strategies to subordinate male officers to communicate with Crumpton-Young in order to get this defendant to accept the policy.

2.     Despite Plaintiff's repeated requests to the president that she direct policing initiative and matters to her, Crumpton-Young made clear to Plaintiff and TSU subordinate officers that she would rely on a male officer's advice and endorsement over the more experienced policing advice of Plaintiff or any other female police officer. Plaintiff is unaware of any instance where Crumpton-Young asked for another female officer to endorse Plaintiff's policies before approving the proposal. Only male police officers, even less qualified male officers, were relied on by Crumpton-Young over Plaintiff. Plaintiff complains *inter alia* that Crumpton-Young's persistent and pervasive prejudice against her as a female officer and in favor of male officers was discriminatory based on sex alone in violation of Title VII of the Civil Rights Act of 1964.

3.     Additionally, Plaintiff assigned a presidential detail of police officers to Crumpton-Young —4 male officers and 1 female. Over time, Crumpton-Young developed an embarrassingly inappropriate personal relationship with one of the male officers assigned to her detail. Such conduct included the officer going to her house late at night, physically arranging the clothing she

was wearing, running personal errands, traveling out of town *incognito* under the name of the president's husband, exchanging overt statements of affection between one another with the officer's shared with coworkers, and exchanging expensive personal gifts.  The relationship between Crumpton-Young and the officer was so worrisome that public members of the TSU Board of Regents complained to Plaintiff to intervene and stop the inappropriate conduct.  When Plaintiff intervened with her subordinate police officer, she made it clear that there was an imbalance of power between his position and the president's position at the university.  Plaintiff expressed concern that because of such power-imbalance there was a great risk of abuse and manipulation.  The officer was instructed that he could be removed from the president's detail, or he had to remain professional when doing his job.  Crumpton-Young and the male officer did not take Plaintiff's "intervention" well.  Within weeks of the intervention, an anonymous person filed an "unsigned" complaint[3] against Plaintiff fabricating a claim that she had fraudulently approved overtime pay for officers.  The Defendants kept the anonymous complaint secret for months and did not tell Plaintiff about it until Crumpton-Young surprised Plaintiff at a restaurant to say that she was being considered for termination because of the allegations in the complaint.  Plaintiff demanded that the fabricated claim be immediately investigated by the District Attorney, Attorney General, Texas Rangers, or other law enforcement agencies because such an allegation, if true, would have been a felony or crime.  When Defendants failed to call in other law enforcement agencies, Plaintiff herself filed a complaint with the District Attorney's office to investigate the allegations against her—only to learn that neither TSU nor Crumpton-Young had any interest in

---

[3] By statute, Texas requires complaints  against peace officers to be in writing, signed, and provided to the officer in a reasonable timeframe. TX GOVT, Section 614.022. Defendants did not comply with this legal requirement.

such an investigation.[4]    Instead, TSU purported to engage someone with limited experience to prepare a provably false report.[5]

4.     Plaintiff complains that the "anonymous complaint" and fabricated report were merely pretexts for TSU and Crumpton-Young to retaliate against Plaintiff to remove her from interfering with the improper personal relationship between the officer and the president. Crumpton-Young processed and approved Plaintiff's termination.  Immediately upon terminating Plaintiff as police chief, Crumpton Young then installed her suitor's closest male police friend to serve as the interim TSU police chief —and TSU took further action to try to prevent Plaintiff from being a law enforcement officer.[6]

5.     Crumpton-Young was delegated final decision-making authority by the TSU Board of Regents to make employment decisions relating to Plaintiff.  As such, the Board placed the fox over the henhouse.   Plaintiff asserts that Defendants retaliated against her because of her efforts to stop the perceived sexual exploitation of the young officer by the powerful president, engaged in sex/gender discrimination, created a hostile work environment where her authority and ability to do her job were undermined by the president's preference for male officers.  Additionally, Defendants retaliated against Plaintiff by violating Texas law regarding the anonymous complaint, not timely providing Plaintiff with the complaint, terminating Plaintiff in violation of Texas law and court orders,[7] fabricating a provably false report against Plaintiff, and incorrectly giving Plaintiff a dishonorable discharge that had to be vacated.

---

[4] Additionally, Plaintiff performed a comprehensive investigation of the allegations and conclusively proved the complaint to be a total fabrication, including showing by recorded police meetings that none of the allegations against Plaintiff was even possible. See Exhibit 1.
[5] Id.
[6] TSU gave Plaintiff a dishonorable discharge which was immediately vacated by TCOLE (Texas Commission of Law Enforcement) and replaced with an honorable discharge.
[7] Two state court judges had preliminarily found Defendants to have violated Texas law in the handling of the anonymous complaint and temporarily enjoined Defendants from taking any adverse employment action against Plaintiff.  One of these temporary restraining orders was in place when Plaintiff was terminated.

6.      Plaintiff sues Defendants for sex discrimination[8], sexual harassment (protected activity), hostile work environment, and retaliation, as well as violations of Texas state labor laws. Plaintiff seeks recovery of all backpay, future pay, compensatory and punitive damages, attorney's fees, expenses, and costs.

## II.
## PARTIES

7.      Plaintiff, Mary Young, is a Texas resident living in Fort Bend County, Texas.  She served as the first black female TSU Police Chief from 2017 to March 2023.

8.      Defendant, TEXAS SOUTHERN UNIVERSITY, is a public educational institution situated in Harris County, Texas. This defendant may be served with process by serving its Acting Interim President, Mary Evans Sias, located at 3100 Cleburne Street, Hannah Hall, Suite 220, Houston, TX 77004 or by serving her or any other authorized representative wherever they may be found.

9.      Defendant, LESIA CRUMPTON-YOUNG, was the president of Texas Southern University from July 2021 to June 2023 She is being sued individually and for her official acts as alleged in this complaint.   She may be served at 3430 S Parkwood Dr., Houston, TX 77021, or wherever she may be found.

## III.
## JURISDICTION, VENUE, WAIVER OF IMMUNITY,
## AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.      This court possesses federal question jurisdiction under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 1988, and

---

[8] Being distrusted merely for being a female police officer, and participating in a false investigation against Plaintiff from trying to stop the inappropriate relationship between Crumpton-Young and the subordinate officer, and interfering with Plaintiff's protected activity are all actionable conduct under Title VII of the Civil Rights Act of 1964. Se Harvill v. Westwood Commc'ns, L.L.C., 433 F.3d 428, 435 (5th Cir. 2005)

pursuant to 28 U.S.C. § 1331.  The court also has supplemental jurisdiction, 28 U.S. Code § 1367 over Plaintiff's state law claims being pursued under Tex. Labor Code § 21.001, *et seq* and related statutes.

11.     Venue is proper in this district under 28 U.S.C. § 1391 because all or a substantial part of the complained of events occurred in Harris County, Texas.  Additionally, one or more of the defendants reside or has its principal place of business in this county.

12.     The conduct complained of in this suit concerns conscious and deliberate sex discrimination, retaliation, hostile work environment, and harassment by an employer and state official under color of state law for which conduct there is an express waiver of governmental and official immunity. The complaint-of actions of Defendants TSU and Crumpton-Young were deliberate, willful, intentional, and clearly unlawful at the time they occurred.  Additionally, TSU accepted, and continues to accept, federal grant funding,[9] and thereby has expressly agreed to waive any claims of immunity as to the type of discrimination and retaliation Plaintiff asserts in this case.  See *Gruver v. La. Bd. of Supervisors for the La. State Univ. Agric. & Mech. Coll.*, 959 F.3d 178 (5th Cir. 2020) (governmental entity that accepts federal funds held to have expressly waived sovereign immunity as to discrimination claims).

13.     Finally, Plaintiff has exhausted necessary administrative remedies prior to filing this suit.  Plaintiff's appeal to the TSU Board of Regents was wholly ignored by the Regents who delegated to Defendant Crumpton-Young the decision-making authority addressed in this complaint.[10] Plaintiff also timely filed her EEOC Charge of Discrimination and has received a

[9]  See Exhibit 2: from TSU's 2020 through 2023 annual budgets showing its acceptance and use of federal funding. Such receipt of federal funds continued throughout the entirety of the period covered by this suit.
[10] See Exhibit 3, Plaintiff's December 27, 2022, appeal to the TSU Board of Regents (minus exhibits) which was never acted on by the Regents.

Right to Sue letter.[11]

**IV.**
**NOTICE ALLEGATIONS**

**A. IN THE BEGINNING**

14.    At all times relevant to these allegations, Plaintiff Mary Young was a licensed Texas peace officer and the first black female TSU Police Chief.  She served in that position from mid-2017 to January 2023.  She enjoyed an unblemished and excellent work record as a police officer both before and while working at TSU up to the point of time at issue in this case.  She had been awarded numerous professional awards and well-deserved recognition.  Prior to being employed at TSU, she had served with distinction for 25 years in the Houston Police Department.  She is a well-credentialed Texas peace officer with over two decades of real-world policing experience.

**B. THE PRESIDENT ARRIVES AND MALE OFFICERS**

15.    Defendant Lesia Crumpton-Young was hired as the TSU president in mid-2021. When she first met Plaintiff the new president volunteered that she was not accustomed to working with a female police chief.  The new president remarked to the effect that she felt more comfortable working with male officers.  Plaintiff did not think much of these statements at the time even though they were not expected.  However, over time the new president's statements manifested themselves in real-world discriminatory conduct.   Crumpton-Young began ignoring or nor following Plaintiff's policing advice unless a male officer— even a subordinate male officer—-agreed with what Plaintiff was advising.  The new president even began calling other male officers outside of TSU to have them confirm for her whether what Plaintiff was recommending for police purposes was appropriate.  Plaintiff is not aware of the new president phoning any female officers

---

[11] See Exhibits 4 and 5, Plaintiff's EEOC Charge of Discrimination and Right to Sue letter, respectively.

for such confirmations.   Eventually, Plaintiff confronted Crumpton-Young with what she perceived to be sex/gender discrimination—i.e., the president was requiring endorsements by male officers for advice given by a female police chief, even an endorsement by less experienced male officers. Crumpton-Young admitted to Plaintiff that she trusted the opinions of male officers over female officers.  Indeed, her preference for male officers over a competent female police chief was so obvious non-TSU male police officers from other agencies began calling Plaintiff to tell her about Crumpton-Young's calls to them to second guess Plaintiff's advice.  One of the non-TSU male officers whom Crumpton-Young contacted was actually one of Plaintiff's prior colleagues in the Houston Police Department and knew of Plaintiff's sterling police record. He was curious as to why the president was questioning Plaintiff's perfect policing advice. Another male police chief from out-of-state was also called by Crumpton-Young to confirm if Plaintiff's police advice was correct.  Interestingly, this male officer was actually one of Plaintiff's prior students.  He was puzzled why he was being called to second guess Plaintiff's policing advice when she had been his excellent teacher.  Crumpton-Young did not limit her questioning of Plaintiff's police advice to only outside male officers.  The president also would not accept Plaintiff's advice unless it was seconded or endorsed by another male TSU officer—even officers with less than half the police experience Plaintiff possessed.

16.     Crumpton-Young's bias for male police officers was not just because she was being careful.  She only accepted policing advice provided by a female if it was also supported or endorsed by a male officer. She did not require male officer opinions to be endorsed by female officers.   She discriminated only on the basis of sex irrespective of the experience level of the female officer.

17.     Crumpton-Young's discrimination against Plaintiff's female police advice was so

obvious Plaintiff began asking male officers to sponsor her advice to the president.  When male officers were the first to suggest the Plaintiff's ideas, they were readily accepted by Crumpton-Young.  Such behavior demeaned Plaintiff in the eyes of her officers and was embarrassing.  Male officers without half the experience and training of Plaintiff realized they were more influential and productive with the new president just because of their sex/gender. Such discrimination diminished Plaintiff's authority, command and control over her male officers and the entire police department in general.  Some male officers realized they could merely override the female police chief by going around her to the president.

### C.   AN IMPROPER RELATIONSHIP DEVELOPS

18.     As was customary at TSU, Plaintiff assigned a police detail of 4 officers to the new TSU president – 3 of the officers were male and. 1 female.  Even though Crumpton-Young was married, a very personal and close relationship soon developed between her and one of the single male officers.  The two began speaking about loving each other, needing each other, exchanging expensive gifts with one another, traveling out of town together with the male officer traveling under the name of the president's husband, having personal dinners together out in public, touching the other in such a manner as to suggest a more inappropriate relationship, and sharing with colleagues how close they were with one another.

### D. PLAINTIFF'S INTERVENTION

19.     Plaintiff learned that Crumpton-Young's relationship and public demonstrations of affection with the male officer had caught the attention of several TSU Regents who were openly complaining about the improper public displays between the two.   Such displays were characterized as being "too intimate," "too personal," "actions to be undertaken in private rather than in public," "unprofessional," and "indecent."   The TSU Board Chair expressly approached

and instructed Plaintiff to intervene and stop what was taking place in public between the TSU president and the male officer.[12]  Dutifully, Plaintiff confronted the subordinate male officer about the inappropriate conduct with   Crumpton-Young, a meeting that did not go well.

20.    After the Plaintiff admonished the male officer, the officer threatened to resign completely from the police department rather than stop being with the president.  He also threatened to take steps to get rid of Plaintiff as the police chief, stating to another TSU officer that he hated Plaintiff for trying to separate him from the president.[13]  When Crumpton-Young learned of Plaintiff's corrective actions she—through her personal executive assistant—reached out to the male officer to ask him not to resign. Soon thereafter, the president's office tried to get the officer a job in her building where he could be close to her and would not have to answer to Plaintiff. The officer began bragging that Crumpton-Young said could not live if he were not around.[14]  The proposed move of the officer to the President's building did not work out because he had no credentials for the job. Accordingly, the male officer, now very bitter because of the instructions Plaintiff had given him, remained under Plaintiff's supervision and management in the police department.

### E. THE UNSIGNED AND ANONYMOUS COMPLAINT

21.    Within a few weeks after Plaintiff intervened to stop the "on-the-job" unprofessional relationship between the president and the officer, an *unsigned and anonymous* complaint was purportedly filed over the internet against Plaintiff claiming she had falsified

---

[12] Prior to the TSU Board Chairman bringing the conduct to the attention of Plaintiff, she was unaware of what was happening.  However, after the matter was brought to her attention Plaintiff learned of other incidents of the male officer personally rearranging Crumpton-Young's clothing while she was in public, sitting next to her in restaurants like a couple, exchanging expensive gifts, filing a false travel voucher suggesting that the president's husband was traveling out of town with her when in fact it was the TSU male officer accompanying her on an overnight trip, the couple referring to each other in affectionate terms, etc.  None of this conduct was a part of the male officer's job description.
[13] See Exhibit 6, affidavit of TSU Police Officer Bea Phillips.
[14] See Exhibit 7, affidavit of Texas Peace Officer Dereka Lawton.

overtime pay records for police officers.  Such a complaint was the first complaint ever filed against the Plaintiff at TSU.  Based on subsequent facts discovered by Plaintiff, it appears the subordinate officer—with the probable knowledge and support of Crumpton-Young[15]—fabricated the complaint against Plaintiff as a pretext to get rid of Plaintiff.  After the anonymous complaint was filed, Defendants did not disclose it to Plaintiff for months.  Instead, the male officer started a whisper-campaign around the police department about the complaint existing and telling other officers that he knew that the Plaintiff would be fired soon.  Indeed, the male officer stated his knowledge about what was "about to happen" was based on information he was receiving directly from the president's office—i.e., Crumpton-Young's office.  He gloated about knowing things in advance regarding the anonymous complaint and its investigation.

22.     TSU ignored Texas law which required a signed complaint to be given to a peace officer like Plaintiff before any disciplinary action could be taken on the complaint.  Defendants refused to comply with the law and engaged an inexperienced vendor who demonstrated a complete lack of knowledge of the controlling law, university policies, college and police department overtime practices, and any of the relevant facts that clearly refuted the fabricated complaint.[16]  Predictably, this inexperienced vendor wrote a report that Crumpton-Young and the

---

[15] Under the Texas Open Records Act, Plaintiff asked for all text communications between Crumpton-Young and the officer during the relevant time-period.  TSU refused to produce the records claiming they were waiting for an Attorney General's opinion.  That opinion arrived ordering TSU to produce the records.  TSU refused and has sued the Attorney General to prevent the records from being turned over and has opposed Plaintiff's suit in state court seeking to obtain the records.

[16] As someone charged with investigating a Texas peace officer, the vendor is presumed to have had knowledge of Texas law governing the  investigation of peace officers.  The chosen investigator had no such knowledge.  Texas law is clear that only *signed* complaints may be accepted to initiate an investigation of a complaint against a licensed Texas peace officer like Plaintiff. Anonymous complaints are disallowed.  And, more importantly, Texas law requires that any complaint be signed by the complainant and *provided* to the peace officer in a reasonable timeframe after it is first received. See Section 614.023, Tex. Gov't Code, which provides as follows: "(a) a copy of a *signed* complaint against a law enforcement officer, fire fighter, or police officer *shall be given to the officer or employee within a reasonable time after the complaint is filed; and (b) disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee."*  Failure to comply with these legal requirements has been held to invalidate any investigation or disciplinary action involving the peace officer. *See Guthery v. Taylor,*

officer wanted.

23.     Plaintiff has learned that the novice vendor was not only inexperienced in this type of work but was working with and taking advice from Crumpton-Young's male officer friend who had likely generated the fabricated complaint against Plaintiff.  At least one witness interviewed for the report actually heard the investigator conversing with the male officer while she was supposedly conducting her work.   Because of such result-driven efforts, the investigator's work product is provably false by objective evidence.  Notwithstanding, its temporary existence supplied TSU and Crumpton-Young with a needed pretext to remove Plaintiff from her job and from further interfering with her personal relationship with the officer.   By way of example only, the following key findings and conclusions in the investigator's report are undeniable fabrications and falsehoods:

    a. Texas law requires a complaint against a peace officer to be in writing and signed—-it was not;[17]

    b. The complaint was required to be provided to the peace officer within a reasonable timeframe—it was not;[18]

    c. The anonymous complaint referred to a January 2022 police meeting that never occurred and TSU's official minutes proved this fact;[19]

    d. The recorded minutes of all official recorded police supervisory meetings – both before and after the claimed meeting alleged in the complaint— proved the direct opposite of the allegations in the complaint—i.e., Plaintiff expressly and consistently instructed officers about the correct manner in which to account for overtime pay;

    e. The vendor incorrectly stated that there was no approved overtime pay policy to support Plaintiff's practices when in fact Plaintiff produced a 2017 written TSU approved overtime policy that Plaintiff complied with to the tee and which is still being used at TSU;[20]

    f. Defendants ignored *unanimous* sworn witness statements by police officers corroborating Plaintiff's compliance with approved TSU overtime policies;[21]

---

112 S.W.3d 715, 717 (Tex. App.- Houston 14th, 2003). A copy of this opinion is attached as **Exhibit 8**. The words 'may not' in the statute have been interpreted to mean 'shall not' be disciplined. See *Guthery v. Taylor,* 112 S.W.3d at 724; *also* Tex. Gov't Code Ann. § 311.016(5) (Vernon 1998).
[17] See Exhibit 9 a copy of  Section 614.023, Tex. Gov't Code.
[18] Id. at Section 614.023(a).
[19] See Exhibit 1, copy of Plaintiff's response to the complaint at Tab 3.
[20] Id. at 11 – 12.
[21] Id. at 3 – 10.

g. Defendants and the vendor ignored and misrepresented the overtime approval process used by Plaintiff that conformed with best policing and industry standards;[22]

h. The report inaccurately recorded the testimony of the police department time-keeper, Chandra Scruggs, who expressly disagreed with the report; and

i. The Defendants were working with Crumpton-Young's male suitor to put together the report.

24. The plaintiff pointed out all of the evidence that disproved the sham report.[23] However, even after Plaintiff produced sworn evidence and official TSU records disproving the complaint Defendant Crumpton-Young ignored the report.  And even after Plaintiff was granted two (2) state court temporary restraining orders preliminarily finding that Defendants had violated Texas law, Defendant Crumpton-Young and TSU retaliated against Plaintiff and terminated her from her job in direct violation of the court order.[24]

### F. PLAINTIFF'S APPEAL IS IGNORED BY DEFENDANTS

25. Plaintiff tried to appeal Crumpton-Young's wrongful actions to the TSU Board of Regents of Regents. In explicably, the TSU Board did not allow the appeal but instead delegated to the administration the duty to decide Plaintiff's fate.   As such, the Board of Regents delegated to Defendant Crumpton-Young the final decision-making authority—a fateful decision that resulted in Crumpton-Young terminating Plaintiff and gaining unbridled access to her male suitor who remains employed in the TSU police department.  Also, Crumpton-Young picked a male subordinate officer to replace Plaintiff as the interim police chief.  This person happens to be a close friend and companion of Crumpton-Young's male suitor.

26. Crumpton-Young, as a final policy maker at TSU, engaged in sex discrimination, sexual harassment (retaliation against Plaintiff for a protected activity she engaged in to protect

[22] Id. at 11 – 12.
[23] See Exhibit 1.
[24] See temporary restraining order in attached Exhibit 10.

her subordinate male officer from the disparate authority the president of the university had over him); created and maintained a hostile workplace and unlawful retaliation. Defendants engaged in concerted actions to destroy Plaintiff's life and sterling career and fabricated pretextual and probably false reports to fire Plaintiff.  Plaintiff sues the defendants for their violations of state and federal laws.

V.<br>
<u>CAUSES OF ACTION</u>

27.    For purposes of all of the following causes of action, Plaintiff incorporates by reference each and all of the foregoing notice allegations in support of the following federal and state law causes of action.  All conditions precedent to bring the following claims have been satisfied and fulfilled:

**A.  COUNT 1 - TITLE VII SEX/GENDER DISCRIMINATION**

28.    Defendants' conduct violates Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment based on sex or gender. Plaintiff is a black female. She was a superb and qualified Texas peace officer with over twenty years of sterling law enforcement training and service.  She was more qualified to perform her duties at TSU than the subordinate males who worked under her leadership.  Defendants chose to seek out and accept the advice and counsel of less qualified males, instead of Plaintiff's leadership, just because of their sex/gender. Crumpton-Young, the final decision-maker, made it known that she trusted male peace officers over female officers and took affirmative actions that prove her preference and bias.  As such, Defendants treated male officers more favorably than the female plaintiff.  Such favoritism based on sex is discriminatory and interfered with a term or condition of Plaintiff's employment.

29.    Plaintiff's lost her job, in part, because of Defendants' sex/gender discrimination

and she was denied dignity and respect to do her job as police chief because of defendants' sex discrimination.  Plaintiff has suffered damages and legal injury for which she now seeks recovery.

### B. COUNTS 2 & 3 - TITLE VII (PROTECTED ACTIVITY) SEXUAL HARASSMENT, RETALIATION AND/OR HOSTILE WORK ENVIRONMENT

30.     Defendants retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964.  Plaintiff intervened to stop an inappropriate relationship between Crumpton-Young and one of plaintiff's subordinate male officers.  The relationship was not only improper nor professional and was abusive with the male officer essentially doing chores and pleasuring the more powerful president of the university.  Plaintiff engaged in a protected activity when she intervened to stop the harassment or abuse use of power by Crumpton-Young.  Plaintiff was thereafter subjected to a fabricated anonymous complaint which was intended to provide a pretext to start an unlawful "investigation" in violation of Texas law, and which intervention was used to terminate her employment in violation of an existing court order.  Further evidence of its retaliation, Defendants filed a groundless dishonorable discharge to TCOLE which was summarily vacated by TCOLE because of a lack of any support in fact or law.

31.     Plaintiff engaged in a protected activity when she intervened to protect the male officer from apparent abusive conduct—sexual or otherwise— by Crumpton-Young.  Plaintiff sustained adverse employment actions by Defendants because of the protected activity and which actions included an unlawful investigation, disciplinary actions, being shut out of her office, make the ridicule of the department, and having to hire attorneys to protect her career, reputation, and correct the record.  Plaintiff was deprived of her employment by Defendants and has suffered compensable damages which she seeks to recover in this lawsuit.

### C. COUNT 4 - TITLE VII HOSTILE WORK ENVIRONMENT

32.     Defendants' conduct also violates Title VII of the Civil Rights Act of 1964 which prohibits a hostile and abusive work environment in employment settings.

33.     Ms. Young was subjected to severe, persistent and pervasive sex/gender at TSU and at the hands of its president, Crumpton-Young.   See *supra* for a fuller discussion of the facts.

34.     The Defendants' conduct was systemic, engaged in by an ultimate or final decision or policymaker of the university, and was so severe and pervasive that it interfered with the terms or conditions of Plaintiff's employment. Having to win a male officer's endorsement of a policy merely because one is female mistakenly calls into question the qualifications of Plaintiff to do her job just because she is female.  It also signaled to her male officers that they were more superior than the female officers and that the female officers were less trustworthy or capable as the male officers.   Such employment conditions were corrosive to Plaintiff's ability to manage and supervise her police department.  Finally, have undercut Plaintiff's employment, Crumpton-Young installed a less qualified *male* officer as the interim police chief even though that male officer is less qualified and has a history of on-the-job sexual misconduct.[25]  This officer, however, just happens to be Crumpton-Young's favorite officer's close friend.

35.     Defendants failed to implement prompt and reasonably appropriate corrective actions to address the hostile work environment.  Indeed, their actions were the very cause of the hostile work environment.  Plaintiff was deprived of her job, has suffered, and is suffering, damages—emotional and otherwise— and now brings this suit to recover damages.

---

[25] The male interim chief was removed from a prior job for sending dildos to a few female officers; and at TSU he circulated a picture of a police schedule with his penis visible in the photo.  See Exhibit 11 which references the penis photograph.

### D. COUNT 5 – TCHRA SEXUAL HARASSMENT

36.     Defendants knew, or should have known, that the sexual harassment was occurring and failed to take immediate and appropriate corrective action in violation of the Texas Labor Code § 21.142.

37.     As a result of Defendants' conduct, Plaintiff suffered injuries and damages for which she seeks redress in this suit.

### E. COUNT 6 – TCHRA SEX DISCRIMINATION

38.     Defendants intentionally discriminated against Plaintiff because she was a female and by discharging her because of her sex, a protected class, which adversely affected her status as an employee at TSU in violation of the Texas Labor Code § 21.051.

39.     As a result of Defendants' wrongful conduct the terms and conditions of Plaintiff's employment at TSU were negatively impacted resulting in serious injuries and damages to Plaintiff for which she now seeks redress in this lawsuit.

### F. COUNT 7 – TCHRA RETALIATION

40.     Defendants intentionally retaliated against Plaintiff in violation of the Texas Labor Code § 21.055 and for the reasons alleged above.

41.     As a result of Defendants' wrongful conduct Plaintiff has suffered grievous injuries and damages for which she seeks redress in this lawsuit.

### G. COUNT 8 – TCHRA HOSTILE WORK ENVIRONMENT

42.     Defendants created a hostile work environment in violation of the Texas Labor Code § 21.055.  Their conduct severely altered and affected a term or condition of Plaintiff's employment and working conditions.

43.      As a result of Defendants' actions, Plaintiff has suffered grievous injuries and

damages for which she seeks redress in this lawsuit.

## VI.
## JURY DEMAND

44.     Plaintiff demands a jury trial.

## VII.
## ATTORNEYS' FEES

45.     Defendants' actions and conduct as described herein, and the resulting damages and losses to Plaintiff, have necessitated Plaintiff retaining the services of the lawyers listed below to investigate, initiate, and prosecute the claims in this lawsuit.  Plaintiffs seek recovery of reasonable and necessary attorneys' fees under 42 U.S.C. § 1983 and 1988 and any other applicable law or statute, as well as expenses, court costs, and expert witness fees.

## VIII.
## PRAYER AND DAMAGES

46.     As a direct and proximate result of the Defendants' conduct, Plaintiff seeks judgment against Defendants for  damages suffered in the following particulars:

      a.   Lost wages in the past and future;

      b.   Lost health insurance and related benefits in the past and future;

      c.   Loss of pension and/or retirement benefits;

      d.   Emotional suffering in the past and future;

      e.   Stigma damages;

      f.   Mental anguish damages;

      g.   Punitive damages;

      h.   Attorneys' fees, costs, and expenses;

      i.   All equitable relief to the extent allowed in law or at equity to which Plaintiff may show herself justly entitled; and

47.    Plaintiff   asserts   that   her   individual   compensatory   damages   are   between $1,000,000.00 and $2,500,000.00, plus punitive damages.

Respectfully submitted,

**The HALL LAW GROUP, PLLC**

*/s/ Benjamin L. Hall, III*
**Benjamin L. Hall, III**
State Bar No. 08743745
Federal Bar No. 8787
bhall@bhalllawfirm.com
**William L. Van Fleet II**
State Bar No. 20494750
Federal Bar No. 3670
bvfleet@comcast.net
THE HALL LAW FIRM
530 Lovett Blvd.
Houston, Texas 77006
Telephone: (713) 942-9600
Facsimile: (713) 942-9566

-AND-

**The HITTNER GROUP, PLLC**

**George J. Hittner**
State Bar No. 24038959
S.D. TX No. 431901
george.hittner@thehittnergroup.com
P.O. Box 541189
Houston, Texas 77254
Phone: (713) 505-1003

-AND-

**JIMMY   ARDOIN   &   ASSOCIATES, PLLC**

**James Ardoin**
State Bar No. 24045420
S.D. TX No. 571281
4900 Fournace Place, Suite 550
Houston, Texas 77401

Phone: (713) 574-8900
Toll Free: (888) 701-8509
Email: jimmy@jimmyardoinlaw.com

**ATTORNEYS FOR PLAINTIFF**