# EXHIBIT 1



# THE HALL LAW GROUP, PLLC

530 Lovett Boulevard   •   Houston, Texas 77006
Telephone:  (713) 942-9600  •  Facsimile: (713) 942-9566

Benjamin L. Hall, III, Ph.D., J.D.
Board Certified Personal Injury Trial Law
Board Certified Civil Trial Law
Texas Board of Legal Specialization

December 27, 2022

**DELIVERED VIA HAND-DELIVERY AND EMAIL**

Chairman Albert H. Myres
Regent Marc C. Carter
Regent Pamela A. Medina
Regent James M. Benham
Regent Caroline Baker-Hurley
Regent Stephanie D. Nellons-Paige
Regent Ron J. Price
Regent Marilyn A. Rose
Regent Mary Evans Sias
Student Regent Keonne McClain
c/o Attorney Philip Fraissinet, Board Counsel
Thompson & Horton Law Firm
3200 Southwest Freeway, Ste. 2000
Houston, TX 77027

**Re:  Police Chief Mary Young's Response to August 15, 2022 Memo of Darlene Brown**

Dear Chairman Myres and TSU Regents:

Thank you for an opportunity to respond on behalf of TSU Police Chief Mary Young ("Chief Young") to claims of wrongdoing contained in the August 15, 2022 memo of Ms. Darlene Brown, Acting Chief Audit Executive, sent to the Texas Southern Board of Regents (hereinafter "the Brown Report").  The Brown Report is legally and factually wrong and this response is tasked with addressing fatal errors in that report.  Chief Young has done nothing wrong.








This response is divided into three sections: 1) Why Ms. Brown's Conclusions are Legally and Factually Wrong; 2) Why Chief Young Was Targeted; and 3) Chief Young's Suggested Settlement Proposal To End The Dispute.

## I. The Brown Report Is Legally and Factually Wrong

### 1)        The Brown Report Violates Texas Law

Because police officers are often falsely accused of wrongdoing because of the nature of their profession, the Texas legislature in 1994 enacted specific laws to protect them from being disciplined based on anonymous complaints.   Specifically, Sections 614.022 and 614.023, Tex. Gov't Code Ann. (Vernon 1994), sets forth *mandatory* procedures that must be followed before any disciplinary action[1] may be taken against a police officer accused of wrongdoing.   The pertinent requirements are:

> 1) The complaint must be in writing and *signed*;
>
> 2) A copy of the signed complaint "*shall be given to the officer…within a reasonable time after the complaint is filed;*" and
>
> 3) No disciplinary action may be taken against the police officer if these procedures have not been followed.

The Texas Supreme Court and all Texas courts of appeal interpreting these statutes have held that the procedural safeguards in the law are to be strictly complied with before any disciplinary action may be taken against a covered police officer.   See *Colorado County v. Staff,* 510 S.W.ed 435, 443 (Tex. 2017) (the law "provide[s] covered employees with procedural safeguards to reduce the risk that adverse employment actions would be based on unsubstantiated complaints"); *Guthery v. Taylor,* 112 S.W.3d 715 (same, as modified by *Colorado County v. Staff*); *Buck et al. v. Kozlowski,*

---

[1] These laws prohibit any "disciplinary action" from being taken—not merely adverse employment actions.   Section 614.023(b) reads: "Disciplinary action may not be taken against the officer or employee unless a copy of the *signed complaint* is given to the officer or employee.*"   Emphasis added throughout unless otherwise indicated.

*et al,* No. 13-21-00123-CV (Tex. App—Corpus, May 26, 2022 (failure to comply with Chapter 614, Tex. Gov't Code, prevents disciplinary action being taken against covered employee); *Turner v. Perry,* 278 S.W.3d 806, 823 (Tex. App.—Houston [14th Dist.] 2009, pet. denied.). See **Tabs 1 and 2**, copies of the *Guthery* and *Colorado County* opinions.

The Brown Report does not comply with Texas law.  It makes findings of alleged wrongdoing against Chief Young even though there is no signed complaint.  And, TSU has taken drastic disciplinary action against Chief Young based on that erroneous Brown Report generated by an *unsigned and anonymous* complaint.  The authors of the Brown Report freely admit the anonymous complaint is the genesis of their engagement.  See **Tab 54**.  TSU disciplinary actions against Chief Young include the following:  banned her from coming on campus, prohibited her from attending any TSU-sponsored events, denied her permission to wear her TSU police uniform, blocked her card pass to get into buildings, expressly prohibited her from doing any act as police chief, tried to remove her name as police chief from the graduation brochure, filled her position with one of her subordinates, disconnected her access to job emails as well as restricted access to her office computer,  instructed officers to ignore any orders she issued, and had a locksmith change the locks on her office door to lock her out.  See **Tab 49**, TSU General Counsel Hao Le's 12/2/22 email purporting to ban Chief Young from the campus, etc. See also **Tab 50**, various shots of other disciplinary actions taken against her.

Because of TSU's unlawful disciplinary actions, suit had to be filed to protect Chief Young's legal rights.  In less than ten (10) days of Chief Young filing her lawsuit, two (2) Harris County district court judges agreed that TSU had probably violated Texas law.  See **Tab 51,** signed temporary restraining orders ("TROs").  The TROs variously enjoined TSU and its President and General Counsel from taking any further actions to terminate or interfere with Chief Young's job

as the police chief.  TSU's administrators disregarded the court orders and continued to enforce disciplinary actions against the chief.  A third Harris County district judge, Michael Engelhardt, also entered an emergency order compelling TSU to produce its entire investigative file relating to the Brown Report and to produce the investigator, Ms. Darlene Brown, and TSU President Lesia Crumpton-Young for expedited depositions.[2]  TSU opposed the discovery orders and filed an interlocutory appeal to stop the litigation and discovery.  TSU's attorneys represented to the Houston First Court of Appeals that Chief Young's TRO against TSU will remain in place until the interlocutory appeal is concluded.  See **Tab 52**.

To this day, TSU is still imposing the above unlawful disciplinary actions and restrictions on Chief Young in spite of the clear violations of Texas law.

> 2) **The Brown Report Is Factually Wrong**

In addition to the Brown Report being based on an unsigned complaint, it is also plagued with incorrect facts, missing evidence, and flawed reasoning.  Following is a discussion of the more glaring factual errors in the report:[3]

> a) **There Was No January 2022 Supervisor Meeting**

The unsigned complaint states "[s]ince January 2022 while at a weekly supervisor meeting, [Chief Young] gave all the officers …in the police department a directive that she would raise the pay for special officers….[Chief Young] categorized the special officers as the lead officers…."[4]  This claim is provably false.

There were no supervisor meetings with Chief Young in January 2022.  In fact, there were no January 2022 supervisor meetings at all.  To prove this point, we provide the sworn affidavit of

---

[2] See **Tab 53,** December 2, 2022 discovery order signed by Judge Engelhardt.
[3] The author is personally familiar with the high-quality work of the McConnell Jones firm.  Unfortunately, Ms. Darlene Brown's work product in this instance is not consistent with the high caliber work that firm is known for.
[4] See Brown Report, Tab 54.

the minutes-keeper for all police supervisor meetings, Ms. Ada Rattiff. See **Tab 3**. Ms. Rattiff was asked to collect and review all recorded minutes of the police supervisor meetings dating back to September 2021. All of those minutes are supplied with this response. See **Tabs 25** through **34**. After performing her review, Ms. Rattiff confirms that no police supervisor meetings occurred in January 2022 and no meeting minutes exists for any such meetings. See Tab 3. Further, Ms. Rattiff was asked to review the official minutes to determine if there is mention in any of the minutes of Chief Young suggesting that extra pay would be paid to lead officers. Again, no such directive is found in any of the minutes. *Id.* The reason no such minutes exists is because Chief Young never gave any such directive.[5]   Whenever the subject of lead officers and overtime pay are recorded as a subject discussed in the supervisor meetings, Chief Young stressed that overtime pay will only be approved for time that is actually worked (i.e., time worked over 40 hrs/wk). See highlighted supervisor minute in **Tab 30**.

### b) The Brown Report Contradicts The Unsigned Complaint

Even though the unsigned complaint contends Chief Young gave her lead officer directive in January 2022 the Brown Report contends—wrongly—that such lead officer pay was already in place as of September 2021—4 months earlier. See **Tab 54 at 12**. If the lead officer pay directive was already occurring as of September 2021 the anonymous complaint's claim that Chief Young gave the directive in January 2022 makes no sense.   However, even though the complaint is wrong about a non-existent January 2022 directive, and the Brown investigators contend lead officer pay was being made before that directive was supposedly given, the authors of the Brown Report blindly ignore these inconsistencies.   The authors of the Brown Report act as though they wanted

---

[5] See discussion of "lead officers," "overtime pay," and "special event" pay addressed in Chief Young's accompanying affidavit, **Tab 55**.

to reach a pre-determined conclusion against Chief Young irrespective of what the facts were otherwise showing.

### c) "Lead Officer," "Overtime Pay," And "Special Event Pay"

The Brown Report fundamentally misunderstands the differences between "lead officer," "overtime pay" and "special event pay." Contrary to the claim made in the unsigned anonymous complaint, "lead officers" receive no extra pay simply for serving as a lead officer. This designation is simply functional to identify the person in charge when a supervisor is otherwise not present. No extra compensation is paid for assuming or being assigned this designation.

"Overtime pay" is controlled by federal and state laws that govern pay to non-exempt police staff. The Fair Labor Standards Act ("FLSA") contains strict rules about non-exempt employees being paid time and a half for all time they work above 40 hours a week. As such, TSU's non-exempt police officers earn and are required to be paid 1.5 times their regular hourly rate of pay for each hour over 40 they work in any given week. This is a non-discretionary rate dictated by both federal and state law.

Finally, "special event pay" and "lead officer" have nothing to do with each other. Special event pay are amounts paid to officers pursuant to the duly authorized rate schedule approved by TSU administrators back in 2017. Specifically, in a memo dated October 24, 2017, at 1:54 p.m., Shannon Broussard, Director of Facilities and Special Events, circulated to Chief Young and other department heads the "New Approve[d] Personnel Fee Sheet" that was to be used on "all time sheets submitted to the Budget and/or HR office" relating to special events. See **Tab 14**. Ms. Broussard copied all of the following TSU administrators on the email:  TSU Chief Financial Officer Kenneth R. Huewitt, Ashlee McClelland, Raphael Moffett, Chief Young and others. The approved "fee sheet" clearly reflects the hourly charges to be assessed and paid to police officers,

supervisors, dispatchers and other law enforcement personnel that might be needed to cover a special event.   A copy of the pertinent section of the approved fee sheet is provided below in **Fig**. 1.1:

| First Aid or Nurse (Event Cost) | $100.00/Day |
|---|---|
| Ticket Seller | $15.50 |
| Ticket Taker | $15.50 |
| Ushers | $15.50 |
| Safety Officer | $25.00 |
| **Security & Traffic Control** | |
| Police Officer | $40.00 |
| Police Special Occasion* | $50.00 |
| Police Commander / Supervisor | $50.00 |
| Police Commander / Supervisor* | $60.00 |
| Police Dispatcher | $25.00 |
| Traffic / Security Officer | $25.00 |
| Traffic / Security Officer Special Occasion* | $30.00 |
| **Building and Grounds Support Services** | |
| Custodian | $15.50 |
| Custodian (Food Event) | $18.50 |
| Custodial Supervisor | $21.50 |
| Grounds Keeper | $18.50 |
| Tiger Labor Force | $18.50 |
| Bus / Tram Driver | $20.00 |
| Clock Operator | $15.50 |

**Fig. 1.1**

See also **Tab 14**.[6]   The Brown Report shows no knowledge of these approved special event rates. Accordingly, the report draws the inaccurate conclusion that special event pay was not authorized. As a consequence, the Brown Report wrongly claims such payments were not approved by the TSU Human Resources department.[7]

---

[6] The older rates were replaced by the October 24, 2017 rate sheet.
[7] Additional evidence of the Brown Report's error about special event pay can be found in its discussion of a Weekly Time Sheet in Appendix C of its Report at 16.   That form actually identifies requested time for "Special Event Work Hours" but the Brown Report misidentifies the time as "lead officer" time.   This is wrong.   The requested $25.00/hr

To charge Chief Young with fraud for following TSU's approved 2017 fee sheet is reckless and unsupported by any credible evidence.  The Brown Report makes this charge because it did not do the hard work of thoroughly researching TSU payroll and HR records.  The fact that a special code was adopted by the bookkeeper to distinguish special event pay from regular or overtime pay is merely a bookkeeping convenience—not a violation of TSU policy.

### d)   Witness Statements Refute The Complaint's And Brown Report's Conclusions

None of the information relied on in the Brown Report is sworn.  On the other hand, Chief Young has required all witnesses testifying on her behalf in this response to swear under oath to the truthfulness of their supplied facts.  Following are material excerpts from the sworn affidavits of TSU police officers (current and former) attesting to Chief Young's steadfast integrity and honesty in her handling of officer pay:

### i.  Excerpts from Affidavit of Former TSU Deputy Chief Fred Brown
### Tab 6

"…I have been a licensed Texas peace officer for 34 years.  I am still a licensed peace officer in this state.  During the last three plus decades as a police officer, I have served in multiple law enforcement positions.  Presently, I serve as a Lieutenant with the Harris County Precinct #1 Commissioner's Office.  I also previously served as a Deputy Chief of Police in the Texas Southern University Police Department where I had the opportunity to work directly with and under the leadership of TSU Chief of Police Mary Young.  I also have worked as a law enforcement officer for numerous years with the Harris County Sheriff's Department.  In these various positions I have observed and been involved in managing practically every aspect of law enforcement, including administrative operations of the various law enforcement agencies.  I have also [] personally written and implemented police policies in these agencies, including overtime pay policies.

During my work with the TSU police department I personally worked with Chief Young on a regular basis.  I observed and implemented her orders to TSU police officers regarding overtime pay.  She was clear that officers were required to keep track of and document their overtime.  I never heard her tell anyone or any officer they could get paid overtime pay even if they did not work.  To the contrary, she repeatedly instructed officers that they would not be paid overtime if they did not perform the work.  If anyone is claiming Chief Young in any way tolerated officers or police personnel being paid overtime pay without working that would be contrary to everything I know about her and observed when dealing with Chief Young.  Chief Young is one

---

pay for the special event the officer worked is specifically authorized by the October 24, 2017 approved personnel time sheet.

of the most professional police officers I have ever had the honor of working with.  She is competent, honest and professional….”

### ii. Excerpts From The Affidavit of Peace Officer Dereka Lawton
### Tab 4

“…    I am a licensed Texas peace officer and have held such license in this state for 4 years.  I previously worked several years at TSU as a police officer.   I left TSU in October 2022 for a different job with the University of Houston police department….

During the time I worked at TSU, Chief Mary Young lead the police department.  I found her to be the type of police officer I hope to be one day.  She was professional with all her officers and required all of us to carry out our duties in conformity with respect and the highest ethics.  I observed her provide clear orders and instructions to officers about being honest, serving with integrity and respect for others.  She stressed to us that we were servants of the people and not their lords.

Regarding overtime pay, Chief Young was clear that if you did not work overtime you were not to be paid for overtime.  And, to make sure overtime was properly accounted for Chief Young required officers to obtain approval for overtime, submit their request for overtime pay to their direct supervisors for verification and sign off, and only then would the pay request be forwarded up the chain of command.  I thought this was a very good system and is the same type of system I presently work under at the University of Houston….”

### iii. Excerpts From The Affidavit of TSU Peace Officer Bethany Cantu
### Tab 10

“…    I have never seen TSU Chief Mary Young do anything I would regard as dishonorable, under-handed, or dishonest.  To the contrary, she demands the best from all of us.  Regarding overtime pay, she follows the regulations of the Department and requires sign off on overtime pay requests to be approved by the requisite supervisors before being submitted up the chain of command.  I am honored to serve the community with her…”

### iv. Excerpts From The Affidavit of TSU Sergeant Ivan Jones
### Tab 9

“…    I have known Chief Young for over 40 years.  She is a quality person.  She leads the department honorably, with integrity and respect for others, and is unquestionably competent as a law enforcement officer.  TSU is lucky to have her as its police chief.

I personally have heard Chief Young instruct officers and supervisors about paid overtime.  Because of personnel shortages in the department she offered officers extra time before and/or after their shifts to work to make sure we had enough police coverage to keep the campus and community safe.  Because such time was over and above the time officers were assigned to cover their shifts they necessarily would qualify for time and a half pay if they worked extra hours. Had there been more officers to cover normal shifts this practice would not have been needed.  Chief

Young is to be commended for holding things together with the limited officers she has to protect the university community.

Chief Young is a compassionate, caring and competent police chief.  Anyone accusing her of wrongdoing is not speaking truthfully about this great professional…."

### v. Excerpts From The Affidavit of TSU Sergeant Brian McCray
### Tab 7

"…I personally observed Chief Young ordering her officers to properly account for all their overtime.  No one was paid or to be paid if they did not work overtime.  And, Chief Young followed accepted protocol to ensure that the direct supervisor of each officer applying for overtime pay verify and sign off on any request for overtime pay.  Her overtime policies and practices are the same as are used in all well-run police departments—i.e., officers working overtime had to perform the work, have their immediate supervisors verify and sign off on the work having been performed, and only then sending the pay request up to command staff for final sign off.   I have never known Chief Young to deviate from this recognized practice.

I am also impressed with Chief Young's work ethic.  She usually outworks everyone else in the department and stays later than others to ensure all needed work is done.  Most impressive is her practice of not requesting anyone to do anything she would not do herself.  I have seen her "get her hands dirty" even though she is the Chief.  Nothing is beneath her to do if she thought it needed to be done.

If anyone is complaining about Chief Young or her police and administrative practices then it is either because they do not understand policing, have a personal agenda, or have not paid attention to how hard this competent police chief works everyday to improve the TSU police department.  Chief Young only wants the best for TSU and I have seen in real time how she works to try to make that happen.

I am proud to be a TSU sergeant because of Chief Mary Young."

### vi. Excerpts From The Affidavit of TSU Police Officer Bea Philips
### Tab 8

"…    I am a licensed Texas peace officer working in the TSU Police Department.  I have worked as an officer with TSU since 2018.  During that period I have worked closely with TSU Police Chief Mary Young and have had many opportunities to work with her.   I have been lucky to learn from Chief Young and to watch how she handles her business as a police officer and chief.  I have seen her use her own money to pay for items and services that should have been paid for by TSU.  I have asked her why she was using her own money to pay for items for TSU and she would just respond that the items/services were needed and it did not hurt her too much to help out by using her own funds.

…

I have never heard Chief Young tell anyone that they could be paid for overtime without working.  To the contrary, she insisted that supervisors monitor and verify overtime pay requests

before sending them up the chain of command for payment.  I like working in the TSU police department under Chief Young's leadership.  I am not aware of any hostile work environment or favoritism being present or practiced in the department.

…

Chief Young is a great police chief and is well-respected by officers, students, staff, administrators, local officials and in the community.  It is great to have her as our police chief…."

### vii. Excerpts From The Affidavit of TSU Corporal Brian Auzenne
### Tab 5

"…   I have been a licensed Texas peace officer for the last twenty (20) years to the present…..[I] began working for TSU in the Department of Public Safety 2 years ago.  I presently hold the rank of Corporal in the Department.

…

I have never seen TSU Chief Mary Young do anything I would regard as dishonorable, under-handed, or dishonest.  To the contrary, she demands the best from all of us.  She stresses the importance of police officers being servants of the people and honest in all our dealings.  If anyone is claiming she has done anything dishonest or dishonorable that would be completely contrary to everything I have heard and seen her do throughout our department for over the last two years.  And, regarding overtime pay, she follows the regulations of the Department and requires sign off on overtime pay requests to be approved by the requisite supervisors before being submitted up the chain of command…"

In addition to the above sworn testimonials, the recorded supervisor meeting minutes

confirm Chief Young's steadfast insistence that officers would only be paid overtime for work

they actually worked:

**December 15, 2021 Supervisor Meeting Minute:**

**19) b. Question: Is there two different pays (sic) for special events, like the voting event?**
    **i.  Voting event is $25 per hour (B.Brown)**
    **ii. Basket ball(sic) games are regular OT.  *There are only special rate events and OT rate events (Chief)***
    **iii. Please keep in mind you must do your 40 hours before your overtime rate kicks in.  If not, then special event is just your regular pay rate. (C. Scruggs)**
        **1. *If the employee has called in sick, they cannot do special event, overtime or extra jobs. (Captain/Chief)***

See **Tab 30.**  Thus, both sworn eye-witness testimony and the official recorded supervisor meeting minutes refute the unsigned complaint against Chief Young.   There was never any lead officer pay.

### e) The Brown Report Misrepresents Chief Brown's Overtime Pay Procedures

Chief Young implemented the same overtime payment process approved and used by all well-run law enforcement agencies in the area: i.e., the Houston Police Department, Harris County Sheriff's Office, Humble ISD, METRO, and various other local constable offices.   Specifically, the payment process operates as follows: officers requesting overtime pay must certify in writing that they actually performed the work, then submit the written pay request to their immediate supervisors to verify and approve, once the supervisors sign-off and certify that the work was performed, they must sign off on the pay request before sending it upstream to their immediate supervisors for approval. This is a tried-and-true checks and balances system intended to minimize the risk of officers being paid overtime pay for work   they did not perform or for which they did not qualify.[8]   The below flowchart accurately shows Chief Young's approved overtime payment procedures   which   track   similar   procedures   used   by   other   law   enforcement   agencies:

---

[8] Police department  Records show that Chief Young has rejected overtime requests even when subordinate supervisors had signed off on the payment.   See **Tab 22.**

**Fig. 1.2**

The above flowchart positions Chief Young in the *seventh* spot to sign off on overtime pay requests —-not the first.  However, the Brown Report appears to place the police chief in the first approval position.    See **Tab 54**, Brown Report at 13.  Whether intended or not, the report's diagram is misleading.[9]

In addition to the above multi-layered approval process, Chief Young insisted that all overtime requests be in writing.    See **Tab 17,** TSU DPS Compensation Request Form. Additionally, she implemented a color-coded chart to keep track of when officers were absent, out sick, or working on weekends or holidays so she could also check to see if any officer was requesting overtime pay on days when they were claiming to be sick or when they should have been working their regular shift at regular pay.  See **Tabs 18, 20, and 21.**  In the Patrol Division she used an additional document to keep track of the 8-hour shifts worked by her patrol officers.

---

[9] It is also curious that the Brown Report wrongly claims the Human Resources Department did not sign off on DPS overtime pay requests.  This also is not true.  As previously addressed, the HR office approved the special event rates in 2017 and is also included in the pay approval process.    See **Fig. 1.2** at Step 8.

See **Tab 20.** Chief Young was so dedicated to determining whether overtime pay was costing the university more money than the DPS Special Rate pay she had her department participate in an official study of the issue.   That study revealed that the DPS Special Rate resulted in a better fiscal outcome for the university and, therefore, Chief Young had payments comply with that method. See **Tabs 15 and 16.**

Finally, the Brown Report fails to address the issue as to how overtime opportunities are made possible outside of the regular shift hours officers work.   Specifically, why is overtime necessary in the department?   The answer to this question is more complicated than it may first appear.   Generally, there are always special events happening on TSU's vibrant campus.   These events are created by students, staff, faculty, community members, guests, etc. and are coordinated and calendared in the Office of Special Events ("OSE").   Once the events are calendared, the police department is asked to supply needed security officers or traffic control personnel for  the events. **Tab 19 -** is a 24-page list of various special events the police department received notice of security/police-related needs.   Officer's pay for these events is generally supplied by the group/person/organizer sponsoring the special event.   Officers may volunteer to provide police services at the events and be paid the authorized pay rate that was approved by the university back in 2017.[10]  Special event opportunities are generally supplemental work to an officer's regular shift duties.   Chief Young provides an affidavit detailing how security services for special events are scheduled, staffed and paid for.   See **Tab 55**.   In short, special event police services are paid in conformity with TSU's approved 2017 personnel pay scale attached as **Tab 14.**  The Brown Report fails to show any knowledge of this approved pay schedule.

    **f)  FTO Pay Requests**

---

[10] The approved special event personnel pay sheet is being provided in **Tab 14.**

The Brown Report's discussion of Field Training Officer ("FTO") pay is also wrong.   See Brown Report at 6.[11]  Even though the report states it has no provable evidence of any monetary loss to the university caused by the department's FTO pay practices, it calls into question whether payments to FTOs were handled properly.  As such, a response on behalf of Chief Young is needed.

The Texas Commission of Law Enforcement ("TCOLE"), a state agency, governs the licensure, certification and recertification of peace officers in Texas.   There are numerous requirements TCOLE requires a person to satisfy to become and remain a licensed peace officer in this state.  After completing Basic Academy Training, a probationary peace officer ("PPO") must successfully complete an additional minimum number of hours in real world training under the supervision of a qualified FTO.  However, every FTO must also be trained on what she must know and do to train a PPO.  To comply with these state mandates, Chief Young authored and implemented a dedicated Field Training Manual for her department to ensure uniform compliance with what state law requires.  See **Tab 47**, TSU DPS Field Training Manual.

No TSU officer is required to be a FTO.  However, those who wish to be FTOs are required not only to have the new recruits "shadow" them during their eight-hour shifts, but they also are required to complete specialized training for themselves, as well as paperwork and documentation relating to the PPO's progress, growth, needs for improvements, training etc.  Because such tasks require FTOs to work hours beyond their regular shifts, Chief Young— just as other law enforcement agencies—authorizes "*up to two hours of overtime*" to complete these extra duties.  Two hours is a *cap* to discourage officers from asking for more time to be paid than is reasonably needed to complete FTO duties.   The two-hour limit is not intended to be an automatic pay

---

[11] The report states "Field Training Officer compensation—This is an additional two (2) hours pay at the respective officer's overtime hourly rate, for each day that they were training an officer.  This additional compensation was to complete paperwork associated with assessing an officer's performance during training."

increase.  If an officer's FTO duties can be completed in less than 2 hours they are required to submit a pay request for only the time they spent completing the tasks.  Former TSU Deputy Chief of Police Fred Brown is recorded in the Brown Report as having correctly explained this limiting instruction when he spoke with the investigators.  See Brown Report at bottom of 4.  The "up to" language was not permission to falsely claim time that had not been worked.  The Brown Report's suggestion to the contrary is not accurate.  And, the report supplies no credible evidence of this instruction being misused by any FTO police officer.

Finally, there also is no supervisor meeting minute where Chief Young made any type of statement that endorsed an automatic two hour pay increase for FTOs.  See **Tabs 25 through 34**. Chief Young makes clear in her affidavit that was never allowed. She writes:

> As the TSU Police Chief, I am also responsible for ensuring that proper police training and operational tactics are provided to Probationary Police Officers ("PPOs") once they are hired as police officers at Texas Southern University. To accomplish this goal, officers who are selected as Field Training Officers ("FTOs") must also go through proper training to be certified and able to train PPOs. A Field Training Supervisor is also assigned to monitor the Field Training Program and the Assistant Chief of Police oversees the progress and process until probationary police officers are deemed to be ready to meet with me, the Chief, for evaluation and questioning regarding proper police tactics and operational laws. The assignments, shifts and overtime training compensation is approved by the supervisor.  Field Training Officers who are training PPOs can be paid *up to (2) hours* of compensation to complete paperwork, field training meetings, documented counseling, and any other required duties of the field training program.  Only time actually worked in the FTO program—up to a maximum of 2 hours— can be submitted for payment.  FTOs are chosen by the Field Training Supervisor, Lieutenant of Police and/or the Assistant Chief of Police. The Brown Report is wrong in suggesting that 2 hours of pay [are] automatically approved irrespective of whether an FTO works the time or not.  That is not true.

See **Tab 55**, Police Chief Young's affidavit. If there is evidence that some FTOs were misusing the system, their immediate supervisors should have detected their misconduct before approving the pay requests.  Chief Young cannot, and should not, be charged with fraud when she never authorized anyone to misrepresent their FTO overtime.

## II. Why Was Chief Young Targeted?[12]

Why would Chief Young come under attack by an anonymous complainant if she did nothing wrong?  This question needs an answer.  Perhaps the following details supply that answer:

**a)   Anonymous Complaint Follows Chief Young's Correction of TSU President's Detail**

For over five (5) years, Chief Young steadily upgraded her police department without incident.   President Lesia Crumpton-Young was installed as the new TSU president in July 2021, and Chief Young assigned a police detail to provide security for the new president.

Within months of the officers being assigned, Chief Young received several complaints from university leaders complaining that one or more of the officers appeared to be acting too personally with the president—such as helping her with her wardrobe, carrying her purse, sitting side by side in restaurants having lunch and dinner, holding personal items and umbrellas for her, carrying her personal bags/groceries, and performing non-security related errands.  Such acts between a particular officer (Sergeant Darren Barnett) and the president gave the appearance of a more inappropriate personal relationship between the two.

Chief Young confronted all officers—including Sergeant Barnett—about the complaints she was receiving.  Her corrections were not well-received by Sergeant Barnett.  In fact, after repeated conversations regarding the security detail, and officers were still showing some inappropriate activities with the president, Chief Young reached out to other agencies that provided similar security detail services to help and assist with training her officers.  Due to scheduling conflicts and manpower shortages, the needed training never occurred. After months of regular travel and last-minute security requests, Chief Young had to use additional officers to fill-in and help with security detail duties regarding the president's pick-up/drop off and other requests from

---

[12] Most of the following Information was learned after Chief Young filed her lawsuit.

the office of the president. This was becoming a rigorous daily task for the already short-staffed police department. Chief young then suggested that the civilian driver assigned to the Board of Regents and president's office (Mr. Calvin Dumas) assist more than usual to help with the president's in-state travel and around the city for pick-up/drop-off services, luncheons, and informal functions.  Barnett, and the office of the president, reluctantly accepted this change. However, soon thereafter, Barnett offered to resign—an offer Chief Young would have been willing to accept.  However, Sergeant Barnett then shared with other TSU officers that at the same time of his proffered resignation he received a call from President Crumpton's executive director, Ms. Harper, stating that the president could not live without him and asked him not to resign.  **See Tab 4.**  Barnett confided that the president's office tried to hire him to work in Hannah Hall where the president offices instead of in the police department.  Following is an account of what Sergeant Barnett shared with TSU officer Dereka Lawton:

> Another peculiar interaction between Sergeant Barnett and President Crumpton's office occurred just after Chief Young warned Sergeant Barnett that he was "in too deep" with the president.  Chief Young instructed Barnett to create more distance from the president in order to ensure both he and the president were kept in the best light and professionalism. Barnett threatened to resign his position because of Chief Young's admonition, but according to Barnett, he received a call from President Crumpton's chief of staff, Eddy Harper (sp?), who told him President Crumpton "needed him" and that they would create a job for him in Hannah Hall.  Such a position would have had Barnett work[] closer with the president.  However, because Barnett was not qualified for the position he did not accept the position.  After Chief Young tried to correct Barnett's conduct with President Crumpton is the first time I heard Barnett gripping about Chief Young and stating he "couldn't stand the chief."  He only made this statement to me after Chief Young tried to correct his interactions with President Crumpton.

See **Tab 4.**

Not long afterwards—i.e., less than two weeks later—the anonymous unsigned complaint surfaced against Chief Young.  And, throughout the time Ms. Darlene Brown performed her work, Sergeant Barnett was heard participating in her interviews and informing police staff members

about what was coming next in the investigation.  In fact, Sergeant Barnett forecasted to police staff that Chief Young was going to be placed on leave of absence before any formal action on that matter had been taken or communicated to Chief Young.   Sergeant Barnett also told police staff that his friend, TSU Sergeant Bobby Brown, was going to be installed by the administration to replace Chief Young—before any such announcement had been made.[13] It is now clear that Sergeant Barnett was privy to inside information about the investigation before anything was officially shared with Chief Young.

The undersigned attorney served Chief Young's open records request on TSU to obtain all communications between Sergeant Barnett, President Crumpton-Young, and Darlene Brown. TSU is opposing production of the requested public records and has refused to produce any of the court-ordered witnesses (Crumpton-Young and Brown) for deposition as ordered by Judge Engelhardt.  So far, TSU administrators have succeeded in frustrating production of the ordered discovery.

**b) Sergeant Barnett's Curious Relationship With President Crumpton-Young**

Chief Young has been supplied evidence revealing a more personal relationship between Sergeant Barnett and the TSU president than was previously known.  Following are some of the newly discovered details:

- Barnett personally bought and gifted a handgun to President Crumpton-Young and paid another TSU police officer to "bling it out" with rhinestones for "his girl."  See **Tab 41**, picture of the president's rhinestone-decorated pistol, and **Tab 10**, Affidavit of TSU Officer Bethany Cantu.
- President Crumpton-Young reciprocated by purchasing and giving Sergeant Barnett an expensive cowboy hat, expensive leather boots, and an expensive leather belt that Barnett brags about to other TSU police officers and has posted online in front of a TSU marked vehicle.  See **Tab 43**, Photos Barnett posted online of the President's gifts; and **Tab 4**, affidavit of Officer Dereka Lawton.

---

[13] See **Tab 40 and Tab 50, Exhibit 2.** TSU ultimately announced what Barnett had forecasted and circulated an email appointing Barnett's close friend, Bobby Brown, to serve as an interim police chief in direct violation of the court-issued TRO.

- Barnett refers to President Crumpton as "that girl is my heart."  See **Tab 4,** Dereka Lawton affidavit.
- President Crumpton told another TSU police officer who rescued her from a certain fall that **"Barnett would have killed you if anything had happened to me." Tab 4.**
- Sergeant Barnett also traveled out of town with President Crumpton on a trip that originally identified the President's husband as the person traveling with her—but her husband did not go on the trip, Sergeant Barnett was the male who traveled with the president on the trip.  When Chief Young inquired about the sudden last-minute travel change, Ms. Krystina Reed (former President's Department Business Administrator) informed the Chief the request for the change was made by the President herself.
- The President's office tried to get Barnett moved to Hannah Hall where the president's office is situated after Chief Young confronted him about his inappropriate conduct with the president.  **Tab 4.**
- Barnett was also allowed to order alcohol on the President's university pay card while traveling with her.  The charges were subsequently reversed after reimbursement forms were sent back for explanation by university personnel.  See **Tabs 44 and 45.**
- Very late one night, President Crumpton-Young called Sergeant Barnett personally—not through the police department dispatch—and asked for him to meet her to help find her missing daughter.  The call was made even though President Crumpton-Young's husband was there with her. She told the chief, "I (the president) am used to calling on him (Sergeant Barnett) in a lot of ways."

Removing Chief Young from her position as police chief based on trumped up charges made it convenient for Barnett's close friend, Sergeant Bobby Brown, to be put in her position.  See **Tab 50, Exhibit 2.**  However, putting Bobby Brown over the police department has caused numerous female officers to come forward with disturbing claims of sexual misconduct perpetrated by him—one of the women has sought legal representation to file for a TRO against Brown because she fears his sexual misconduct.  Bobby Brown, however, if left in the interim police chief position, will permit Sergeant Barnett to do whatever he wishes with President Crumpton-Young given the facts that have only recently been documented and shared with Chief Young.

Chief Young has only recently learned that Sergeant Bobby Brown has engaged in a number of sexual misdeeds as a police officer, including the following: 1)  forwarding a picture of a dildo to female  officers at a prior place of employment for which he was relieved of duty, 2) he has been asking male TSU officers about a current female TSU officer and  requesting information

about "who's hitting [that] P- - sy," and 3) disturbingly, circulating a text message to TSU officers, including female officers, that contains a shot of his naked penis in the shot.  See **Tab 42**, copy of Brown's penis shot.   At least one female TSU officer is prepared to sign and swear out a complaint against Sergeant Brown because of his sexual harassment in the department.  See Tex. Educ. Code, Section 51.252, et seq. which subjects an officer to termination for sexual harassment.

Regrettably, in the administration's haste to remove Chief Young in order to keep Sergeant Barnett close to the President, it has now placed a wolf over the hen house.  This is an unsustainable condition in the police department that poses a substantial legal risk to the university—all because of personal agendas, a legally defective incompetent complaint, and poorly researched investigation.  The situation should be immediately corrected by returning Chief Young to her position as police chief.  A substantial percentage of the department would warmly welcome her return.

### III.  Chief Young's Settlement Proposal To Resolve The Dispute

Chief Young has been tremendously damaged by all the negative press and untrue allegations leveled against her.  Her 25+ years of superlative police work and public service now lay tattered in the eyes of the public.  Her college-age daughter wakes up daily in tears because of all the negative stories and comments about her mom that populate social media and online searches.  "A person's good name is more valuable than gold" and Chief Young seeks to have her good name restored.

Chief Young makes the following modest settlement proposal to quickly resolve the present dispute and restore her good name: 1) the Board of Regents vote to immediately reinstate her to her position as TSU police chief; 2) immediately issue a mutually-approved joint press release announcing that additional facts have been uncovered  that disprove claims made against

Chief Young and commend reinstatement of her to her position as TSU police chief, with an apology to the Chief; 3) all litigation between the parties will be immediately ended; and 4) Chief Young's attorney's fees  and costs, as well as a reasonable public relations budget to help rehabilitate her public image will be paid by TSU.

I stand ready to answer any questions you may have regarding these matters.

Sincerely,

Benjamin L. Hall, III, Ph.D., J.D.
530 Lovett Blvd.
Houston Texas, 77006
713.942.9600
Trial Counsel for TSU Police Chief Mary Young

1

# IN THE SUPREME COURT OF TEXAS

No. 15-0912

COLORADO COUNTY, TEXAS, R.H. "CURLY" WIED,
IN HIS OFFICIAL & INDIVIDUAL CAPACITY, PETITIONER,

v.

MARC STAFF, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS

**Argued October 4, 2016**

JUSTICE GUZMAN delivered the opinion of the Court.

Chapter 614, Subchapter B of the Texas Government Code provides covered peace officers certain procedural safeguards to help ensure adverse employment actions are not based on unsubstantiated complaints of misconduct.[1] Under Subchapter B, a covered peace officer cannot be disciplined based on a "complaint" unless the complaint is (1) in writing, (2) "signed by the person making the complaint," and (3) presented to the employee "within a reasonable time after the

---

[1] TEX. GOV'T CODE §§ 614.021-.023; *see, e.g.*, *Paske v. Fitzgerald*, 499 S.W.3d 465, 474 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *City of Plainview Tex. v. Ferguson*, No. 07-14-00405-CV, 2016 WL 3522129, at *2 (Tex. App.—Amarillo 2016, pet. filed) (mem. op.); *Harris Cty. Sheriff's Civil Serv. Comm'n v. Guthrie*, 423 S.W.3d 523, 529-30 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *Lang v. Tex. Dep't of Pub. Safety*, No. 03-12-00497-CV, 2014 WL 3562738, at *9 (Tex. App.—Austin 2014, no pet.) (mem. op.).

complaint is filed."[2]  Moreover, ultimate disciplinary action (indefinite suspension or termination) may not be "based on the subject matter of [a] complaint" of misconduct absent an investigation and some supporting evidence.[3]

The statutory-construction issues raised in this employment-termination dispute concern the events necessary to trigger and satisfy Chapter 614, Subchapter B's procedural requirements.  The issues presented include whether Subchapter B's disciplinary procedures apply to at-will employment relationships; whether those procedures apply to any complaint of misconduct or only citizen-generated complaints; and whether a complaint must be signed by the "victim" of the alleged misconduct and presented to the employee some time before discipline is imposed.

We hold that (1) Chapter 614, Subchapter B does not alter the at-will relationship, but prescribes procedures that apply when the employer elects to terminate employment based on a complaint of misconduct rather than terminating at will; (2) the statutory phrase "the person making the complaint" is not limited to the "victim" of the alleged misconduct; and (3) in this case, a signed disciplinary notice provided to the employee contemporaneously with suspension of employment was sufficient to meet Chapter 614, Subchapter B's notice requirements and allowed the officer ample opportunity to defend himself to the final decisionmaker.  We therefore reverse the court of appeals' judgment and render judgment in the employer's favor.

---

[2] Tex. Gov't Code §§ 614.022, .023(a)-(b).

[3] *Id.* § 614.023(c).

2

## I. Background

After serving as a Colorado County Deputy Sheriff for nearly five years, Mark Staff's employment was terminated. Contemporaneously with Staff's dismissal, he received a "Performance Deficiency Notice (Termination)" signed by his supervisor, Lieutenant Troy Neisner (Deficiency Notice). Though the County is an at-will employer with "the right to terminate employment for any legal reason or no reason," the Deficiency Notice identified and provided details about three specific incidents in which Staff's interactions with the public were characterized as "rude," "unacceptable," "unprofessional," "grossly unprofessional," and contrary to departmental policy. Per the Deficiency Notice, these incidents did not constitute a "complete record" of Staff's performance deficiencies or "an exhaustive list of the reasons for [his] termination," but were merely "recent [performance] deficiencies."

While other unspecified performance issues may have impacted the termination decision,[4] the Deficiency Notice identifies the impetus for Staff's dismissal as an internal investigation initiated after County Attorney Ken Sparks informed Sheriff R.H. "Curly" Wied that Staff's behavior during a recorded traffic incident was "inappropriate and needed to be addressed." Sparks suggested the Sheriff review a DVD of dash-cam footage of the event, which Staff had provided to support criminal charges he filed against the motorist. According to Sparks, assistant county attorneys had

---

[4] Though not mentioned in the Deficiency Notice, an "Annual Performance Evaluation" made three years into Staff's tenure as a deputy sheriff states that, during the review period, Staff had been "counseled regarding dealing with citizens in an unprofessional manner" and had "commonly displayed problems making contacts with members of the public."

also viewed the recording and "felt [Staff's] conduct and/or behavior was inappropriate and concerning enough to bring it to his attention."

Sparks gave the DVD to Sheriff Wied, who immediately forwarded it to Lt. Neisner. Lt. Neisner and two other officers, Sergeant Girndt and Sergeant Edman, independently reviewed the video footage. As recounted in the Deficiency Notice, Staff's behavior toward the motorist was "demeaning" and involved "screaming," "taunting," and "apparent rage" that "escalated" the incident and "resulted in an arrest for an accident in which . . . no damage to any vehicle" had occurred. Based on the video depiction of Staff's conduct, "it was determined without question that [Staff's] behavior was unacceptable and unprofessional" on the occasion in question.

As a result of that incident, Lt. Neisner and Sgt. Edman conducted "spot checks" of Staff's dash-cam videos to evaluate his performance and found his behavior to be unacceptable on at least one other occasion. The Deficiency Notice states that, during a traffic stop that occurred shortly before the inciting incident, Staff was "argumentative," "scream[ed]" at a "calm" and "compliant" motorist, repeatedly asked questions that had already been answered, and "continued to escalate the incident higher by threatening to take the subject to jail several times for not cooperating, although there was no evidence of her not cooperating on video." Lt. Neisner and Sgt. Edman deemed Staff's behavior "rude," "unacceptable," and "grossly unprofessional."

In addition to the foregoing events, which occurred in the weeks preceding Staff's termination, the Deficiency Notice recalled a nearly five-year-old incident involving similar behavior. About a month after Staff was hired, he reportedly displayed his badge during an off-duty traffic stop and "cussed, ranted, and raved" at a motorist for "speeding up and slowing down[,]"

4

preventing [him] from passing."  The Deficiency Notice states that Staff was formally reprimanded for his conduct and admonished that further misconduct could result in termination of employment.

Lt. Neisner informed Staff that all three incidents violated section 22 of the Colorado County Sheriff's Office Policy Manual, *Conduct: Unbecoming an Employee*.  Lt. Neisner therefore "recommended" immediate termination of Staff's employment and terminated Staff's employment "effective immediately."  However, Lt. Neisner also advised Staff that he had 30 days to appeal the termination to Sheriff Wied for a "final" decision on the matter.  The signed Deficiency Notice was provided to Staff at the time of termination, which was two days after Sparks had reported his concerns about Staff's conduct to Sheriff Wied.

Staff timely appealed the termination decision to Sheriff Wied, seeking reinstatement.  In an exchange of initial letters, Sheriff Wied advised Staff to "articulate all of his responses to his termination and the reasons for his appeal" prior to the appeal deadline.  Each incident had been identified in the Deficiency Notice with factual details and objective criteria such as case number or date and time, and the Sheriff's office had produced copies of the video recordings and other relevant documents at Staff's request.  However, rather than contesting the substantive grounds for termination or attempting to contextualize his behavior, Staff's appeal to Sheriff Wied complained of procedural irregularities in the process leading to his discharge.  Citing sections 614.022 and 614.023 of the Texas Government Code, Staff asserted he could not be disciplined absent a written complaint signed by "the person who was the subject of the alleged misconduct," that no such document had ever been provided to him, and as a result, he had no opportunity to respond to the complaint or explain his actions.

5

After Sheriff Wied summarily upheld the termination decision, Staff sued the sheriff and Colorado County (collectively, Sheriff Wied) for declaratory, injunctive, and monetary relief.  Staff alleged the Colorado County Sheriff's Department violated Government Code sections 614.022 and 614.023 by terminating his employment without obtaining and giving him a copy of a signed complaint and without allowing him an opportunity to respond to the allegations before he was disciplined.

In cross-motions for partial summary judgment, the material facts were not disputed.  Nor was there any dispute that Staff was covered under Chapter 614, Subchapter B.[5]  However, in seeking summary judgment on liability, the parties relied on conflicting constructions of the relevant statutory provisions.   The parties' summary-judgment positions diverged as to whether the circumstances attending Staff's termination triggered the statutory process and, if so, whether Sheriff Wied complied with the statutory requirements.

Staff's summary-judgment motion asserted Chapter 614, Subchapter B applied because his employment was terminated based on an investigation that originated with Sparks's complaint; Sparks did not sign a written complaint against Staff; Colorado County's investigation of Sparks's complaint was "ex parte" and did not afford Staff an opportunity to respond to the allegations; the Deficiency Notice Lt. Neisner signed did not satisfy the statutory requirement of a signed complaint because "the investigation into the complaint did not begin internally, but was generated as the result

---

[5] Chapter 614, Subchapter B applies to "a peace officer under Article 2.12, Code of Criminal Procedure, or other law who is appointed or employed by a political subdivision of this state," unless the political subdivision is subject to a meet-and-confer or collective-bargaining agreement that has been established under chapters 143 or 174 of the Local Government Code and that "includes provisions relating to the investigation of, and disciplinary action resulting from, a complaint against a peace officer or fire fighter, as applicable."  *Id.* § 614.021.

of an external communication with the Sheriff's Office"; and even if the Deficiency Notice would otherwise be sufficient, Staff had no opportunity to defend himself against the allegations because he did not receive the notice until discipline was imposed.  The central theme of Staff's summary-judgment motion was that an internal report based on an external complaint alleging misconduct is insufficient to satisfy the statutory requirements.

Sheriff Wied's motion for partial summary judgment argued that Chapter 614, Subchapter B did not apply to Staff's termination because Staff's employment was terminable at will; termination "was not based on a specific complaint"; and the grounds for termination stated in the Deficiency Notice were not exhaustive.  In the alternative, Sheriff Wied asserted the disciplinary process satisfied the statutory requirements as a matter of law because (1) the allegations of misconduct were investigated and supported by evidence; (2) the Deficiency Notice qualified as a signed complaint regarding those allegations; (3) the signed complaint was provided to Staff promptly after the internal investigation was initiated; and (4) Staff had an opportunity to respond to the allegations in the Deficiency Notice before Sheriff Wied—the head of the law-enforcement agency and final decisionmaker—acted on it.

The trial court granted Sheriff Wied's motion for partial summary judgment and denied Staff's motion.  The trial court subsequently rendered final judgment dismissing Staff's claims and awarding Sheriff Wied $10,483.07 for reasonable and necessary attorney's fees and up to $30,000 in conditional appellate attorney's fees.

The court of appeals reversed, rendered judgment that Sheriff Wied violated Chapter 614, and remanded the case to the trial court for a decision on Staff's request for attorney's fees under

7

Texas's Uniform Declaratory Judgment Act.[6]  As an initial matter, the court held Colorado County's status as an at-will employer would not preclude application of sections 614.022 and 614.023, because the statute does not limit an employer's authority to discharge an employee but merely prescribes procedures that apply only "when a complaint of misconduct forms the basis of the decision to terminate employment."[7]  The court further held that Sheriff Wied did not comply with the statute because he terminated Staff's employment based on a "complaint" of misconduct without obtaining and providing a complaint signed by "the victim of the alleged misconduct."[8]  The court concluded Sparks was the complaining party, because the misconduct allegations originated with him.[9]  Accordingly, the internally generated Deficiency Notice Lt. Neisner signed did not constitute a "complaint" within the meaning of section 614.022, and no statutorily-compliant complaint was provided to him before he was terminated "effective immediately."[10]

We granted Sheriff Wied's petition for review to address statutory issues of first impression that have broad application to law-enforcement agencies, peace officers, and other public servants and their employers.[11]

_____

[6] 470 S.W.3d 251, 262 (Tex. App.—Houston [1st Dist.] 2015).

[7] *Id.* at 258.

[8] *Id.* at 261.

[9] *Id.*

[10] *Id.* at 261-62.

[11] In addition to peace officers appointed or employed by a political subdivision, Chapter 614, Subchapter B, applies to law-enforcement officers for the State of Texas, certain state and local fire fighters, detention officers, and county jailers.  Tex. Gov't Code § 614.021.

8

## II. Discussion

The dispute in this case turns on the proper construction of Chapter 614, Subchapter B as applied to the undisputed facts.[12]  Subchapter B addresses termination of a covered peace officer's employment, and any other "disciplinary action," that is based on a "complaint" of misconduct.[13] The statute imposes certain procedures the head of a local law-enforcement agency must follow to "consider[]" a complaint or take disciplinary action, including terminating employment "based on the subject matter of the complaint."[14]

Subchapter B, a statute of notable brevity, provides:

### § 614.022 Complaint to Be in Writing and Signed by Complainant

To be considered by the head of a . . . local law enforcement agency, the complaint must be:

(1) in writing; and

(2) signed by the person making the complaint.[15]

### § 614.023 Copy of Complaint to Be Given to Officer or Employee

(a) A copy of a signed complaint against a law enforcement officer of this state or a fire fighter, detention officer, county jailer, or peace officer appointed or employed

---

[12] *See BCCA Appeal Grp., Inc. v. City of Hous.*, 496 S.W.3d 1, 7 (Tex. 2016) ("Traditional summary judgment is proper when the movant establishes that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law."); *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) (statutory construction presents a question of law reviewed de novo).

[13] TEX. GOV'T CODE §§ 614.021-.023.

[14] *Id.* §§ 614.022-.023.

[15] *Id.* § 614.022.

9

by a political subdivision of this state shall be given to the officer or employee within a reasonable time after the complaint is filed.

(b) Disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee.

(c) In addition to the requirement of Subsection (b), the officer or employee may not be indefinitely suspended or terminated from employment based on the subject matter of the complaint unless:

> (1) the complaint is investigated; and

> (2) there is evidence to prove the allegation of misconduct.[16]

These statutes provide "covered employees with procedural safeguards to reduce the risk that adverse employment actions would be based on unsubstantiated complaints."[17]  In enacting these statutes, the Legislature "determined that the value of these protections outweighs the fiscal and administrative burdens incurred by complying with statutory requirements."[18]

Sheriff Wied argues that (1) Subchapter B does not apply to employment relationships that are terminable at will, and (2) to the extent it does apply, no process is triggered absent a citizen-generated complaint that provides the sole basis for disciplinary action.  According to Sheriff Wied, County Attorney Ken Sparks did not file a "complaint" against Staff, but merely discussed evidentiary problems in a case referred for prosecution by the Sheriff's office.  The communication, he says, "demonstrated the necessary and required coordination of the Texas judicial system between

---

[16] *Id.* § 614.023.

[17] *Turner v. Perry*, 278 S.W.3d 806, 823 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

[18] *Id.*

10

the prosecuting attorney . . . and the law enforcement agency . . . to effectively prosecute criminal violations." He asserts, moreover, that the problem Sparks identified was merely an example of Staff's deficiencies, and not the exclusive basis for disciplinary action. In short, there was no "complaint" that provided the basis for Staff's termination and, even if there were, Staff could be terminated at will notwithstanding a pending complaint. In the alternative, Sheriff Wied maintains the disciplinary process fully complied with the statutory requirements.

Staff counters that, under the statute's plain language, the statutory procedures are a predicate to discipline when an allegation of misconduct from any source—whether external to the law-enforcement agency or arising from within the agency—plays a part in the disciplinary action. Accordingly, the statutory process was triggered because Sparks's complaint about Staff's behavior was the catalyst for his dismissal. Relying on judicial constructions of the statute, Staff argues the Deficiency Notice cannot meet the signed-complaint requirement because it was not signed by "the victim of the alleged misconduct."[19] Per Staff, the only possible victims of his behavior are the affected citizens and perhaps the county attorney, whose criminal prosecution could have been frustrated by evidentiary problems arising from Staff's recorded encounter with the defendant.[20]

---

[19] *See Guthery v. Taylor*, 112 S.W.3d 715, 723 (Tex. App.—[14th Dist.] 2003, no pet.) (construing "person making the complaint" to mean "complainant" and applying a special definition of that term from a civil-service statute with a similar purpose; *see also* TEX. LOC. GOV'T CODE § 143.123(a)(1) ("'Complainant' means a person claiming to be the victim of misconduct by a fire fighter or police officer.").

[20] Considering that the county attorney had no better knowledge about the inciting incident than Lt. Neisner, Staff's distinctions split remarkably fine hairs. He invokes Chapter 614, Subchapter B's requirements on the basis of the county attorney's report about the video's contents, but in the same breath, argues Lt. Neisner could not have made a complaint based on equal access to the same information. *Cf. Fudge v. Haggar*, 621 S.W.2d 196, 198-99 (Tex. App.—Texarkana 1981, writ ref'd n.r.e.) (while information provided from an external source prompted an internal investigation, the investigating supervisor could satisfy the signed-complaint requirement based on an investigation that was conducted internally).

11

Staff does not allow that his public interactions may have harmed the integrity of the sheriff's department or impaired the effective administration of justice by his colleagues,[21] but even if so, Staff says the Deficiency Notice did not satisfy Subchapter B's requirements because Lt. Neisner imposed discipline cotemporally with that document's presentment to him.  Though Staff does not contend the allegations were not investigated or supported by some evidence, he asserts the failure to provide a signed copy of a complaint before dismissal precluded his participation in the investigation and hampered his ability to defend himself.

The parties' arguments present statutory construction issues pertaining to when and how the statute applies.  These are questions of law that we review de novo under familiar statutory construction principles.[22]

### A. Applicable Standards of Review

When construing a statute, our primary objective is to give effect to the Legislature's intent.[23] We seek that intent "first and foremost" in the statutory text,[24] and "[w]here text is clear, text is determinative" of intent.[25]  "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or

---

[21] *Cf. City of DeSoto v. White*, 288 S.W.3d 389, 396 (Tex. 2009) (observing the "vital role" of police officers in our society and "the need for continued public trust in the exercise of their duties").

[22] *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).

[23] *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015).

[24] *Id.*

[25] *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009).

12

nonsensical results."[26]  When interpreting the Legislature's words, however, we must never "rewrite the statute under the guise of interpreting it,"[27] and we may not look beyond its language for assistance in determining legislative intent unless the statutory text is susceptible to more than one reasonable interpretation.[28]

The statutory-construction issues integral to the disposition of this appeal arise in the context of cross-motions for summary judgment based on undisputed material facts.  When both parties move for summary judgment and the trial court grants one motion and denies the other, as in this case, we determine all issues presented and render the judgment the trial court should have rendered.[29]

## B. At-Will Employment

We begin our analysis by considering Sheriff Wied's principal argument, that sections 614.022 and 614.023 are inapplicable because Staff's employment was terminable at will and there were other grounds for termination besides any specific "complaint" that might have triggered the statutory process.  In other words, the existence of a "complaint" is immaterial if the sheriff could have discharged Staff for any other reason.

---

[26] *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011); *see Keystone RV Co. v. Tex. Dep't of Motor Vehicle*, ___ S.W.3d ___, 2016 WL 6677935, at *1 n.7 (Tex. App.—Austin 2016, no pet.) ("[C]ontext informs, among other considerations, whether the Legislature intended words in their 'plain' or 'common' meaning, in a narrower or more technical connotation, or whether the facially 'plain' meaning would yield the rarity of 'absurd results' the Legislature could not possibly have intended.").

[27] *In re Ford Motor Co.*, 442 S.W.3d 265, 284 (Tex. 2014).

[28] *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012).

[29] *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

13

Appointment of a deputy sheriff involves the public welfare and the expenditure of public funds. The general rule is that a deputy sheriff serves at the sheriff's pleasure,[30] which means the public official chosen by the voters to serve the public's interest holds the power and discretion to terminate the employment of subordinates and "is accountable to no one other than the voters for his conduct."[31] Sheriffs hold "virtually unbridled authority in hiring and firing their employees,"[32] and as a general proposition, may terminate a deputy's employment for good cause, bad cause, or no cause at all.[33] Thus, a deputy sheriff has "precarious tenure"[34] and no entitlement to continued employment unless an exception to the at-will doctrine is recognized at law[35] or the at-will

---

[30] Tex. Loc. Gov't Code § 85.003(c), (f); *see also Cty. of Dallas v. Wiland*, 216 S.W.3d 344, 347 (Tex. 2007).

[31] *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980) ("Because of the unique structure of county government in Texas, . . . elected county officials, such as the sheriff and treasurer hold[] virtually absolute sway over the particular tasks or areas of responsibility entrusted to [them] by state statute and [are] accountable to no one other than the voters for [their] conduct therein."); *see also Abbott v. Pollock*, 946 S.W.2d 513, 517 (Tex. App.—Austin 1997, writ denied) (recognizing the "policy that elected officers, such as sheriffs, discharge the public trust and carry the responsibility for the proper discharge of that trust, and therefore, should be free to select persons of their own choice to assist them" (citing *Renfro v. Shropshire*, 566 S.W.2d 688, 691 (Tex. Civ. App.—Eastland 1978, writ ref'd n.r.e.))).

[32] *Irby v. Sullivan*, 737 F.2d 1418, 1421 (5th Cir. 1984).

[33] *See, e.g.*, *Montgomery Cty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998); *Abbott*, 946 S.W.2d at 517.

[34] *Murray v. Harris*, 112 S.W.2d 1091, 1094 (Tex. Civ. App.—Amarillo 1938, writ dism'd); *see also Barrett v. Thomas*, 649 F.2d 1193, 1199 (5th Cir. 1981) ("[D]eputy sheriffs have no legal entitlement to their jobs as public employees; the sheriff may fire them for many reasons or for no articulable reason at all.").

[35] *See, e.g.*, *Battin v. Samaniego*, 23 S.W.3d 183, 188 (Tex. App.—El Paso 2000, pet. denied) (observing the Legislature can make exceptions to the at-will employment relationship and discharge may not violate the law); *Mott v. Montgomery Cty., Tex.*, 882 S.W.2d 635, 637-38 (Tex. App.—Beaumont 1994, writ denied) (termination of employment cannot contravene a statute or result from the employee's refusal to perform an illegal act).

14

employment relationship has been modified by express agreement[36] or supplanted by a civil-service system.[37]

In this case, the parties agree Staff's employment was terminable at will, but take contrary positions on Subchapter B's application in the at-will context.  In Sheriff Wied's view, the statutory procedures apply only when a misconduct complaint is the sole basis for termination.  Staff contends—and the court of appeals held—that the statute applies whenever the decision to terminate employment is based on a complaint of misconduct.[38]  We agree with Staff and the court of appeals. Although Sheriff Wied could have discharged Staff for any reason or no reason, Chapter 614, Subchapter B nevertheless applies when an at-will employer terminates for cause that derives from allegations in a complaint of misconduct instead of terminating at will for no cause or terminating for other cause.[39]

Sections 614.022 and 614.023 do not abrogate the right to discharge an employee at will or require cause for termination.[40]  Rather, the statute sets out a process for addressing discipline, including termination, when discipline is based on a "complaint" of misconduct.  If an employer

---

[36] See Cty. of Dall. v. Wiland, 216 S.W.3d 344, 348 (Tex. 2007).

[37] See TEX. LOC. GOV'T CODE § 85.003(f) (deputies covered by a county civil-service statute adopted under Chapter 158 of the Local Government Code "may be suspended or removed only for a violation of a civil service rule adopted under that system").

[38] 470 S.W.3d 251, 258 (Tex. App.—Houston [1st Dist.] 2015).

[39] Paske v. Fitzgerald, 499 S.W.3d 465, 475 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (observing that not every termination of a law-enforcement officer necessarily has its genesis in a "complaint").

[40] See, e.g., Stem v. Gomez, 813 F.3d 205, 212-13 (5th Cir. 2016) ("Section 614.023 certainly does not explicitly provide that an officer facing a complaint can only be terminated for cause.  Section 614.023 also does not resemble other statutes that clearly establish such a rule.").

15

terminates or indefinitely suspends a covered employee based on the subject matter of a complaint—rather than dismissing the employee at will—removal *on the basis of a misconduct complaint* requires compliance with the statutory procedure.

The creation of procedural rights for cause-based dismissal does not limit the sheriff's ability to terminate at will.  Nor does conditioning an employee's removal on compliance with specified procedures in specified circumstances equate to an entitlement to continued employment or a modification of the at-will employment relationship.[41]  Rather, the statutory process helps ensure that cause-based removals of a specified nature bear a modicum of proof and that the affected employee has notice of the basis for removal.  Simply stated, Chapter 614 does not give an employee a right to continued employment, but it does require compliance with the statutory process before an employee may be permanently encumbered by a damaging discharge record.

Removal based on an allegation of misconduct naturally carries more significant consequences than dismissal at will,[42] and the procedural safeguards provided in Chapter 614,

---

[41] *Cf. Renken v. Harris Cty.*, 808 S.W.2d 222, 225 (Tex. App.—Houston [14th Dist.] 1991, no writ); *Irby v. Sullivan*, 737 F.2d 1418, 1422 n.4 (5th Cir. 1984) ("'[M]erely conditioning an employee's removal on compliance with certain specified procedures' does not necessarily mean that an employee has a substantive property right in continued employment." (quoting *Bishop v. Wood*, 426 U.S. 341, 345 (1976))).  *But see Turner v. Perry*, 278 S.W.3d 806, 822 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (holding school district police officer had a constitutionally protected property interest in continued employment pursuant to Chapter 614, Subchapter B, which was expressly adopted in the school district's policy manual and had previously been applied to the officer).

[42] In any employment context, being discharged for misconduct is manifestly more consequential than termination at will.  But for peace officers, the ensuing repercussions may be even more serious.  For example, when a licensed peace officer's employment is terminated, the law-enforcement agency must submit a report to the Texas Commission on Law Enforcement that includes a statement about whether the licensee was honorably discharged, generally discharged, or dishonorably discharged and, to the extent required by the Commission, provide an explanation of the circumstances under which the person was terminated.  Tex. Occ. Code § 1701.452(a), (b).  A peace officer is not "honorably discharged" if the officer was terminated for insubordination or untruthfulness, due to allegations of criminal misconduct, a documented performance problem, or a disciplinary investigation.  *Id.* § 1701.452(b).  A law-enforcement agency cannot hire a licensed peace officer before "making a request to the commission for any

16

Subchapter B advance two significant objectives: (1) ameliorating the risk that disciplinary action might be based on frivolous complaints and (2) helping to ensure an affected employee has sufficient notice of the charges to defend against the allegations.[43]   Providing notice affords the employee an opportunity to address the matter but does not preclude the employer from terminating employment so long as the "complaint" has been investigated and "there is evidence to prove the allegation of misconduct."[44]

In sum, Chapter 614, Subchapter B does not preclude termination of employment absent compliance with the statutory process, but when allegations of misconduct are serious enough to warrant termination—independently or as a component of cumulative discipline—a complaint must be filed, investigated, and substantiated.[45]   The statute prescribes a procedure that applies when

_____

employment termination report regarding the person" or "obtain[ing] from the commission any service . . . records regarding the person maintained by the commission." *Id.* § 1701.451(a).   Moreover, "[t]he commission shall suspend the license of an officer . . . on notification that the officer has been dishonorably discharged if the officer has previously been dishonorably discharged from another law enforcement agency." *Id.* § 1701.4521(a).

[43] *See Treadway v. Holder*, 309 S.W.3d 780, 784-85 (Tex. App.—Austin 2010, pet. denied) (failure to provide proper documentation of the complaints against an officer impairs the officer's ability to investigate or defend against the complaints).

[44] *See* TEX. GOV'T CODE § 614.023.

[45] The statute does not prescribe a quantum of proof for substantiating an allegation of misconduct.   Though an initial draft of section 614.023(c)'s enacting legislation included language requiring "*sufficient* evidence to prove an allegation of misconduct," that language did not make the final cut.   A bill analysis indicates that language was specifically amended to (1) limit investigation and proof to indefinite suspension or termination and (2) require "'evidence' rather than 'sufficient evidence' as in the original bill, to prove any allegation of misconduct."   *See* House Comm. on Urban Affairs, Bill Analysis, Tex. H.B. 639, 79th Leg., R.S. (2005) (responding to opponents' concerns that no threshold standard of proof was required and supporters' position that silence on the quantum of evidence "would leave the discretion to decide what is sufficient in the hands of state and local departments where it lies already[, so] state and local agencies would lose no authority by the requirement of a sufficient evidence standard").   We have emphasized that courts must take statutes as they find them and must presume the Legislature included words in them that it intended to include and omitted words it intended to omit.   *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

17

termination or indefinite suspension is "based on the subject matter of [a misconduct] complaint."[46] Though the statutory process may cause an administrative burden on law-enforcement agencies, the procedural protections offered by the statute outweigh the corresponding burden.[47]

The issue here is not whether Sheriff Wied could have discharged Staff at will rather than for sufficient cause; the issue is whether his termination for cause was based on a "complaint," within the meaning of the statute. If it was, the allegations in the complaint could not provide a basis for his discharge unless he was timely provided a copy of the "complaint" "signed by the person making the complaint."

### C. Invoking and Fulfilling Chapter 614, Subchapter B's Requirements

The parties' arguments require us to consider, as a matter of first impression, the kind of "complaint" and "person making the complaint" that is necessary to both activate and satisfy the statute's procedural safeguards.[48]   Subchapter B does not define or elaborate on the nature of a "complaint" or the type of "person" who may make and sign a complaint.  Because these terms are not statutorily defined, we must give them their ordinary and common meaning unless the context suggests the Legislature intended a different or more technical meaning or unless such a construction leads to absurd results.[49]

---

[46] Tex. Gov't Code § 614.023(c).

[47] Turner, 278 S.W.3d at 823.

[48] Stem v. Gomez, 813 F.3d 205, 215 (5th Cir. 2016) ("Texas courts have not resolved important questions about [Chapter 614, Subchapter B].").

[49] See FKM P'ship, Ltd. v. Bd. of Regents of the Univ. of Hous. Sys., 255 S.W.3d 619, 633 (Tex. 2008) ("We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired, but otherwise, we construe the statute's words according to their plain and common meaning unless a contrary intention is

18

In determining the ordinary and common meaning of an undefined word in a statute, we may consider a variety of sources, including dictionary definitions, judicial constructions of the term, and other statutory definitions.[50]  A review of dictionary definitions reveals that "complaint" refers to "the act or action of expressing protest, censure, or resentment: expression of injustice";[51] a "formal allegation or charge against a party made or presented to the appropriate court or officer";[52] "something that is the cause or subject of protest or grieved outcry";[53] "a statement that a situation is unsatisfactory or unacceptable";[54] and "a reason for . . . [or] the expression of dissatisfaction."[55] Statutory definitions of the term generally accord with the foregoing.[56]  As the authorities

---

apparent from the context, or unless such a construction leads to absurd results.").

[50] *See, e.g.*, *TGS–NOPEC Geophysical*, 340 S.W.3d at 441 (consulting dictionaries to ascertain the generally accepted definition of undefined statutory language).

[51] WEBSTER'S THIRD NEW INT'L DICTIONARY (2002).

[52] *Id.*

[53] *Id.*

[54] NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010).

[55] *Id.*

[56] *See, e.g.*, TEX. GOV'T CODE, Title 2, Subtitle G App. A-1 § 1.06(G) ("'Complaint' means those written matters received by the Office of the Chief Disciplinary Counsel that, either on the face thereof or upon screening or preliminary investigation, allege Professional Misconduct or attorney Disability, or both, cognizable under these rules or the Texas Disciplinary Rules of Professional Conduct."); TEX. HEALTH & SAFETY CODE § 555.001 ("'Complaint' means information received by the office of independent ombudsman regarding a possible violation of a right of a resident or client and includes information received regarding a failure . . . to comply with [relevant] polices and procedures . . . ."); TEX. INS. CODE §§ 542.005(a) (defining "complaint" as "any written communication primarily expressing a grievance"), 751.003(a)(1) ("'Complaint' means a written or documented oral communication, the primary intent of which is to express a grievance or an expression of dissatisfaction."), 843.002(6) (defining "complaint" as "any dissatisfaction expressed orally or in writing by a complainant to a health maintenance organization regarding any aspect of the health maintenance organization's operation"); *cf. also* TEX. GOV'T CODE, Title 2, Subtitle G App. A-1 § 1.06(R) ("'Grievance' means a written statement, from whatever source, apparently intended to allege [attorney misconduct or disability] received by the Office of the Chief Disciplinary Counsel.").

19

consistently confirm, the word "complaint" ordinarily means an expression of dissatisfaction, including an allegation made by one against another.[57]

When a "complaint" is made, however, the procedures in Chapter 614, Subchapter B come into play and limit the law-enforcement agency's ability to take "disciplinary action" based on the complaint.  Though the ordinary meaning of "complaint" encompasses allegations that may be formal or informal, written or unwritten, satisfaction of the statute requires complaints that are in writing and "signed by the person making the complaint."[58]

The term "person" generally refers to a natural person (i.e., any individual),[59] and under Subchapter B's plain language, more than one "person" could make a "complaint."  Applying the ordinary meaning of the terms to the facts in this case, the county attorney could be a "person" who

---

[57] *Paske v. Fitzgerald*, 499 S.W.3d 465, 474 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

[58] The analysis in one case suggests that failure to obtain a signed complaint from the victim of misconduct might *preclude the statute's application* altogether.  *See Gehring v. Harris Cty. Tex.*, Civ. A. H-15-0726, 2016 WL 269620, at *11 (S.D. Tex. Jan. 21, 2016) ("Gehring does not assert that any of the alleged victims in the three incidents signed a written complaint against him that was the basis of the disciplinary measures taken against [him], but which was not provided to him before those measures were taken.  Thus Gehring has failed to state a plausible claim under the Texas Government Code.").  Although the analysis in the opinion is not entirely clear, reading the statute in such a manner would conflate application of the statute with satisfaction of its requirements and would allow employers to skirt the statutory requirements simply by choosing not to comply with the statute.  This is not a reasonable construction of the statute.

[59] New Oxford American Dictionary (3d ed. 2010) ("person" means "a human being regarded as an individual"); Webster's Third New Int'l Dictionary (2002) ("person" is "an individual human being," "a human being as distinguished from an animal or thing").  Depending on the context, however, the term may also include an artificial person, such as a government agency, partnership, association, corporation, trust, or other legal entity. *See, e.g.*, Tex. Gov't Code § 311.005 (unless a statute or context employing the word or phrase requires a different definition, "person," when used in a statute, "includes corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity"); Tex. Ins. Code § 843.002(21) (defining "person" as "any natural or artificial person, including an individual, partnership, association, corporation, organization, trust, [and other legal entities]").  While including artificial persons seems unlikely in this context, the issue is immaterial to the appeal's disposition.

20

may make and sign a written "complaint" for purposes of triggering and satisfying the statute's procedural requirements, and Lt. Neisner could as well.

Courts construing the statute, however, have recognized distinctions that affect when the procedural requirements are invoked and limit who may discharge them. Some cases have held that Chapter 614, Subchapter B applies to "any allegation of misconduct that could result in disciplinary action,"[60] but disagreement exists about whether the statute applies to misconduct allegations that originate from within the law-enforcement agency as opposed to those arising from external sources.[61] Others hold that internal disciplinary matters based on the agency head's personal knowledge do not constitute a "complaint" under section 614.022 and 614.023, and consequently,

---

[60] *Bracey v. City of Killeen*, 417 S.W.3d 94, 99 (Tex. App.—Austin 2013, no pet.); *Treadway v. Holder*, 309 S.W.3d 780, 782-86 (Tex. App.—Austin 2010, pet. denied); *id*. at 786-89 & n.1 (WALDROP, J., dissenting) (agreeing with the majority that the statute makes no distinction between "external" complaints and "internal" complaints, but arguing the term "complaint" does not include allegations of misconduct originating within the officer's own "chain of command," which are properly characterized as disciplinary matters that do not require protection under Chapter 614, Subchapter B).

[61] *Compare Paske*, 499 S.W.3d at 475 ("[A] 'complaint' may originate from either outside a law enforcement agency or from within it" but not all dismissals "necessarily have [their] genesis in a 'complaint'"), *Treadway*, 309 S.W.3d at 784 ("[A]ny 'allegation of misconduct' for which disciplinary action may be imposed represents a complaint, regardless of the source."), and Tex. Att'y Gen. Op. No. GA-0251 (2004) ("The authority of a head of police department to discipline is not limited to complaints filed by a citizen . . .; [a]s circumstances warrant, a superintendent of the school district or others may initiate disciplinary action by filing a signed complaint, or complaints may prompt an internal investigation and report by the police department sufficient to satisfy the [statutory] requirements."), *with Gehring*, 2016 WL 269620, at *11 (holding that an officer failed to state a plausible claim under Chapter 614, Subchapter B, because the statute applies only when "a written signed complaint has been made by a victim, not a law enforcement agency's internal observation") *and Jackley v. City of Live Oak*, No. SA-08-CA-0211-OG, 2008 WL 5352944, at *5 (W.D. Tex Dec. 19, 2008) ("Because the letter put [the terminated police officer] on notice of an internal investigation, rather than an investigation of a complaint by a citizen, it was appropriately signed by [the City Manager]" as "there is nothing in the statute to indicate that sections 614.022-[.]023 apply to anything other than citizen-generated complaints"); *cf. Baldridge v. Brauner*, No. 01-10-00852-CV, 2013 WL 4680219, at *5 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (declining to consider whether section 614.023 applies to internal performance issues because the employer complied with the statute in any event; multiple potential grounds for termination were given and statutory requirements were satisfied with regard to at least one of the stated grounds).

compliance with the statutory process is not required.[62]   With regard to the signed-complaint requirement, judicial constructions of the statute have narrowed the ordinary meaning of "person making the complaint," such that only the "victim" of the alleged misconduct can fulfill that requirement.[63]

We need not consider in this case whether Chapter 614, Subchapter B is implicated by an internally generated complaint; whether or under what circumstances disciplinary action by an agency head or someone else in the chain of command invokes the statute; what constitutes "personal knowledge" that may be sufficient to remove disciplinary action from Chapter 614's ambit; or whether personal knowledge may be acquired technologically and, if so, how concerns about authenticity or completeness factor into the analysis.[64]   Rather, we conclude that the dispositive issue under the facts presented is whether "the person making the complaint" must be "the victim of the alleged misconduct."   Adhering to the precepts that "[e]nforcing the law as written is a court's

---

[62] *See Paske*, 499 S.W.3d at 475; *Treadway*, 309 S.W.3d at 786-89 & n.1 (Tex. App.—Austin 2010, pet. denied) (WALDROP, J., dissenting) (agreeing with the majority that the statute makes no distinction between "external" complaints and "internal" complaints, but arguing the term "complaint" does not include those generated within the officer's own "chain of command"); *accord Rogers v. City of Yoakum*, 660 F. App'x 279, 285 (5th Cir. Aug. 30, 2016) (Chapter 614, Subchapter B was not implicated when the city manager fired the police chief for mishandling an investigation into allegations of misconduct about a subordinate officer; the termination decision was based on the city manager's "*own* observations of [the chief's] behavior and his responses to issues within the department" (citing *Paske*, 499 S.W.3d at 475)). *But see Treadway*, 309 S.W.3d at 783-85 (applying Chapter 614, Subchapter B to complaint that originated within the chain of command).

[63] *See, e.g., Guthery v. Taylor*, 112 S.W.3d 715, 723 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

[64] In this case, the video recordings, which conferred some degree of "personal knowledge" to those who viewed them, were obtained directly from Staff's vehicle.   Accordingly, concerns about authenticity might not be as significant as those that could arise from viral videos, for example, or recordings provided by a third party.   But even if authenticity is not a concern, image capture might not tell the whole story.   Here, for example, the Deficiency Notice observes that, in one of Staff's traffic-stop encounters, "there was no evidence of her not cooperating *on the video*." (Emphasis added.) A picture may be worth a thousand words, but not every narrative is a short story.   Even when there is relatively "objective" evidence available, complying with Chapter 614, Subchapter B's requirements would allow an affected employee to respond with evidence that could provide critical context.

22

safest refuge in matters of statutory construction" and that "we should always refrain from rewriting text that lawmakers chose,"[65] we hold the statute's plain language does not support a construction that restricts the meaning of "the person making the complaint" to "the victim of the alleged misconduct."

### D. Collateral Linguistic Restraints on Plain Language

The "victim of misconduct" limitation is borrowed from a special definition of the term "complainant" provided in section 143.123 of the Texas Local Government Code, which is part of a civil-service statute enacted to "secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants."[66] Chapter 143's purpose is similar but not identical to Chapter 614, Subchapter B's purpose, because the latter does not guarantee "permanent employment tenure" for covered public servants and "free[dom] from political influence" may be advanced by Subchapter B but is not an express statutory objective.

Section 143.123, which governs investigation of misconduct complaints against fire fighters and police officers in municipalities meeting a threshold population requirement, defines "complainant" for purposes of that section as "a person claiming to be the victim of misconduct by a fire fighter or police officer."[67] The term "complainant" includes a person who is a peace officer.[68]

---

[65] *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009).

[66] TEX. LOC. GOV'T CODE § 143.001; *see Guthery*, 112 S.W.3d at 722-23 (deriving "victim of misconduct" limitation by reference to section 143.001).

[67] TEX. LOC. GOV'T CODE § 143.123(a)(1); *see also id.* § 143.101 (except as otherwise provided, Chapter 143, Subchapter G applies only to a municipality with a population of 1.5 million or more); *id.* §§ 143.301, .312(b)(1) (defining "complainant" similarly in a civil-service statute applicable to certain municipalities with a population of

The theory that the Legislature intended "a person making a complaint" under Chapter 614,

Subchapter B to bear a similarly narrow meaning derives from a syllogism of sorts.

>   That is:

> •   In common parlance, a "person making a complaint" is the same thing as a "complainant."

> •   Under a special definition in a statute of similar purpose (section 143.123 of the Local Government Code), the term "complainant" is restricted to an alleged "victim of misconduct."

> •   Therefore, the Legislature likely intended a "person making a complaint" in section 614.022 of the Government Code to refer only to "the victim of misconduct."[69]

This analysis relies on a principle of statutory construction that,

> Whenever a legislature has used a word in a statute in one sense and with one meaning, and subsequently uses the same word in legislating on the same subject-matter, it will be understood as using it in the same sense, unless there be something in the context or the nature of things to indicate that it intended a different meaning thereby.  The rule applies when the phrases are substantially the same.[70]

---

460,000 or more or which operate under a city-manager form of government).

[68] *See id.* § 143.123(e) ("complainant" may not be assigned to investigate a complaint), (f) (a fire fighter or police officer may not be interrogated based on "a complaint by a complainant who is not a peace officer unless the complainant verifies the complaint"); *see also id.* § 143.312(f), (g) (same).

[69] *See generally Guthery*, 112 S.W.3d at 721-22.

[70] *Brown v. Darden*, 50 S.W.2d 261, 263 (Tex. 1932) (internal citation and punctuation omitted); *see also L&M-Surco Mfg., Inc. v. Winn Tile Co.*, 580 S.W.2d 920, 926 (Tex. Civ. App.—Tyler 1979, writ dism'd) (observing the principle "applies with particular force where the meaning of a word as used in one act is clear or has been judicially determined, and the same word is subsequently used in another act pertaining to the same subject").

Stated another way, "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."[71]

A few practical considerations prevent us from drawing the same conclusion about the impact of the special definition of "complainant" in section 143.123, however.  First, "complainant" is not a term the Legislature used in enacting sections 614.022 and 614.023 or the predecessor statute.[72]  Although the term was added to section 614.022's caption during codification,[73] "the title of the section carries no weight, as a heading 'does not limit or expand the meaning of a statute.'"[74]

Second, while a "person making a complaint" and a "complainant" are similar terms, for purposes of determining whether statutory language shares a technical meaning, the relevant statutory comparators are "person making the complaint," as used in section 614.022, and "complaint by a complainant" in section 143.123.  When stated thusly, the fallacy of the syllogism as a basis for discerning intent to cabin the plain meaning of section 614.022's language is more readily apparent.

We further observe that section 143.123 appears to contemplate investigation of complaints made by persons other than "complainants" and to use the special definition of that term to differentiate between processes that apply depending on the source of the information under investigation.  Section 143.123 requires disclosure of "the name of each person who complained"

_____

[71] TEX. GOV'T CODE § 311.011(b).

[72] *See* Act of May 16, 1969, 61st Leg., R.S., ch. 407, § 1, 1969 Tex. Gen. Laws 1333, 1333-34, *amended and codified by* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, secs. 614.022-.023, 1993 Tex. Gen. Laws 583, 679 (amended 2005) (current version at TEX. GOV'T CODE §§ 614.022-.023).

[73] *See* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, sec. 614.022, 1993 Tex. Gen. Laws 583, 679 (amended 2005) (current version at TEX. GOV'T CODE § 614.022).

[74] *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 809 (Tex. 2010) (quoting TEX. GOV'T CODE § 311.024).

25

concerning the matters under investigation; prohibits interrogation of a fire fighter or police officer "based on [an unverified] complaint by a complainant who is not a peace officer"; permits interrogation based on "events or conduct reported by a witness who is not a complainant without disclosing the name of the witness"; permits interrogation by anonymous complainants if "the departmental employee receiving the anonymous complaint" swears and certifies that the complaint was anonymous; and requires disclosure of "the name of each complaining party."[75] A "person making a complaint" within the meaning of Chapter 614.022 could reasonably encompass all of these categories of individuals.

Finally, we note that there is a distinct difference between consulting other statutory definitions to determine common meaning and engrafting a special definition from one statute to circumscribe the plain meaning of a term used in another.[76] While doing so may be appropriate when a word with an established meaning is employed in a subsequently enacted statute of similar purpose, that is not the case here; the special definition in section 143.123 was enacted more than

---

[75] TEX. LOC. GOV'T CODE § 143.123(e), (f).

[76] In point of fact, when the Legislature specially defines the term "complainant," the special definition usually accords with the common meaning of the term and is not restricted to an alleged "victim." *Compare* TEX. GOV'T CODE, Title 2, Subtitle G App. A-1 § 1.06(F) (defined as "the person, firm, corporation or other entity, including the Chief Disciplinary Counsel initiating a Complaint or Inquiry"); TEX. GOV'T CODE §§ 437.401 (meaning "an individual who brings an action or proceeding under this subchapter"), 571.002 (meaning "an individual who files a sworn complaint with the commission"); TEX. INS. CODE §§ 843.002(5) (meaning "an enrollee, or a physician, provider, or other person designated to act on behalf of an enrollee, who files a complaint"), 1305.004 (meaning "a person who files a complaint under this chapter," including an employee, employer, health-care provider, or another person designated to act on behalf of an employee); TEX. LABOR CODE § 21.002(4) (meaning "an individual who brings an action or proceeding under this chapter"; *and* TEX. PROP. CODE § 301.003(2), (12) (meaning "a person, including the commission, that files a complaint under Section 301.081," and "person" defined to include an individual and various artificial beings), *with* TEX. GOV'T CODE § 552.3215(a)(1) (meaning "a person who claims to be the victim of a violation of this chapter") *and* TEX. LOC. GOV'T CODE §§ 143.123(a)(1), .312(b)(1) (meaning "a person claiming to be the victim of misconduct by a fire fighter or police officer").

26

fifteen years later,[77] making an inference of legislative intent to similarly constrain the meaning of the words in section 614.022 much less compelling.[78]

While it is clear that the main objective of sections 614.022 and 614.023 is to provide procedural safeguards for covered employees, it seems inconceivable that the Legislature intended to hamstring employers from investigating and disciplining errant employees charged with safekeeping the public trust.  No reasonable construction of the statute can support reading it as requiring employers to turn a deaf ear and a blind eye to allegations of misconduct serious enough to warrant termination of employment unless "the victim of the misconduct" is both willing and able to sign a complaint.[79]

Thus, we are not persuaded that resorting to extra-textual sources informs the statutory analysis, and we do not agree that the special definition of "complainant" in section 143.123(a)(1) can be adopted to restrict the plain meaning of the words the Legislature enacted in Chapter 614, Subchapter B.  Doing so would add limitations neither found in nor supported by the text and is unnecessary to avoid an absurd consequence.

---

[77] Act of May 27, 1985, 69th Leg., R.S., ch. 958, § 19, sec. 30, 1985 Tex. Gen. Laws 3227, 3240 (amended 1987) (amended 1989) (current version at Tex. Loc. Gov't Code § 143.123(a)(1)).

[78] *But see Guthery v. Taylor*, 112 S.W.3d 715, 722 n.7 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (applying section 143.123's definition of "complainant"—despite its status as a subsequently enacted statute—based on "the relationship between the two statutes").

[79] The absurdity is manifest in a scenario involving an allegation of excessive force where the victim is incapacitated, but a witness to the event steps forward to make a complaint.

## E. Application

Considering the plain meaning of the language in Chapter 614, Subchapter B, we conclude the disciplinary process culminating in Staff's removal from his position as a deputy sheriff for the Colorado County Sheriff's Office complied with both the letter and the spirit of the law.

The statute requires a signed complaint setting forth the allegations of misconduct.[80]  That requirement was satisfied by the Deficiency Notice Lt. Neisner signed.  While the statute does not set forth required contents for a "complaint" or establish particular standards for specificity, the information detailed in the Deficiency Notice serves the "overarching statutory purposes"[81] of (1) reducing the risk that adverse employment actions will be based on unsubstantiated complaints and (2) ensuring the affected employee receives sufficient information to enable him to defend against the allegations.[82]

The statute also requires that the signed complaint be presented to the employee within a reasonable time and precludes imposition of any discipline "unless a copy of the signed complaint is given to the officer or employee."[83]  Staff received the signed Deficiency Notice within two days of the initiation of an internal investigation.  He suffered no disciplinary action until the complaint was in hand.  Unlike sections 614.023(a) and (c), there is neither an express nor implied temporal

---

[80] TEX. GOV'T CODE §§ 614.022, .023(a).

[81] *Lang v. Tex. Dep't of Pub. Safety*, No. 03-12-00497-CV, 2014 WL 3562738, at *9 (Tex. App.—Austin July 18, 2014, no pet.) (mem. op.).

[82] *See Turner v. Perry*, 278 S.W.3d 806, 823-24 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (vague or anonymous complaints lacking names, dates, and other details prevented the officer from investigating the allegations and defending against them).

[83] TEX. GOV'T CODE § 614.023(a), (b).

28

limitation on presentment of a complaint in relation to the imposition of discipline.  Nothing in the statute requires the complaint to be served before discipline is imposed or precludes disciplinary action while an investigation is ongoing.  Nor does the statute require an opportunity to be heard before disciplinary action may be taken.  In some situations, presentment of a complaint contemporaneously with the imposition of discipline may not be "within a reasonable time after the complaint is filed," but that is not the case here.

The statute further requires that indefinite suspension or termination from employment based on a complaint's subject matter be deferred until an investigation uncovers some evidence to prove the allegations.[84]  However, once again, there is no requirement that the affected employee be offered a pre-termination opportunity to be heard or participate in the investigative process.  Moreover, despite the Deficiency Notice's statement that Staff's employment was terminated "effective immediately," his termination was actually conditioned on his right to appeal within a time certain. In substantive effect, "immediate termination" was equivalent to suspension during the investigation—which the statute does not prohibit.  Thereafter, Staff had ample opportunity to marshal any evidence bearing on the matters identified in the Deficiency Notice and to defend himself before Sheriff Wied—the head of the law-enforcement agency—"considered" the complaint and upheld the termination decision.[85]

---

[84] *Id.* § 614.023(c).

[85] *Id.* § 614.022.

### III. Conclusion

Under Chapter 614, Subchapter B, a disciplinary action may follow a signed complaint, or information that has been reported may prompt an internal investigation that generates a report sufficient to satisfy the statutory requirements. In this case, Staff had sufficient information to allow him to investigate the allegations and ample opportunity to defend himself and bring forth additional facts or circumstances for Sheriff Wied's consideration. Accordingly, assuming Chapter 614, Subchapter B applies under the circumstances, we hold Sheriff Wied complied with the statute. We therefore reverse the court of appeals' judgment and render judgment in Sheriff Wied's favor.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:** February 3, 2017

30

2

No. 14-02-00743-CV
Court of Appeals of Texas, Fourteenth District, Houston

# Guthery v. Taylor

112 S.W.3d 715 (Tex. App. 2003)
Decided Jul 17, 2003

No. 14-02-00743-CV

Opinion filed July 17, 2003.

Appeal from the 268th District Court, Fort Bend County, Texas, Trial Court Cause No. 115,869.

Reversed and Rendered.

716 *716

Gregory B. Cagle, League City, for appellants.

Meredith Rene Riede, Sugar Land, for appellees.

Panel consists of Justices ANDERSON, SEYMORE, and GUZMAN.

717 *717

## OPINION

JOHN S. ANDERSON, Justice.

This police disciplinary case requires the court to construe Texas Government Code sections 614.022 and 614.023, which apply only to those police officers who are not covered by a civil service statute. Tex. Gov't Code Ann. § 614.021(3) (Vernon 1994). Section 614.022 provides: "To be considered by the head of a . . . police department, the complaint must be: (1) in writing; and (2) signed by the person making the complaint." Tex. Gov't Code Ann. § 614.022 (Vernon 1994). Section 614.023 provides:

(a) A copy of a signed complaint against a law enforcement officer, fire fighter, or police officer shall be given to the officer or employee within a reasonable time after the complaint is filed.

(b) Disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee.

Tex. Gov't Code Ann. § 614.023 (Vernon 1994).

The case arises because appellant, Kerry Guthery, received a disciplinary suspension based on an investigation stemming from a citizen's complaint. Guthery subsequently filed suit in the trial court, seeking a declaratory judgment delineating his rights under sections 614.022 and 614.023. Guthery also sought injunctive relief, or, alternatively, a writ of mandamus to compel Sugar Land Police Chief Earnest B. Taylor, in his capacity of Chief of Police, and the City of Sugar Land, appellees, to withdraw the disciplinary action taken against him and to restore his back pay and benefits.

The parties filed cross-motions for summary judgment, urging competing interpretations of the statutes at issue. The trial court granted appellees' motion and denied Guthery's motion, ordering that he take nothing.

We reverse the summary judgment in favor of appellees and render judgment in favor of Guthery (1) declaring appellees' actions violated sections

614.022 and 614.023, and (2) ordering appellees to withdraw the disciplinary action and restore Guthery's back pay and benefits.

## FACTUAL AND PROCEDURAL BACKGROUND [1] *718

718

[1] We derive the factual background not only from the summary judgment proof presented, but also from the pleadings. We recognize facts asserted in the pleadings are not competent summary judgment evidence . *See Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 661 (Tex. 1995). Nevertheless, both parties concede the facts are undisputed and refer to factual assertions alleged in the pleadings.

On January 29, 2000, Guthery, a police officer, decided to disperse a party at 55 Ashbury Park. He knocked on the front door with his flashlight, damaging the door. On February 2, 2000, Mrs. Scraper, a citizen, telephoned the Sugar Land Police Department ("SLPD"), complaining an officer had damaged her door on January 29, 2000.

SLPD determined Guthery was the only officer at Scraper's house that night. After reviewing the incident report, Guthery's supervisor made notes on the report and returned it to Guthery to obtain more information about how the damage might have occurred.[2] Guthery responded to the questions that day in an email.[3] After receiving Guthery's answers, the SLPD's Professional Standards Division investigated the incident to determine whether any state laws or city policies had been violated. The investigation included meeting with Mrs. Scraper at her residence and photographing the damage. Additionally, Guthery supplied a written statement of the incident and was asked to provide a copy of the audio tape from that night. Guthery, however, was unable to provide an audio tape from that night because he failed to record this particular event.

[2] The note read as follows: "Homeowner claims her front door was damaged. Kids claim Officer Guthery beat on the front door, but they wouldn't answer. Inference is being made that the Officer damaged the door. Lt. Lund wants the following answered." Lund wanted to know how Guthery knew the defendant's cup contained beer, why Guthery was at the residence, how the defendant was identified, and what happened when Guthery went to the front door. When Officer Webster presented the report to Guthery, Guthery was told there was no complaint, but the questions needed to be answered for clarification purposes.

[3] Prior to answering the questions, Guthery asserted his *Garrity* rights against compelled self-incrimination. *See Garrity v. New Jersey*, 385 U.S. 493, 500, 87 S.Ct. 616, 620 (1967) (holding Fourteenth Amendment protection against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office and prohibition extends to all, regardless of whether they are policemen or members of body politic).

The SLPD Professional Standards Division investigated the complaint as possible violations of state criminal law and city policies. During the investigation, there were multiple allegations against Guthery. The investigators ultimately concluded Guthery caused damage to Scraper's front door when he struck it several times with his flashlight, denting the wood surface and causing a panel of glass to break. The investigators also determined that Guthery failed to activate his tape recorder during the incident.

Police Chief Taylor reviewed the investigation report, and Guthery received a "Notice of Proposed Disciplinary Action" ("Notice") on April 7, 2000. Chief Taylor's proposal to suspend Guthery for three days was included in the Notice, and Taylor requested Guthery to appear at a

Guthery v. Taylor    112 S.W.3d 715 (Tex. App. 2003)

meeting on April 13, 2000, in order to respond.[4]

719  *719  The Notice was signed by Chief Taylor. After meeting with Guthery on April 13, 2000, Chief Taylor approved the suspension. Guthery appealed the disciplinary action to the City's Employees Board of Appeals, and after a hearing, the board reduced the suspension to one day.

> [4] The suspension was to run from April 27, 2000, through April 29, 2000. The rules Guthery was accused of violating were "SLPD Rule #1 Conduct Unbecoming to a Police Employee" and "Chapter 30, Directive 2 — Recording Devices." Guthery was to be suspended for causing damage to Mrs. Scraper's front door and for failing to tape record the incident on January 29, 2000.

Guthery then filed a petition for writ of mandamus, asking the trial court to direct Chief Taylor to withdraw the disciplinary action because it was imposed in violation of Texas Government Code section 614.023(b), and to award Guthery full back pay and benefits lost as a result of the disciplinary action. Additionally, Guthery sought to recover all attorney's fees incurred. Guthery subsequently amended his original petition and added the City of Sugar Land as a defendant. Further, he sought relief under the Uniform Declaratory Judgments Act, asking the court to declare the acts of the defendants to be in violation of the Texas Government Code.[5]

> [5] See Tex. Civ. Prac. Rem. Code Ann. '§ 37.001-.011 (Vernon 1997 Supp. 2003).

Guthery and appellees filed cross-motions for summary judgment, setting forth competing constructions of Texas Government Code sections 614.022 and 614.023. Guthery argued appellees' actions violated section 614.022 because there was no written and signed complaint from Mrs. Scraper, the owner of the residence where the damage occurred. Guthery also argued appellees could not rely on the Notice because it included the discipline to be imposed, was delivered after

conclusion of the investigation and was not signed by Scraper. Guthery noted, "at the conclusion of the investigation would not be 'within a reasonable time after the complaint is filed' as required by [section 614.023(a)]."

Appellees' motion for summary judgment was based on the following: (1) compliance with sections 614.022 and 614.023 is not mandatory; and, in the alternative, (2) the procedures taken by appellees did comply with these sections. Appellees urged the court to find that Mrs. Scraper's signature was not statutorily required on the complaint, and that Chief Taylor's signature was sufficient because he was the officer who charged Guthery and proposed disciplinary action. Appellees also argued the Notice given to Guthery at the completion of the investigation and before any disciplinary actions were taken was proper.

Following a hearing, the trial court granted appellees' motion and denied Guthery's motion. The trial court ordered Guthery take nothing on his claims and causes of action against appellees.

## ISSUES PRESENTED

Guthery raises two issues on appeal. In issue one, he argues, "A copy of the signed complaint was not given to [Guthery] within a reasonable time after it was filed and before disciplinary action was taken and the determination of 'reasonable' is for the fact finder." In issue two, he argues, Chief Taylor "considered a complaint against a police officer . . . which was not in writing and signed by the complainant as required by [Texas Government Code section 614.022]." As part of issue two, Guthery reiterates his argument that Chief Taylor did not provide him with a copy of the signed complaint within a reasonable time.

In response to issue one, appellees argue that determination of "reasonable time" is a question of law. In response to issue two, they argue the "complaint" that must be signed in the present case was the "Notice of Proposed Disciplinary Action," not Scraper's complaint. They also argue the complaint was given to Guthery "within *720 a

720 reasonable time" because it was given to him before Chief Taylor took disciplinary action against Guthery.

Thus, the controlling issue is one of statutory construction: under the facts of this case, does the Notice suffice as the "complaint" which must be signed and in writing, and given to the officer "within a reasonable time," under Texas Government Code sections 614.022 and 614.023? Only if we determine the Notice suffices as the "complaint" must we decide whether the Notice was given to Guthery "within a reasonable time." Accordingly, after setting forth the standard of review, we begin by addressing Guthery's issue two.

## STANDARD OF REVIEW AND NATURE OF JUDGMENT SOUGHT

The parties do not dispute the relevant facts. Therefore, this is a proper case for summary judgment. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). When, as here, parties file cross-motions for summary judgment, each party bears the burden of establishing it is entitled to judgment as a matter of law. *Id.* When the trial court grants one party's motion for summary judgment and denies the other, we review both motions; and, if we find the trial court erred, we will reverse and render the judgment the trial court should have rendered. *Id.*; *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex. 1999). Generally, matters of statutory construction are legal questions, subject to de novo review. *See State Dep't of Highways Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002).

An original proceeding for a writ of mandamus initiated in the trial court is a civil action subject to trial and appeal on substantive law issues and rules of procedure as any other civil suit. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 792 n. 1 (Tex. 1991). A writ of mandamus will issue to compel a public official to perform a ministerial

act. *Id.* at 793. An act is ministerial when the law clearly delineates the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion. *Id.* A writ of mandamus will not issue to compel a public official to perform an act which involves an exercise of discretion. *Id.* There is one exception: a writ of mandamus may issue in a proper case to correct a clear abuse of discretion by a public official. *Id.* When a statute delineates the act an official is to perform with sufficient certainty so nothing is left to the exercise of discretion, the case involves only performance of a ministerial act, and is subject to mandamus. *See id.*

Under the Uniform Declaratory Judgments Act, a person whose rights are affected by a statute may have a court determine any question of construction arising under the statute and may obtain a declaration of his rights under the same. *See* Tex. Civ. Prac. Rem. Code Ann. '§ 37.002, .004 (Vernon 1997). We review declaratory judgments under the same standards as other judgments and decrees. *See* Tex. Civ. Prac. Rem. Code Ann. § 37.010 (Vernon 1997); *City of Galveston v. Giles*, 902 S.W.2d 167, 170 (Tex.App.-Houston [1st Dist.] 1995, no writ). We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *Giles*, 902 S.W.2d at 170. Here, because the trial court resolved the case on competing motions for summary judgment in the face of undisputed facts, we review the propriety of the trial court's denial of the declaratory judgment under the same standards we apply to the summary judgment. *See Unauthorized Practice of Law Comm. v. Jansen*, 816 S.W.2d 813, 814 721 (Tex.App.-Houston *721 [14th Dist.] 1991, writ denied) (case submitted on agreed stipulation of facts and motion for summary judgment).

## DISCUSSION

Texas Government Code section 614.022 provides, "To be considered by the head of a . . . police department, the complaint must be: (1) in writing; and (2) signed by the person making the

Guthery v. Taylor   112 S.W.3d 715 (Tex. App. 2003)

complaint." Tex. Gov't Code Ann. § 614.022 (Vernon 1994). It is undisputed that Chief Taylor is the head of the SLPD. It is undisputed that the investigation of Guthery arose from an incident brought to the attention of the Sugar Land Police when a citizen called to report damage to her door. It is also undisputed that the citizen never provided SLPD or Chief Taylor with a written and signed complaint. Finally, it is undisputed that Chief Taylor signed the "Notice of Proposed Discipline," which Guthery received on April 7, 2000, six days before he met with Chief Taylor. We must therefore decide whether, as appellees argue, the Notice suffices as the written and signed complaint required by section 614.022.

A court's objective in construing a statute is to determine and give effect to the legislature's intent. *Tex-Air Helicopters, Inc. v. Galveston County Appraisal Review Bd.*, 76 S.W.3d 575, 581 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). We presume the legislature intended the plain meaning of the words it used. *Id.* If possible, we must ascertain the legislature's intent from the language of the statute and not resort to extraneous matters for an intent not stated in the statute. *Id.* When interpreting a statute, we consider the entire act, its nature and object, and the consequence that would follow from each construction. *Id.* We must reject any statutory interpretation that defeats the legislative purpose. *Id.* In interpreting the provisions of the Government Code in question, we may look to the Code Construction Act for assistance. *See* Tex. Gov't Code Ann. § 1.002 (Vernon 1988) (stating Code Construction Act applies to construction of each provision of the Code, except as otherwise provided); Tex. Gov't Code Ann. § 311.002 (Vernon 1998) (stating chapter applies to each code enacted by 60th or subsequent legislature as part of state's continuing statutory revision program).

In interpreting the statute, we may consider the title or caption. *See* Tex. Gov't Code Ann. § 311.023(7) (Vernon 1998); *Southwestern Bell Tel. Co. v. Houston Indep. Sch. Dist.*, 397 S.W.2d 419,

421-22 (Tex. 1965). Section 614.022 is captioned: "Complaint to be in Writing and Signed by Complainant." Tex. Gov't Code Ann. § 614.022 (Vernon 1994).[6] Neither complaint nor complainant is defined in sections 614.022 and 614.023.

> [6] This caption was added when the statute was codified in the Government Code. *See* Act of May 4, 1993, 73rd Leg., R.S., ch. 268, § 1, sec. 614.022, 1993 Tex. Gen. Laws 583, 679.

Nevertheless, "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." Tex. Gov't Code Ann. § 311.011(b) (Vernon 1998); *see Deltenre v. State*, 808 S.W.2d 97, 101 (Tex.Crim.App. 1991) (concluding the term "peace officer" has acquired technical meaning by legislative definition). Moreover, when construing a statutory word or phrase, a court may take into consideration the meaning of the same or similar language used elsewhere in the act or in another act of similar nature. *L. M.-Surco Mfg., Inc. v. Winn Tile Co.*, 580 S.W.2d 920, 926 (Tex.Civ.App.-Tyler 1979, writ dism'd). When the same or a similar term is used in the same connection in different statutes, the term will be given the same meaning in one as in the other, unless there is something to indicate that a different meaning was intended. *Id.*[7]

> [7] The court continued, "This rule applies with particular force where the meaning of a word as used in one act is clear or has been judicially determined, and the same word is subsequently used in another act pertaining to the same subject." *L. M.-Surco Mfg., Inc. v. Winn Tile Co.*, 580 S.W.2d 920, 926 (Tex.Civ.App.-Tyler 1979, writ dism'd). As discussed below, we find the definition of "complainant" in a subsequently enacted statute. Nevertheless,

Guthery v. Taylor    112 S.W.3d 715 (Tex. App. 2003)

given the relationship between the two statutes, we apply the rule stated in *L. M.-Surco.*

"Complainant" is defined in Local Government Code Section 143.123, as "a person claiming to be the victim of misconduct by a fire fighter or police officer." Tex. Loc. Gov't Code Ann. § 143.123(a)(1) (Vernon 1999).[8] Section 143.123(f) also provides in relevant part:

> [8] Texas Local Government Code section 143.312(b)(1) also contains the identical definition of "complainant." Tex. Loc. Gov't Code Ann. § 143.312(b)(1) (Vernon 1999). The subchapter of which the section is a part applies to municipalities with populations of 460,000 or more that operate under a city manager form of government. Tex. Loc. Gov't Code Ann. § 143.301 (Vernon 1999).

> *An investigator may not conduct an interrogation of a fire fighter or police officer based on a complaint by a complainant who is not a peace officer unless the complainant verifies the complaint in writing before a public officer who is authorized by law to take statements under oath.* In an investigation authorized under this subsection, an investigator may interrogate a fire fighter or police officer about events or conduct reported by a witness who is not a complainant without disclosing the name of the witness. Not later than the 48th hour before the hour on which an investigator begins to interrogate a fire fighter or police officer regarding an allegation based on a complaint, affidavit, or statement, the investigator shall give the fire fighter or police officer a copy of the affidavit, complaint, or statement. An interrogation may be based on a complaint from an anonymous complainant if the departmental employee receiving the anonymous complaint certifies in writing, under oath, that the complaint was anonymous. This subsection does not apply to an on-the-scene investigation that occurs immediately after an incident being investigated if the limitations of this subsection would unreasonably hinder the essential purpose of the investigation or interrogation. If the limitation would hinder the investigation or interrogation, the fire fighter or police officer under investigation must be furnished, as soon as practicable, a written statement of the nature of the investigation, the name of each complaining party, and the complaint, affidavit, or statement.

Tex. Loc. Gov't Code Ann. § 143.123(f) (Vernon 1999) (emphasis added).[9]

9  Texas Local Government Code section 143.312(g) contains a similar provision prohibiting interrogation "based on a complaint by a complainant who is not a fire fighter or a police officer unless the complainant verifies the complaint in writing before a public officer who is authorized by law to take statements under oath." Tex. Loc. Gov't Code Ann. § 143.312(g) (Vernon 1999).

Thus, like Government Code section 614.022, Local Government Code section 143.123(f) contains a requirement that the complaint be in writing. A signature is implicitly required because the complaint must be verified. The two sections appear to be of similar nature. *723

Section 143.123 is part of the Fire Fighter and Police Officer Civil Service Act ("CSA"). *See Klinger v. City of San Angelo*, 902 S.W.2d 669, 671 (Tex.App.-Austin 1995, writ denied). The purpose of the CSA is to "to secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants." Tex. Loc. Gov't Code Ann. § 143.001(a) (Vernon 1999); *Klinger*, 902 S.W.2d at 671. The purpose underlying Local Government Code section 142.123 is not inconsistent with the apparent purpose of Government Code section 614.022.

Finally, the legislative history of section 614.022 suggests the similar nature of the two sections. Section 614.022 was created in 1969, and originated as Senate Bill 148. *See* Act of May 16, 1969, 61st Leg., R.S., ch. 407, § 1, 1969 Tex. Gen. Laws 1333. As originally drafted, Senate Bill 148 was intended to amend Texas Revised Civil Statutes Article 1269m, the Firemen's and Policemen's Civil Service Act, *i.e.*, the precursor of present Local Government Code section 142.123. *See* House Comm. on Urban Affairs, Bill Analysis, Tex. S.B. 148, 61st Leg., R.S. (1969); *see also* original bill draft in Bill File, Tex. S.B. 148, 61st Leg., R.S. (1969).[10] The Senate

Committee on Jurisprudence, however, reported the bill adversely and substituted its own version, which did not contain any reference to Article 1269m or the Firemen's and Policemen's Civil Service Act. *See* "Committee Substitute for Senate Bill 148" in Bill File, Tex. S.B. 148. The Committee Substitute version was passed and ultimately became Texas Revised Civil Statute Article 6252-20, which was subsequently codified in Texas Government Code sections 614.021-614.023. *See* Act of May 4, 1993, 73rd Leg., R.S., ch. 268, § 1, secs. 614.021-.023, 1993 Tex. Gen. Laws 583, 678-79.

10  The Bill File is available from the Texas State Library and Archives Commission.

Given what appears to be the similar nature of sections 141.123 and 614.022, and considering the definition of "complainant" in section 141.123(a)(1) as the "victim of misconduct," we construe the "complaint" that must be signed and in writing to be the victim's complaint, in this case Mrs. Scraper's. Thus, the "Notice of Proposed Disciplinary Action" provided by Chief Taylor to Guthery does not suffice as the "complaint" which must be signed and in writing, and given to the officer "within a reasonable time," as required by Texas Government Code sections 614.022 and 614.023.[11]

11  We also note that adopting appellees' interpretation would result in an officer's being disciplined based on another officer's hearsay characterization of a citizen's complaint, as opposed to the actual content of the complaint itself.

In support of their position the Notice fulfilled the requirements of sections 614.022 and 614.023., appellees direct our attention to *Fudge v. Haggar*, 621 S.W.2d 196 (Tex.Civ.App.-Texarkana 1981, writ ref'd n.r.e.). In *Fudge*, the appellate court concluded a letter of complaint provided to a police officer at the conclusion of an internal affairs investigation satisfied the requirements of

Guthery v. Taylor    112 S.W.3d 715 (Tex. App. 2003)

former Texas Revised Civil Statute 6252-20 even though the investigation was prompted by a call from outside the police department. *Id.* at 198.

*Fudge*, however, is distinguishable. In *Fudge*, a member of the Dallas County Sheriff's Department called a Dallas Police Department internal affairs investigator to complain that Fudge, a patrolman with the Dallas Police Department, had engaged in improper conduct in obtaining the release of a prisoner. *Id.* at 197. James, the *724 internal affairs investigator, took affidavits from two pretrial release employees and made a special written report to the chief of police concerning the improper conduct. *Id.* James also wrote an official letter of complaint, presented it to Fudge, and showed Fudge the affidavits. *Id.* Fudge then complied with an instruction to prepare a written response to the complaint. *Id.* Subsequently, the chief of police discharged Fudge for the conduct that was the subject of the letter of complaint. *Id.*

The appellate court reasoned:

In this case we deal with an internally generated complaint. Even though the initial information received by the police department was external, coming from the Dallas County Sheriff's Office, the entire investigation began within the police department. Officer James testified that on October 19, 1979, he gave Fudge his letter of complaint and affidavits concerning all three incidents. He directed Fudge to respond to the specific acts of misconduct and Fudge did so on that day. The appellees argue that Fudge was aware of, understood, and replied to each of the charges of misconduct for which he was discharged and that the complaint against him was valid. We agree. The complaint was in writing, signed by the person making the complaint, and presented to the affected officer, Robert Fudge, prior to the taking of disciplinary action. It was in compliance with Tex. Rev. Civ. Stat. Ann. art. 6252-20. . .

*Id.* at 198.

Thus, the *Fudge* court addressed a situation in which an internal investigation produced a complaint supported by signed affidavits, and the court held such a complaint complied with the precursor statute to sections 614.022 and 614.023. In the present case, however, we only have Chief Taylor's Notice to Guthery, charging Guthery with the violations. Guthery was not presented with an affidavit from Mrs. Scraper or anything signed by her. There is nothing to indicate Guthery was presented with affidavits from any other witnesses or presented with the internal affairs report. On the facts before us, we conclude the procedure in the present case was not in compliance with Texas Government Code sections 614.022 and 614.023. We now turn to the appropriate remedy.

Section 614.023(b) provides that "[d]isciplinary action *may not* be taken against the officer . . . unless a copy of the signed complaint is given to

casetext

Guthery v. Taylor     112 S.W.3d 715 (Tex. App. 2003)

the officer or employee." Tex. Gov't Code Ann. § 614.023(b) (Vernon 1994) (emphasis added). "'May not' imposes a prohibition and is synonymous with 'shall not.'" Tex. Gov't Code Ann. § 311.016(5) (Vernon 1998). Under the undisputed facts of this case, we hold Chief Taylor had a clear duty to refrain from taking disciplinary action against Guthery when the only "complaint" offered to satisfy sections 614.022 and 614.023 was the Chief's "Notice of Proposed Disciplinary Action."

We sustain Guthery's issue two. Because we sustain Guthery's issue two, it is not necessary to address issue one, by which he argues he did not receive the "complaint" within a reasonable time.

## CONCLUSION

We reverse the summary judgment in favor of appellees and render judgment in favor of Guthery (1) declaring appellees' actions violated Texas Government Code sections 614.022 and 614.023, and (2) ordering appellees withdraw the disciplinary action and restore Guthery's back pay and benefits.

725  *725

 casetext

## Affidavit of TSU Employee Ada Rattiff

**Harris County, Texas**

Before me, the undersigned authority, appeared TSU Employee Ada Rattiff, and after being sworn on her oath stated the following:

My name is Ada Rattiff. I am over 21 years of age, have never been convicted of any crime and I have personal knowledge of all facts and information provided in this affidavit. All of the following information was personally observed and/or learned by me while serving as an Executive Assistant in the TSU Police Department and/or during my work as an Executive Assistant for the Texas Southern University Police Chief. All of the following facts and information are true and correct.

I have had the honor of working under the leadership of TSU Chief of Police Mary Young throughout my tenure at TSU. I have observed her commitment and professionalism to carry out her job duties in the police department and for the university, its officers, students and the entire college community. Without hesitation she carries out her duties with honor, integrity and in a professional manner.

I have been an Executive Assistant at Texas Southern University since March 2021. Among my roles as an Executive Assistant at TSU are the following: I am responsible for, and it is among my regular job duties to record police department supervisor meetings attended by the chief and the command staff, to prepare accurate supervisor meeting minutes, and receive and log compensation requests. Specifically, I currently receive the compensation requests which are initially received by the timekeeper with the weekly payroll report of any staff that has overtime. The document, which is to be signed by the staff member's supervisor and lieutenant at this point, is then typically brought over to Captain Etheridge, and then to me to review and log in a compensation database. If the form required an additional signature, then it is submitted up the chain of command until the three signatures are obtained. Additionally, I am the custodian of the minutes transcribed and the recordings captured during the Police Department Supervisor meetings. I also maintain my computer-typed notes taken during those meetings. After careful review of all of my notes and all prior Supervisor Agenda Meetings from late 2021 to the present, as well as in addition to my own personal recollections, no Police Department Supervisor Meetings took place in January 2022. In fact, my recordings show that December 15, 2021 was the last supervisor meeting of the 2021 calendar year, and the next supervisor meeting did not take place until February 8, 2022. When I was previously asked by Ms. Darlene Brown about such a supervisor meeting occurring in January 2022, I personally advised her that I cross referenced my notes, emails, and available calendar and did not have a meeting notated. I state again, under oath, to my knowledge no Police Department Supervisor Meeting at which Chief Young would have been present occurred and I do not have any records documenting any such meeting. Thus, anyone claiming there was any such meeting in January 2022 where Chief Young supposedly instructed them to disregard or "bump up" overtime pay is not telling the truth. No such thing happened.

Too, as an attendee at the Supervisor Meetings, I have maintained copies of the minutes from the meetings that occurred in calendar year 2022.   There is not a single entry in any of the meeting minutes or in any of my personal notes referencing any instructions or comments by Chief Young instructed, suggesting, or otherwise commenting in any way upon overtime pay being paid for time that was not worked.  Every time I have heard Chief Young discuss pay she had required everyone to be accurate in their reporting of their time.  Anyone saying that she gave unlawful instructions to fudge or lie about their overtime during the supervisor meeting is simply not telling the truth.  I should know because I actually review and log the compensation requests, and I have never seen her deviate from her requirement of honesty and truthfulness when dealing with pay.

I have never seen TSU Chief Mary Young do anything I would regard as dishonorable or dishonest.  Specifically, as to overtime pay, she insisted everyone follow the regulations of the Department and TSU policy and required supervisor sign-off on overtime pay requests before she would approve the pay request.  In fact, multiple supervisors have to sign off on overtime pay requests verifying the accuracy of same well before I would even submit the request to Chief Young for authorization.  She was the last in the Department to sign off on those pay requests— not the first.  Overtime pay requests were reviewed and verified by multiple supervisors and command staff personnel, including the TSU Police Department's timekeeper and the officers' immediate supervisors, before finally being approved by the Chief.  The overtime pay documents compiled by the timekeeper are submitted to the Captain for approval and review before being sent to the Chief.  The overtime pay documents are compiled by the timekeeper from the weekly payroll reports, which are signed by the supervisor of each staff member.  The weekly payroll reports are reviewed by the timekeeper and lieutenant.  In the lieutenant's absence, a sergeant was appointed to assist.

Throughout my tenure as Executive Assistant for Chief Young, I have never heard, seen, or otherwise witnessed Chief Young instruct any officer or TSU personnel to violate TSU policies, including any policies dealing with reporting, requesting, recording, or approving overtime pay.   To the contrary, she has consistently instructed officers to follow all institutional, local and legal policies and regulations when it comes to overtime pay.

Further Affiant Sayeth Not.



Ada Rattiff, TSU Employee

NOTARY PUBLIC

SWORN AND SUBSCRIBED before me this 22nd day of December 2022.

ROSALIE A CEDILLO
Notary ID #12333343
My Commission Expires
September 16, 2025

**4**

**Affidavit of Texas Peace Officer Dereka Lawton**

**Harris County, Texas**

Before me, the undersigned authority, appeared Texas Peace Officer Dereka Lawton and after being sworn on her oath stated the following:

My name is Dereka Lawton.  I am over 21 years of age, have never been convicted of any crime and I have personal knowledge of all the facts and information provided in this affidavit.  All of the following information was personally observed and/or learned by me while serving as a licensed Texas peace officer and/or during my work as a licensed police officer in this state.  All of the following facts and information are true and correct.

I am a licensed Texas peace officer and have held such license in this state for 4 years.  I previously worked several years at TSU as a police officer.   I left TSU in October 2022  for a different job with the University of Houston police department.  I have provided police services in the areas of investigations and patrol.

During the time I worked at TSU, Chief Mary Young lead the police department.  I found her to be the type of police officer I hope to be one day.  She was professional with all her officers and required all of us to carry out our duties in conformity with respect and the highest ethics.  I observed her provide clear orders and instructions to officers about being honest, serving with integrity and respect for others.  She stressed to us that we were servants of the people and not their lords.

Regarding overtime pay, Chief Young was clear that if you did not work overtime you were not to be paid for overtime.  And, to make sure overtime was properly accounted for Chief Young required officers to obtain approval for overtime, submit their request for overtime pay to their direct supervisors for verification and sign off, and only then would the pay request be forwarded up the chain of command.  I thought this was a very good system and is the same type of system I presently work under at the University of Houston.

Sometime earlier in 2022, was contacted by Ms. Yolanda Edmonds in the TSU HR department to answer questions about how the police department was being run.  Another person was on the call but I do not presently remember that person's name.  Ms. Edmonds asked me about whether I observed a hostile work environment, favoritism, and how was the morale in the police department.  I truthfully answered that I had not experienced any hostile work environment, favoritism or low morale in the department.  Instead, I was pleased with the way things were being handled in the department.  I told her I would give my experience an 8 out of 10 score in terms of satisfaction. It seemed to me, however, that Ms. Edmonds was not interested in learning about the positive things occurring in the department but was more interested in trying to "dig up dirt" on Chief Young.  Because I had nothing negative to say, it seemed Ms. Edmonds lost interest and the conversation ended.  As a police officer, I can say that Ms. Edmonds' questioning was more result-oriented as opposed to trying to learn true facts. And, the result she appeared to trying to get was some negative statements or information against Chief Young.  If this is the way she conducted other interviews, I would discredit anything Ms. Edmonds reports about Chief Young.

It is curious to me that Chief Young is coming under attack at or about the same time she corrected TSU Sergeant Barnett for getting too close to TSU President Lesia Crumpton.  It is no

secret in the police department that Sergeant Barnett was President Crumpton's favorite officer to be with.  In fact, their relationship was so cozy Sergeant Barnett often bragged about President Crumpton giving him expensive personal gifts.  On one occasion, he bragged about President Crumpton buying him a pair of expensive leather boots, along with an expensive leather belt.  Barnett was wearing these items at the time he was bragging about them and was showing them off to me and others.  He also bragged about buying and giving President Crumpton an expensive gun that he had customized with rhinestones for her.  He also talked about how she relied on him for personal errands in the middle of the night and would call to have him drive her around.  Barnett referred to President Crumpton as "that girl is my heart" and once when President Crumpton almost slipped and hurt herself—only to have been rescued from certain injury by another TSU officer—President Crumpton remarked **"If I had hurt myself Sergeant Barnett would have killed you!"**   I don't know the extent of the relationship between Sergeant Barnett and President Crumpton but as a police officer the interactions between these two was too close and intimate at times.

Another peculiar interaction between Sergeant Barnett and President Crumpton's office occurred just after Chief Young warned Sergeant Barnett that he was "in too deep" with the president.  Chief Young instructed Barnett to create more distance from the president in order to ensure both he and the president were kept in the best light and professionalism.  Barnett threatened to resign his position because of Chief Young's admonition, but according to Barnett, he received a call from President Crumpton's chief of staff, Eddy Harper (sp?), who told him President Crumpton "needed him" and that they would create a job for him in Hanna Hall.  Such a position would have had Barnett worker closer with the president.  However, because Barnett was not qualified for the position he did not accept the position.  After Chief Young tried to correct Barnett's conduct with President Crumpton is the first time I heard Barnett gripping about Chief Young and stating he "couldn't stand the chief."  He only made this statement to me after Chief Young tried to correct his interactions with President Crumpton.

Chief Young is a very good police chief!  If anyone is complaining about her I would strongly recommend looking at the relationship between Sergeant Barnett and the president's office as being a probable source of those complaints.

Further Affiant Sayeth Not.

**Officer Dereka Lawton, Texas Peace Officer**

SWORN AND SCRIBED this _7th_ day of ~~November 2022.~~
December 2022

NOTARY SEAL

ROSALIE A CEDILLO
Notary ID #12333343
My Commission Expires
September 16, 2025

5

**Affidavit of TSU Corporal Brian Auzenne**

**Harris County, Texas**

Before me, the undersigned authority, appeared TSU Police Corporal Brian Auzenne and after being sworn on his oath stated the following:

My name is Brian Auzenne. I am over 21 years of age, have never been convicted of any crime and I have personal knowledge of all the facts and information provided in this affidavit. All of the following information was personally observed and/or learned by me while serving as a licensed Texas peace officer and/or during my work as a licensed police officer in this state. All of the following facts and information are true and correct.

I have been a licensed Texas peace officer for the last twenty (20) years to the present. I previously worked for the Harris County Sheriff's Office for 14 years as a patrol deputy and a Field Training Officer. I later worked for a private entity for a couple years and eventually began working for TSU in the Department of Public Safety 2 years ago. I presently hold the rank of Corporal in the Department.

I have had the honor of working under the leadership of TSU Chief of Police Mary Young for all the years I have worked at TSU. I have observed her commitment to her job, the officers, students and this entire community. Without hesitation she carries out her duties with honor, integrity and in a classy way. She is very popular in the community and other police officers throughout the city recognize her for what she is—a true professional and dedicated law enforcement officer.

I have never seen TSU Chief Mary Young do anything I would regard as dishonorable, under-handed, or dishonest. To the contrary, she demands the best from all of us. She stresses the importance of police officers being servants of the people and honest in all our dealings. If anyone is claiming she has done anything dishonest or dishonorable that would be completely contrary to everything I have heard and seen her do throughout our department for over the last two years. And, regarding overtime pay, she follows the regulations of the Department and requires sign off on overtime pay requests to be approved by the requisite supervisors before being submitted up the chain of command. I am honored to serve the community with her.

Further Affiant Sayeth Not.

_____
Corporal Brian Auzenne, TSU

_____
NOTARY PUBLIC

SWORN AND SUBSCRIBED before me this 29th day of November 2022.

ROSALIE A CEDILLO
Notary ID #12333343
My Commission Expires
September 16, 2025

6

Affidavit of Lieutenant Fred Brown

Harris County, Texas

      Before me, the undersigned authority, appeared Lieutenant Fred Brown and after being sworn on his oath stated the following:

      My name is Fred Brown.  I am over 21 years of age, have never been convicted of any crime and I have personal knowledge of all the facts and information provided in this affidavit.  All of the following information was personally observed or personally learned by me while serving as a licensed Texas peace officer and/or during my work as a police officer in this state.  All of the following facts and information are true and correct.

      I have been a licensed Texas peace officer for 34 years.  I am still a licensed peace officer in this state.  During the last three plus decades as a police officer, I have served in multiple law enforcement positions.  Presently, I serve as a Lieutenant with the Harris County Constable Precinct One Office.  I also previously served as a Deputy Chief of Police in the Texas Southern University Police Department where I had the opportunity to work directly with and under the leadership of TSU Chief of Police Mary Young.  I also have worked as a law enforcement officer for numerous years with the Harris County Sheriff's Office.  In these various positions I have observed and been involved in managing many aspects of law enforcement, including administrative operations of the various law enforcement agencies.  I have also assisted in writing and implementing police policies in these agencies

      During my work with the TSU police department, I personally worked with Chief Young on a regular basis.  I observed her orders to TSU police officers regarding overtime pay.  She was clear that officers were required to keep track of and document their overtime.  I never heard her tell anyone or any officer they could get paid overtime pay even if they did not work.  To the contrary, she repeatedly instructed officers that they would not be paid overtime if they did not perform the work.  If anyone is claiming Chief Young in any way tolerated officers or police personnel being paid overtime pay without working that would be contrary to everything I know about her and observed when dealing with Chief Young.  Chief Young is one of the most professional police officers I have ever had the honor of working with.  She is competent, honest and professional.

      I know that Chief Young smartly scaled back TSU President Crumpton's police detail when it was observed that one of more of the officers were being asked to work outside their scope of employment.  After this action, Chief Young came under investigation for an anonymous complaint relating to overtime.

      Chief Young is an exemplary police chief.  TSU is fortunate to have this unquestionably competent, caring and honorable person serving and protecting its campus community.

Further Affiant Sayeth Not.

SWORN AND SUBSCRIBED this 22nd day of November 2022.

NOTARY SEAL

Lieutenant Fred Brown, Pct. 1

CYNTHIA GONGORA
Notary Public-State of Texas
Notary ID #131682972
Commission Exp. AUG. 14, 2026

*Affidavit of*
*Fred Brown*

1

7

## Affidavit of Sergeant Brian McCray

**Harris County, Texas**

Before me, the undersigned authority, appeared Sergeant Brian McCray and after being sworn on his oath stated the following:

My name is Brian McCray. I am over 21 years of age, have never been convicted of any crime and I have personal knowledge of all the facts and information provided in this affidavit. All of the following information was personally observed and/or learned by me while serving as a licensed Texas peace officer and/or during my work as a licensed police officer in this state. All of the following facts and information are true and correct.

I have been a licensed Texas peace officer for 25 years. I am presently a licensed Texas peace officer. For approximately 20 years, I worked for the City of Houston Police Department in various positions, including as an officer and sergeant in the Southwest area of Houston. I started working for the Texas Southern University Police Department in 2018 and promoted to Sergeant 2020 to the present. While working at TSU, I have personally worked with Chief Mary Young on a regular and daily basis. I have observed her professionalism, integrity, honor and allegiance to the rule of law and ethics. She is a truly superb police chief. She is popular with the students, effective with staff and administrators, and local community leaders respect her. I can say with full confidence that Chief Mary Young is the type of police officer others should want and follow.

I personally observed Chief Young ordering her officers to properly account for all their overtime. No one was paid or to be paid if they did not work overtime. Chief Young followed accepted protocol to ensure that the direct supervisor of each officer applying for overtime pay verify and sign off on any request for overtime pay. Her overtime policies and practices are the same as are used in all well-run police departments—i.e., officers working overtime had to perform the work, have their immediate supervisors verify and sign off on the work having been performed, and only then sending the pay request up to command staff for final sign off. I have never known Chief Young to deviate from this recognized practice.

I am also impressed with Chief Young's work ethic. She usually outworks everyone else in the department and stays later than others to ensure all needed work is done. Most impressive is her practice of not requesting anyone to do anything she would not do herself. I have seen her "get her hands dirty" even though she is the Chief. Nothing is beneath her to do if she thought it needed to be done.

If anyone is complaining about Chief Young or her police and administrative practices then it is either because they do not understand policing, have a personal agenda, or have not paid attention to how hard this competent police chief works every day to improve the TSU police department. Chief Young only wants the best for TSU, and I have seen in real time how she works to try to make that happen.

I am proud to be a TSU sergeant because of Chief Mary Young.

Further Affiant Not.

Sgt. Brian McCray, TSU

NOTARY SEAL

SWORN AND SUBSCRIBED this 22 day of November 2022.

HEIDI M ROSE
NOTARY PUBLIC STATE OF TEXAS
MY COMM. EXP. 8/5/2023
NOTARY ID 13211621-7

8

**Affidavit of TSU Police Officer Bea Philips**

**Harris County, Texas**

Before me, the undersigned authority, appeared TSU Police Officer Bea Philips and after being sworn on her oath stated the following:

My name is Bea Philips. I am over 21 years of age, have never been convicted of any crime and I have personal knowledge of all the facts and information provided in this affidavit. All of the following information was personally observed and/or learned by me while serving as a licensed Texas peace officer and/or during my work as a licensed police officer in this state. All of the following facts and information are true and correct.

I am a licensed Texas peace officer working in the TSU Police Department. I have worked as an officer with TSU since 2018. During that period I have worked closely with TSU Police Chief Mary Young and have had many opportunities to work with her. I have been lucky to learn from Chief Young and to watch how she handles her business as a police officer and chief. I have seen her use her own money to pay for items and services that should have been paid for by TSU. I have asked her why she was using her own money to pay for items for TSU and she would just respond that the items/services were needed and it did not hurt her too much to help out by using her own funds.

I work on the security detail that accompanies TSU President Crumpton and have observed some actions of a member of the detail that seemed irregular to me. Chief Young stressed that we remain professional when working on the detail and advised us that our conduct had been seen by others who were not pleased with some of the actions they observed. She was clear that we were there to provide security services and not to run personal errands, hold umbrellas, or carry purses. I remember another member of our detail, Sergeant Barnett, commenting he was going to resign from the police department after Chief Young instructed our detail to maintain a professional relationship when handling our security duties. Barnett later withdrew his resignation.

I have never heard Chief Young tell anyone that they could be paid for overtime without working. To the contrary, she insisted that supervisors monitor and verify overtime pay requests before sending them up the chain of command for payment. I like working in the TSU police department under Chief Young's leadership. I am not aware of any hostile work environment or favoritism being present or practiced in the department.

I learned there was some type of investigation into Chief Young and that a number of officers were asked to attend a meeting(s) relating to that investigation. I was confused when no one asked me to be interviewed even though I was one who worked very closely with the Chief. Also, I have learned that there are several other officers and sergeants who were not questioned for the investigation. Whatever the reason was for not including us in the interview process it is hard to imagine how a complete "investigation" could have been performed when so many police officers with knowledge of how the department runs were not interviewed or questioned.

Chief Young is a great police chief and is well-respected by officers, students, staff, administrators, local officials and in the community. It is great to have her as our police chief.

Further Affiant Sayeth Not.

TSU Peace Officer Bea Philips

NOTARY SEAL



SWORN AND SUBCRIBED this 22nd day of November 2022.

ROSALIE A CEDILLO
Notary ID #12333343
My Commission Expires
September 16, 2025

**9**

**Affidavit of TSU Police Sergeant Ivan Jones (1)**

**Harris County, Texas**

Before me, the undersigned authority, appeared TSU Police Sergeant Ivan Jones and after being sworn on his oath stated the following:

My name is Ivan Jones. I am over 21 years of age, have never been convicted of any crime and I have personal knowledge of all the facts and information provided in this affidavit. All of the following information was personally observed and/or learned by me while serving as a licensed Texas peace officer and/or during my work as a licensed police officer in this state. All of the following facts and information are true and correct.

I have been a licensed Texas peace officer since 1992—i.e., over 30 years. I previously worked as a police officer with the City of Houston Police Department between 1992 to 2016. At the City of Houston I performed police work in different areas, including patrol, community services, and narcotics. In November 2018, I began working as a police officer in the TSU police department and was later promoted to the rank of Sergeant in October 2020. At the time of my hire at TSU the police department was being lead by Police Chief Mary Young.

When I joined the TSU police department, I recognized that Chief Young was doing a commendable job of trying to update the department and make it run more professionally. Chief Young sent the Property Room Officers to training to help them understand the importance of how to return property to the owners, store evidence and how to dispose of property correctly. She tasked Sgt Brian McCray and me with coordinating a two week training session for the entire department that included security officers and administrative personnel in 2019. The training included report writing, sexual assault training, crash report training, robbery investigation, police radio etiquette, courtroom testimony, mental health/cit training and more items that benefited the department. At the time, some of the TSU officers did not have uniforms to wear and were wearing their street clothes to work. Chief Young busily went about the work of addressing the problem. And, the department was struggling to retain its quality officers. Ultimately, Chief Young was able to get new uniforms for the Police Officers, Dispatchers and Security Officers.

Chief Young was committed to making a change to improve the way the department was run. And, She was able to get raises for officers and improve timely payments for the officers. She also was able to get the department on a bi-monthly pay period as opposed to monthly pay that many Police Officers and Security Officers complained about.

I have known Chief Young for over 40 years. She is a quality person. She leads the department honorably, with integrity and respect for others, and is unquestionably competent as a law enforcement officer. TSU is lucky to have her as its police chief.

I personally have heard Chief Young instruct officers and supervisors about paid overtime. Because of personnel shortages in the department she offered officers extra time before and/or after their shifts to work to make sure we had enough police coverage to keep the campus and community safe. Because such time was over and above the time officers were assigned to cover their shifts they necessarily would qualify for time and a half pay if they worked extra hours. Had there been more officers to cover normal shifts this practice would not have been needed. Chief Young is to be commended for holding things together with the limited officers she has to protect the university community.

Chief Young is a compassionate, caring and competent police chief.   Anyone accusing her of wrongdoing is not speaking truthfully about this great professional.

Further Affiant Sayeth Not.

Sergeant Ivan Jones, TSU

NOTARY PUBLIC

SWORN AND SUBSCRIBED before me this _22nd_ day of November 2022.



ROSALIE A CEDILLO
Notary ID #12333343
My Commission Expires
September 16, 2025

**Affidavit of TSU Officer Bethany Cantu**

**Harris County, Texas**

Before me, the undersigned authority, appeared TSU Police Officer Bethany Cantu and after being sworn on her oath stated the following:

"My name is Bethany Cantu. I am over 21 years of age, have never been convicted of any crime and I have personal knowledge of all the facts and information provided in this affidavit. All of the following information was personally observed and/or learned by me while serving as a licensed Texas peace officer and/or during my work as a licensed police officer at Texas Southern University in this state. All of the following facts and information are true and correct.

I have been a licensed Texas peace officer for the last 4 years to the present. Each of these years I have served as a peace officer at Texas Southern University.

I have had the honor of working under the leadership of TSU Chief of Police Mary Young for all the years I have worked at TSU. I have observed her commitment to her job, the officers, students and this entire college community. Without hesitation she carries out her duties with honor, integrity and in a professional manner.

I have never seen TSU Chief Mary Young do anything I would regard as dishonorable, under-handed, or dishonest. To the contrary, she demands the best from all of us. Regarding overtime pay, she follows the regulations of the Department and requires sign off on overtime pay requests to be approved by the requisite supervisors before being submitted up the chain of command. I am honored to serve the community with her.

Attached to this affidavit is a handgun that Sergeant Darren Barnett asked me to place jewels on. He told me he had purchased the handgun as a gift for TSU President Lesia Crumpton-Young and he wanted it "blinged out." I agreed to decorate the gun for him and he paid me to do the work. Barnett also told me that President Crumpton-Young had bought him a cowboy hat and boots.

Further Affiant Sayeth Not."



_____
Officer Bethany Cantu, TSU

NOTARY PUBLIC

SWORN AND SUBSCRIBED before me this 15th day of December 2022.

ROSALIE A CEDILLO
Notary ID #12333343
My Commission Expires
September 16, 2025

**11**

# OVERTIME REPORTING GUIDELINES PURSUANT TO TSU POLICY

**CHIEF**

**SUPERVISOR**

**OFFICER**

After being provided with the hours by the supervisors, all overtime hours must be authorized in writing by the dean/director of the department.

(TSU MAPPS Policy 02.02.03)

**Chief Young**

Unless there is an obvious inaccuracy on a weekly payroll report for which an explanation or correction is needed, officers who have worked overtime cannot be denied compensation. It is the department's stance to compensate questionable overtime and then an inquiry shall be conducted. If the overtime worked is questionable, supervisors shall approve it, note their concerns, submit it, and then conduct an inquiry. (TSU DPS Policy 200.33)

Supervisors shall ensure that times on overtime on the weekly payroll report do not overlap with the officer's regular shift. (TSU DPS Policy 200.33)

Overtime on the weekly payroll report shall not be approved if it contains obvious inaccuracies. The weekly payroll report shall be returned to the officer for correction or explanation to the satisfaction of the supervisor (TSU DPS Policy 200.33)

Supervisors shall ensure travel time gaps and requests for overtime and travel compensation are reasonable, proper, and in accordance with the rules for overtime compensation as outlined in this and other applicable Department Manual Policies and related materials (TSU DPS Policy 200.33)

Supervisors are responsible for monitoring the work hours of employees under their supervision and for ensuring that information reported on timesheets is complete and accurate.
(TSU MAPPS Policy 02.02.03)

Employees requesting overtime compensation shall document the overtime on their weekly payroll report and submit to their supervisor. (TSU DPS Policy 200.33)

Non-exempt employees shall report all additional work beyond the standard forty (40) hour work week on the appropriate dates, on the Time and Effort Report, using the correct time reporting category. Shift differential and overtime codes shall be reported, where appropriate. All requests for payment of event pay or authorized overtime pay must be submitted on the appropriate Texas Southern University forms (TSU MAPPS Policy 02.02.03)

Chief of Police

Supervisor

Officer Requesting Overtime

12

# OVERTIME SEQUENCE PURSUANT TO TIMEKEEPER



1. Employee completes their weekly WPR and turns the paperwork into their supervisor.

2. Supervisor verifies and sign paperwork.

3. All paperwork is turned into the Lieutenant for verification.

4. The weekly paperwork is turned into timekeeper.

5. Timekeeper processes the paperwork.

6. Timekeeper meets with Lieutenant, Lieutenant verifies paperwork, and it is then turned into command staff.

7. Command staff verifies paperwork in which two signatures are required.

8. Once approved paperwork is ready to be turned into Human Resources. Human Resources verifies paperwork is signed and turns paperwork into payroll to process payment.

9. Once payroll process the overtime; the payroll department email the report to the timekeeper.

10. The timekeeper will update the report with any changes and email it back to payroll.

11. The timekeeper and the payroll representative will have a Teams meeting to verify changes before paperwork is sent to the bank.

Action taken by Chief of Police

Action taken by Other TSU Personnel

13



| | |
|---|---|
| **From:** | Brown, Darlene |
| **Sent:** | Friday, July 15, 2022 12:55 PM |
| **To:** | Scruggs, Chandra |
| **Subject:** | Time Reporting Summary |

Good Afternoon

Can you conform that I have summarized the time keeping process accurately. If I have not, please make the necessary corrections.

**Normal Overtime Time Reporting Practices:**

- Compensation Request Form completed by respective officer required and submitted to Executive Assistant.
- Department of Events Services Supplemental Salary Sign-In Sheet signed by respective officer required and submitted to Time Keeper.
- Application for Special Event or Overtime Pay for Non Exempt Employees Prepared by Time Keeper. Immediate supervisor approval required for all overtime.

**FTO Time Reporting Practice:**

- Compensation Request Form <u>not</u> required or completed.
- Department of Events Services Supplemental Salary Sign-In Sheet <u>not</u> required or completed. Application for Special Event or Overtime Pay for Non Exempt Employees Prepared by Time Keeper. Immediate supervisor approves time sheets.

**Lead Officer Time Reporting Practice:**

- Compensation Request Form <u>not</u> required or completed.
- Department of Events Services Supplemental Salary Sign-In Sheet <u>not</u> required or completed. Application for Special Event or Overtime Pay for Non Exempt Employees Prepared by Time Keeper.
- Immediate supervisor does not always approve this section of time sheets but Command Section does.

**Darlene Brown, MBA, CIA, CFE**
*Acting Chief Audit Executive*
Texas Southern University
Department of Internal Audit & Assurance Services
Cell 281.740.0017
Hannah Hall, Suite 105E
3100 Cleburne Street, Houston, Texas 77004
www.tsu.edu

## Scruggs, Chandra

| | |
|---|---|
| **From:** | Scruggs, Chandra |
| **Sent:** | Tuesday, July 19, 2022 2:35 PM |
| **To:** | Brown, Darlene |
| **Subject:** | RE: Time Reporting Summary - Please respond |

Noted below are my changes; sorry for the delay.

Thanks!
## Chandra Scruggs
*Office Administrator*

 TEXAS SOUTHERN UNIVERSITY
**Division of Administration & Finance**
*Buildings & Grounds*

Office: 713-313-1808   |   Fax: 713-313-7531   |   Email: chandra.scruggs@tsu.edu
General Service Building, Suite 216
3443 Blodgett
Houston, Texas 77004
University website:  www.tsu.edu

**From:** Brown, Darlene <Darlene.Brown@tsu.edu>
**Sent:** Tuesday, July 19, 2022 7:06 AM
**To:** Scruggs, Chandra <Chandra.Scruggs@tsu.edu>
**Subject:** Re: Time Reporting Summary - Please respond

Good Morning Chandra
Please read the summary below and let me know if I have captured the process correctly.

## Darlene Brown, MBA, CIA, CFE
*Acting Chief Audit Executive*
Texas Southern University
Department of Internal Audit & Assurance Services
Cell 281.740.0017
Hannah Hall, Suite 105E
3100 Cleburne Street, Houston, Texas 77004
www.tsu.edu

**From:** Brown, Darlene
**Sent:** Friday, July 15, 2022 12:55 PM
**To:** Scruggs, Chandra <Chandra.Scruggs@tsu.edu>
**Subject:** Time Reporting Summary

Good Afternoon

1

Can you conform that I have summarized the time keeping process accurately. If I have not, please make the necessary corrections.

**Normal Overtime Time Reporting Practices:**
- Compensation Request Form completed by respective officer required and submitted to Executive Assistant. N/A this process is handle by the DPS department and not submitted to the timekeeper.
- All overtime or special event pay are recorded on their WPRs.
- Department of Events Services Supplemental Salary Sign-In Sheet signed by respective officer required and submitted to Time Keeper.
- Application for Special Event or Overtime Pay for Non Exempt Employees Prepared by Time Keeper. Application for special event or overtime pay for non-exempt employees is prepared by the supervisor of the event, signed by the employees, and turned into the timekeeper to be process. Yes, request for payment is submitted by timekeeper.
- Immediate supervisor approval required for overtime.
- Once the timekeeper has completed the paperwork for overtime, the timekeeper submits the paperwork to the command staff for approval in which two signatures are required.

**FTO Time Reporting Practice:**

- Compensation Request Form not required or completed. N/A this process is handle by the DPS department and not submitted to the timekeeper.
- All overtime or special event pay are recorded on their WPRs.
- Department of Events Services Supplemental Salary Sign-In Sheet not required or completed.
- Application for Special Event or Overtime Pay for Non Exempt Employees Prepared by Time Keeper. Yes, request for payment is submitted by timekeeper.
- Immediate supervisor approves time sheets.
- Once the timekeeper has completed the paperwork for overtime, the timekeeper submits the paperwork to the command staff for approval in which two signatures are required.

**Lead Officer Time Reporting Practice:**

- Compensation Request Form not required or completed. N/A this process is handle by the DPS department and not submitted to the timekeeper.
- All overtime or special event pay are recorded on their WPRs.
- Department of Events Services Supplemental Salary Sign-In Sheet not is required or and completed. Application for Special Event or Overtime Pay for Non Exempt Employees Prepared by Time Keeper. Yes, request for payment is submitted by timekeeper.
- Immediate supervisor does not always approve this section of time sheets but Command Section Staff does.
- Once the timekeeper has completed the paperwork for overtime, the timekeeper submits the paperwork to the command staff for approval in which two signatures are required.

Darlene Brown, MBA, CIA, CFE
*Acting Chief Audit Executive*
Texas Southern University
Department of Internal Audit & Assurance Services
Cell 281.740.0017
Hannah Hall, Suite 105E
3100 Cleburne Street, Houston, Texas 77004

2

www tsu edu

14

**Young, Mary**

| | |
|---|---|
| **From:** | Broussard, Shannon |
| **Sent:** | Tuesday, October 24, 2017 2:34 PM |
| **To:** | James, Shelia K.; Young, Mary; Brown, Frederick; Whitfield, Angelle; White, Maria A; Robinson-Davis, Chrystal; Shaw, Kimberly; Ellis, Kala; Sims, Kavaris E. |
| **Cc:** | Moffett, Raphael; Huewitt, Kenneth R.; McClelland, Ashlee |
| **Subject:** | RE: Personnel Fee Sheet |
| **Attachments:** | New Event Personnel Fee Sheet.pdf |

I'm Sorry.

I attached the wrong fee sheet.

Here is the New Sheet!

Mr. Shannon D. Broussard, MPA
Director of Facilities and Special Events
Division of Student Services
Texas Southern University
3100 Cleburne Street
Houston, Texas 77004
Tel: (713) 313-7759 | Fax: (713) 313-1054

**From:** Broussard, Shannon
**Sent:** Tuesday, October 24, 2017 1:54 PM
**To:** James, Shelia K. <James_SK@tsu.edu>; Young, Mary <Mary.Young@TSU.EDU>; Brown, Frederick <Frederick.Brown@TSU.EDU>; Whitfield, Angelle <whitfieldaa@TSU.EDU>; White, Maria A <White_MA@TSU.EDU>; Robinson-Davis, Chrystal <robinsondavisca@TSU.EDU>; Shaw, Kimberly <shawk@TSU.EDU>; 'Kala Ellis (ellisks@TSU.EDU)' <ellisks@TSU.EDU>; Sims, Kavaris E. <Kavaris.Sims@TSU.EDU>
**Cc:** Moffett, Raphael <Raphael.Moffett@TSU.EDU>; Huewitt, Kenneth R. <Kenneth.Huewitt@TSU.EDU>; McClelland, Ashlee <ashlee.mcclelland@tsu.edu>
**Subject:** Personnel Fee Sheet

Attached is the **"New Approve Personnel Fee Sheet"**.

Please attach a copy to all time sheets submitted to the Budget and/or HR office.

If you have any questions please feel free to contact me directly.

Mr. Shannon D. Broussard, MPA
Director of Facilities and Special Events
Division of Student Services
Texas Southern University
3100 Cleburne Street

Houston, Texas 77004
Tel: (713) 313-7759 | Fax: (713) 313-1054

## Texas Southern University Event Services Personnel Fee Sheet

| Event Personnel | Hourly Rate (Internal & External) Minimum of 4 Hours |
|---|---|
| **Admin, Technical Support** | |
| Event Manager | $30.00 |
| House Manager | $30.00 |
| Sound/Lighting Tech. | $40.00 |
| HVAC Tech. | $25.00 |
| Electrician | $25.00 |
| First Aid or Nurse (Event Cost) | $100.00/Day |
| Ticket Seller | $15.50 |
| Ticket Taker | $15.50 |
| Ushers | $15.50 |
| Safety Officer | $25.00 |
| **Security & Traffic Control** | |
| Police Officer | $40.00 |
| Police Special Occasion* | $50.00 |
| Police Commander / Supervisor | $50.00 |
| Police Commander / Supervisor* | $60.00 |
| Police Dispatcher | $25.00 |
| Traffic / Security Officer | $25.00 |
| Traffic / Security Officer Special Occasion* | $30.00 |
| **Building and Grounds Support Services** | |
| Custodian | $15.50 |
| Custodian (Food Event) | $18.50 |
| Custodial Supervisor | $21.50 |
| Grounds Keeper | $18.50 |
| Tiger Labor Force | $18.50 |
| Bus / Tram Driver | $20.00 |
| Clock Operator | $15.50 |
| Referee | $20.00 |
| Lifeguard | $25.00 |

*Special Occasion Events such as any major events held in the city. Requires Approval from Vice-President.

15

APPLICATION FOR SPECIAL EVENT OR OVERTIME PAY FOR NON EXEMPT EMPLOYEES

Use one form per funding source

| Reason (Overtime Reason or Event Name) | | **DPS Special Rate** | | Prepared By/Extension: | Chandra Scruggs 713-313-1808 | | Name/Ext | | | | |
|---|---|---|---|---|---|---|---|---|---|---|

Date (s) (example 1: 08/01/11 or example 2: 08/01/11-08/08/11)   HOMECOMING 2022   10/23/2022 - 10/31/2022

Funding Source   1000 62000 7021 70

Fund #/Org #/Prog #/Acct #

| Employee Last Name | Employee First Name | Empl T # | Job Duties Performed for Event | Use if Multiple Dates Worked | OT (1.5) | OTP (1.0) | SUP/ SUP1 | Overtime (OT) Hrly Rate | Straight Rate/Special Rate | Total Amt | # hrs worked X Rate |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alley | Joe | T00751907 | A TASTE OF CULTURE | 10/24/2022 | | | 4 | | 25.000000 | 100.000000 | |
| Allison | Marcus | T00454199 | HOMECOMING CONCERT | 10/25/2022 | | | 3 | | 25.000000 | 75.000000 | |
| Allison | Marcus | T00454199 | STEP SHOW/EQUIPMENT PICKUP AND SETUP | 10/28/2022 | | | 5 | | 25.000000 | 125.000000 | |
| Allison | Marcus | T00454199 | HC PARADE/GAME | 10/29/2022 | | | 15 | | 25.000000 | 375.000000 | |
| Armitige | Cheryl | T00044396 | A TASTE OF CULTURE | 10/24/2022 | | | 4 | | 25.000000 | 100.000000 | |
| Armitije | Cheryl | T00044396 | HC PARADE/GAME | 10/29/2022 | | | 2 | | 25.000000 | 50.000000 | |
| Auzenne | Brian | T00732908 | STEP SHOW | 10/28/2022 | | | 4.5 | | 60.000000 | 270.000000 | |
| Auzenne | Brian | T00732908 | HC PARADE/TAILGATE | 10/29/2022 | | | 14 | | 60.000000 | 840.000000 | |
| Barnes | Amos | T00732907 | AUX. CORDWARS | 10/27/2022 | | | 4 | | 25.000000 | 100.000000 | |
| Barnes | Amos | T00732907 | STEP SHOW | 10/28/2022 | | | 5 | | 25.000000 | 125.000000 | |
| Barnes | Amos | T00732907 | HC PARADE/GAME | 10/29/2022 | | | 10 | | 25.000000 | 250.000000 | |
| Barnett | Darren | T00633934 | HOMECOMING CONCERT | 10/25/2022 | | | 3 | | 60.000000 | 180.000000 | |
| Barnett | Darren | T00633934 | HC TAILGATING/GAME | 10/29/2022 | | | 7 | | 60.000000 | 420.000000 | |
| Bell | Crystal | T00206962 | HC PARADE/TAILGATE | 10/29/2022 | | | 4 | | 50.000000 | 200.000000 | |
| Bello | Abideen | T00151471 | MIDNIGHT BREAKFAST | 10/23/2022 | | | 2 | | 50.000000 | 100.000000 | |
| Bello | Abideen | T00151471 | HC PARADE/TAILGATE | 10/29/2022 | | | 2 | | 50.000000 | 100.000000 | |
| Boakyi-Dankwa | Kofi | T00579878 | MIDNIGHT BREAKFAST | 10/23/2022 | | | 2 | | 50.000000 | 50.000000 | |
| Boakyi-Dankwa | Kofi | T00579878 | YARD FEST | 10/28/2022 | | | 6 | | 25.000000 | 150.000000 | |
| Brown | Bobby | T00760800 | HC/PARADE/TAILGATE | 10/29/2022 | | | 9.5 | | 60.000000 | 670.000000 | |
| Campbell | Tiffany | T00760801 | AUX. CORDWARS | 10/27/2022 | | | 4 | | 50.000000 | 200.000000 | |
| Campbell | Tiffany | T00760801 | HC PARADE/TAILGATE | 10/29/2022 | | | 5.5 | | 50.000000 | 275.000000 | |
| Cantu | Bethany | T00689339 | MIDNIGHT BREAKFAST | 10/23/2022 | | | 2 | | 50.000000 | 100.000000 | |
| Cantu | Bethany | T00689339 | STEP SHOW | 10/28/2022 | | | 4.5 | | 50.000000 | 225.000000 | |
| Cantu | Bethany | T00689339 | HC PARADE/TAILGATE | 10/29/2022 | | | 14 | | 50.000000 | 700.000000 | |
| Castillo | Daniel | T00607421 | A TASTE OF CULTURE | 10/24/2022 | | | 4 | | 50.000000 | 200.000000 | |
| Castillo | Daniel | T00607421 | HC PARADE/TAILGATE | 10/29/2022 | | | 5 | | 50.000000 | 250.000000 | |
| Collette | Michael | T00695839 | STEP SHOW | 10/28/2022 | | | 4.5 | | 50.000000 | 225.000000 | |
| Collette | Michael | T00695839 | HC PARADE/TAILGATE | 10/29/2022 | | | 5 | | 50.000000 | 250.000000 | |
| Davis | Leroy | T00713807 | HC PARADE/GAME | 10/29/2022 | | | 7 | | 25.000000 | 175.000000 | |
| Dorsey | Tina | T00432367 | HOMECOMING CASH COLLECTORS | 10/29/2022 | | | 13.5 | | 25.000000 | 337.500000 | |
| Edwards | Michael | T00243701 | STEP SHOW | 10/28/2022 | | | 4 | | 25.000000 | 100.000000 | |
| Edwards | Michael | T00243701 | HC PARADE/GAME | 10/29/2022 | | | 2 | | 25.000000 | 50.000000 | |
| Garcia | Geneva | T00437240 | HOMECOMING CASH COLLECTORS | 10/29/2022 | | | 11 | | 25.000000 | 275.000000 | |
| Halle | Joe | T00751915 | HC PARADE/GAME | 10/29/2022 | | | 10 | | 25.000000 | 250.000000 | |
| Hall | Daziett | T00698508 | HOMECOMING CONCERT | 10/25/2022 | | | 3 | | 25.000000 | 75.000000 | |
| Hall | Daziett | T00698508 | HOMECOMING CASH COLLECTORS | 10/29/2022 | | | 3 | | 25.000000 | 75.000000 | |
| Hicks | Claudine | T00076364 | YARD FEST | 10/28/2022 | | | 6 | | 25.000000 | 150.000000 | |
| Hicks | Claudine | T00076364 | HC PARADE/GAME | 10/29/2022 | | | 10 | | 25.000000 | 250.000000 | |

| Last | First | ID | Event | Date | | Rating | | | Value |
|---|---|---|---|---|---|---|---|---|---|
| Hilliard | John | T00668727 | MIDNIGHT BREAKFAST | 10/23/2022 | | 5 | | | 25.000000 | 125.000000 |
| Hilliard | John | T00668727 | AUX. CORDWARS | 10/27/2022 | | 4 | | | 25.000000 | 100.000000 |
| Hilliard | John | T00668727 | STEP SHOW | 10/28/2022 | | 5 | | | 25.000000 | 125.000000 |
| Hilliard | John | T00668727 | HC PARADE/GAME | 10/29/2022 | | 8 | | | 25.000000 | 200.000000 |
| Hinton | Ashley | T00750802 | HOMECOMING CONCERT | 10/26/2022 | | 2 | | | 50.000000 | 100.000000 |
| Hinton | Ashley | T00750802 | HC PARADE/TAILGATE | 10/29/2022 | | 3.5 | | | 50.000000 | 175.000000 |
| Holiday | John | T00631146 | HOMECOMING CONCERT | 10/25/2022 | | 3 | | | 25.000000 | 75.000000 |
| Holiday | John | T00631146 | STEP SHOW | 10/28/2022 | | 4 | | | 25.000000 | 100.000000 |
| Holiday | John | T00631146 | HC PARADE/GAME | 10/29/2022 | | 6 | | | 25.000000 | 150.000000 |
| Hopkins | Jon | T00622950 | AUX. CORDWARS | 10/27/2022 | | 4 | | | 25.000000 | 100.000000 |
| Hopkins | Jon | T00622950 | HC PARADE/GAME | 10/29/2022 | | 10 | | | 25.000000 | 250.000000 |
| Howard | James | T00140367 | HOMECOMING CONCERT | 10/25/2022 | | 3 | | | 60.000000 | 180.000000 |
| Howard | James | T00140367 | HC PARADE/TAILGATE | 10/29/2022 | | 10 | | | 60.000000 | 600.000000 |
| Huseman | Ben | T00392037 | STEP SHOW | 10/28/2022 | | 4.5 | | | 50.000000 | 225.000000 |
| Huseman | Ben | T00392037 | HC PARADE/TAILGATE | 10/29/2022 | | 5 | | | 50.000000 | 250.000000 |
| Isaac | Norris | T00731926 | HOMECOMING CONCERT | 10/26/2022 | | 4 | | | 50.000000 | 200.000000 |
| Isaac | Norris | T00731926 | HC PARADE/TAILGATE | 10/29/2022 | | 6.5 | | | 50.000000 | 325.000000 |
| John-Miller | Curtis | T00633935 | MIDNIGHT BREAKFAST | 10/23/2022 | | 5 | | | 60.000000 | 300.000000 |
| John-Miller | Curtis | T00633935 | HC PARADE/TAILGATE | 10/29/2022 | | 6 | | | 60.000000 | 360.000000 |
| Jones | Chevon | T00668257 | HOMECOMING CONCERT | 10/26/2022 | | 3 | | | 50.000000 | 150.000000 |
| Jones | Ivan | T00672984 | TAILGATE SETUP | 10/28/2022 | | 5 | | | 60.000000 | 300.000000 |
| Jones | Ivan | T00672984 | HC PARADE/GAME/CONCERT | 10/29/2022 | | 14.5 | | | 60.000000 | 870.000000 |
| Jones | Tyrone | T00220458 | HOMECOMING CONCERT | 10/25/2022 | | 3 | | | 50.000000 | 150.000000 |
| Jones | Tyrone | T00220458 | AUX. CORDWARS | 10/27/2022 | | 4 | | | 50.000000 | 200.000000 |
| Jones | Tyrone | T00220458 | HC PARADE/TAILGATE | 10/29/2022 | | 4 | | | 50.000000 | 200.000000 |
| LaBlanc | Maurice | T00570620 | HOMECOMING CONCERT | 10/26/2022 | | 3 | | | 25.000000 | 75.000000 |
| LaBlanc | Maurice | T00570620 | HC PARADE/GAME | 10/29/2022 | | 10 | | | 25.000000 | 250.000000 |
| Martin | Ronald | T00367907 | AUX. CORDWARS | 10/27/2022 | | 4 | | | 50.000000 | 200.000000 |
| Martin | Ronald | T00367907 | OVERNIGHT TAILGATING | 10/28/2022 | | 8 | | | 50.000000 | 400.000000 |
| Martin | Ronald | T00367907 | HC PARADE/TAILGATE | 10/29/2022 | | 5 | | | 50.000000 | 250.000000 |
| Martinez | Cindy | T00672380 | AUX. CORDWARS | 10/27/2022 | | 4 | | | 25.000000 | 100.000000 |
| Martinez | Cindy | T00672380 | HOMECOMING CASH COLLECTORS | 10/29/2022 | | 3 | | | 25.000000 | 75.000000 |
| McCray | Brian | T00668377 | MIDNIGHT BREAKFAST | 10/23/2022 | | 5 | | | 60.000000 | 300.000000 |
| McCray | Brian | T00668377 | A TASTE OF CULTURE | 10/24/2022 | | 4 | | | 60.000000 | 240.000000 |
| McCray | Brian | T00668377 | HC/TAILGATE/CONCERT | 10/29/2022 | | 6.5 | | | 60.000000 | 390.000000 |
| Miller | Herman | T00579883 | HC PARADE/GAME | 10/29/2022 | | 7 | | | 25.000000 | 175.000000 |
| Moore | Gregory | T00746831 | MIDNIGHT BREAKFAST | 10/23/2022 | | 5 | | | **25.000000** | 125.000000 |
| Moore | Gregory | T00746831 | HOMECOMING CONCERT | 10/26/2022 | | 4 | | | 25.000000 | 100.000000 |
| Moore | Gregory | T00746831 | AUX. CORDWARS | 10/27/2022 | | 4 | | | 25.000000 | 100.000000 |
| Moore | Gregory | T00746831 | STEP SHOW | 10/28/2022 | | 4 | | | 25.000000 | 100.000000 |
| Moore | Gregory | T00746831 | HC PARADE/GAME | 10/29/2022 | | 2 | | | 25.000000 | 50.000000 |
| Niukuleko | Ekundayo | T00401163 | HC PARADE/GAME | 10/29/2022 | | 11 | | | 25.000000 | 275.000000 |
| Nowlin | Andrea | T00696997 | A TASTE OF CULTURE | 10/24/2022 | | 4 | | | 50.000000 | 200.000000 |
| Nowlin | Andrea | T00696997 | HOMECOMING CONCERT | 10/25/2022 | | 4 | | | 50.000000 | 200.000000 |
| Nowlin | Andrea | T00696997 | HC PARADE/TAILGATE | 10/29/2022 | | 3.5 | | | 50.000000 | 175.000000 |
| Ratliff | Ada | T00749815 | HOMECOMING/TAILGATING | 10/29/2022 | | 8 | | | 25.000000 | 200.000000 |
| Robinson | Mark | T00245891 | STEP SHOW | 10/28/2022 | | 3.5 | | | 50.000000 | 175.000000 |
| Robinson | Mark | T00245891 | HC PARADE/TAILGATE | 10/29/2022 | | 4 | | | 50.000000 | 200.000000 |
| Rodgers | Juanita | T00549876 | HC PARADE/GAME | 10/29/2022 | | 8 | | | 25.000000 | 200.000000 |
| Rodgers | Juanita | T00549876 | HC PARADE/GAME | 10/29/2022 | | 2 | | | 25.000000 | 60.000000 |
| Sawyer | Jujuana | T00118467 | HOMECOMING CONCERT | 10/25/2022 | | 4 | | | 50.000000 | 200.000000 |
| Sawyer | Jujuana | T00118467 | AUX. CORDWARS | 10/27/2022 | | 4 | | | 50.000000 | 200.000000 |

| Sawyer | Jujuana | T00118467 | YARD FEST | 10/28/2022 | | | 5 | | 50.000000 | 250.000000 |
|---|---|---|---|---|---|---|---|---|---|---|
| | Shelia | T00660777 | HC PARADE/GAME | 10/28/2022 | | | 7 | | 25.000000 | 176.000000 |
| St. Romain | Stacey | T00424373 | HOMECOMING CONCERT | 10/25/2022 | | | 3 | | 60.000000 | 180.000000 |
| St. Romain | Stacey | T00424373 | AUX. CORDWARS | 10/27/2022 | | | 4 | | 60.000000 | 240.000000 |
| St. Romain | Stacey | T00424373 | YARD FEST | 10/28/2022 | | | 6 | | 60.000000 | 360.000000 |
| St. Romain | Stacey | T00424373 | HC PARADE/TAILGATE | 10/29/2022 | | | 11.5 | | 60.000000 | 690.000000 |
| Ward | James | T00592392 | HC PARADE/GAME | 10/29/2022 | | | 11.5 | | 25.000000 | 287.500000 |
| West | Charles | T00731923 | HC PARADE/TAILGATE | 10/29/2022 | | | 3.5 | | 50.000000 | 175.000000 |
| White | Jessica | T00169632 | AUX. CORDWARS | 10/27/2022 | | | 4 | | 25.000000 | 100.000000 |
| White | Jessica | T00159632 | HC PARADE/GAME | 10/29/2022 | | | 8 | | 25.000000 | 200.000000 |
| Young | Pauline | T00076760 | HOMECOMING CASH COLLECTORS | 10/29/2022 | | | 12 | | 25.000000 | 300.000000 |
| | | | | | | | | | | |
| | | Grand Total | | | 0.00 | 0.00 | 0.00 | 569.00 | | 22,190.000000 |

**Required documents to submit to Human Resources with this Application:**

1. Time sheet for each employee that worked the event(s) or overtime.

2. Copy of Leave Form(s) if employee took vacation, sick or other leave during the period that the event or overtime took place.

**APPROVALS**

Supervisor (Print Name) _____    Human Resources (Print Name) _____

Signature/Date _____    Signature/Date _____

Department Head/Dean   (Print Name) _____

Signature/Date _____

## APPLICATION FOR SPECIAL EVENT OR OVERTIME PAY FOR NON EXEMPT EMPLOYEES

Use one form per funding source

**Reason (Overtime Reason or Event Name)**

**DPS Regular Overtime**

**Date (s)** [example 1: 09/00/11 or example 2: 09/00/11-09/00/11]
10/17/2022 - 10/29/2022

TMSLAW SECURITY

**Prepared By/Extension:** Chandra Scruggs 713-313-1808

Name/Ext

**Funding Source**
1000 62000 7021 70
Fund #/Org #/Prog #/Acct #

| Employee Last Name (Alpha Order) | Employee First Name | Empl T # | Job Duties Performed for Event | Use if Multiple Dates Worked (MM/DD/YY) | OT (1.5) | OTP (1.0) | SUP/SUP1 | Overtime (OT) Hrly Rate | Straight Pay Rate/Special Rate | Total Amt |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown | Bobby | T00750800 | TMSLAW SECURITY | 10/20/2022 | | | 3 | | 40.000000 | 120.000000 |
| Brown | Bobby | T00750800 | TMSLAW SECURITY | 10/21/2022 | | | 6 | | 40.000000 | 240.000000 |
| Brown | Bobby | T00750800 | TMSLAW SECURITY | 10/22/2022 | | | 2.5 | | 40.000000 | 100.000000 |
| Campbell | Tiffany | T00607421 | TMSLAW SECURITY | 10/19/2022 | | | 8 | | 40.000000 | 320.000000 |
| Campbell | Tiffany | T00607421 | TMSLAW SECURITY | 10/26/2022 | | | 7 | | 40.000000 | 280.000000 |
| Harper | Zondra | T00720620 | CLASS CRITS CONFERENCE | 10/22/2022 | | | 6 | | 25.000000 | 150.000000 |
| McCray | Brian | T00868377 | TMSLAW SECURITY | 10/17/2022 | | | 12 | | 40.000000 | 480.000000 |
| McCray | Brian | T00868377 | TMSLAW SECURITY | 10/18/2022 | | | 4 | | 40.000000 | 160.000000 |
| McCray | Brian | T00868377 | TMSLAW SECURITY | 10/19/2022 | | | 4 | | 40.000000 | 160.000000 |
| McCray | Brian | T00868377 | TMSLAW SECURITY | 10/24/2022 | | | 10 | | 40.000000 | 400.000000 |
| McCray | Brian | T00868377 | TMSLAW SECURITY | 10/25/2022 | | | 4 | | 40.000000 | 160.000000 |
| McCray | Brian | T00868377 | TMSLAW SECURITY | 10/26/2022 | | | 5 | | 40.000000 | 200.000000 |
| McCray | Brian | T00868377 | TMSLAW SECURITY | 10/27/2022 | | | 7 | | 40.000000 | 280.000000 |
| McCray | Brian | T00868377 | TMSLAW SECURITY | 10/28/2022 | | | 7 | | 40.000000 | 280.000000 |
| Walker | James | T00827620 | ROLAND MARTIN EVENT | 10/7/2022 | | | 6 | | 25.000000 | 150.000000 |
| | | | **Grand Total** | | | | 91.60 | | | 3480.000000 |

**Required documents to submit to Human Resources with this Application:**

1. Time sheet for each employee that worked the event(s) or overtime.
2. Copy of Leave Form(s) if employee took vacation, sick or other leave during the period that the event or overtime took place.

**APPROVALS**

Supervisor (Print Name)

Signature/Date  11/11/22

Department Head/Dean (Print Name)

Signature/Date  4/11/2022

Human Resources (Print Name)

Signature/Date

# APPLICATION FOR SPECIAL EVENT OR OVERTIME PAY FOR NON EXEMPT EMPLOYEES

Use one form per funding source

| Reason (Overtime Reason or Event Name) | **DPS Regular Overtime** | | Prepared By/Extension: | Chandra Scruggs 713-313-1808 | | | | | | | |

**TMSLAW SECURITY**

Date (s) (example 1: 09/01/11 or example 2: 09/01/11-09/09/11)   10/17/2022 - 10/29/2022

Name/Ext

Funding Source   1000  62000  7021  70

Fund #/Org ##Prog #/Acct #

| Employee Last Name (Alpha Order) | Employee First Name | Empl T # | Job Duties Performed | for Event | Use # Multiple Dates Worked (MM/DD/YY) | OT (1.5) | OTP (1.0) | SUP/ SUP1 | Overtime (OT) Hrly Rate | Straight Pay Rate/Special Rate | Total Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | Reg Hrly Rate X 1.5 or Special pay rate | # hrs worked X Rate |
| Brown | Bobby | T09760800 | TMSLAW SECURITY | | 10/20/2022 | | | 3 | | 40.000000 | 120.000000 |
| Brown | Bobby | T09760800 | TMSLAW SECURITY | | 10/21/2022 | | | 6 | | 40.000000 | 240.000000 |
| Brown | Bobby | T09760800 | TMSLAW SECURITY | | 10/22/2022 | | | 2.5 | | 40.000000 | 100.000000 |
| Campbell | Tiffany | T00607421 | TMSLAW SECURITY | | 10/19/2022 | | | 8 | | 40.000000 | 320.000000 |
| Campbell | Tiffany | T00607421 | TMSLAW SECURITY | | 10/28/2022 | | | 7 | | 40.000000 | 280.000000 |
| Harper | Zondra | T00720620 | CLASS CRHTS CONFERENCE | | 10/22/2022 | 6 | | | 18.668341 | | 111.512046 |
| McCray | Brian | T00668377 | TMSLAW SECURITY | | 10/17/2022 | | | 12 | | 40.000000 | 480.000000 |
| McCray | Brian | T00668377 | TMSLAW SECURITY | | 10/18/2022 | | | 4 | | 40.000000 | 160.000000 |
| McCray | Brian | T00668377 | TMSLAW SECURITY | | 10/19/2022 | | | 4 | | 40.000000 | 160.000000 |
| McCray | Brian | T00668377 | TMSLAW SECURITY | | 10/24/2022 | | | 10 | | 40.000000 | 400.000000 |
| McCray | Brian | T00668377 | TMSLAW SECURITY | | 10/25/2022 | | | 4 | | 40.000000 | 160.000000 |
| McCray | Brian | T00668377 | TMSLAW SECURITY | | 10/26/2022 | | | 5 | | 40.000000 | 200.000000 |
| McCray | Brian | T00668377 | TMSLAW SECURITY | | 10/27/2022 | | | 7 | | 40.000000 | 280.000000 |
| McCray | Brian | T00668377 | TMSLAW SECURITY | | 10/28/2022 | | | 7 | | 40.000000 | 280.000000 |
| Walker | James | T00527620 | ROLAND MARTIN EVENT | | 10/7/2022 | | 0.25 | | | 12.390341 | 3.097686 |
| Walker | James | T00527620 | ROLAND MARTIN EVENT | | 10/7/2022 | 6.75 | | | 18.868612 | | 106.866694 |
| | | | | | | | | | | | |
| | | | | **Grand Total** | | 11.75 | 0.25 | 79.50 | | | 3401.478326 |

**Required documents to submit to Human Resources with this Application:**

1. Time sheet for each employee that worked the event(s) or overtime.
2. Copy of Leave Form(s) if employee took vacation, sick or other leave during the period that the event or overtime took place.

**APPROVAL:**

Supervisor (Print Name)

Signature/Date   11/18/22

Department Head/Dean   (Print Name)

Signature/Date

Human Resources (Print Name)

Signature/Date

TMSL P    ICE OFFICER
COVERAGE SIGN-IN SHEET

Mont    )CT 2022

| WEEK | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY | SUNDAY |
|---|---|---|---|---|---|---|---|
| DATE | 10/17/22 | 10/18/22 | 10/19/22 | 10/20/22 | 10/21/22 | 10/22/22 | 10/23/22 |
| First Name | BRian | BRian | Tiffany | Bobby | Bobby | Bobby | |
| Last Name | MCCRAY | MCCRAY | Campbell | Brown | Brown | Brown | |
| Sign-In | 8:00 AM | 3:00 PM | 8:00 AM | 12:10pm | 9:00pm | 9:30 Am | |
| Sign-Out | 10:00 PM | 7:00 PM | 4:00 PM | 8:00 pm | 3:00pm | 12:00pm | |
| First Name | | | BRian | | | | |
| Last Name | | | McCray | | | | |
| Sign-In | | | 4:00 PM | | | | |
| Sign-Out | | | 8:00 PM | | | | |
| First Name | | | | | | | |
| Last Name | | | | | | | |
| Sign-In | | | | | | | |
| Sign-Out | | | | | | | |
| First Name | | | | | | | |
| Last Name | | | | | | | |
| Sign-In | | | | | | | |
| Sign-Out CLOSING TIME | 5 pm - 10 pm | 5 pm - 10 pm | 5 pm - 10 pm | 5 pm - 10 pm | 5 pm - 10 pm | 12 pm - 9 pm | 12 pm - 9 pm |

MON - FRI  5 PM - 10  PM,
SAT SUN 12 PM - 9 PM

10/2022 LC

Week: 10/17/22

**TMSL P ICE OFFICER**
**COVERAGE SIGN-IN SHEET**

Mont OCT 2022

| WEEK | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY | SUNDAY |
|---|---|---|---|---|---|---|---|
| DATE | 10/24/22 | 10/25/22 | 10/26/22 | 10/27/22 | 10/28/22 | 10/29/22 | 10/30/22 |
| First Name | Brian | Brian | Tiffany | Brian | Brian | | |
| Last Name | McCray | McCray | Campbell | McCray | McCray | | |
| Sign-In | 8:00 AM | 3:00 PM | 8:00 AM | 3:00 PM | 3:00 PM | | |
| Sign-Out | 11:00 AM | 7:00 PM | 3:00 pm | 10:00 PM | 10:00 PM | | |
| First Name | Brian | | Brian | | | | |
| Last Name | McCray | | McCray | | | | |
| Sign-In | 3:00 PM | | 3:00 PM | | | | |
| Sign-Out | 10:00 PM | | 8:00 PM | | | | |
| First Name | | | | | | | |
| Last Name | | | | | | | |
| Sign-In | | | | | | | |
| Sign-Out | | | | | | | |
| First Name | | | | | | | |
| Last Name | | | | | | | |
| Sign-In | | | | | | | |
| Sign-Out | | | | | | | |
| CLOSING TIME | 5 pm - 10 pm | 5 pm - 10 pm | 5 pm - 10 pm | 5 pm - 10 pm | 5 pm - 10 pm | 12 pm - 9 pm | 12 pm - 9 pm |

**MON - FRI 5 PM - 10 PM,**
**SAT SUN 12 PM - 9 PM**

10/2022 LC

Week: 10/24/22

# TEXAS SOUTHERN UNIVERSITY

**DEPARTMENT OF EVENT SERVICES**

*SUPPLEMENTAL SALARY SIGN-IN SHEET*

| NAME | ID# | EVENT NAME | DATE | IN | OUT | PAY RATE | TOTAL | SIGNATURE |
|------|-----|-----------|------|----|----|----------|-------|-----------|
| (G) James Walker | T00 527620 | Roberto Martin Event IM Public Affairs | 07/14 | 4p | 10p | | | James A. Walker |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| ★ Mr Walker remained at work to provide cleaning of event | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

Supervisor Signature _Maurice Walker_          Date _10/14/22_

# TEXAS SOUTHERN UNIVERSITY

## DEPARTMENT OF EVENT SERVICES
### SUPPLEMENTAL SALARY SIGN-IN SHEET

Law School

| # | NAME | Title | EVENT NAME | DATE | IN | OUT | PAY RATE | TOTAL | SIGNATURE |
|---|------|-------|------------|------|-----|-----|----------|-------|-----------|
| 6 | Donovan Harper | | Class Gifts conference | 10/24/22 | | 3p 9p. | | | Donovan Harper |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Supervisor Signature _____   Date 10/25/2022

**16**

# APPLICATION FOR SPECIAL EVENT OR OVERTIME PAY FOR NON EXEMPT EMPLOYEES
Use one form per funding source

**Reason (Overtime Reason or Event Name):** DPS Regular Overtime — HOMECOMING 2022

**Date (s) (example 1: 08/01/11 or example 2: 08/01/11-08/06/11):** 10/23/2022 - 10/31/2022

**Prepared By/Extension:** Chandra Scruggs 713-313-1808    Name/Ext

**Funding Source**    Need FOPAL information

**Fund #/Org #/Prog #/Acct #**

| Employee Last Name | Employee First Name | Empl T # | Job Duties Performed for Event | Use if Multiple Dates Worked | OT (1.5) | OTP (1.0) | SUP/ SUP1 | Overtime (OT) Hrly Rate | Reg Hrly Rate X 1.6 or Straight Rate/Special Rate or # hrs worked X Rate | Total Amt |
|---|---|---|---|---|---|---|---|---|---|---|
| Alley | Joe | T00751907 | A TASTE OF CULTURE | 10/24/2022 | 4 | | | 24.069000 | | 96.276000 |
| Allison | Marcus | T00454199 | HOMECOMING CONCERT | 10/25/2022 | 3 | | | 28.458662 | | 85.375986 |
| Allison | Marcus | T00454199 | STEP SHOW/EQUIPMENT PICKUP AND SETUP | 10/28/2022 | 5 | | | 28.458662 | | 142.293310 |
| Allison | Marcus | T00454199 | HC PARADE/GAME | 10/29/2022 | 15 | | | 28.458662 | | 426.879930 |
| Armitige | Cheryl | T00044396 | A TASTE OF CULTURE | 10/24/2022 | 4 | | | 24.190140 | | 96.760580 |
| Armitige | Cheryl | T00044396 | HC PARADE/GAME | 10/29/2022 | 2 | | | 24.190140 | | 48.380280 |
| Auzenne | Brian | T00732908 | STEP SHOW | 10/28/2022 | 4.5 | | | 49.674215 | | 223.533968 |
| Auzenne | Brian | T00732908 | HC PARADE/TAILGATE | 10/29/2022 | 14 | | | 49.674215 | | 695.439010 |
| Barnes | Amos | T00732907 | AUX. CORDWARS | 10/27/2022 | 4 | | | 23.844000 | | 95.376000 |
| Barnes | Amos | T00732907 | STEP SHOW | 10/28/2022 | 5 | | | 23.844000 | | 119.220000 |
| Barnes | Amos | T00732907 | HC PARADE/GAME | 10/29/2022 | 10 | | | 23.844000 | | 238.440000 |
| Barnett | Darren | T00633934 | HOMECOMING CONCERT | 10/25/2022 | 3 | | | 50.925929 | | 152.777787 |
| Barnett | Darren | T00633934 | HC TAILGATING/GAME | 10/29/2022 | 7 | | | 50.925929 | | 356.481503 |
| Bell | Crystal | T00206962 | HC PARADE/TAILGATE | 10/29/2022 | 4 | | | 39.224885 | | 156.899540 |
| Bello | Abideen | T00151471 | MIDNIGHT BREAKFAST | 10/23/2022 | 2 | | | 39.449885 | | 78.899770 |
| Bello | Abideen | T00151471 | HC PARADE/TAILGATE | 10/29/2022 | 2 | | | 39.449885 | | 78.899770 |
| Boakyl-Dankwa | Kofi | T00579878 | MIDNIGHT BREAKFAST | 10/23/2022 | 2 | | | 24.588203 | | 49.176406 |
| Boakyl-Dankwa | Kofi | T00579878 | YARD FEST | 10/28/2022 | 6 | | | 24.588203 | | 147.529218 |
| Brown | Bobby | T00750800 | HC/PARADE/TAILGATE | 10/29/2022 | 9.5 | | | 54.179484 | | 514.705098 |
| Campbell | Tiffany | T00750801 | AUX. CORDWARS | 10/27/2022 | 4 | | | 39.824885 | | 159.299540 |
| Campbell | Tiffany | T00750801 | HC PARADE/TAILGATE | 10/29/2022 | 5.5 | | | 39.824885 | | 219.036868 |
| Cantu | Bethany | T00689339 | MIDNIGHT BREAKFAST | 10/23/2022 | 2 | | | 41.786333 | | 83.572666 |
| Cantu | Bethany | T00689339 | STEP SHOW | 10/28/2022 | 4.5 | | | 41.786333 | | 188.038499 |
| Cantu | Bethany | T00689339 | HC PARADE/TAILGATE | 10/29/2022 | 14 | | | 41.786333 | | 585.008662 |
| Castillo | Daniel | T00607421 | A TASTE OF CULTURE | 10/24/2022 | 4 | | | 44.062196 | | 176.248784 |
| Castillo | Daniel | T00607421 | HC PARADE/TAILGATE | 10/29/2022 | 5 | | | 44.062196 | | 220.310980 |
| Collette | Michael | T00695839 | STEP SHOW | 10/28/2022 | 4.5 | | | 39.997782 | | 179.990019 |
| Collette | Michael | T00695839 | HC PARADE/TAILGATE | 10/29/2022 | 5 | | | 39.997782 | | 199.988910 |
| Davis | Leroy | T00713807 | HC PARADE/GAME | 10/29/2022 | 7 | | | 24.617070 | | 172.319490 |
| Dorsey | Tina | T90432367 | HOMECOMING CASH COLLECTORS | 10/29/2022 | | 13.5 | | 34.340289 | | 463.593902 |
| Edwards | Michael | T00243701 | STEP SHOW | 10/28/2022 | 4 | | | 23.844000 | | 95.376000 |
| Edwards | Michael | T00243701 | HC PARADE/GAME | 10/29/2022 | 2 | | | 23.844000 | | 47.688000 |
| Garcia | Geneva | T00437240 | HOMECOMING CASH COLLECTORS | 10/29/2022 | 11 | | | 21.772022 | | 239.492242 |
| Halle | Joe | T00751915 | HC PARADE/GAME | 10/29/2022 | | 10 | | | 15.896000 | 158.960000 |
| Hall | Dazlett | T00698508 | HOMECOMING CONCERT | 10/25/2022 | 3 | | | 24.017244 | | 72.051732 |
| Hall | Dazlett | T00698508 | HOMECOMING CASH COLLECTORS | 10/29/2022 | 3 | | | 24.017244 | | 72.051732 |
| Hicks | Claudine | T00076364 | HOMECOMING CONCERT | 10/25/2022 | | 3 | | | 16.357521 | 49.072563 |
| Hicks | Claudine | T00076364 | YARD FEST | 10/28/2022 | | 6 | | | 16.357521 | 98.145126 |

| Last Name | First Name | ID | Event | Date | Hours | Rate | Amount |
|---|---|---|---|---|---|---|---|
| Hilliard | John | T00668727 | MIDNIGHT BREAKFAST | 10/29/2022 | 10 | 24.538282 | 245.382820 |
| Hilliard | John | T00668727 | AUX. CORDWARS | 10/23/2022 | 5 | 32.569765 | 162.848825 |
| Hilliard | John | T00668727 | STEP SHOW | 10/27/2022 | 4 | 32.569765 | 130.279080 |
| Hilliard | John | T00668727 | HC PARADE/GAME | 10/28/2022 | 5 | 32.569765 | 162.848825 |
| Hinton | Ashley | T00750802 | HOMECOMING CONCERT | 10/29/2022 | 8 | 32.569765 | 260.558120 |
| Hinton | Ashley | T00750802 | HC PARADE/TAILGATE | 10/25/2022 | 2 | 39.449885 | 78.899770 |
| Holiday | John | T00631146 | HOMECOMING CONCERT | 10/29/2022 | 3.5 | 39.449885 | 138.074598 |
| Holiday | John | T00631146 | STEP SHOW | 10/26/2022 | 3 | 24.190140 | 72.570420 |
| Holiday | John | T00631146 | HC PARADE/GAME | 10/28/2022 | 4 | 24.190140 | 96.760560 |
| Hopkins | Jon | T00622950 | AUX. CORDWARS | 10/28/2022 | 6 | 24.190140 | 145.140840 |
| Hopkins | Jon | T00622950 | HC PARADE/GAME | 10/27/2022 | 4 | 24.190181 | 96.760724 |
| Howard | James | T00140367 | HOMECOMING CONCERT | 10/29/2022 | 10 | 24.190181 | 241.001810 |
| Howard | James | T00140367 | HC PARADE/TAILGATE | 10/25/2022 | 3 | 49.449221 | 148.347663 |
| Huseman | Ben | T00392037 | STEP SHOW | 10/29/2022 | 10 | 49.449221 | 494.492210 |
| Huseman | Ben | T00392037 | HC PARADE/TAILGATE | 10/28/2022 | 4.5 | 48.735091 | 219.307910 |
| Isaac | Norris | T00731926 | HOMECOMING CONCERT | 10/25/2022 | 5 | 48.735091 | 243.675465 |
| Isaac | Norris | T00731926 | HC PARADE/TAILGATE | 10/29/2022 | 4 | 39.224885 | 156.899540 |
| John-Miller | Curtis | T00633935 | MIDNIGHT BREAKFAST | 10/23/2022 | 6.5 | 39.224885 | 254.961763 |
| John-Miller | Curtis | T00633935 | HC PARADE/TAILGATE | 10/29/2022 | 5 | 53.168255 | 265.841275 |
| Jones | Chevon | T00668257 | HOMECOMING CONCERT | 10/25/2022 | 6 | 53.168255 | 319.009530 |
| Jones | Ivan | T00672984 | TAILGATE SETUP | 10/28/2022 | 3 | 43.291862 | 129.875586 |
| Jones | Ivan | T00672984 | HC PARADE/GAME/CONCERT | 10/29/2022 | 5 | 54.125715 | 270.628575 |
| Jones | Tyrone | T00220458 | HOMECOMING CONCERT | 10/25/2022 | 14.5 | 54.125715 | 784.822868 |
| Jones | Tyrone | T00220458 | AUX. CORDWARS | 10/27/2022 | 3 | 43.292034 | 129.876102 |
| Jones | Tyrone | T00220458 | HC PARADE/TAILGATE | 10/29/2022 | 4 | 43.292034 | 173.168136 |
| LeBlanc | Maurice | T00570620 | HOMECOMING CONCERT | 10/25/2022 | 4 | 43.292034 | 173.168136 |
| LeBlanc | Maurice | T00570620 | AUX. CORDWARS | 10/28/2022 | 3 | 24.363212 | 73.089636 |
| Martin | Ronald | T00387907 | OVERNIGHT TAILGATING | 10/20/2022 | 10 | 24.363212 | 243.632120 |
| Martin | Ronald | T00387907 | HC PARADE/TAILGATE | 10/29/2022 | 4 | 47.610134 | 190.440536 |
| Martin | Ronald | T00387907 | AUX. CORDWARS | 10/27/2022 | 8 | 47.610134 | 380.881072 |
| Martinez | Cindy | T00672380 | HOMECOMING CASH COLLECTORS | 10/29/2022 | 4 | 16.011265 | 64.045060 |
| Martinez | Cindy | T00672380 | MIDNIGHT BREAKFAST | 10/29/2022 | 3 | 16.011265 | 48.033795 |
| McCray | Brian | T00668377 | A TASTE OF CULTURE | 10/23/2022 | 5 | 54.127554 | 270.637770 |
| McCray | Brian | T00668377 | HC/TAILGATE/CONCERT | 10/24/2022 | 4 | 54.127554 | 216.510216 |
| McCray | Brian | T00668377 | HC PARADE/GAME | 10/29/2022 | 6.5 | 54.127554 | 351.829101 |
| Miller | Herman | T00579983 | MIDNIGHT BREAKFAST | 10/29/2022 | 7 | 24.960304 | 174.722128 |
| Moore | Gregory | T00746831 | HOMECOMING CONCERT | 10/23/2022 | 5 | 23.844000 | 119.220000 |
| Moore | Gregory | T00746831 | AUX. CORDWARS | 10/25/2022 | 4 | 23.844000 | 95.376000 |
| Moore | Gregory | T00746831 | STEP SHOW | 10/27/2022 | 4 | 23.844000 | 95.376000 |
| Moore | Gregory | T00746831 | HC PARADE/GAME | 10/28/2022 | 4 | 23.844000 | 95.376000 |
| Moore | Gregory | T00746831 | HC PARADE/GAME | 10/28/2022 | 2 | 23.844000 | 47.688000 |
| Nikululeko | Etundayo | T00400163 | A TASTE OF CULTURE | 10/29/2022 | 11 | 26.306816 | 278.372776 |
| Nowlin | Andrea | T00696997 | HOMECOMING CONCERT | 10/24/2022 | 4 | 41.647868 | 166.591472 |
| Nowlin | Andrea | T00696997 | HC PARADE/TAILGATE | 10/25/2022 | 4 | 41.647868 | 166.591472 |
| Nowlin | Andrea | T00696997 | HOMECOMING/TAILGATING | 10/29/2022 | 3.5 | 41.647868 | 145.767538 |
| Ratliff | Ada | T00749615 | STEP SHOW | 10/28/2022 | 8 | 34.812900 | 278.503200 |
| Robinson | Mark | T00245891 | HC PARADE/TAILGATE | 10/29/2022 | 3.5 | 41.959394 | 146.857879 |
| Robinson | Mark | T00245891 | HC PARADE/GAME | 10/29/2022 | 4 | 41.959394 | 167.837576 |
| Rodgers | Juanita | T00549876 | HC PARADE/GAME | 10/29/2022 | 8 | 16.757521 | 134.060168 |
| Rodgers | Juanita | T00549876 | HC PARADE/GAME | 10/28/2022 | 2 | 25.136282 | 50.272564 |

| | | | HOMECOMING CONCERT | 10/25/2022 | 4 | 43.551641 | 174.206564 |
|---|---|---|---|---|---|---|---|
| Sawyer | Jujuana | T00118467 | | | | | |
| Sawyer | Jujuana | T00118467 | AUX. CORDWARS | 10/27/2022 | 4 | 43.551641 | 174.206564 |
| Shelvin | Shella | T00660777 | YARD FEST | 10/28/2022 | 5 | 43.551641 | 217.758205 |
| Shelvin | Shella | T00660777 | HC PARADE/GAME | 10/29/2022 | 7 | 25.133374 | 175.933618 |
| St. Romain | Stacey | T00424373 | HOMECOMING CONCERT | 10/25/2022 | 3 | 50.487614 | 151.462842 |
| St. Romain | Stacey | T00424373 | AUX. CORDWARS | 10/27/2022 | 4 | 50.487614 | 201.950458 |
| St. Romain | Stacey | T00424373 | YARD FEST | 10/28/2022 | 6 | 50.487614 | 302.925684 |
| St. Romain | Stacey | T00424373 | HC PARADE/TAILGATE | 10/29/2022 | 11.5 | 50.487614 | 580.607561 |
| Ward | James | T00592392 | HC PARADE/GAME | 10/29/2022 | 11.5 | 24.960304 | 287.043496 |
| West | Charles | T00731923 | HC PARADE/TAILGATE | 10/29/2022 | 3.5 | 41.988263 | 146.958921 |
| White | Jessica | T00159632 | AUX. CORDWARS | 10/27/2022 | 4 | 24.787342 | 99.149368 |
| White | Jessica | T00159632 | HC PARADE/GAME | 10/29/2022 | 8 | 24.787342 | 198.298736 |
| Young | Pauline | T00076760 | HOMECOMING CASH COLLECTORS | 10/29/2022 | 12 | 20.733600 | 248.803200 |

**Grand Total**    535.00    34.00    0.00        20,078.738922

Required documents to submit to Human Resources with this Application:

1. Time sheet for each employee that worked the event(s) or overtime.
2. Copy of Leave Form(s) if employee took vacation, sick or other leave during the period that the event or overtime took place.

APPROVALS

Supervisor (Print Name)

_____

Signature/Date

_____

Department Head/Dean   (Print Name)

_____

Signature/Date

Human Resources (Print Name)

_____

Signature/Date

**17**



# TEXAS SOUTHERN UNIVERSITY
# DEPARTMENT OF PUBLIC SAFETY

### *Compensation Request Form*

I, _____ T-Number _____, request compensation for

           **(Please Print)**

overtime worked _____ _____ from _____ to _____ hours in the form of

           **(Day of week)**     **(Date)**        **(Military Time)**

**Total Hours Worked** _____

**Location:** _____

---

### Overtime Code

**Department Activity Code:**

**(See Reverse For Department Code)**    **3400**

---

**Event:**  College Hill coverage.  _____

_____

_____

_____

**AUTH. BY:** _____ **Police INCIDENT#:** _____

Signature: _____ Assignment: _____

Reg. Hours _____ to _____, Reg. Day Off _____ Date of Request: _____

Request Approved ☐ Denied ☐ ,by _____ Employee# _____ Supervisor

Request Approved ☐ Denied ☐ ,by _____ Employee# _____ Commander

Post Date ____ / ____ / ____ by Name _____ Employee# _____

### *FALSIFYING A REQUEST FOR OVERTIME COMPENSATION CAN RESULT IN ADMINISTATIVE DISCIPLINE AND CRIMINAL PROSECUTION.*

18

**Young, Mary**

| | |
|---|---|
| **From:** | Martin, Ronald |
| **Sent:** | Monday, November 28, 2022 7:00 AM |
| **To:** | Jones, Ivan L.; McCray, Brian T.; Barnett, Darren W.; St. Romain, Stacey; Howard, James G.; Auzenne, Brian J.; John-Miller, Curtis L.; Starks, Jamal |
| **Cc:** | Etheridge, Leslie; Young, Mary |
| **Subject:** | Night Shift Summary November 27 2022 |
| **Attachments:** | NIGHT SHIFT SUMMARY -Sunday November 27 2022_ updated.docx |

1



**Texas Southern University Police Department**
**Patrol Division**
**SHIFT SUMMARY REPORT**

| SHIFT: | 11PM-7AM | | | DATE | November 27, 2022 | | | |
|---|---|---|---|---|---|---|---|---|

| WATCH COMMANDER | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| SHIFT SUPERVISOR | **OIC R. Martin** | | | | | | | |
| ON DUTY PERSONNEL | LT  1 | SGT- 0 | OFC 4 | PPO 0 | DISP – 1 | SEC- 4 | VP  - 1 | Admin - 0 |
| OFF DUTY PERSONNEL | SICK 1 | VAC 1 | HOL 0 | DF  - | MIL  - | TRN -0 | COMP - | CPL. |

### SHIFT CHECKLIST

| | | | | |
|---|---|---|---|---|
| Key Check | By: | -- Officer R. Martin | Time: | 11:05PM |
| Gas Cards | By: | -- Officer Campbell | Time: | |
| JIMS/DIMS | By: | -- Night Shift | Time: | |
| General Service Building Offices | By: | -- Night Shift | Time: | |
| Eastside Garage Office | By | -- Officer R. Martin | Time: | 11:30PM |
| Westside Garage Office | By: | -- Officer R. Martin | Time | |

### SPECIAL ASSIGNMENTS

| Location/Assignment | Officer/Vehicle | PC/Uniform | Time Spent |
|---|---|---|---|
| | | | |
| | | | |

### IMPOUND LOT

| Beginning Count: -- | Tows: | 0 | Releases: | 0 | Ending Count:  -- |
|---|---|---|---|---|---|
| | Cash: | 0 | Agreements: | 0 | |

### REPORTS

| Offense - 0 | Info  0 | Supplement 0 | Arrest  - | OAA  - | Hazard  - | CTW  - |
|---|---|---|---|---|---|---|
| Crash - 0 | Aided  - | Fire Alarm  0 | FTS  - | Un Lock  - | Lost Prop - | |

### Citations

| | Parking | Moving | Other | Total |
|---|---|---|---|---|
| TSU | - | - | - | - |
| County | - | - | - | - |
| Warning | - | - | - | - |

### Building Checks

| Zone 1: --- | Zone 2: --- | Zone 3: --- |
|---|---|---|

TSU DPS FORM (007) IH

| Referrals - 0 | Student: - | Faculty: - | Staff: - |
|---|---|---|---|
| Dean of Students: - | Housing: - | E.H & S: - | Provost: - |

**Arrests**

| Class B & Above | Student - | Staff - | Faculty - | Adult - | Juvenile - |
|---|---|---|---|---|---|
| Class C | Student | Staff - | Faculty | Adult | Juvenile |

| Case | Title: | | Active: |
|---|---|---|---|
| From: | To: | Location | |

Synopsis:

| Case: | Title: | | Active: |
|---|---|---|---|
| From | To: | Location: | |

Synopsis

| Case | Title: | | Active: |
|---|---|---|---|
| From | To: | Location: | |

Synopsis

| Case | Title: | | Active: - |
|---|---|---|---|
| From | To: | Location: | |

Synopsis

**Notes: ()**

**Reports: (0)**

**Follow-Up (0)**

**Calls for Service (0)**

**Officer Initiated (dorms checked)**

**Alarms (0)**

**Unlock**

**Call ins: (1)**
Brittany Chaney (Admin)
**Parking Citations: (0)**

**Traffic Stops: (0)**

TSU DPS FORM (007) JH

**19**

## Young, Mary

| | |
|---|---|
| **From:** | eventservices@tsu.edu |
| **Sent:** | Monday, November 28, 2022 7:00 AM |
| **To:** | Boise, Andreaus; Lockridge, Anita; Sims, Arlen; Keener, Blaine; bobby.abrown@tsu.edu; DeBlaw, Brandon E.; McCray, Brian T.; Chaney, Brittney E; Scruggs, Chandra; Reed, Chris D.; O'Toole, Christina; Hamilton-Powell, Chyenne; Miller, Clarence M; Joseph, Darnell; Walker, Delynn; Thomas, DeNeia M; Guidry, Denise; Fisher, Dwalah; Bennett, Edwin M.; Event Services; Ruiz, Faith; Brown, Frederick; Galan, Griselda; Jones, Ivan L.; Bridges, James; James M. Burch; Ben, John; Taylor, Joseph Ray; kerree.drake@tsu.edu; Holsey, Lanita R; LanitraJohnson@tsu.edu; Snowden, LaRence; Smith, Laura; Marshall, Leola; Etheridge, Leslie; Young, Mary; Morant, Reginald; Garcia, Robert; Williams, Jr. Roy; Robinson, Sean; Granger, Sydney; Clemons, Tracy L; Francisco, Trujillo |
| **Subject:** | Campus Events Setup Report |
| **Attachments:** | Setup Worksheet.pdf |

Attached report auto-generated by EMS.

**Report Name: Campus Events Setup Report**
**Report Type: Setup Worksheet**

# Texas Southern University, Student Center

## Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Monday, November 28, 2022** | | | | | | | | | |
| 8:00 AM | 8:00 AM | 10:00 PM | 10:00 PM | COST Foyer | Banquet Style (200) | College of Science, Engineering and Technology | Booked | SG | 16095 |
| | | | | COSET Final Frenzy | Group Meeting | Tioka Freeman 713-313-1860 | | | 51727 |
| | | | | | | Sharon Hudson 713-313-7172 | | | |
| | | | | Equipment Rental | | | | | |
| | | | | 200 Chairs (Grey Folding) | | | | | |
| | | | | 7 Table 8' | | | | | |
| | | | | 3 Tables 6' | | | | | |
| | | | | 12 Round Tables 72" | | | | | |
| 5:15 PM | 5:15 PM | 8:00 PM | 8:00 PM | REC Recreation Pool | (25) | Recreation & Wellness Center | Booked | | 16193 |
| | | | | Means Aqualics | Training | Jeremy Lewis 832-687-7233 | | | 52068 |
| | | | | | | Candess Tucker 873-820-6756 | | | |
| 6:00 PM | 6:00 PM | 10:00 PM | 10:00 PM | REC Basketball Court | As is (100) | Recreation & Wellness Center | Booked | | 16313 |
| | | | | Intramural Basketball Tournament Playoffs | Men's Basketball | Jeremy Lewis 832-687-7233 | | | 52725 |
| **Tuesday, November 29, 2022** | | | | | | | | | |
| 8:00 AM | 8:00 AM | 9:30 AM | 9:30 AM | REC Recreation Pool | As is (25) | Recreation & Wellness Center | Booked | | 16222 |
| | | | | AIM Senior Swim Program | Water Aerobics | Jeremy Lewis 832-687-7233 | | | 52129 |
| | | | | | | Lena Bean 713 313-1132 | | | |

Texas Southern University, Student Center

Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Tuesday, November 29, 2022** | | | | | | | | | |
| 11:30 AM | 11:30 AM | 2:15 PM | 2:15 PM | SSLC Tiger Room<br>Healthy Sexual<br>**A/V Rentals**<br>　1 Projection Screen<br>　1 L C D Projector<br>　1 Audio Cable<br>　1 PA System<br>　1 Cordless Microphone<br>**Equipment Rental**<br>　1 Podium<br>　100 Chairs (Student Center)<br>**Special Instructions** | Audience style (100)<br>Speech/Presentation | Department of Health and Kinesiology<br>Dr. Dominique Gulim 713-313-7584 | Booked | | 16320<br>52926 |
| | | | | | In observance of World AIDS Day, College of Education students will present a sexual health curriculum called "Health Sexual" they received training on this semester. The goal is to provide students with the knowledge and skills to promote their health and well-being as they mature into sexually healthy adults. Additionally, a local filmmaker will debut a documentary about persons living and thriving with HIV/AIDS. | | | | |
| 12:00 PM | 12:00 PM | 3:00 PM | 3:00 PM | SSLC President's Lounge<br>Music Recital<br>**Equipment Rental**<br>　30 Chairs (Student Center) | Audience style (30)<br>Ceremony | Department of Music<br>Dr. L, Zidanu 7133137337 | Booked | | 16241<br>52354 |
| 4:30 PM | 4:30 PM | 7:00 PM | 7:00 PM | JHJ Room 209<br>Chapter Meeting<br>**A/V Rentals**<br>　1 Audio Cable<br>　1 Projection Screen<br>　1 L C D Projector<br>　1 Cordless Microphone<br>**Additional Expenses**<br>　1 Parking<br>**Equipment Rental** | (28)<br>Group Meeting | Sigma Gamma Rho Sorority, Inc.*<br>Richelle Jones 7133137760<br>Javarhea Thompson 8322086281 | Booked | SG | 16143<br>51955 |
| 5:15 PM | 5:15 PM | 8:00 PM | 8:00 PM | REC Recreation Pool<br>Means Aquatics | (25)<br>Training | Recreation & Wellness Center<br>Jeremy Lewis 832-687-7233<br>Candess Tucker 973-820-6756 | Booked | | **16193**<br>**52069** |

11/28/2022 7:00 AM

EMS Enterprise

# Texas Southern University, Student Center

Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Tuesday, November 29, 2022** | | | | | | | | | |
| 6:30 PM | 6:30 PM | 8:30 PM | 8:30 PM | Plaza TW East<br>Tabling | (25)<br>Information Table | Every Nation Campus<br>Jasmine Gershanov 7193133358 | Booked | | 16098<br>51750 |
| 6:30 PM | 6:30 PM | 8:30 PM | 8:30 PM | SSLC Room 207 B<br>Real Talk<br>**A/V Rentals**<br>1 Projection Screen<br>1 Audio Cable | As is (30)<br>Group Meeting | Every Nation Campus<br>Jasmine Gershanov 7193133358 | Booked | | 16097<br>51739 |
| **Wednesday, November 30, 2022** | | | | | | | | | |
| 11:45 AM | 11:45 AM | 12:00 PM | 12:00 PM | SSLC Room 238<br>Conversation & Fellowship<br>**A/V Rentals**<br>1 Projection Screen<br>1 L C D Projector<br>1 Audio Cable<br>**Additional Expenses**<br>2 8' Tables<br>9 6' Tables<br>30 Samsonite Folding Chairs | Boardroom Style (30)<br>Workshop | Baptist Student Ministry*<br>Jaime Russell 8328609945 | Booked | SG | 16081<br>51704 |
| 4:30 PM | 4:30 PM | 8:00 PM | 8:00 PM | BJML SOPA 208<br>Vision Board Party | As is (35)<br>Social Event | Active Minds @ TSU<br>Jaswin John 713-517-4558<br>Crystal Taylor 713-517-4558 | Booked | ES1 | 16245<br>52358 |
| 5:15 PM | 5:15 PM | 8:00 PM | 8:00 PM | REC Recreation Pool<br>Means Aquatics | (25)<br>Training | Recreation & Wellness Center<br>Jeremy Lewis 832-687-7233<br>Candess Tucker 973-820-6756 | Booked | | 16193<br>52070 |
| 5:30 PM | 5:30 PM | 8:00 PM | 8:00 PM | REC E-Sports LAB<br>E-Sports Club Practice | As is (20)<br>Training | Recreation & Wellness Center<br>Jeremy Lewis 832-687-7233 | Booked | | 16224<br>52140 |

# Texas Southern University, Student Center

Setup Worksheet

## Thursday, December 01, 2022

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| 8:00 AM | 8:00 AM | 4:00 PM | 4:00 PM | SSLC Tiger Room | Banquet Style (50) | College of Pharmacy & Health Science | Booked | SG | 16172 |
| | | | | Houston Health Department Event | Seminar | Veronica Ajewole 7133131217 | | | 51993 |
| | | | | | | Ashley Bombar-Guidry 7133131986 | | | |
| | | | | **A/V Rentals** | | | | | |
| | | | | 1  Projection Screen | | | | | |
| | | | | 1  L C D Projector | | | | | |
| | | | | 1  Audio Cable | | | | | |
| | | | | 1  PA System | | | | | |
| | | | | 1  Cordless Microphone | | | | | |
| | | | | **Equipment Rental** | | | | | |
| | | | | 7  Round Tables 72' | | | | | |
| | | | | 70  Chairs (Grey Folding) | | | | | |
| | | | | 2  Tables 6' | | | | | |
| 8:00 AM | 8:00 AM | 3:30 PM | 3:30 PM | COST Foyer | Banquet Style (175) | College of Science, Engineering and Technology | Booked | SG | 16096 |
| | | | | COSET Holiday Celebration | Luncheon | Tioka Freeman 713-313-1860 | | | 51728 |
| | | | | | | Sharon Hudson 713-313-7172 | | | |
| | | | | **A/V Rentals** | | | | | |
| | | | | 1  Cordless Microphone | | | | | |
| | | | | **Equipment Rental** | | | | | |
| | | | | 1  Podium | | | | | |
| | | | | 10  Round Tables 72' | | | | | |
| | | | | 8  Table 8' | | | | | |
| | | | | 150  Maroon Folding Chairs | | | | | |
| 8:00 AM | 8:00 AM | 9:30 AM | 9:30 AM | REC Recreation Pool | As is (25) | Recreation & Wellness Center | Booked | | 16222 |
| | | | | AIM Senior Swim Program | Water Aerobics | Jeremy Lewis 832-687-7233 | | | 52130 |
| | | | | | | Lena Bean 713 313-1132 | | | |

# Texas Southern University, Student Center

## Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Thursday, December 01, 2022** | | | | | | | | | |
| 9:00 AM | 9:00 AM | 11:00 AM | 11:00 AM | SSLC Room 207 A<br>Stress Management Workshop<br>**A/V Rentals**<br>  1 Projection Screen<br>  1 Cordless Microphone<br>**Equipment Rental**<br>  1 Podium | Audience style (75)<br>Workshop | University Counseling Center<br>Caren Cooper 713-313-8806 | Booked | SG | 16321<br>52927 |
| **Friday, December 02, 2022** | | | | | | | | | |
| 8:00 AM | 8:00 AM | 4:00 PM | 4:00 PM | SSLC Tiger Room<br>Houston Health Department Event<br>**A/V Rentals**<br>  1 Projection Screen<br>  1 L C D Projector<br>  1 Audio Cable<br>  1 PA System<br>  1 Cordless Microphone<br>**Equipment Rental**<br>  7 Round Tables 72'<br>  70 Chairs (Grey Folding)<br>  2 Tables 6'<br>  30 Chairs (Student Center) | Banquet Style (50)<br>Seminar | College of Pharmacy & Health Science<br>Veronica Ajewole 7133131217<br>Ashley Bombar-Guidry 7133131986 | Booked | SG | 16172<br>51994 |
| 12:00 PM | 12:00 PM | 3:00 PM | 3:00 PM | SSLC President's Lounge<br>Music Recital<br>**Equipment Rental** | Audience style (30)<br>Ceremony | Department of Music<br>Dr. L. Zidani 7133137337 | Booked | | 16242<br>52355 |
| 5:30 PM | 5:30 PM | 8:00 PM | 8:00 PM | REC E-Sports LAB<br>E-Sports Club Practice | As Is (20)<br>Training | Recreation & Wellness Center<br>Jeremy Lewis 832-687-7233 | Booked | | 16224<br>52141 |
| 6:00 PM | 6:00 PM | 10:00 PM | 10:00 PM | REC 2nd Floor Lobby<br>Campus Recreation Staff Christmas Party | Banquet Style (60)<br>Reception | Recreation & Wellness Center<br>Iisha Voltz 713-313-6898<br><br>Jeremy Lewis 832-687-7233 | Booked | JL | 16268<br>52390 |

11/28/2022 7:00 AM      EMS Enterprise     

Texas Southern University, Student Center

Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Friday, December 02, 2022** | | | | | | | | | |
| 6:00 PM | 6:00 PM | 8:30 PM | 8:30 PM | REC Rec Studio<br>ASA Dance Practice | (20)<br>Dance | Recreation & Wellness Center<br>Jeremy Lewis 832-687-7233<br>Adetomisola Olurebi | Booked | | 16130<br>51933 |
| **Saturday, December 03, 2022** | | | | | | | | | |
| 1:00 AM | 1:00 AM | 5:00 AM | 5:00 AM | REC Basketball Court 2<br>Skate Reservation- Daisies &<br>Pancakes | Boardroom Style (40)<br>Training | Recreation & Wellness Center<br>Jeremy Lewis 832-687-7233<br><br>Brandi Myesia 713-213-5885 | Booked | JL | 16194<br>52075 |
| 6:00 AM | 6:00 AM | 10:00 AM | 10:00 AM | REC Rec Studio<br>Aquatic Triathlon | (50)<br>Competition | Recreation & Wellness Center<br>Jeremy Lewis 832-687-7233 | Booked | JL | 16293<br>52425 |
| 1:30 PM | 2:30 PM | 6:00 PM | 7:00 PM | GSA Auditorium<br>Monthly Business Meeting | Audience style (600)<br>Organization Meeting | Delta Sigma Theta Houston Alumni<br>Peggy Engram 7138583109 | Booked | ES1 | 15768<br>49952 |
| **Monday, December 05, 2022** | | | | | | | | | |
| 5:30 PM | 5:30 PM | 8:30 PM | 8:30 PM | REC Recreation Pool<br>Means Aquatics- Team Practice | As is (25)<br>Training | Recreation & Wellness Center<br>Jeremy Lewis 832-687-7233<br>Candess Tucker 713 313-8813 | Booked | | 16316<br>52731 |
| 6:00 PM | 6:00 PM | 9:00 PM | 9:00 PM | SSLC Room 207 A<br>Bible Study | Classroom Style (25)<br>Social Event | True Life Change*<br>Andy dacosta 281-772-7666<br>Jasmine Milton 281-772-7666 | Booked | | 16073<br>51678 |

11/28/2022 7:00 AM

EMS Enterprise

Texas Southern University, Student Center

Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Tuesday, December 06, 2022** | | | | | | | | | |
| 8:00 AM | 9:30 AM | 12:00 PM | 1:00 PM | SSLC President's Lounge Extended Cabinet Meeting | Banquet Style (40) Group Meeting | President's Office Kia Harper 713-313-1179 | Booked | KE | 15444 47367 |
| | | | | Equipment Rental | | | | | |
| | | | | 8   Round Tables 72' | | | | | |
| | | | | 3   Table 8' | | | | | |
| | | | | 43  Chairs (Student Center) | | | | | |
| | | | | Special Instructions | | | | | |
| | | | | Please setup the room with 8 large round tables with 5 chairs per table along with 2 long tables for food and 1 long table at front of room with 3 chairs | | | | | |
| 5:30 PM | 5:30 PM | 8:30 PM | 8:30 PM | REC Recreation Pool Means Aquatics- Team Practice | As Is (25) Training | Recreation & Wellness Center Jeremy Lewis 832-687-7233 Candess Tucker 713 313-6813 | Booked | | 16316 52732 |
| **Wednesday, December 07, 2022** | | | | | | | | | |
| 6:00 AM | 6:00 AM | 10:00 PM | 10:00 PM | HPE Basketball Court Winter Commencement Activities | (1000) Graduation | Office of the Provost Cynthia Williams  713-313-1136 | Booked | SG | 16279 52406 |
| 4:00 PM | 5:30 PM | 7:30 PM | 9:00 PM | SSLC President's Lounge SASH Ceremony | Banquet Style (100) Ceremony | Athletics Department Ameecia Romeo 713-313-4230 | Booked | SG | 16311 52723 |
| | | | | A/V Rentals | | | | | |
| | | | | 1   Projection Screen | | | | | |
| | | | | 1   L C D Projector | | | | | |
| | | | | 1   PA System | | | | | |
| | | | | Equipment Rental | | | | | |
| | | | | 1   Podium | | | | | |
| | | | | 60  Chairs (Student Center) | | | | | |
| | | | | 8   Round Tables 60' | | | | | |
| | | | | 1   Table 8' | | | | | |
| 5:30 PM | 5:30 PM | 8:00 PM | 8:00 PM | REC E-Sports LAB E-Sports Club Practice | As Is (20) Training | Recreation & Wellness Center Jeremy Lewis 832-687-7233 | Booked | | 16224 52142 |
| 5:30 PM | 5:30 PM | 8:30 PM | 8:30 PM | REC Recreation Pool Means Aquatics- Team Practice | As Is (25) Training | Recreation & Wellness Center Jeremy Lewis 832-687-7233 Candess Tucker 713 313-6813 | Booked | | 16316 52733 |

11/28/2022 7:00 AM

EMS Enterprise

Texas Southern University, Student Center

Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID<br>Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Thursday, December 08, 2022** | | | | | | | | | |
| 6:00 AM | 6:00 AM | 10:00 PM | 10:00 PM | HPE Basketball Court<br>Winter Commencement Activities | (1000)<br>Graduation | Office of the Provost<br>Cynthia Williams 713-313-1136 | Booked | SG | 16279<br>52407 |
| 12:00 PM | 12:00 PM | 11:59 PM | 11:59 PM | REC Basketball Court<br>Winter Commencement - Alum<br>Reception | Banquet Style (1000)<br>Reception | Office of the Provost<br>Cynthia Williams 713-313-1136 | Booked | SG | 16279<br>52420 |
| 5:00 PM | 5:00 PM | 7:00 PM | 7:00 PM | SSLC President's Lounge<br>Fall 2022 Graduation Reception<br>**Equipment Rental**<br>7  Round Tables 60'<br>1  Tables 6'<br>60  Chairs (Student Center) | Banquet Style (70)<br>Reception | Graduate School<br>Mahesh Vanjani 713-313-7786 | Booked | SG | 16322<br>52928 |
| 5:30 PM | 5:30 PM | 8:30 PM | 8:30 PM | REC Recreation Pool<br>Means Aquatics- Team Practice | As is (25)<br>Training | Recreation & Wellness Center<br>Jeremy Lewis 832-687-7233<br>Candess Tucker 713 313-6813 | Booked | | 16316<br>52734 |
| 6:00 PM | 6:00 PM | 8:00 PM | 8:00 PM | UM University Museum<br>the Angola Independence Day<br>**Equipment Rental**<br>20  Chairs (Grey Folding)<br>20  Chairs (Grey Folding)<br>8  Cocktail Tables (Full Height)<br>**Personnel**<br>1  Police Officer<br>1  Security Officer<br>1  Custodians | Reception Style (100)<br>Reception | Houston-Luanda Sister City<br>Association<br>Fatima Benge 832-477-3245<br>Leola F. Marshall 713-313-7136 | Booked | LM | 16179<br>52038 |
| **Friday, December 09, 2022** | | | | | | | | | |
| 6:00 AM | 6:00 AM | 10:00 PM | 10:00 PM | HPE Basketball Court<br>Winter Commencement Activities | (1000)<br>Graduation | Office of the Provost<br>Cynthia Williams 713-313-1136 | Booked | SG | 16279<br>52408 |

11/28/2022 7:00 AM

EMS Enterprise

# Texas Southern University, Student Center

**Setup Worksheet**

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Friday, December 09, 2022** | | | | | | | | | |
| 12:00 PM | 12:00 PM | 11:59 PM | 11:59 PM | REC Basketball Court<br>Winter Commencement - Alum Reception<br>**Equipment Rental**<br>10  Cocktail Tables (Full Height)<br>25  Round Tables 72"<br>26  Tables 6'<br>**Special Instructions**<br>Total of 26 Tables needed<br>- 12 for food<br>- 10 for Colleges<br>- 2 for DJ<br>- 2 for T-Shirts<br>***Request to Cover Rec Center Floor -- In House*** | Banquet Style (1000)<br>Reception | Office of the Provost<br>Cynthia Williams  713-313-1136 | Booked | SG | 16279<br>52421 |
| 5:30 PM | 5:30 PM | 8:00 PM | 8:00 PM | REC E-Sports LAB<br>E-Sports Club Practice | As Is (20)<br>Training | Recreation & Wellness Center<br>Jeremy Lewis 832-687-7233 | Booked | | 16224<br>52143 |
| 5:30 PM | 5:30 PM | 8:30 PM | 8:30 PM | REC Recreation Pool<br>Means Aquatics- Team Practice | As Is (25)<br>Training | Recreation & Wellness Center<br>Jeremy Lewis 832-687-7233<br>Candess Tucker 713 313-8813 | Booked | | 16316<br>52735 |
| 6:00 PM | 6:00 PM | 8:30 PM | 8:30 PM | REC Rec Studio<br>ASA Dance Practice | (20)<br>Dance | Recreation & Wellness Center<br>Jeremy Lewis 832-687-7233<br>Adetomisola Olurebi | Booked | | 16130<br>51934 |
| **Saturday, December 10, 2022** | | | | | | | | | |
| 6:00 AM | 6:00 AM | 1:00 PM | 1:00 PM | FC BLDG<br>Winter Commencement - Student Check-In | As Is (1000)<br>Graduation | Office of the Provost<br>Cynthia Williams  713-313-1136 | Booked | SG | 16279<br>52419 |
| 6:00 AM | 6:00 AM | 10:00 PM | 10:00 PM | HPE Basketball Court<br>Winter Commencement Activities | (1000)<br>Graduation | Office of the Provost<br>Cynthia Williams  713-313-1136 | Booked | SG | 16279<br>52406 |
| 6:00 AM | 6:00 AM | 1:00 PM | 1:00 PM | HPE HPE 102<br>Winter Commencement - Room for Volunteers | As Is (200)<br>Graduation | Office of the Provost<br>Cynthia Williams  713-313-1136 | Booked | SG | 16279<br>52414 |

11/28/2022 7:00 AM

EMS Enterprise

# Texas Southern University, Student Center

Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Saturday, December 10, 2022** | | | | | | | | | |
| 6:00 AM | 6:00 AM | 1:00 PM | 1:00 PM | HPE HPE 106 Winter Commencement - Room for Band | As is (200) Graduation | Office of the Provost Cynthia Williams 713-313-1136 | Booked | SG | 16279 52412 |
| 6:00 AM | 6:00 AM | 1:00 PM | 1:00 PM | HPE HPE 108 Winter Commencement - Food Set Up - Rooms 108 and 102 | As is (200) Graduation | Office of the Provost Cynthia Williams 713-313-1136 | Booked | SG | 16279 52415 |
| 6:00 AM | 6:00 AM | 12:00 PM | 12:00 PM | HPE HPE 155 Winter Commencement - Faculty Breakfast Location | Banquet Style (200) Graduation | Office of the Provost Cynthia Williams 713-313-1136 | Booked | SG | 16279 52410 |
| 6:00 AM | 6:00 AM | 12:00 PM | 12:00 PM | HPE HPE 162 Winter Commencement Ceremony - Overflow | Banquet Style (200) Graduation | Office of the Provost Cynthia Williams 713-313-1136 | Booked | SG | 16279 52411 |
| 6:00 AM | 6:00 AM | 1:00 PM | 1:00 PM | SSLC President's Lounge Winter Commencement - Gathering / Breakfast Before Commencement **Equipment Rental** 8  Round Tables 72' 80  Chairs (Student Center) 4  Table 8' | Banquet Style (100) Graduation | Office of the Provost Cynthia Williams 713-313-1136 | Booked | SG | 16279 52726 |
| 9:00 AM | 9:00 AM | 5:00 PM | 5:00 PM | JHJ Room 127 Top Ladies / Top Teens Meetings | (50) Organization Meeting | Top Ladies of Distinction, Humble Intercntrl Chptr | Booked | | 15925 50822 |
| 9:00 AM | 9:00 AM | 5:00 PM | 5:00 PM | JHJ Room 128 Top Ladies / Top Teens Meetings | (50) Organization Meeting | Top Ladies of Distinction, Humble Intercntrl Chptr | Booked | | 15925 50532 |
| **Monday, December 12, 2022** | | | | | | | | | |
| 11:00 AM | 11:00 AM | 1:00 PM | 1:00 PM | HH Lobby Holiday Spirit Week - Hannah Hall Terrace **Equipment Rental** 4  Table 8' | Outside (300) Social Event | President's Office Kia Harper 713-313-1179 | Booked | SG | 16276 52401 |

11/28/2022 7:00 AM                                          EMS Enterprise

Texas Southern University, Student Center

Setup Worksheet

**Monday, December 12, 2022**

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID Book ID |
|---|---|---|---|---|---|---|---|---|---|
| 5:30 PM | 5:30 PM | 8:30 PM | 8:30 PM | REC Recreation Pool<br>Means Aquatics- Team Practice | As is (25)<br>Training | Recreation & Wellness Center<br>Jeremy Lewis 832-687-7233<br>Candess Tucker 713 313-6813 | Booked | | 16316<br>52736 |

11/28/2022 7:00 AM

EMS Enterprise

Texas Southern University, Student Center

Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Friday, April 01, 2022** | | | | | | | | | |
| 9:00 AM | 9:00 AM | 4:30 PM | 4:30 PM | SSLC Tiger Room<br>Opening Program and Poster Set-UP<br>**AV Rentals**<br>  1  L C D Projector<br>  1  PA System<br>  1  Cordless Microphone<br>**Equipment Rental**<br>  11  Round Tables 72"<br>  110  Chairs (Grey Folding) | (100)<br>Social Event | Office of Research<br>Kimberly Lofton 713-313-4245 | Booked | | 15704<br>49785 |
| 11:00 AM | 11:00 AM | 1:00 PM | 1:00 PM | SSLC 1st & 2nd floor Lobby<br>Student Giveaway | (50)<br>Social Event | Baptist Student Ministry*<br>Dillen Scott 8328609945<br>Jaime Russell 8328609945 | Booked | ES1 | 15643<br>49891 |
| 6:30 PM | 6:30 PM | 9:30 PM | 9:30 PM | REC Basketball Court<br>Club Basketball Playoff Game | Boardroom Style (150)<br>Women's Basketball | Recreation & Wellness Center<br>Jeremy Lewis 832-687-7233<br>Jessica Allen 713 313-6881 | Booked | | 15760<br>49941 |
| **Saturday, April 02, 2022** | | | | | | | | | |
| 10:00 AM | 10:00 AM | 4:00 PM | 4:00 PM | Plaza Plaza<br>HBCU COLLEGE DAY<br>**Personnel**<br>  4  Custodial Supervisor<br>  6  Police Officer<br>  1  Event Manager | Outside (500)<br>Social Event | Career and Professional Development Center<br>Andreaus Boise 7541<br>Andreaus Boise 7541 | Booked | ES1 | 15802<br>50267 |
| 10:00 AM | 10:00 AM | 2:00 PM | 2:00 PM | UM University Museum<br>Community Artist 'Collective<br>**Equipment Rental**<br>  25  Chairs (Grey Folding)<br>  4  Round Tables 72"<br>  2  Table 8' | Display with chairs (24)<br>Retreat | University Museum<br>Leola Faye Marshall 713-313-7136<br>Dr. Alvia J Wardlaw 713-313-7127 | Booked | | 15733<br>49913 |

◄ ►  *Indicates event starts on previous day or ends on next day*

4/1/2022 7:01 AM

EMS Enterprise

Page 1 of 24

# Texas Southern University, Student Center

## Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Saturday, April 02, 2022** | | | | | | | | | |
| 6:00 PM | 6:00 PM | 11:00 PM | 11:00 PM | HPE Basketball Court Probate | (4000) Social Event | Greek Life James Durant 713-313-7759 James Durant 713-313-7759 | Booked | ES1 | 15798 50263 |
| | | | | Equipment Rental 5  Table 8' 8  Chairs (Student Center) Special Instructions 4 Tables for Clothing vendor 1 Table for DJ 2 Chairs per vendor | | | | | |
| **Sunday, April 03, 2022** | | | | | | | | | |
| 8:00 AM | 8:00 AM | 11:00 PM | 12:00 AM ▶ | GSA Auditorium Mister & Miss TSU Pageant | (900) Pageant | Mr. & Miss TSU Committee James Durant 713-313-7759 | Booked | KE | 15728 49902 |
| 9:00 AM | 9:00 AM | 5:00 PM | 5:00 PM | REC Basketball Court HCSBC Championship Tournament | (150) Women's Basketball | Recreation & Wellness Center Jeremy Lewis 832-687-7233  SJ Grimitt 713 313-6885 | Booked | | 15685 49754 |
| **Monday, April 04, 2022** | | | | | | | | | |
| 7:00 AM | 8:00 AM | 10:00 PM | 11:00 PM | GSA Auditorium Pageant Rehearsal | As is (40) Rehearsal | Mr. & Miss TSU Committee James Durant 713-313-7759 | Booked | KE | 15728 49896 |
| 11:00 AM | 11:00 AM | 2:00 PM | 2:00 PM | JHJ Lobby 1 Business Org Fair | (15) Social Event | Future Bankers Club Mekhi Brooks 7608160491 Muriel Fuches | Booked | ES2 | 15684 49753 |
| | | | | Equipment Rental 8  Table 8' Special Instructions 16 CHAIRS | | | | | |
| 12:00 PM | 12:00 PM | 12:45 PM | 12:45 PM | REC Rec Studio Group Ex- Tiger Spin & Cycle | (15) Class | Recreation & Wellness Center Jeremy Lewis 832-887-7233 | Booked | | 15531 48440 |

◀ ▶   Indicates event starts on previous day or ends on next day

4/1/2022 7:01 AM

EMS Enterprise

Page 2 of 24

# Texas Southern University, Student Center

## Setup Worksheet

### Monday, April 04, 2022

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| 1:00 PM | 1:00 PM | 3:00 PM | 3:00 PM | SSLC Tiger Walk<br>Ambassador Week<br>Equipment Rental<br>2 Table 8'<br>4 Chairs (Student Center) | (30)<br>Social Event | Division of Enrollment Services / Student Success<br>Ky'Angela Manning 469-515-9269<br>Arlen Sims | Booked | ES1 | 15787<br>50250 |
| 1:00 PM | 1:00 PM | 2:00 PM | 2:00 PM | REC Rec Studio<br>Group Ex -Yoga (Mondays) | (25)<br>Group Meeting | Recreation & Wellness Center<br>Jeremy Lewis 713-313-6897<br>Aaron Luke 713-313-6812 | Booked | | 15509<br>48377 |
| 1:30 PM | 1:30 PM | 3:00 PM | 3:00 PM | SSLC Tiger Room<br>Organization Workshop | Audience style (200)<br>Workshop | Office of Student Life<br>Jasmine Bellard 3377641194<br>James Durant 713-313-7759 | Booked | ES1 | 15731<br>49906 |
| 5:00 PM | 5:00 PM | 7:30 PM | 7:30 PM | SMNSC AUD 201<br>APhA-TPA Competitions | (25)<br>Competition | American Pharmacists Association*<br>Bonnie Dang 8328311275 | Booked | ES1 | 15734<br>49914 |
| 5:30 PM | 5:30 PM | 7:00 PM | 7:00 PM | EDU Auditorium<br>Neophyte Education Orientation<br>Equipment Rental<br>1 Table 8' | Audience style (200)<br>Student Orientation | Greek Life<br>Jasmine Bellard 3377641194<br>James Durant 713-313-7759 | Booked | ES1 | 15730<br>49905 |
| 6:30 PM | 6:30 PM | 9:00 PM | 9:00 PM | SSLC Room 207 A<br>Sister Series: Financial Literacy<br>A/V Rentals<br>1 L C D Projector<br>1 Projection Screen | (60)<br>Social Event | Big Sister Little Sister<br>Desmonae McCloud 281-451-8850<br>Caprice Wright | Booked | ES1 | 15740<br>49920 |
| 7:30 PM | 7:30 PM | 9:00 PM | 9:00 PM | REC Basketball Court 1<br>Practice- Women Volleyball Club | Boardroom Style (15)<br>Volleyball | Recreation & Wellness Center<br>Jeremy Lewis 832-687-7233 | Booked | | 15519<br>48407 |
| 7:30 PM | 7:30 PM | 9:00 PM | 9:30 PM | REC Rec Studio<br>Sensation Practice | (20)<br>Rehearsal | Recreation & Wellness Center<br>Jeremy Lewis 832-687-7233 | Booked | | 15534<br>48465 |

◄ ► Indicates event starts on previous day or ends on next day

# Texas Southern University, Student Center

Setup Worksheet

## Tuesday, April 05, 2022

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| 7:00 AM | 8:00 AM | 10:00 PM | 11:00 PM | GSA Auditorium / Pageant Rehearsal | As is (40) / Rehearsal | Mr. & Miss TSU Committee / James Durant 713-313-7759 | Booked | KE | 15728 / 49897 |
| 9:30 AM | 9:30 AM | 12:00 PM | 12:00 PM | SSLC President's Lounge / Extended Cabinet Meeting | Banquet Style (40) / Group Meeting | President's Office / Kia Harper 713-313-1179 | Booked | KE | 15444 / 47359 |

**Equipment Rental**
 8 Round Tables 72"
 3 Table 8'
 43 Chairs (Student Center)

**Special Instructions**
Please setup the room with 8 large round tables with 5 chairs per table along with 2 long tables for food and 1 long table at fornt of room with 3 chairs

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| 10:00 AM | 10:00 AM | 2:00 PM | 2:00 PM | SSLC 1st & 2nd floor Lobby / Harris County Navigators | (30) / Information Table | Student Health Center / Feloniece Davis-Marsaw 7133137822 | Booked | | 15384 / 47249 |

**Equipment Rental**
 1 Tables 6'
 2 Chairs (Student Center)

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| 10:00 AM | 10:00 AM | 2:00 PM | 2:00 PM | SSLC Room 237 / Harris County Navigators | As is (30) / Information Table | Student Health Center / Feloniece Davis-Marsaw 7133137822 | Booked | | 15384 / 47248 |

**Equipment Rental**
 2 Chairs (Student Center)
 1 Tables 6'

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| 10:00 AM | 10:00 AM | 12:00 PM | 12:00 PM | EDU Auditorium / Campus Tour | (100) / Speech/Presentation | TRIO Talent Search / Donta Titus 7133137277 | Booked | ES1 | 15746 / 49926 |

**A/V Rentals**
 1 Cordless Microphone
 1 Projection Screen
 1 L C D Projector

◄ ► *Indicates event starts on previous day or ends on next day*

# Texas Southern University, Student Center

## Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Tuesday, April 05, 2022** | | | | | | | | | |
| 12:00 PM | 12:00 PM | 1:00 PM | 1:00 PM | SSLC Room 238 | Audience style (60) | Career and Professional Development Center | Booked | ES1 | 15755 |
| | | | | Info Session | Workshop | Andreaus Boise 713-313-7346 | | | 49936 |
| | | | | Special Instructions | | John Reere | | | |
| | | | | Parking | | | | | |
| 1:00 PM | 1:00 PM | 3:30 PM | 3:30 PM | GSA GSA Steps | Audience style (200) | University Program Council | Booked | ES1 | 15672 |
| | | | | The PEACE Movement | Social Event | Zariah Watson 2816527960 | | | 49730 |
| | | | | | | Cameron Flowers 7133138705 | | | |
| 5:30 PM | 5:30 PM | 7:30 PM | 7:30 PM | REC Rec Center 212 | (15) | Recreation & Wellness Center | Booked | | 15529 |
| | | | | ACE Personal Training Prep Course | Class | Jeremy Lewis 832-687-7233 | | | 48428 |
| 6:00 PM | 6:00 PM | 7:30 PM | 7:30 PM | SSLC Tiger Room | Audience style (50) | Division of Enrollment Services / Student Success | Booked | ES1 | 15789 |
| | | | | Ambassador Week | Social Event | Ky'Angela Manning 469-515-9269 | | | 50252 |
| | | | | Equipment Rental | | Arlen Sims 7133138874 | | | |
| | | | | 3 Table 8' | | | | | |
| | | | | 50 Chairs (Student Center) | | | | | |
| | | | | Special Instructions | | | | | |
| | | | | FOOD | | | | | |
| 6:00 PM | 6:00 PM | 9:00 PM | 9:00 PM | SSLC Room 237 | As is (40) | TSU Young Life | Booked | KE | 15487 |
| | | | | TSU Young Life | Group Meeting | Eric Flowers 832-969-4097 | | | 47498 |
| 6:30 PM | 6:30 PM | 8:30 PM | 8:30 PM | SSLC Room 207 A | (60) | Big Sister Little Sister | Booked | ES1 | 15761 |
| | | | | General Body Meeting | Group Meeting | Desmonae McCloud 281-451-8850 | | | 49942 |
| | | | | A/V Rentals | | Caprice Wright | | | |
| | | | | 1 Projection Screen | | | | | |
| | | | | 1 L C D Projector | | | | | |

◄ ► *Indicates event starts on previous day or ends on next day*

Texas Southern University, Student Center

Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID Book ID |
|-----------|-----------|---------|---------|------------------|--------------------|-------|--------|-----|----------------|
| **Wednesday, April 06, 2022** | | | | | | | | | |
| 5:00 AM | 5:00 AM | 5:45 AM | 5:45 AM | REC Rec Studio<br>Group Ex. - Tiger Spin & Cycle (Wed.) | (15)<br>Class | Recreation & Wellness Center<br>Jeremy Lewis 832-867-7233 | Booked | | 15532<br>48450 |
| 7:00 AM | 8:00 AM | 10:00 PM | 11:00 PM | GSA Auditorium<br>Pageant Rehearsal | As is (40)<br>Rehearsal | Mr. & Miss TSU Committee<br>James Durant 713-313-7759 | Booked | KE | 15728<br>49898 |
| 9:00 AM | 9:00 AM | 5:00 PM | 5:00 PM | SSLC Tiger Walk<br>Campaigning<br>Equipment Rental<br>30 Tables 6' | (150)<br>Social Event | Student Government Association<br>Election Commission<br>Dylan Getwood 7133136705<br>Cameron Flowers | Booked | ES1 | 15795<br>50258 |
| 10:00 AM | 10:00 AM | 12:00 PM | 12:00 PM | SSLC Lobby 1<br>Sexual Assault Awareness | (2)<br>Information Table | University Counseling Center<br>Mynika Collins 713.313.7800 | Booked | | 15785<br>50248 |
| 11:00 AM | 11:00 AM | 1:00 PM | 1:00 PM | SSLC 1st & 2nd floor Lobby<br>Student Giveaway | (50)<br>Social Event | Baptist Student Ministry*<br>Dillen Scott 8328600945<br>Jaime Russell 8328600945 | Booked | ES1 | 15643<br>49692 |
| 11:00 AM | 11:00 AM | 1:00 PM | 1:00 PM | SSLC Lobby 1<br>Employer Table Talks<br>Equipment Rental<br>4 Chairs (Student Center)<br>2 Tables 6' | (75)<br>Information Table | Career and Professional<br>Development Center<br>Andreaus Boise 713-313-7346 | Booked | | 15435<br>47328 |

◄ ► *Indicates event starts on previous day or ends on next day*

# Texas Southern University, Student Center

Setup Worksheet

Page 7 of 24

**Wednesday, April 06, 2022**

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| 11:50 AM | 11:50 AM | 2:00 PM | 2:00 PM | SSLC Tiger Room<br>Luncheon<br>**A/V Rentals**<br>1 Audio Cable<br>1 PA System<br>1 Projection Screen<br>1 Microphone stand<br>**Additional Expenses**<br>**Equipment Rental**<br>12 Round Tables 60'<br>8 Table 8'<br>**Special Instructions**<br>DJ<br>Food<br>Parking<br>STAGE | Banquet Style (90)<br>Luncheon | Athletics Department<br>Ameecia Romeo 4230 | Booked | ES1 | 15652<br>49706 |
| 12:00 PM | 12:00 PM | 1:00 PM | 1:00 PM | SSLC Room 207 A<br>Collegiate 100 General Body | Classroom Style (50)<br>Group Meeting | Collegiate 100 Black Men & Women*<br>Khris Singletary 3054678015<br>Darnell Joseph 713.313.6203 | Booked | ES1 | 15668<br>49726 |
| 12:00 PM | 12:00 PM | 1:00 PM | 1:00 PM | University Towers Outside Porch<br>Ambassador Week<br>**Equipment Rental**<br>2 Table 8'<br>4 Chairs (Student Center) | (100)<br>Social Event | Division of Enrollment Services / Student Success<br>Ky'Angela Manning 469-515-9269<br>Arlen Sims 7133138874 | Booked | ES1 | 15790<br>50253 |
| 1:30 PM | 1:30 PM | 3:00 PM | 3:00 PM | SSLC Tiger Walk<br>Ambassador Week<br>**Equipment Rental**<br>4 Chairs (Student Center)<br>2 Stage 8 X 4<br>2 Table 8' | Outside (150)<br>Social Event | Division of Enrollment Services / Student Success<br>Ky'Angela Manning 469-515-9269<br>Arlen Sims | Booked | ES1 | 15791<br>50254 |

◄ ►   *Indicates event starts on previous day or ends on next day*

4/1/2022 7:01 AM

EMS Enterprise

# Texas Southern University, Student Center

Setup Worksheet

## Wednesday, April 06, 2022

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| 2:00 PM | 2:00 PM | 4:00 PM | 4:00 PM | SSLC Lobby 1<br>Tabling<br><br>Equipment Rental<br> 1 Tables 6'<br> 2 Chairs (Grey Folding) | (50)<br>Information Table | Young Democrats<br>Dajiana Tisby 469-748-8014<br>Clifford Castleberry | Booked | ES1 | 15682<br>49750 |
| 2:00 PM | 2:00 PM | 4:00 PM | 4:00 PM | SSLC Lobby 1<br>Tabling<br><br>Equipment Rental<br> 1 Tables 6'<br> 4 Chairs (Grey Folding) | (50)<br>Information Table | Young Democrats<br>Dajiana Tisby 469-748-8014<br>Clifford Castleberry | Booked | ES1 | 15711<br>49794 |
| 2:30 PM | 2:30 PM | 4:30 PM | 4:30 PM | EDU Auditorium<br>Pathway to 30: Freshman Roundup<br>A/V Rentals<br> 1 Projection Screen<br> 1 L C D Projector<br> 1 Audio Cable<br> 1 PA System<br> 1 Cordless Microphone<br>Equipment Rental<br> 1 Podium<br>Special Instructions<br> FOOD | Audience style (150)<br>Group Meeting | Student Academic Support Services<br>Caprice Wright 1318 | Booked | ES1 | 15745<br>49925 |
| 3:00 PM | 3:00 PM | 5:00 PM | 5:00 PM | BJML Auditorium 114<br>TSU BJMLSPA Honors Program<br>Equipment Rental<br> 8 Round Tables 60'<br> 5 Tables 6'<br> 80 Chairs (Grey Folding) | Banquet Style (150)<br>Group Meeting | Barbara Jordan & Mickey Leland Public Affairs<br>Richelle Jones 713-313-4886 | Booked | ES1 | 15803<br>50268 |

◀ ▶   Indicates event starts on previous day or ends on next day

EMS Enterprise

# Texas Southern University, Student Center

Setup Worksheet

**Wednesday, April 06, 2022**

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| 3:00 PM | 3:00 PM | 5:30 PM | 5:30 PM | SSLC Room 207 A | Audience style (12) | Student Government Association | Booked | KE | 15198 |
| | | | | SGA Senate meeting | Group Meeting | Deangelo Cotter 936-204-6811 | | | 46926 |
| | | | | Equipment Rental | | | | | |
| | | | | 12  Chairs (Student Center) | | | | | |
| | | | | 3  Table 8' | | | | | |
| | | | | 2  Tables 6' | | | | | |
| 4:00 PM | 4:00 PM | 6:00 PM | 6:00 PM | SSLC Tiger Walk | Audience style (80) | Student Government Association | Booked | ES1 | 15794 |
| | | | | | | Election Commission | | | |
| | | | | Battle of the Plans | Social Event | Dylan Getwood 7133136705 | | | 50257 |
| | | | | | | Cameron Flowers | | | |
| | | | | A/V Rentals | | | | | |
| | | | | 1  PA System | | | | | |
| | | | | 1  Cordless Microphone | | | | | |
| | | | | Equipment Rental | | | | | |
| | | | | 3  Table 8' | | | | | |
| | | | | 80  Chairs (Student Center) | | | | | |
| | | | | 1  Podium | | | | | |
| | | | | 1  Stage 8 X 4 | | | | | |
| 6:00 PM | 6:00 PM | 8:00 PM | 8:00 PM | SSLC Room 237 | As is (40) | Office of Diversity Equity and | Booked | ES1 | 15655 |
| | | | | | | Inclusion | | | |
| | | | | Culture Appropriation vs. | Group Meeting | Shareen Nicholson 713-313-6778 | | | 49709 |
| | | | | Appreciation | | | | | |
| | | | | A/V Rentals | | | | | |
| | | | | 1  Projection Screen | | | | | |
| 6:30 PM | 6:30 PM | 8:30 PM | 8:30 PM | EDU Auditorium | As is (20) | TSU Debate Team* | Booked | KE | 15475 |
| | | | | TSU Debate Team (General | Group Meeting | Brynn White 562-841-3103 | | | 47473 |
| | | | | Meeting) | | | | | |
| 6:45 PM | 6:45 PM | 9:00 PM | 9:00 PM | REC Basketball Court 2 | Boardroom Style (100) | Recreation & Wellness Center | Booked | | 15512 |
| | | | | Club Volleyball game vs PV | Volleyball | Jeremy Lewis 832-687-7233 | | | 48383 |

◄ ►  *Indicates event starts on previous day or ends on next day*

EMS Enterprise

4/1/2022 7:01 AM

# Texas Southern University, Student Center

Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID Book ID |
|-----------|-----------|---------|---------|------------------|--------------------|-------|--------|----|----------------|
| **Wednesday, April 06, 2022** | | | | | | | | | |
| 7:00 PM | 7:00 PM | 8:00 PM | 9:00 PM | SSLC Game room<br>All Shades Of Blues | (110)<br>Social Event | TSU Royal Court<br>Rayah Wynn 314-420-2130<br>James Durant 713-313-7759 | Booked | ES1 | 15654<br>49708 |
| | | | | **A/V Rentals**<br>1   Audio Cable<br>**Equipment Rental**<br>13   Round Tables 60'<br>100   Chairs (Student Center)<br>**Special Instructions**<br>DJ<br>FOOD | | | | | |
| 7:30 PM | 7:30 PM | 9:00 PM | 9:00 PM | REC Rec Studio<br>Sensation Practice | (20)<br>Rehearsal | Recreation & Wellness Center<br>Jeremy Lewis 832-687-7233 | Booked | | 15534<br>48466 |
| 7:49 PM | 7:49 PM | 9:49 PM | 9:49 PM | SSLC President's Lounge<br>Induction | Banquet Style (45)<br>Ceremony | TSU Debate Team*<br>Brynn White 562-841-3103<br>Dr. Gloria Batiste-Roberts<br>713-313-7205 | Booked | ES1 | 15656<br>49710 |
| | | | | **A/V Rentals**<br>1   Audio Cable<br>1   L C D Projector<br>1   Cordless Microphone<br>1   PA System<br>1   Projection Screen<br>**Equipment Rental**<br>15   Table 8'<br>50   Chairs (Student Center)<br>**Special Instructions**<br>FOOD | | | | | |

◄ ► *Indicates event starts on previous day or ends on next day*

4/1/2022 7:01 AM

EMS Enterprise

# Texas Southern University, Student Center

Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Wednesday, April 06, 2022** | | | | | | | | | |
| 8:00 PM | 8:00 PM | 10:00 PM | 10:00 PM | GSA GSA Steps<br>Springfest Countdown<br><br>**A/V Rentals**<br>1 L C D Projector<br>1 PA System<br>1 Projection Screen<br>1 Microphone stand<br>1 Audio Cable<br>**Equipment Rental**<br>2 Tables 6'<br>**Special Instructions**<br>DJ | (100)<br>Social Event | University Program Council<br>Delani Mixon 4696156671<br>Cameron Flowers 7133136705 | Booked | ES1 | 16653<br>49707 |
| **Thursday, April 07, 2022** | | | | | | | | | |
| 7:00 AM | 8:00 AM | 10:00 PM | 11:00 PM | GSA Auditorium<br>Pageant Rehearsal | As is (40)<br>Rehearsal | Mr. & Miss TSU Committee<br>James Durant 713-313-7759 | Booked | KE | 15728<br>49899 |
| 9:00 AM | 9:00 AM | 5:00 PM | 5:00 PM | SSLC Tiger Walk<br>Campaigning<br><br>**Equipment Rental**<br>30 Tables 6' | (150)<br>Social Event | Student Government Association<br>Election Commission<br>Dylan Getwood 7133136705<br>Cameron Flowers | Booked | ES1 | 15795<br>50259 |
| 10:00 AM | 10:00 AM | 2:00 PM | 2:00 PM | SSLC Lobby 1<br>Texas Rising Tabling<br><br>**Equipment Rental**<br>2 Chairs (Grey Folding)<br>2 Tables 6' | (50)<br>Information Table | Texas Rising<br>Jalen Jackson 4694633229<br>Jacobie Backstrom 4694633229 | Booked | ES1 | 15715<br>48815 |
| 12:00 PM | 12:00 PM | 2:00 PM | 2:00 PM | SSLC Tiger Room<br>QEP Presents: Play 8 Community<br>Engagement<br>**Equipment Rental** | Audience style (200)<br>Speech/Presentation | Quality Enhancement Plan<br>Gregory Maddox 7133137889 | Booked | ES1 | 15722<br>49890 |

◀ ▶   Indicates event starts on previous day or ends on next day

EMS Enterprise

4/1/2022 7:01 AM

# Texas Southern University, Student Center

Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Thursday, April 07, 2022** | | | | | | | | | |
| 3:00 PM | 3:00 PM | 6:00 PM | 6:00 PM | NL New Library 531<br>Faculty Senate Monthly Meeting<br>Equipment Rental<br>•  1 Table 6' | (27)<br>Luncheon | Faculty Senate<br>Gertrude Florent 7133137124 | Booked | ES1<br>• | 15819<br>50296 |
| 4:00 PM | 4:00 PM | 4:45 PM | 4:45 PM | REC Rec Studio<br>Group Ex.- Hip Hop Aerobics | (20)<br>Class | Recreation & Wellness Center<br>Jeremy Lewis 832-687-7233<br>Aaron Luke 713-313-6812 | Booked | | 15535<br>48478 |
| 5:00 PM | 5:00 PM | 6:30 PM | 6:30 PM | SSLC Tiger Walk<br>Ambassador Week<br><br>Equipment Rental<br>  2  Table 8'<br>  4  Chairs (Student Center) | Outside (50)<br>Social Event | Division of Enrollment Services /<br>Student Success<br>Ky'Angela Manning 469-515-9269<br>Arlen Sims | Booked | ES1 | 15792<br>50255 |
| 6:00 PM | 6:00 PM | 8:00 PM | 8:00 PM | SMNSC 2nd Floor Lobby<br>Rx Connect Preview Day | (75)<br>Seminar | College of Pharmacy & Health<br>Science<br>Montrell Releford 7133136694 | Booked | ES1<br>• | 15810<br>50279 |
| 6:00 PM | 6:00 PM | 8:00 PM | 8:00 PM | SMNSC 3rd Floor Lobby<br>Rx Connect Preview Day | (75)<br>Seminar | College of Pharmacy & Health<br>Science<br>Montrell Releford 7133136694 | Booked | ES1<br>• | 15810<br>50280 |
| 6:00 PM | 6:00 PM | 8:00 PM | 8:00 PM | SMNSC Lobby<br>Rx Connect Preview Day | (75)<br>Seminar | College of Pharmacy & Health<br>Science<br>Montrell Releford 7133136694 | Booked | ES1<br>• | 15810<br>50278 |
| 6:00 PM | 6:00 PM | 7:00 PM | 7:00 PM | SSLC Game room<br>Financial Literacy<br><br>A/V Rentals<br>  1  Cordless Microphone<br>  1  Projection Screen | (25)<br>Social Event | Sigma Gamma Rho Sorority, Inc.*<br>Jada Matin 3463209260<br>Shawn Clemons | Booked | ES1 | 15753<br>49934 |
| 6:00 PM | 6:00 PM | 7:30 PM | 7:30 PM | SSLC Room 238<br>General Body Meeting | Audience style (10)<br>Group Meeting | Young Democrats<br>Daijana Tisby 469-748-8014<br>Clifford Castleberry | Booked | ES1 | 15683<br>49752 |

• _Indicates event starts on previous day or ends on next day_

4/1/2022 7:01 AM                    EMS Enterprise

# Texas Southern University, Student Center

**Setup Worksheet**

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Thursday, April 07, 2022** | | | | | | | | | |
| 6:30 PM | 6:30 PM | 9:00 PM | 9:00 PM | SSLC Room 207 A Self-Confidence Workshop | (60) Workshop | Big Sister Little Sister Desmonae McCloud 281-461-8850 Caprice Wright | Booked | ES1 | 15763 49944 |
| | | | | A/V Rentals | | | | | |
| | | | | 1 Projection Screen 1 L C D Projector | | | | | |
| **Friday, April 08, 2022** | | | | | | | | | |
| 7:00 AM | 8:00 AM | 10:00 PM | 11:00 PM | GSA Auditorium Pageant Rehearsal | As is (40) Rehearsal | Mr. & Miss TSU Committee James Durant 713-313-7759 | Booked | KE | 15728 49900 |
| 6:30 PM | 6:30 PM | 7:30 PM | 7:30 PM | SSLC Game room Paint and Network | (50) Social Event | Collegiate 100 Black Men & Women* Khris Singletary 3054678015 Darnell Joseph 713.313.6203 | Booked | ES1 | 15673 49731 |
| **Saturday, April 09, 2022** | | | | | | | | | |
| 7:00 AM | 8:00 AM | 10:00 PM | 11:00 PM | GSA Auditorium Pageant Rehearsal | As is (40) Rehearsal | Mr. & Miss TSU Committee James Durant 713-313-7759 | Booked | KE | 15728 49901 |
| 8:30 AM | 8:30 AM | 2:00 PM | 2:00 PM | EDU Auditorium Preview Day(s) | (300) Campus Tour | Office of Outreach Services Eddie Davenport 713-313-1866 | Booked | ES1 | 15804 50269 |
| | | | | Equipment Rental | | | | | |
| | | | | 3 Cocktail Tables (Cafe Height) 1 Table 8' 4 Chairs (Grey Folding) | | | | | |

◄ ►  *Indicates event starts on previous day or ends on next day*

4/1/2022 7:01 AM

EMS Enterprise

Page 13 of 24

# Texas Southern University, Student Center

Setup Worksheet

**Saturday, April 09, 2022**

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| 11:00 AM | 11:00 AM | 2:00 PM | 2:00 PM | SSLC President's Lounge<br>Brother's Brunch<br><br>**A/V Rentals**<br>1 Cordless Microphone<br>1 Audio Cable<br>1 Projection Screen<br>**Equipment Rental**<br>1 Podium<br>1 Stage 8 X 4 | Banquet Style (80)<br>Social Event | Greek Life<br>Jasmine Bellard 337-764-1194<br>James Durant 713-313-7759 | Booked | ES1 | 15676<br>49734 |
| 11:00 AM | 11:00 AM | 4:00 PM | 4:00 PM | SSLC Room 207 A<br>Undergraduate Workshop<br><br>**A/V Rentals**<br>1 Projection Screen<br>1 L C D Projector<br>**Equipment Rental**<br>1 Tables 6'<br>4 Chairs (Student Center) | (40)<br>Workshop | Zeta Phi Beta Sorority, Inc.*<br>Tracy Wells 3463606697<br>Vivian Cook | Booked | ES1 | 15739<br>49919 |
| 11:00 AM | 11:00 AM | 3:00 PM | 3:00 PM | SSLC Tiger Room<br>Undergraduate Workshop<br><br>**A/V Rentals**<br>1 Audio Cable<br>1 Cordless Microphone<br>1 PA System<br>1 Projection Screen<br>**Equipment Rental**<br>1 Podium<br>1 Stage 8 X 4<br>3 Tables 6'<br>60 Chairs (Student Center) | (60)<br>Workshop | Zeta Phi Beta Sorority, Inc.*<br>Tracy Wells 346-360-8891<br>Vivian Cook | Booked | ES1 | 15658<br>49712 |
| 12:30 PM | 2:30 PM | 4:30 PM | 6:30 PM | BJML Auditorium 114<br>EC Worker Training Graduation | Audience style (65)<br>Graduation | School of Public Affairs<br>Paulette Lynch 7133137348 | Booked | ES1 | 15729<br>49903 |

◄ ► *Indicates event starts on previous day or ends on next day*

4/1/2022 7:01 AM

EMS Enterprise

Page 14 of 24

# Texas Southern University, Student Center

## Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Saturday, April 09, 2022** | | | | | | | | | |
| 4:00 PM | 4:00 PM | 6:00 PM | 6:00 PM | BJML Foyer<br>EC Worker Training Graduation<br>**Equipment Rental**<br>   7 Round Tables 72"<br>* 3 Cocktail Tables (Cafe Height)<br>* 3 Table 8' | Banquet Style (65)<br>Graduation | School of Public Affairs<br>Paulette Lynch 7133137348 | Booked | EC | 15729<br>49904 |
| **Sunday, April 10, 2022** | | | | | | | | | |
| 8:00 AM | 8:00 AM | 11:00 PM | 12:00 AM ▶ | GSA Auditorium<br>Mister & Miss TSU Pageant<br><br>**A/V Rentals**<br>  1 Projection Screen<br>  1 L C D Projector<br>  1 Audio Cable<br>  1 PA System<br>  1 Cordless Microphone<br>**Equipment Rental**<br>  6 Tables 6'<br>  1 Podium<br>  1 Stage 8 X 4 | (900)<br>Pageant | TSU Royal Court<br>James Durant 713-313-7759<br>James Durant 713-313-7759 | Booked | ES1 | 15659<br>49713 |
| 11:00 AM | 11:00 AM | 4:00 PM | 4:00 PM | SSLC Room 238<br>Mister Miss TSU Interviews<br><br>**Equipment Rental**<br>  1 Podium<br>  1 Tables 6'<br>  8 Chairs (Student Center) | (20)<br>Interview | TSU Royal Court<br>James Durant 713-313-7759<br>James Durant 713-313-7759 | Booked | ES1 | 15737<br>49917 |

◀ ▶ Indicates event starts on previous day or ends on next day

4/1/2022 7:01 AM      EMS Enterprise

# Texas Southern University, Student Center

Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Sunday, April 10, 2022** | | | | | | | | | |
| 3:30 PM | 3:30 PM | 5:30 PM | 5:30 PM | SSLC President's Lounge | Banquet Style (40) | TSU Royal Court | Booked | ES1 | 15738 |
| | | | | Pageant Reception | Reception | James Durant 713-313-7759 | | | 49918 |
| | | | | | | James Durant 713-313-7759 | | | |
| | | | | **Equipment Rental** | | | | | |
| | | | | 1  Podium | | | | | |
| | | | | 3  Round Tables 60' | | | | | |
| | | | | 5  Cocktail Tables (Cafe Height) | | | | | |
| | | | | **Special Instructions** | | | | | |
| | | | | FOOD | | | | | |
| **Monday, April 11, 2022** | | | | | | | | | |
| 12:00 PM | 12:00 PM | 1:00 PM | 1:00 PM | SSLC Room 237 | Banquet Style (35) | Baptist Student Ministry* | Booked | | 15440 |
| | | | | Bible Study | Social Event | Jaime Russell 8328609945 | | | 47347 |
| | | | | **Equipment Rental** | | | | | |
| | | | | 1  Tables 6' | | | | | |
| | | | | 2  Table 8' | | | | | |
| | | | | 5  Round Tables 60' | | | | | |
| | | | | 35  Chairs (Student Center) | | | | | |
| 12:00 PM | 12:00 PM | 12:45 PM | 12:45 PM | REC Rec Studio | (15) | Recreation & Wellness Center | Booked | | 15531 |
| | | | | Group Ex- Tiger Spin & Cycle | Class | Jeremy Lewis 832-687-7233 | | | 48441 |
| 1:00 PM | 1:00 PM | 2:00 PM | 2:00 PM | REC Rec Studio | (25) | Recreation & Wellness Center | Booked | | 15509 |
| | | | | Group Ex -Yoga (Mondays) | Group Meeting | Jeremy Lewis 713-313-6897 | | | 48378 |
| | | | | | | Aaron Luke 713-313-6812 | | | |
| 3:00 PM | 3:00 PM | 4:30 PM | 4:30 PM | JHJ Room 113 | As Is (30) | Future Bankers Club | Booked | ES1 | 15784 |
| | | | | Crypto to the Moon | Social Event | Kameron Pree 832-982-3104 | | | 50247 |
| | | | | **A/V Rentals** | | John Scroggins | | | |
| | | | | 1  Projection Screen | | | | | |
| | | | | 1  Audio Cable | | | | | |
| | | | | 1  Cordless Microphone | | | | | |

◄ ►  *Indicates event starts on previous day or ends on next day*

EMS Enterprise

4/1/2022 7:01 AM

Page 16 of 24

# Texas Southern University, Student Center

## Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Monday, April 11, 2022** | | | | | | | | | |
| 6:00 PM | 6:00 PM | 7:00 PM | 7:00 PM | SSLC Room 237 | Banquet Style (65) | National Society of Leadership & Success* | Booked | ES1 | 15805 |
| | | | | Orientation | Organization Meeting | Precious Givens 5048105257 | | | 50271 |
| | | | | Equipment Rental | | | | | |
| | | | | 5 Round Tables 72' | | | | | |
| | | | | 65 Chairs (Student Center) | | | | | |
| 7:30 PM | 7:30 PM | 9:00 PM | 9:00 PM | REC Rec Studio | (20) | Recreation & Wellness Center | Booked | | 15534 |
| | | | | Sensation Practice | Rehearsal | Jeremy Lewis 832-687-7233 | | | 48467 |
| **Tuesday, April 12, 2022** | | | | | | | | | |
| 7:00 AM | 8:00 AM | 10:00 PM | 11:00 PM | GSA Auditorium | Audience style (500) | College of Liberal Arts and Behavioral Science | Booked | ES1 | 15813 |
| | | | | Monterey Jazz @ TSU | Festival | Brian Perez 4106008879 | | * | 50284 |
| 8:00 AM | 8:00 AM | 5:00 PM | 5:00 PM | SSLC President's Lounge | Banquet Style (30) | President's Office | Booked | | 15700 |
| | | | | Office of the President | Group Meeting | Kia Harper 713-313-1179 | | | 49773 |
| 11:00 AM | 11:00 AM | 1:30 PM | 1:30 PM | SSLC Lobby 1 | Display with chairs (2) | College of Pharmacy & Health Science | Booked | | 15806 |
| | | | | CREC | Information Table | Evelyn Class 7133131233 | | | 50272 |
| | | | | Equipment Rental | | Veronica Ajewole 7133137433 | | | |
| | | | | • 1 Table 8' | | | | | |
| | | | | • 2 Chairs (Student Center) | | | | | |
| 5:30 PM | 5:30 PM | 7:30 PM | 7:30 PM | REC Rec Center 212 | (15) | Recreation & Wellness Center | Booked | | 15529 |
| | | | | ACE Personal Training Prep Course | Class | Jeremy Lewis 832-687-7233 | | | 48430 |
| 5:55 PM | 5:55 PM | 8:00 PM | 8:00 PM | BJML Auditorium 114 | Conference Style (20) | Iota Phi Theta Fraternity, Inc.* | Booked | | 15793 |
| | | | | Informational Meeting | Interest Meeting | Mark Stanley 214-842-3789 | | | 50256 |
| | | | | | | Jay Cummings | | | |

◄ ►  *Indicates event starts on previous day or ends on next day*

4/1/2022 7:01 AM

EMS Enterprise

Page 17 of 24

Texas Southern University, Student Center

Setup Worksheet

**Wednesday, April 13, 2022**

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID Book ID |
|---|---|---|---|---|---|---|---|---|---|
| 5:00 AM | 5:00 AM | 5:45 AM | 5:45 AM | REC Rec Studio Group Ex. - Tiger Spin & Cycle (Wed.) | (15) Class | Recreation & Wellness Center Jeremy Lewis 832-687-7233 | Booked | | 15532 48451 |
| 7:00 AM | 8:00 AM | 10:00 PM | 11:00 PM | GSA Auditorium Monterey Jazz @ TSU | Audience style (500) Festival | College of Liberal Arts and Behavioral Science Brian Perez 4106038879 | Booked | ES1 | 15813 50285 |
| 8:00 AM | 8:00 AM | 5:00 PM | 5:00 PM | SSLC President's Lounge Office of the President | Banquet Style (30) Group Meeting | President's Office Kia Harper 713-313-1179 | Booked | | 15700 49774 |
| 10:00 AM | 10:00 AM | 3:00 PM | 3:00 PM | SSLC Lobby 1 Financial Aid Day Party **Equipment Rental** 1 Table 8' 4 Chairs (Student Center) **Special Instructions** DJ | (150) Information Table | Office of Student Finacial Assitance Andrea Livingston 7133137841 | Booked | ES1 | 15754 49935 |
| 11:00 AM | 11:00 AM | 1:00 PM | 1:00 PM | SSLC 1st and 2nd floor Lobby Student Giveaway | (50) Social Event | Baptist Student Ministry* Dillen Scott 8328608945 Jaime Russell 8328608945 | Booked | ES1 | 15643 49693 |
| 11:00 AM | 11:00 AM | 1:00 PM | 1:00 PM | SSLC Lobby 1 Employer Table Talks **Equipment Rental** 4 Chairs (Student Center) 2 Tables 6' | (75) Information Table | Career and Professional Development Center Andreaus Boise 713-313-7346 | Booked | | 15435 47329 |
| 12:00 PM | 12:00 PM | 1:00 PM | 1:00 PM | SSLC Room 238 CPDC Helizberg Diamond Info Session | Audience style (100) Seminar | Career and Professional Development Center Andreaus Boise 713-313-7346 | Booked | ES1 | 15750 49931 |
| 1:00 PM | 1:00 PM | 3:00 PM | 3:00 PM | SSLC 1st & 2nd floor Lobby Research Recruitment Table | Display with chairs (5) Recruitment | Health & Kinesiology* Dominique Guinn 713-313-7584 | Booked | | 15796 50260 |

◄ ► Indicates event starts on previous day or ends on next day

4/1/2022 7:01 AM

EMS Enterprise

Page 18 of 24

Texas Southern University, Student Center

Setup Worksheet

**Wednesday, April 13, 2022**

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID Book ID |
|---|---|---|---|---|---|---|---|---|---|
| 3:00 PM | 3:00 PM | 5:30 PM | 5:30 PM | SSLC Room 207 A<br>SGA Senate meeting<br>**Equipment Rental**<br>12 Chairs (Student Center)<br>3 Table 8'<br>2 Tables 6' | Audience style (12)<br>Group Meeting | Student Government Association<br>Deangelo Cotter 936-204-8811 | Booked | KE | 15198<br>46927 |
| 6:00 PM | 6:00 PM | 8:00 PM | 8:00 PM | SSLC Room 207 B<br>The Power of Self Love<br>**A/V Rentals**<br>1 Projection Screen<br>1 L C D Projector<br>1 Cordless Microphone<br>**Equipment Rental**<br>1 Podium | Audience style (35)<br>Social Event | Collegiate 100 Black Men &<br>Women*<br>Khris Singletary 3054678015<br>Khris Singletary 3054678015 | Booked | ES1 | 15800<br>50265 |
| 6:00 PM | 6:00 PM | 8:00 PM | 8:00 PM | MLK Room 104<br>Open Mic | No chairs (1)<br>Social Event | TSU Poetry Club<br>Mekhi Brooks 760-616-0491<br>Jennifer Julian 760-616-0491 | Booked | KE | 15797<br>50262 |
| 6:30 PM | 6:30 PM | 8:30 PM | 8:30 PM | EDU Auditorium<br>TSU Debate Team (General<br>Meeting) | As is (20)<br>Group Meeting | TSU Debate Team*<br>Brynn White 562-841-3103 | Booked | KE | 15475<br>47474 |
| 7:00 PM | 7:00 PM | 9:00 PM | 9:00 PM | SSLC Tiger Room<br>Campus Pals Interest Meeting<br>**A/V Rentals**<br>1 Projection Screen<br>1 L C D Projector<br>1 PA System<br>**Equipment Rental**<br>3 Tables 6'<br>70 Chairs (Student Center) | Audience style (70)<br>Group Meeting | Campus Pals<br>Jacob Bey 8722431381<br>James Durant 7759 | Booked | ES1 | 15762<br>49943 |

▸ ▸  *Indicates event starts on previous day or ends on next day*

4/1/2022 7:01 AM

EMS Enterprise

# Texas Southern University, Student Center

Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID<br>Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Wednesday, April 13, 2022** | | | | | | | | | |
| 7:30 PM | 7:30 PM | 9:00 PM | 9:00 PM | REC Rec Studio<br>Sensation Practice | (20)<br>Rehearsal | Recreation & Wellness Center<br>Jeremy Lewis 832-887-7233 | Booked | EC | 15534<br>48468 |
| **Thursday, April 14, 2022** | | | | | | | | | |
| 10:00 AM | 10:00 AM | 4:00 PM | 4:00 PM | SSLC Tiger Room<br>Low-Dose Aspirin CE<br>**A/V Rentals**<br>    1 PA System<br>    1 Projection Screen<br>    1 L C D Projector<br>    1 Cordless Microphone<br>    1 Corded Microphone<br>**Equipment Rental**<br>    120 Chairs (Student Center)<br>    2 Tables 6' | Audience style (120)<br>Seminar | College of Pharmacy & Health<br>Science<br>Kaylie Johnson 713-313-1290 | Booked | KE | 15741<br>49921 |
| 10:00 AM | 10:00 AM | 2:00 PM | 2:00 PM | SSLC Lobby 1<br>Texas Rising Tabling<br>**Equipment Rental**<br>    2 Chairs (Grey Folding)<br>    2 Tables 6' | (50)<br>Information Table | Texas Rising<br>Jalen Jackson  4694633229<br>Jacobie Backstrom 4694633229 | Booked | ES1 | 15715<br>49816 |
| 10:30 AM | 10:30 AM | 11:30 AM | 11:30 AM | REC Rec Studio<br>AIM- Studio Aerobic Class | Display with chairs (50)<br>Class | Recreation & Wellness Center<br>Jeremy Lewis 832-887-7233<br>Lena Bean 713 313-7635 | Booked | | 15717<br>49825 |
| 10:30 AM | 10:30 AM | 11:30 AM | 11:30 AM | REC Recreation Pool<br>AIM- Aquatics Class | (40)<br>Class | Recreation & Wellness Center<br>Jeremy Lewis 832-887-7233<br>Lena Bean 713 313-7635 | Booked | | 15718<br>49856 |
| 12:00 PM | 12:00 PM | 1:00 PM | 1:00 PM | SSLC President's Lounge<br>Luxury Week | Audience style (100)<br>Workshop | Career and Professional<br>Development Center<br>Andreaus Boise 713-313-7346 | Booked | ES1 | 15756<br>49837 |

**◂ ▸**  *Indicates event starts on previous day or ends on next day*

4/1/2022 7:01 AM

EMS Enterprise

Page 20 of 24

# Texas Southern University, Student Center

## Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Thursday, April 14, 2022** | | | | | | | | | |
| 4:00 PM | 4:00 PM | 4:45 PM | 4:45 PM | REC Rec Studio<br>Group Ex.- Hip Hop Aerobics | (20)<br>Class | Recreation & Wellness Center<br>Jeremy Lewis 832-887-7233<br>Aaron Luke 713-313-6812 | Booked | EC | 15535<br>48480 |
| 5:30 PM | 5:30 PM | 9:00 PM | 9:00 PM | SSLC President's Lounge<br>Faculty Recital<br><br>A/V Rentals<br>   1 Audio Cable<br>   1 Cordless Microphone<br>Special Instructions<br>   30 CHAIRS | Audience style (20)<br>Social Event | Department of Music<br>Kyla Smith 713-313-7337<br>Dr. Jason Oby 713-313-7263 | Booked | ES1 | 15698<br>49769 |
| 6:00 PM | 6:00 PM | 8:00 PM | 8:00 PM | SSLC Room 237<br>Loteria Day<br>A/V Rentals<br>   1 Projection Screen<br>Special Instructions<br>   FOOD | Classroom Style (40)<br>Group Meeting | Office of Diversity Equity and Inclusion<br>Shareen Nicholson 713-313-6778 | Booked | | 15660<br>49714 |
| **Friday, April 15, 2022** | | | | | | | | | |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Billiards<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47939 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Bowling Alley<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47946 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Bowling Alley<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47947 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Bowling Alley<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47948 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Bowling Alley<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47949 |

↑ Indicates event starts on previous day or ends on next day

4/1/2022 7:01 AM

EMS Enterprise

Page 21 of 24

Texas Southern University, Student Center

Setup Worksheet

## Friday, April 15, 2022

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Bowling Alley<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47950 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Bowling Alley<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47951 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Cafeteria Whole<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47937 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Cafeteria/Ballroom<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47923 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Computer Lab<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47938 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Game room<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47921 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Lobby 1<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47919 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Lobby 1<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47924 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Lobby 1<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47925 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Lobby 1<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47926 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Lobby 1<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47927 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Lobby 1<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47928 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Lobby 15<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47933 |

�펠 ▲ ▼   Indicates event starts on previous day or ends on next day

# Texas Southern University, Student Center

## Setup Worksheet

### Friday, April 15, 2022

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Lobby 2 Black- Out Date | As is (1) Alumni Event | Office of Event Services Kala Ellis 7133131015 | Booked | KE | 15498 47922 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Lobby 2 Black- Out Date | As is (1) Alumni Event | Office of Event Services Kala Ellis 7133131015 | Booked | KE | 15498 47929 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Lobby 2 Black- Out Date | As is (1) Alumni Event | Office of Event Services Kala Ellis 7133131015 | Booked | KE | 15498 47930 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Lobby 2 Black- Out Date | As is (1) Alumni Event | Office of Event Services Kala Ellis 7133131015 | Booked | KE | 15498 47931 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Lobby 24 Black- Out Date | As is (1) Alumni Event | Office of Event Services Kala Ellis 7133131015 | Booked | KE | 15498 47934 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Ptl/Portico Black- Out Date | As is (1) Alumni Event | Office of Event Services Kala Ellis 7133131015 | Booked | KE | 15498 47920 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Room 207 B Black- Out Date | As is (1) Alumni Event | Office of Event Services Kala Ellis 7133131015 | Booked | KE | 15498 47941 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Room 213 Black- Out Date | As is (1) Alumni Event | Office of Event Services Kala Ellis 7133131015 | Booked | KE | 15498 47914 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Room 215 Black- Out Date | As is (1) Alumni Event | Office of Event Services Kala Ellis 7133131015 | Booked | KE | 15498 47932 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Room 220 Black- Out Date | As is (1) Alumni Event | Office of Event Services Kala Ellis 7133131015 | Booked | KE | 15498 47944 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Room 227 Black- Out Date | As is (1) Alumni Event | Office of Event Services Kala Ellis 7133131015 | Booked | KE | 15498 47915 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Room 229 Black- Out Date | As is (1) Alumni Event | Office of Event Services Kala Ellis 7133131015 | Booked | KE | 15498 47916 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Room 236 Black- Out Date | As is (1) Alumni Event | Office of Event Services Kala Ellis 7133131015 | Booked | KE | 15498 47945 |

◀ ▶  Indicates event starts on previous day or ends on next day

# Texas Southern University, Student Center

Setup Worksheet

## Friday, April 15, 2022

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Room 238<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47917 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Room 239<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47918 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Table Tennis<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47940 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC The Point<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47936 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Tiger Room<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47913 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Tiger Walk<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47935 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Tiger Walk 2<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47942 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Tiger Walk 3<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47943 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Tiger's Lair<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47912 |
| 1:00 PM | 1:00 PM | 3:00 PM | 3:00 PM | SSLC 1st & 2nd floor Lobby<br>Research Recruitment Table | Display with chairs (5)<br>Recruitment | Health & Kinesiology*<br>Dominique Guinn 713-313-7584 | Booked | | 15796<br>50261 |

◂ ▸   *Indicates event starts on previous day or ends on next day*

20

# Texas Southern University, Student Center

Setup Worksheet

| Res Start | Evt Start | Evt End | Res End | Location / Event | Setup / Event Type | Group | Status | EC | Res ID / Book ID |
|---|---|---|---|---|---|---|---|---|---|
| **Friday, April 15, 2022** | | | | | | | | | |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Room 238<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47917 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Room 239<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47918 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Table Tennis<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47940 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC The Point<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47936 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Tiger Room<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47913 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Tiger Walk<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47935 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Tiger Walk 2<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47942 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Tiger Walk 3<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47943 |
| 12:00 AM | 12:00 AM | 11:30 PM | 11:30 PM | SSLC Tiger's Lair<br>Black- Out Date | As is (1)<br>Alumni Event | Office of Event Services<br>Kala Ellis 7133131015 | Booked | KE | 15498<br>47912 |
| 1:00 PM | 1:00 PM | 3:00 PM | 3:00 PM | SSLC 1st & 2nd floor Lobby<br>Research Recruitment Table | Display with chairs (5)<br>Recruitment | Health & Kinesiology*<br>Dominque Guinn 713-313-7584 | Booked | | 15796<br>50261 |

◄ ►  *Indicates event starts on previous day or ends on next day*

4/1/2022 7:01 AM

EMS Enterprise

# Texas Southern University Police Department
# Patrol Bureau Schedule
# July 17 - July 23, 2022

**Day Shift**

| # | Name | Unit Number | 17-Jul Sunday | 18-Jul Monday | 19-Jul Tuesday | 20-Jul Wednesday | 21-Jul Thursday | 22-Jul Friday | 23-Jul Saturday |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Sgt. B. McCray | 34P01D | OFF | OFF | Schedule Sick | Schedule Sick | 7a-3p | VAC | 7a-3p |
| 2 | Sgt. I. Jones | 34P02D | 7a-3p | 7a-3p | 7a-3p | 7a-3p | 7a-3p | OFF | OFF |
| 1 | J. Sawyer | 34P11D | VAC | 7a-3p | 7a-3p | 7a-3p | 7a-3p | OFF | OFF |
| 2 | E. Goldman | 34P13D | DISP | OFF | OFF | DISP | DISP | DISP | DISP |
| 3 | N. Isaac | 34P12D | 7a-3p | 7a-3p | 7a-3p | OFF | OFF | 7a-3p | 7a-3p |
| 4 | B. Phillips | 34P14D | 7a-3p | 7a-3p | 7a-3p | 7a-3p | OFF | OFF | 7a-3p |

**Tiger Shift**

| # | Name | Unit Number | 17-Jul Sunday | 18-Jul Monday | 19-Jul Tuesday | 20-Jul Wednesday | 21-Jul Thursday | 22-Jul Friday | 23-Jul Saturday |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Sgt. D. Barnett | 34P02T | OFF | OFF | 7a-3p | 7a-3p | 7a-3p | 7a-3p | 7a-3p |
| 2 | Cpl. St. Romain | 34P10D | 7a-3p | 7a-3p | 7a-3p | 7a-3p | 7a-3p | OFF | OFF |
| 3 | Cpl. J. Howard | 34P13N | 7a-3p | 7a-3p | 7a-3p | 7a-3p | 7a-3p | OFF | OFF |
| 1 | C. Jones - Inv | 34I12 | OFF | Training | Training | Training | Training | Training | 7a-3p |
| 2 | T. Jones- Inv | 34I13 | OFF | Training | Training | Training | Training | Training | 7a-3p |
| 3 | D. Lawton | 34P20D | 7a-3p | 7a-3p | 7a-3p | 7a-3p | 7a-3p | OFF | OFF |
| 4 | C. Bell | 34P16D | 7a-3p | 7a-3p | OFF | OFF | 7a-3p | 7a-3p | 7a-3p |

**Evening Shift**

| # | Name | Unit Number | 17-Jul Sunday | 18-Jul Monday | 19-Jul Tuesday | 20-Jul Wednesday | 21-Jul Thursday | 22-Jul Friday | 23-Jul Saturday |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Sgt. B. Brown | 34P01E | OFF | OFF | 3p-11p | 3p-11p | 3p-11p | 3p-11p | 3p-11p |
| 1 | Cpl B. Auzenne | 34P18E | 3p-11p | 3p-11p | 3p-11p | 3p-11p | 3p-11p | OFF | OFF |
| 2 | Cpl N. Onubogu | 34P11E | OFF | OFF | 3p-11p | 3p-11p | 3p-11p | 3p-11p | 3p-11p |
| 3 | B. Cantu | 34P20E | 3p-11p | 3p-11p | 3p-11p | 3p-11p | 3p-11p | VAC | OFF |
| 4 | M. Robinson | 34P14E | OFF | OFF | 3p-11p | 3p-11p | 3p-11p | 3p-11p | 3p-11p |
| 5 | A. Bello | 34P15E | 3p-11p | 3p-11p | 3p-11p | OFF | OFF | 3p-11p | 3p-11p |
| 6 | A. Hinton | 34P12E | 3p-11p | 3p-11p | OFF | OFF | 3p-11p | 3p-11p | 3p-11p |
| 7 | A. Chambers | 34P19E | 3p-11p | 3p-11p | OFF | OFF | 3p-11p | VAC | 3p-11p |

**Night Shift**

| # | Name | Unit Number | 17-Jul Sunday | 18-Jul Monday | 19-Jul Tuesday | 20-Jul Wednesday | 21-Jul Thursday | 22-Jul Friday | 23-Jul Saturday |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Lt. Starks | 3410 | VAC | VAC | VAC | VAC | VAC | OFF | OFF |
| 2 | Sgt. John-Miller | 34P01N | OFF | OFF | 11p-7a | 11p-7a | 11p-7a | 11p-7a | 11p-7a |
| 1 | R. Martin | 34P16N | 11p-7a | 11p-7a | 11p-7a | 11p-7a | 11p-7a | OFF | OFF |
| 2 | B. Huseman | 34P10N | OFF | OFF | VAC | VAC | VAC | 11p-7a | 11p-7a |
| 3 | D. Castillo | 34P11N | 11p-7a | 11p-7a | 11p-7a | 11p-7a | OFF | OFF | 11p-7a |
| 4 | M. Collette | 34P14N | 11p-7a | 11p-7a | 11p-7a | OFF | OFF | 11p-7a | 11p-7a |
| 5 | C. West | 34P15N | 11p-7a | OFF | OFF | 11p-7a | 11p-7a | 11p-7a | 11p-7a |
| 6 | T. Campbell | 34P17N | FMLA | FMLA | OFF | OFF | FMLA | FMLA | FMLA |
| 7 | S. Walsh | | | | | | | | |

| | = | Schedule Adjustment | | = | HOL / RED Line |
|---|---|---|---|---|---|
| | = | Scheduled Leave | | = | Fill Ins |
| | | = | PPO | | |

# Texas Southern University Police Department
## Security Schedule

| # | Name | Unit Number | 17-Jul Sunday | 18-Jul Monday | 19-Jul Tuesday | 20-Jul Wednesday | 21-Jul Thursday | 22-Jul Friday | 23-Jul Saturday |
|---|------|-------------|-----|-----|-----|-----|-----|-----|-----|
| 1 | Sgt. Allison | 34S02D | 7a-3p | 7a-3p | 7a-3p | 7a-3p | 7a-3p | OFF | OFF |
| 2 | J. Holiday | 34M15 | OFF | OFF | 7a-3p | 7a-3p | 7a-3p | 7a-3p | 7a-3p |
| 3 | C. Hicks | 34M12 | 7a-3p | 7a-3p | 7a-3p | 7a-3p | 7a-3p | OFF | OFF |
| 4 | M. LeBlanc | 34S16D | OFF | 7a-3p | 7a-3p | 7a-3p | 7a-3p | 7a-3p | OFF |
| 5 | J. Hopkins | 34S10D | OFF | 7a-3p | 7a-3p | 7a-3p | 7a-3p | 7a-3p | OFF |
| 6 | C. Martinez | 34M17 | VAC | OFF | OFF | VAC | 7a-3p | 7a-3p | 7a-3p |
| 7 | J. Haile | 34S15D | OFF | 7a-3p | 7a-3p | 7a-3p | 7a-3p | 7a-3p | OFF |
| 8 | M. Edwards | 34M18 | 7a-3p | 7a-3p | OFF | OFF | 7a-3p | 7a-3p | 7a-3p |
| 9 | D. Hall | 34M19 | 7a-3p | 7a-3p | 7a-3p | 7a-3p | OFF | OFF | 7a-3p |
| 10 | G. Moore | 34M16 | 7a-3p | 7a-3p | OFF | OFF | 7a-3p | 7a-3p | 7a-3p |
| 11 | A. Barnes | 34S11D | 7a-3p | 7a-3p | 7a-3p | 7a-3p | 7a-3p | OFF | OFF |

| # | Name | Unit Number | 17-Jul Sunday | 18-Jul Monday | 19-Jul Tuesday | 20-Jul Wednesday | 21-Jul Thursday | 22-Jul Friday | 23-Jul Saturday |
|---|------|-------------|-----|-----|-----|-----|-----|-----|-----|
| 1 | | 34V15 | | | | | | | |
| 2 | Armitige | 34S12 | Vac | RDO | RDO | Vac | Vac | Vac | Vac |
| 3 | Alley | 34V16 | 3P-11P | RDO | RDO | 3P-11P | 3P-11P | 3P-11P | 3P-11P |
| 4 | Kofi | 34V12 | 3P-11P | 3P-11P | 3P-11P | 3P-11P | 3P-11P | RDO | RDO |
| 5 | Rodgers | 34V13 | 11P-7A | 11P-7A | 11P-7A | 11P-7A | 11P-7A | RDO | RDO |
| 6 | Sennette | 34V14 | 11P-7A | RDO | RDO | 11P-7A | 11P-7A | 11P-7A | 11P-7A |
| | Hopkins | | | 7A-3P | 7A-3P | | | | |

| # | Name | Unit Number | 17-Jul Sunday | 18-Jul Monday | 19-Jul Tuesday | 20-Jul Wednesday | 21-Jul Thursday | 22-Jul Friday | 23-Jul Saturday |
|---|------|-------------|-----|-----|-----|-----|-----|-----|-----|
| 1 | Sgt. Hilliard | 34S01 | OFF | OFF | 11p-7a | 11p-7a | 11p-7a | 11p-7a | 11p-7a |
| 2 | J. White | 34S14N | 11p-7a | 11p-7a | 11p-7a | 11p-7a | OFF | OFF | 11p-7a |
| 3 | H. Miller | 34S11N | 11p-7a | 11p-7a | 11p-7a | 11p-7a | 11p-7a | OFF | OFF |
| 4 | H. Brooks | 34S20N | OFF | OFF | 11p-7a | 11p-7a | 11p-7a | 11p-7a | 11p-7a |
| 5 | J. Ward | 34S19N | Vac | Vac | Vac | Vac | Vac | OFF | OFF |
| 6 | L. Davis | 34S21N | 11p-7a | 11p-7a | OFF | OFF | 11p-7a | 11p-7a | Vac |
| 7 | R. Hendricks | 34S16N | OFF | OFF | 11p-7a | 11p-7a | 11p-7a | 11p-7a | 11p-7a |
| 8 | R. Clayton | 34S13N | 11p-7a | 11p-7a | OFF | OFF | 11p-7a | 11p-7a | 11p-7a |
| 9 | E. Nkululeko | 34S15N | 11p-7a | 11p-7a | 11p-7a | 11p-7a | 11p-7a | OFF | OFF |
| 10 | S. Shelvin | 34S18E | 11p-7a | OFF | OFF | 11p-7a | 11p-7a | 11p-7a | 11p-7a |

| Color | | Meaning | Color | | Meaning |
|---|---|---|---|---|---|
| (yellow) | = | Schedule Adjustment | (red) | = | Red Line |
| (blue) | = | Scheduled Leave | (purple) | = | Scheduled Flex |
| (green) | = | PPO | | | |

| Name | Schedule: July 10-23, 2022 |
|------|----------------------------|
| Ada Rattiff | M-TH 730a-6p |
| Brittney Chaney | M-TH 730a-6p |
| Terry Gray | M-TH 730a-6p |
| Pauline Young | M-TH 730a-6p |
| Geneva Garcia | M-TH 730a-6p |
| Lee Dunn | M-TH 730a-6p |
| Ulysses January | M-TH 730a-6p |

# Texas Southern University Police Department
## Security Schedule

| # | Name | Unit Number | 10-Jul Sunday | 11-Jul Monday | 12-Jul Tuesday | 13-Jul Wednesday | 14-Jul Thursday | 15-Jul Friday | 16-Jul Saturday |
|---|------|-------------|--------|--------|---------|-----------|----------|--------|----------|
| 1 | Sgt. Allison | 34S02D | 7a-3p | 7a-3p | 7a-3p | 7a-3p | 7a-3p | OFF | OFF |
| 2 | J. Holiday | 34M15 | OFF | OFF | 7a-3p | VAC | 7a-3p | 7a-3p | VAC |
| 3 | C. Hicks | 34M12 | 7a-3p | 7a-3p | 7a-3p | 7a-3p | 7a-3p | OFF | OFF |
| 4 | M. LeBlanc | 34S16D | OFF | VAC | VAC | VAC | VAC | VAC | OFF |
| 5 | J. Hopkins | 34S10D | OFF | 7a-3p | 7a-3p | 7a-3p | 7a-3p | 7a-3p | OFF |
| 6 | C. Martinez | 34M17 | 7a-3p | OFF | OFF | VAC | VAC | VAC | VAC |
| 7 | J. Halle | 34S15D | OFF | 7a-3p | 7a-3p | 7a-3p | 7a-3p | 7a-3p | OFF |
| 8 | M. Edwards | 34M18 | 7a-3p | 7a-3p | OFF | OFF | 7a-3p | 7a-3p | 7a-3p |
| 9 | D. Hall | 34M19 | 7a-3p | 7a-3p | 7a-3p | 7a-3p | OFF | OFF | 7a-3p |
| 10 | G. Moore | 34M16 | 7a-3p | 7a-3p | OFF | OFF | 7a-3p | 7a-3p | 7a-3p |
| 11 | A. Barnes | 34S11D | 7a-3p | 7a-3p | 7a-3p | 7a-3p | 7a-3p | OFF | OFF |

| # | Name | Unit Number | 10-Jul Sunday | 11-Jul Monday | 12-Jul Tuesday | 13-Jul Wednesday | 14-Jul Thursday | 15-Jul Friday | 16-Jul Saturday |
|---|------|-------------|--------|--------|---------|-----------|----------|--------|----------|
| 1 | | 34V15 | | 7A-3P | 7A-3P | | | | |
| 2 | Armitige | 34S12 | 7A-3P | RDO | RDO | 7A-3P | 7A-3P | 7A-3P | 7A-3P |
| 3 | Alley | 34V16 | 3P-11P | RDO | RDO | 3P-11P | 3P-11P | 3P-11P | 3P-11P |
| 4 | Kofi | 34V12 | 3P-11P | 3P-11P | 3P-11P | 3P-11P | 3P-11P | RDO | RDO |
| 5 | Rodgers | 34V13 | 11P-7A | 11P-7A | 11P-7A | 11P-7A | 11P-7A | RDO | RDO |
| 6 | Sennette | 34V14 | 11P-7A | RDO | RDO | 11P-7A | 11P-7A | 11P-7A | 11P-7A |
| | | | | HOPKINS | HOPKINS | | | | |

| # | Name | Unit Number | 10-Jul Sunday | 11-Jul Monday | 12-Jul Tuesday | 13-Jul Wednesday | 14-Jul Thursday | 15-Jul Friday | 16-Jul Saturday |
|---|------|-------------|--------|--------|---------|-----------|----------|--------|----------|
| 1 | Sgt. Hilliard | 34S01 | OFF | OFF | 11p-7a | 11p-7a | 11p-7a | 11p-7a | 11p-7a |
| 2 | J. White | 34S14N | 11p-7a | 11p-7a | 11p-7a | 11p-7a | OFF | OFF | 11p-7a |
| 3 | H. Miller | 34S11N | 11p-7a | 11p-7a | 11p-7a | 11p-7a | 11p-7a | OFF | OFF |
| 4 | H. Brooks | 34S20N | OFF | OFF | 11p-7a | 11p-7a | 11p-7a | 11p-7a | 11p-7a |
| 5 | J. Ward | 34S19N | 11p-7a | 11p-7a | 11p-7a | 11p-7a | 11p-7a | OFF | OFF |
| 6 | L. Davis | 34S21N | 11p-7a | 11p-7a | OFF | OFF | 11p-7a | 11p-7a | 11p-7a |
| 7 | R. Hendricks | 34S16N | OFF | OFF | 11p-7a | 11p-7a | 11p-7a | 11p-7a | 11p-7a |
| 8 | R. Clayton | 34S13N | 11p-7a | 11p-7a | OFF | OFF | 11p-7a | 11p-7a | 11p-7a |
| 9 | E. Nkululeko | 34S15N | 11p-7a | 11p-7a | 11p-7a | 11p-7a | 11p-7a | OFF | OFF |
| 10 | S. Shelvin | 34S18E | 11p-7a | OFF | OFF | 11p-7a | 11p-7a | 11p-7a | 11p-7a |

| | | | |
|---|---|---|---|
| | = | Schedule Adjustment | |
| | = | Scheduled Leave | |

| | | |
|---|---|---|
| | = | Red Line |
| | = | Scheduled Flex |

| | | |
|---|---|---|
| | = | PPO |

**21**

# Texas Southern University

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | S | V | O | Mthly |

## Department of Public Safety

### ABSENCE RECORD

**Name**   JUJUANA SAWYER

**Title**  POLICE OFFICER

**Fiscal Year**   2021-2022

**Appointment Date:**   ????

T#  0 0 1 1 8 4 6 7

B#  1 5 6 9 6



Yellow-Weekend     Raspberry-Holiday     Campus Closed-Blue     S-Sick     V-Vacation     J-Jury Duty

# Texas Southern University

`1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 S | V | O  Mthly`

## Department of Public Safety

### ABSENCE RECORD

**Name**   LEROY DAVIS

**Title**   SECURITY OFFICER

**Fiscal Year**   2021-2022

**Appointment Date:**   ????

T#  0  0  7  1  3  8  0  7

B#  1  6  2  3  1  .



Yellow-Weekend     Raspberry-Holiday     Campus Closed-Blue     S-Sick     V-Vacation     J-Jury Duty

# Texas Southern University

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | S | V | O | Mthly |

## Department of Public Safety

### ABSENCE RECORD

**Name** CHEVON JONES

**Appointment Date:** ????

**Title** POLICE OFFICER

T# 0 0 6 6 8 2 5 7

**Fiscal Year** 2021-2022

B# 1 1 3 4 6



| | Yellow-Weekend | Raspberry-Holiday | Campus Closed-Blue | S-Sick | V-Vacation | J-Jury Duty |

Total: S 2  V 16  J 0

# Texas Southern University

## Department of Public Safety

### ABSENCE RECORD

Name  RONALD MARTIN

Title  POLICE OFFICER

Fiscal Year  2021-2022

Appointment Date: ????

T# 0 0 3 6 7 9 0 7

B# 1 5 6 9 8



Yellow-Weekend    Raspberry-Holiday    Campus Closed-Blue    S-Sick    V-Vacation    J-Jury Duty

**22**

**Young, Mary**

| | |
|---|---|
| **From:** | Young, Mary |
| **Sent:** | Wednesday, August 10, 2022 10:08 AM |
| **To:** | Nkululeko, Ekundayo; Scruggs, Chandra |
| **Cc:** | Etheridge, Leslie; Brown, Frederick; Brown, Bobby L. |
| **Subject:** | RE: EJ Compensation |

Good morning Officer Nkululeko,

I want to first thank you for assisting in areas where there were minimal staffing and in your case, no staffing. I have been aware of multiple events scheduled at the same time, in the same vicinity.
This has since been addressed with new processes in place.

Unfortunately, in the areas of security and police, it is common to multi-task when working an assignment. This I believe is what you did.
I definitely do not see this as "double-dipping". I am sure you are aware that "Double-Dipping is clearly unlawful and usually punishable by a fine.

I commend your efforts in stepping up and making sure both events went well. In the future, please make sure to contact the on-duty supervisor for immediate assistance. This should have been addressed at that moment.

Moving forward, most of what you have described will be addressed. We will outsource security services for the upcoming semester to fill in those areas where we are lacking personnel. This should bring some relief to you and those that work in your capacity. Your email confirmed that I need to have the extra help come on board very soon so that situations such as this, does not happen with anyone else.

Again, thank you for bringing this and all other matters to my attention and to the attention of the Command Staff.


**Have a wonderful day and stay safe!**
MY




-------- Original message --------
From: "Nkululeko, Ekundayo" <Ekundayo.Nkululeko@tsu.edu>
Date: 8/10/22 4:21 AM (GMT-06:00)
To: "Young, Mary" <Mary.Young@TSU.EDU>
Cc: "Etheridge, Leslie" <Leslie.Etheridge@TSU.EDU>, "Brown, Frederick" <Frederick.Brown@tsu.edu>, "Brown, Bobby L." <Bobby.Brown@tsu.edu>
Subject: EJ Compensation

Good morning,

I am writing regarding two (2) overtime events scheduled for 8/01 - 08/06/22, in lot E, from 8am to 6pm. **My labor was "double dipped," and I successfully performed the work of 5 people.** I actively took care of both events so that the

1

I am writing regarding two (2) overtime events scheduled for 8/01 - 08/06/22, in lot E, from 8am to 6pm. **My labor was "double dipped," and I successfully performed the work of 5 people.** I actively took care of both events so that the customers received the quality service they paid for. I was there for the department and the school. Respectfully, I am requesting that you now "show up for me."

I spoke with Mr. Victor Ihevukwu in payroll regarding "double dipping." According to him, the legal way around this issue would be one of two choices, either a higher, adjusted pay rate or a lump sum flat rate. You have repeatedly expressed a desire for fair compensation for our labor.  Below I've detailed why I deserve this consideration.

The first event was posted on 7/07/22, for the Law School; the second event posted approximately 7/27/22, was for HISD. I signed up 7/07/22, for the Law School. After approximately two weeks, mine was the only name on the signup sheet. At that point Mr. Ward also signed up.

On the first date of the events Officer Isaac was the only officer present on day shift. Each event was contracted for 2 security officers and two police officers. <u>No one</u> came to work the HISD event. **It was never my intention to work both events.** I went back and forth between the Law school staff and students and the HISD staff. I hustled from the south end of Lot E to the north end moving cones and directing traffic. I was inside and outside each building meeting with the director and various staff of HISD and Ms. Coleman of TMSL regarding their parking concerns. I also covered Lot K.  Day shift security stopped through and helped when and where possible, but they had their own responsibilities and directives.

I've spoken to my supervisor, Sgt. Brown, and to Lt. Starks. Again, to be clear, I'm asking for an increase to my special event rate previously quoted.  According to payroll this is a workable matter.  Thank you for your time and consideration.


Sincerely,
Sec. Officer Ekundayo Nkululeko

Get Outlook for iOS

3

## Young, Mary

| | |
|---|---|
| **From:** | Nkululeko, Ekundayo |
| **Sent:** | Saturday, August 13, 2022 3:21 PM |
| **To:** | Young, Mary |
| **Cc:** | Etheridge, Leslie; Brown, Frederick; Brown, Bobby A; Scruggs, Chandra; Starks, Jamal |
| **Subject:** | Re: EJ Compensation |

Hello Ma'am,

Thank you for the speedy reply. I read your response and I must take issue with your attempt to diminish twenty-four hours of grueling labor in the extreme Texas heat to mere multitasking. The service I performed over four (4) days greatly exceeded answering phones, sending emails, and making coffee. I'm not asking for favoritism or special treatment.

I wrote you with a sincere hope that we could resolve this matter utilizing the **alternatives provided by payroll.** I am not trying to circumvent the law, I am not attempting to commit fraud, or ethics violations. I am - seeking fair compensated for all services rendered. To do otherwise would be theft of service. I work within the law and the rules of the department. I did not sign-up to work two events simultaneously. Yet when called upon, I met the demands of the job without complaint or hesitation. Don't dismiss loyalty and dedication. Everyone in our department is watching. Take this opportunity to shine by demonstrating fairness.

In reference to your comment of double dipping, this department and command staff did not hesitate double dipping me. Payroll has provided 2 solutions within legal standards, and I have an additional option - comp time. I don't understand why you are hesitant to meet with payroll and I to work this thing through. The ethical issues have been removed; with that removed what is left.

**I signed up for:**

HISD - 8/01-2/22, 7am to 1pm
TMSL - 8/03-5/22, 7am to 1pm

**I worked:**

HISD - 8/01/22 - 8/04/22, 7am to 1pm
TMSL - 8/01/22 - 8/05/22, 7am to 1pm
Mayor's event    8/05/22, 7am to 1pm

1

Sincerely,
Officer Nkululeko

Get Outlook for iOS

**From:** Brown, Bobby L. <Bobby.Brown@tsu.edu>
**Sent:** Wednesday, August 10, 2022 10:17:44 AM
**To:** Nkululeko, Ekundayo <Ekundayo.Nkululeko@tsu.edu>
**Subject:** RE: EJ Compensation

Hello,

I think you intended this email for Sgt. Bobby A. Brown and not me.

Kind regards,

**Bobby Brown** (*Preferred Pronouns He, Him, His*)
*Title IX Coordinator*

**Be A Roaring Tiger and Roar Back Against Sexual Misconduct!**

 **TEXAS SOUTHERN UNIVERSITY**
**Division of Compliance**
**Office of Title IX**

Hannah Hall, Suite 106
3100 Cleburne Drive
Houston, TX 77004
Office: 713.313.1371 | Fax: 713.313.1906
Email: bobby.brown@tsu.edu
www.tsu.edu

*CONFIDENTIALITY DISCLAIMER: The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact Bobby Brown at 713.313.1383 and delete the material from your computer. Thank you.*

**From:** Nkululeko, Ekundayo
**Sent:** Wednesday, August 10, 2022 4:22 AM
**To:** Young, Mary <Mary.Young@TSU.EDU>
**Cc:** Etheridge, Leslie <Leslie.Etheridge@TSU.EDU>; Brown, Frederick <Frederick.Brown@tsu.edu>; Brown, Bobby L. <Bobby.Brown@tsu.edu>
**Subject:** EJ Compensation

Good morning,

**23**



**TEXAS SOUTHERN UNIVERSITY**

**TO:**        Mary Young – Chief of Police
               Executive Director of Department of Public Safety

**FROM:**    Fred Brown – Deputy Chief of Police
               Department of Public Safety

**DATE:**    August 08, 2022

**RE:**       Texas Southern University Department of Public Safety

---

Chief Young I am forwarding you this correspondence to voice my concern over the current state of our Police Department as it relates to the safety and welfare of the students that attend this historical university. As well as the Board of Regents, the President, faculty, and staff who give so much to ensure that this university prospers during these trying times. Although, I am fully aware that this great institution has gone through a myriad of setbacks, most notably a Pandemic, however true to this university's commitment to the students and the community it serves it is once again regaining its traction. Texas Southern University has withstood many obstacles since 1927, and has always managed to persevere, thanks to the leadership of the Board of Regents, the University President, and community stakeholders.

The fundamental mission of any police department is to protect life and property. Although the Covid-19 pandemic has challenged this mission in ways that we have never imagined, we remain committed to the mission.

I understand that several difficult decisions had to be made by university leadership for the best interest of the university, and that every department on campus had to "tighten their belt" so to speak, to ensure that the university moved in a positive way past this pandemic. Having said that every department for the most part was required to function with less-than-ideal resources. As, I know you are fully aware, this has been and continues to be a very difficult and challenging time for all departments. However, if you don't object, I would like to solely focus on the Police Department at this time.

Chief Young, in one of our first conversations we had when you first arrived at Texas Southern University as the Chief of Police. You emphasized you wanted to change the culture of policing on a college campus, you wanted our department to be reflective of Texas Southern University's nationally recognized standards. You tasked all current and in coming officers to be dedicated and committed to the university's, students, faculty, and staff. As you are quite aware, we lost a few officers during that time because they were unwilling to commit to educating our students on what not to do, when it came to the criminal justice system. No longer was it acceptable to incarcerate students without exercising discretion, but the focus shifted to graduating them instead. I can remember within two months of your tenure here at Texas Southern University, a student was observed at approximately 1:30am vandalizing a vending machine in one of the campus building. The student was observed and

identified on camera, and detained for arrest, however you tasked the arresting officer to "dig a little deeper" into the circumstances surrounding the incident. Later, it was discovered that the outer state student had vandalized the vending machine because he was hungry and did not know of any other resources available to him. Needless to say, the student was not transported to jail, but connected to University Student Services, which provided resources for the student.

This is just a snapshot of the changes that have been implemented since our arrival, not to mention the partnerships with community stakeholders, and other state and federal law enforcement agencies in order to promote and enhance the university's branding. We are consistently out in the community promoting the university, during the various holidays, ie.. Shop with Cop, and a Jock, participating in Thanksgiving dinner giveaways to the less fortunate, visiting local schools in the area. In addition to supporting places of worship throughout the community, and the community itself. Just within the last year, our department was able to secure a federal grant in order to bring community stakeholders, police officers, university students together to help "bridge the gap" between all parties. We are currently in the second session, and the Tiger Empowerment Center has been a resounding success.

Chief, you have recently informed me that we are now able to resume hiring police officer after an earlier hiring freeze. I cannot begin to express how grateful I am to Madame President for allowing us the opportunity to proceed with the hiring process. This welcomed news could not have come at a better time with the increase of crime that we have experienced over the last few years, not only on campus but throughout the city of Houston. With our department's rapidly declining numbers and being tasked with additional responsibilities our department is on the verge of facing some unprecedented challenges.

For example, although, we are clear to resume hiring, I know that you are fully aware that it takes somewhere between thirty days to six months for an officer to be prepared to perform their required duties. State mandated requirements must be met prior to the officer being employed, such as:

- Drug Screen
- Medical Exam
- Psychological evaluation
- Criminal Background Check
- DPS/FBI Fingerprint
- Proof of Citizenship
- Proof of Education
- Military Discharge (if applicable)
- Personnel History Statement
- Certified copies of any Court Dispositions
- Must show proficiency with a firearm

The above requirements can take quite a bit of time to complete, not to mention the time it takes to interview possible candidates for the position. Chief, I can recall interviewing approximately 15-20 candidates over a two-week period and we were only able to hire two applicants, because of questionable information in their backgrounds. In addition, each officer is required to complete a Field Training Program, which encompasses three two-week phases.

Once the police officer is hired and trained, he/she remains with our department for between 2 and 3.5 years, or in some rare cases longer before they decide to leave for another agency that offers more pay and incentives.  This of course causes our department to restart the whole hiring process over again, which points directly to our inability to retain qualified and trained personnel. The inability

to retain personnel, along with the salary scale implemented by nearby competing agencies has placed us in a quandary. This of course creates a dilemma for our department, where we are at times relegated to pursue officers with zero experience in policing or forced to give opportunities to former police officers that most agencies would not even give them the time of day, so to speak. Chief, Texas Southern University is better than that; our students, faculty, and university leadership deserve better.

Chief, as you are fully aware, for the most part we are not competing against other law enforcement agencies in other counties, or states, such as Dallas, Austin, San Antonio, Prairie View A&M, Sam Houston State University, just to name a few. Texas Southern University Police Department is currently competing with agencies that share our same geographical make up and similar crime elements. The agencies that we are competing with for competent personnel are The Houston Police Department, Harris County Sheriff's Office, Harris County Constable's, University of Houston Police Department Main Campus, Houston Community College Police Department.

In the past year several officers have resigned from our department, which is at times expected in any police department. However, because of the limited size of our agency, and the none stop day to day activities on campus it has become at times unsustainable. It appears our duties and responsibilities have increased at the university, and our voices and input has been reduce. For example, there have been several events on campus that require police support, where our department had zero knowledge about. This of course adds to the anxiety and a scheduling nightmare when we are forced to call employees in on their scheduled off day to ensure that the students and campus is protected. As you know requiring personnel to come to work on their scheduled off day is not a very popular thing to do, however it has become necessary, which has also led to some resignations. I am unsure how these unplanned events came into fruition, in the past any event held on the campus had to be scheduled two weeks in advance and coordinated through the Chief of Police to allow proper coverage and support. Currently it appears that anyone wishing to host an event on campus just does so, and as an afterthought we are notified. This of course is very troubling because we are tasked with the safety of all individuals who enter Texas Southern University, as well as the protection of the university's property and assets.

Below are list the resignations or pending resignations since 2020.

| Name: | Year Resigned: |
|---|---|
| Jeffry Lacroix | 2020 |
| De'shaun Skinner | 2020 |
| Angelic Santos | 2020 |
| Damien Bradshaw | 2020 |
| Jesse Lucero | 2020 |
| Ravon Foster | 2020 |
| Shawn Young | 2020 |
| Torray Robinson | 2020 |
| Angelle Waters | 2020 |
| John Toliver | 2020 |
| James Stanley | 2020 |
| Jocelyn Gonzalez | 2020 |
| Rharnan Shaifiqur | 2020 |
| Maria White | 2020 |

| | |
|---|---|
| Ashley Johnson | 2020 |
| Christian Lassiter | 2020 |
| Krystal Mills | 2021 |
| Brian Sical | 2021 |
| Gabrielle Simon | 2021 |
| Anthony Jackson | 2021 |
| Ronald Carroll | 2021 |
| Vivian Hutcherson | 2021 |
| William Bell | 2021 |
| Dexter Raymond | 2021 |
| Aron Velez | 2021 |
| Jerelle Davis | 2021 |
| Mathew Hemanth | 2021 |
| JoAnn Valverde | 2022 |
| Abdus Salaam | 2022 |
| Genell Jones | 2022 |
| Tyrone Treece | 2022 |
| Nnamdi Onubgu | 2022 |
| Ronald Martin | 2022** pending start date |
| Eugiene Takang | 2022 |
| James Bridges | 2022 |
| Chrystal Robinson-Davis | 2022 |
| Charles Sennette | 2022 |
| Patricia Briscoe | 2022 |
| Reginald Clayton | 2022 |

The above list does not include the list of employees that we have been forced to separate from the university because of inappropriate conduct.

The projection of 1800 incoming Freshman, along with the limited amount of on campus housing, the university has been forced to continue to outsource its student housing to satellite locations. This of course affects our department, because regardless of where our students are housed, we are responsible for their safety and welfare. This also places an additional burden on the department's personnel. I am not quite sure if any consideration is given to what's required by Clery when reporting or investigating certain incidents by the police. Chief, it may just be my perception, but I believe some individuals believe that being employed as a campus police officer is less dangerous than being employed by the Houston Police Department, the Harris County Sheriff's Office, or the Harris County Constable's Office. You know that's certainly not the case due to your 20-year tenure with the Houston Police Department, and I certainly know better from having retired from the Harris County Sheriff's Office after 29 years. The danger still exists, however our mission has changed to include the educating, protecting, and assisting in graduating Texas Southern University students.

Once again Chief I am very appreciative and thankful for the opportunity to resume hiring personnel for our department, however I will submit to you that we are not financially equipped to pursue the top applicants due to the surrounding agencies base pay, and incentives. As a small indicator for example, the University of Houston Main campus has just implemented a base pay scale for Police Officers of $63,000 with incentives with incremental pay increases, and they currently have approximately 20 openings. At Texas Southern University Police Department, our Police Officers

base pay is $48,000, and it remains $48,000, regardless of if you are a Police Officer fresh out of the academy or a Police Officer with over 17 plus years of experience.  For your review I have listed some of the agencies pay scales that we are currently competing against for personnel. Please keep

in mind that some of these agencies have increased their salaries even more prior to this document being submitted.

## HARRIS COUNTY CONSTABLE'S PRECINCT 1

| Classification | Service Mths | HRLY RATE | WKLY SALARY | BI-WKLY SALARY | MTHLY SALARY | ANNUAL SALARY |
|---|---|---|---|---|---|---|
| Captain I | 0-83 | 48.88 | $1,955.20 | $3,910.40 | $8,472.53 | $101,670 |
| Captain II | 84-119 | 51.30 | $2,052.00 | $4,104.00 | $8,892.00 | $106,704 |
| Captain SR | 120+ | 52.32 | $2,092.80 | $4,185.00 | $9,068.80 | $108,826 |
| Lieutenant I | 0-83 | 42.64 | $1,705.80 | $3,411.20 | $7,390.93 | $88,691 |
| Lieutenant II | 84-119 | 44.35 | $1,774.00 | $3,548.00 | $7,687.33 | $92,248 |
| Lieutenant SR | 120+ | 45.24 | $1,809.60 | $3,619.20 | $7,841.60 | $94,099 |
| Sergeant I | 0-83 | 37.90 | $1,516.00 | $3,032.00 | $6,569.00 | $78,832 |
| Sergeant II | 84-119 | 39.80 | $1,592.00 | $3,184.00 | $6,898.67 | $82,784 |
| Sergeant SR | 120+ | 40.60 | $1,624.00 | $3,248.00 | $7,037.33 | $84,448 |
| Deputy I | 0-47 | 25.22 | $1,008.80 | $2,017.60 | $4,371.47 | $52,458 |
| Deputy II | 48-83 | 26.99 | $1,079.60 | $2,159.20 | $4,678.27 | $56,139 |
| Deputy III | 84-119 | 28.59 | $1,143.60 | $2,287.20 | $4,955.60 | $59,467 |
| Deputy IV | 120-155 | 30.03 | $1,201.20 | $2,402.40 | $5,205.20 | $62,462 |
| Deputy V | 156-191 | 31.52 | $1,260.80 | $2,521.60 | $5,463.47 | $65,562 |
| Deputy VI | 192-239+ MPO | 33.73 | $1,349.20 | $2,698.40 | $5,846.53 | $70,158 |
| Deputy VII | 240+ | 35.60 | $1,424.00 | $2,848.00 | $6,170.67 | $74,048 |
| Comm.Off I | 0-23 | 19.55 | $782.00 | $1,564.00 | $3,388.67 | $40,664 |
| Comm.Off II | 24-35 | 21.10 | $844.00 | $1688.00 | $3,657.33 | $43,888 |
| Comm.Off III | 36-71 | 22.58 | $903.20 | $1806.40 | $3,913.87 | $46,966 |
| Comm.Off IV | 72-95 | 23.94 | $957.60 | $1,915.20 | $4,149.60 | $49,795 |
| Comm.Off V | 96-143 | 25.14 | $1,005.60 | $2,011.20 | $4,357.60 | $52,291 |
| Comm.Off Sr | 144+ | 25.62 | $1,024.80 | $2,049.60 | $4,440.80 | $53,290 |

## INCENTIVE PAY

### Peace Officer Certification

| | | | |
|---|---|---|---|
| Intermediate Peace Officer Certificate | $60.00 | $130 | $1,560 |
| Advanced Peace Officer Certificate | $131.54 | $285 | $3,420 |
| Master Peace Officer Certificate | $230.77 | $500 | $6,000 |

### Communications Officer Certification

| | | | |
|---|---|---|---|
| Intermediate Peace Officer Certificate | $23.00 | $50 | $600 |
| Advanced Peace Officer Certificate | $46.15 | $100 | $1,200 |
| Master Peace Officer Certificate | $69.23 | $150 | $1,800 |

## HOUSTON COMMUNITY COLLEGE POLICE DEPARTMENT

| Grade Level | Cadet LE 1 | Peace Officer LE2 | Corporal LE 3 | SR Peace LE4 | Lieutenant LE5 | Captain LE6 |
|---|---|---|---|---|---|---|
| Min Step 1 | $44,000 | $55,000 | $60,000 | $73,000 | $85,000 | $120,000 |
| Step 2 | | $56,100 | $61,200 | $74,460 | $86,700 | $122,400 |
| Step 3 | | $57,222 | $62,424 | $75,949 | $88,434 | $124,848 |
| Step 4 | | $58,366 | $63,672 | $77,468 | $90,203 | $127,345 |
| Step 5 | | $59,534 | $64,946 | $79,018 | $92,007 | $129,892 |
| Step 6 | | $60,724 | $66,245 | $80,598 | $93,847 | $132,490 |
| Step 7 | | $61,939 | $67,570 | $82,210 | $95,724 | $135,139 |
| Step 8 | | $63,178 | $68,921 | $83,854 | $97,638 | $137,842 |
| Step 9 | | $64,441 | $70,300 | $85,531 | $99,591 | $140,599 |
| Step 10* | | $65,730 | $71,706 | $87,242 | $101,583 | $143,411 |
| Step 11 | | $67,045 | $73,140 | $88,987 | $103,615 | $146,279 |
| Step 12 | | $68,386 | $74,602 | $90,766 | $105,687 | $149,205 |
| Step 13 | | $69,753 | $76,095 | $92,582 | $107,801 | $152,189 |
| Step 14 | | $71,148 | $77,616 | $94,433 | $109,957 | $155,233 |
| Step 15 | | $72,571 | $79,169 | $96,322 | $112,156 | $158,337 |
| Step 16 | | $74,023 | $80,752 | $98,248 | $114,399 | $161,504 |
| Step 17 | | $75,503 | $82,367 | $100,213 | $116,687 | $164,734 |
| Step 18 | | $77,013 | $84,014 | $102,218 | $119,021 | $168,029 |
| Step 19 | | $78,554 | $85,695 | $104,262 | $121,401 | $171,390 |
| Max Step 20 | | $80,125 | $87,409 | $106,347 | $123,829 | $174,817 |

- **Maximum step for all New Hires (FY2021-2022)**

## UNIVERSITY OF HOUSTON POLICE DEPARTMENT (MAIN CAMPUS)

| POSITION | MINIMUM SALARY |
|---|---|
| Police Officer | $63,000 |
| Senior Police Officer (+10 years' experience) | $72,000 |
| Corporal | $80,000 |
| Sergeant | $90,000 |
| Lieutenant | $102,000 |
| Captain | $116,000 |
| Assistant Chief of Police | $132,000 |
| Chief of Police | $189,000 – 220,000 |

Additional salary available based on years of experience.

### Incentives include:

- $100 a month for either 60 College hours or a TCOLE Intermediate Certificate
- $200 a month for either a Bachelor's Degree or a TCOLE Advanced Certificate
- $300 a month for either a Master's Degree or a TCLOE Master's Certificate
- $10 a month Hazardous Duty pay per year of completed state service

### Step Pay:

| YEARS OF SERVICE | PAY PER MONTH |
|---|---|
| 2 but less than 5 years | $100 |
| 5 but less than 10 years | $200 |
| 10 but less than 15 years | $300 |
| 15 but less than 20 years | $400 |
| 20 or more | $500 |

- *Educational Incentive pay begins after 1 year of employment. Hours and/or degrees must be obtained from a junior college, or university accredited by the Southern Association of Colleges and Schools, or its counterpart in other regions. An official, sealed transcript is required for the department to keep in the employee's file if the employee wishes to receive incentive pay for college hours or a degree.*

Chief, I am sure your aware that it requires every aspect of Texas Southern University's resource, for this university to continue to promote positive changes in the lives of others in the community, and not just from our department. It takes the planning, foresight, and voices of the Board of Regents, the energy, and promoting of the university from the President, and the commitment and dedication of the faculty and staff. In other words, it requires everyone to work in concert for this university to prosper.

During your tenure here I believe that this department has not only shown but has demonstrated its commitment to Texas Southern University through Hurricanes, Winter Storms, and recently a Pandemic. We have worked long hours under sometimes very dangerous and less than ideal circumstances without little if any regard for our safety or our families. We reported for duty during Hurricane Harvey to ensure that all the students were safe, and that university property and assets were protected. We walked the various buildings at night using only our flashlights during Hurricane Harvey, and the Winter Storm to identify burst pipes and possible intruders in the various building. Chief, I can recall, you and I "clearing" the Barbara Jordan Mickey Leland building by our selves only utilizing our flashlights during Hurricane Harvey because of an open door. When the Pandemic arrived, our department reported for duty every day, without regard for our safety, or the safety of our families as other university faculty and staff worked from home to care for their loved ones.

In addition, our department has been called upon to support every entity on campus in some way or another. For example, the university's sporting events, homecoming, homecoming parade, spring break activities, commencement, on campus voting, student functions, funerals on campus, concerts, dignitaries. Chief, even when others said it could not be done, we planned and coordinated the Democratic Presidential Debate, here on the campus of Texas Southern University.

In my opinion simply compensating employees with a retention bonus is not a sustainable solution, it's a temporary band-aid on a much larger issue. As managers, I feel that we should search for a long-term solution to address the ever-changing landscape when it comes to addressing the Law Enforcement market. In this document I did not include The Houston Police Department or the Harris County Sheriff's Office salary scale, because basically their compensation trumped all other competing agencies in the area. Below, for your review I have listed Texas Southern University Department of Public Safety's current Pay Scale, along with a proposed Pay Scale, which includes incentives and step increases.

## TEXAS SOUTHERN UNIVERSITY DEPARTMENT OF PUBLIC SAFETY (Current)

| POSITION | MINIMUM SALARY |
|---|---|
| Security Officer | $33,063.00 |
| Communication Officer | $33,063.00 |
| Police Officer | $48,273.00 |
| Corporal | $51,652.00 |
| Sergeant | $57,897.45 |
| Lieutenant | $67,626.00 |
| Captain | $63,840.00- $95,761.00 |
| Assistant Chief of Police | $63,840.00 - $95,761.00 |
| Chief of Police | $141,987.00- $227,180.00 |

### Incentives include:

- $600 a year for an Intermediate TCOLE Certificate
- $1,200 a year for a TCOLE Advanced Certificate
- $2,400 a year for a TCLOE Master's Certificate

*** There are no other incentives or Step increases for officers, regardless of your experience or tenure other than possible university longevity. In other words, a Police Officer with less than (1) year experience would receive the same base salary of $48,273.00, as a Police Officer with (15) plus years of service.

Chief Young below is a proposed compensation matrix that I feel will allow us to compete for quality applicants with agencies within our geographical area.

### ***PROPOSED TEXAS SOUTHERN UNIVERSITY DEPARTMENT OF PUBLIC SAFETY COMPENSATION****

| POSITION | MINIMUM SALARY |
|---|---|
| Security Officer | $35,684 |
| Communication Officer | $41,900 |
| Police Officer | $58,000 |
| Senior Police Officer (+10 years' experience) | $64,900 |
| Corporal | $68,900 |
| Sergeant | $79,684 |
| Lieutenant | $90,000 |
| Captain | $102,345 |
| Assistant Chief of Police | $127,892 |
| Chief of Police | $187,900 |

\*\*\* The Chief of Police be given the ability to negotiate an applicant's salary based on the applicants Law Enforcement experience and tenure.

**Police Incentives include:**

- $100 a month for either 60 College hours or a TCOLE Intermediate Certificate
- $200 a month for either a Bachelor's Degree or a TCOLE Advanced Certificate
- $300 a month for either a Master's Degree or a TCLOE Master's Certificate
- $10 a month Hazardous Duty pay per year of completed state service

**Police Step Pay:**

| YEARS OF SERVICE | PAY PER MONTH |
|---|---|
| 2 but less than 5 years | $100 |
| 5 but less than 10 years | $200 |
| 10 but less than 15 years | $300 |
| 15 but less than 20 years | $400 |
| 20 or more | $500 |

**Communication Officers Incentives include:**

- $25 a year for a TCOLE Intermediate Certificate
- $50 a year for a TCOLE Advanced Certificate
- $75 a year for a TCLOE Master's Certificate
- $10 a month Hazardous Duty pay per year of completed state service

**Communication Step Pay:**

| YEARS OF SERVICE | PAY PER MONTH |
|---|---|
| 2 but less than 5 years | $10 |
| 5 but less than 10 years | $15 |
| 10 or more | $20 |

**Security Officers Step Pay:**

| YEARS OF SERVICE | PAY PER MONTH |
|---|---|
| 2 but less than 5 years | $5 |
| 5 but less than 10 years | $10 |
| 10 or more | $15 |

## Administration:

| POSITION | MINIMUM SALARY |
|---|---|
| Department Business Administrator | $60.000 |
| Executive Assistant | $52,900 |
| Community Outreach & Engagement | $52,900 |
| University Locksmith | $52,900 |
| Crime & Accreditation Analyst | $48,273 |
| Imaging and Access Control | $48,273 |
| Records and Retention | $33,900 |

## Administration Step Pay:

| YEARS OF SERVICE | PAY PER MONTH |
|---|---|
| 2 but less than 5 years | $5 |
| 5 but less than 10 years | $10 |
| 10 or more | $15 |

Chief, as I indicated earlier in this document, as managers I believe that we should be exploring a long-term solution to this recurring problem, and not to try to resolve it with a quick unsustainable fix, such as a bonus here and there. Unfortunately, crime is on the rise all over the country, and not just in this geographical area, and with violent crimes becoming more prevalent in the various communities, the push for more Police Officer visibility as well as accountability is most needed currently. Also, with most universities expecting an increase in enrollment, the demand for more qualified police applicants appears to be on the rise. We here at Texas Southern University, as previously mentioned are projecting an increase in students as well as residential housing request. Chief, I believe the time to move forward with this proposal is now, with the demand for more qualified and informed police applicants to address the needs of our student population. In addition to the transformation of this great institution of Higher Education. Texas Southern University and this department through work and commitment to the students and community has earned the right to chart its own course and not follow the path of others, by "playing catchup."

Respectfully Submitted,

Frederick W. Brown





Chief a vast number of Police Departments invest in operational strategies., and our department is not any different. These strategies usually have at least five core elements:

- Preventive patrol which attempts to deter crime by being proactive, thus eliminating the opportunity for criminal activity.
-
- Routine Incident Patrol Response, officers responding to calls for service and collecting all relevant information to then generate a written report.
-
- Emergency response including any systematic response to an unexpected or dangerous occurrence. The goal being to protect and mitigate the impact of the event to students, faculty and staff, along with university assets.
-
- Criminal Investigations, including searching, interviews, interrogations, the collecting of evidence and preservation, as well as various other methods of investigation.

- Problem Solving by which solutions are developed to remove an obstacle from achieving an ultimate goal.

I believe that in order for our department to fully subscribe to these core elements and provide the absolute best services to our students, faculty and staff. It will require the commitment of resources, equipment, training and the ability to financially compete with other law enforcement agencies in our jurisdiction, thus providing us the opportunity to retain personnel.

**Young, Mary**

| | |
|---|---|
| **From:** | Jody Beyer <Jody.Beyer@ghd.com> |
| **Sent:** | Wednesday, June 23, 2021 1:52 PM |
| **To:** | Young, Mary |
| **Subject:** | [EXT]: Thank you !! // Following up |
| **Attachments:** | Jody Beyer GHD powerdms-2021-Jun-23-2021-06-50-11-99-PM.pdf |

Good Afternoon Chief Young,

I hope all is well with you and yours! I am circling back to our topic of conversation regarding our desire to invite you as a key note speaker at our next law enforcement webinar series. I now have the schedule and would like to set a time to speak with you.

In addition, we now have the ability to align organizations with policies and procedures, as we understand how vastly integral transparency is to gaining back public trust!

Please let me know when we can chat. Talk soon and have a wonderful day!

Regards,
Jody

**Officer Jody Beyer**

Account Executive

Law Enforcement  | GHD

Digital

(407) 516-7860

jody.beyer@ghd.com

https://www.policeprotech.com/

5904 Hampton Oaks Pkwy, FL 33610, Tampa, United States

Schedule a demo with me

CONFIDENTIALITY NOTICE: This email, including any attachments, is confidential and may be privileged. If you are not the intended recipient please notify the sender immediately, and please delete it; you should not copy it or use it for any purpose or disclose its contents to any other person. GHD and its affiliates reserve the right to monitor and modify all email communications through their networks.

**External Email, please use caution with attachments and links from unknown senders **

1

**24**

## Weekly Reports Monday, October 03, 2022 – Sunday, October 09, 2022

| Arrests | 2 To- Be |
|---|---|
| Citations | 3 |
| Referrals | 12 |
| Trespasses | 3 |
| Traffic/Accidents | |
| Other | 4 |

Monday, October 03, 2022

### (22-00422) Indecent Assault, Transformation Village #404

- TSU Student Gibson, Makayla (T00727339) reported that Non-TSU Affiliate Moree, Jaylen inappropriately touched her all over her body without permission while she was asleep. TSU Students Villeage, Daija (T00774558) and Curry, Ladarius (T00785357) along with Makayla and Jaylen were all at the apartment and sitting under one blanket on the couch while watching a movie.  Daija and Ladarius left, leaving Makayla and Jaylen alone on the couch which is when the touching took place. Makayla stated that she was not sexually assaulted and declined a request to contact EMS. Jalen was determined to be homeless, from Ft. Worth Texas and staying there at the apartment. Jalen admitted to touching Makayla, stating he felt the contact was consensual. The case is open pending further investigation – Makayla, is not sure how she wants to proceed. Jalen was issued a Criminal Trespass Warning and referrals were completed.

### (22-00423) Criminal Mischief, McGregor Park – Off Campus

- TSU Student and baseball player, Coffee, Roderick (T00630302) reported that while at baseball practice someone broke his passenger side window (2018 Red Ford Mustang 534-CXY). Roderick arrived at the park at approximately 1:30PM and while practicing he and his teammates Brown, Ronald and Robinson, Michael (coach) heard a loud pop and ran to the parking lot to discover the damaged window. The suspect was described as a black male wearing a black sweatshirt and a blue/white medical mask.  The approximate damage amount is $200. Case Closed

**(22-00424) Harassment, Fairchild Building #114C**

- TSU Student Onabajo, Daminola (T00757044) reported that she is being harassed by another TSU Student Evans, Zachary (T00788873). Daminola states she met Zachary on campus and later allowed him to join a group chat with her and friends, but his behavior while in the group chat made the group uncomfortable.  Daminola stated that after that Zachary sent her a prank voicemail saying " you need to return the tv you stole, if not, the police will come get you" and later called her via Facetime saying "you look like a starving African". Daminola requested that the harassment stop. Zachary was contacted, he promised to stop the harassing. Closed referrals completed.

**(22-00425) Criminal Trespass, DLP Proper Apartment 4971 Martin Luther King #1215**

- TSU affiliate, Building Manager Quincy, Copper-Soileau report having seen marijuana on a table inside of apartment #1215. This case is related to 22-00422 in which a follow-up investigation was being conducted when the manager was requested to be present. Officer Bell arrived at this location and the marijuana had been cleaned up by one of the occupants Curry, Ladarius (T00785357) and Washington, Kris, however; Quincy informed that he had taken a picture of it. Referral issued for Ladarius and Kris received a Trespass Warning. Closed.

Tuesday, October 04, 2022

**(22-00427) Terroristic Threat, DLP Proper Apartment @ 4971 Martin Luther King #1226**

- TSU Student Mckinney, Marquis (T00761770) reported that she is being threatened through social media (Twitter) by (3) female students. (1) Barnes, Destini (T00778154) stated that she would spit on him. (2) Henderson, Deijah stated that she would fight him. Also included was Robinson, Heavynn (T00732746). The (3) females stated that Marquis was visiting them one day and made a smart comment about Deijah's hair and was asked to leave and as he was leaving he made the statement "let me leave before I have to slap a bitch."  Closed – (4) Referrals completed

Wednesday, October 05, 2022

**(22-00426) Assault by Threat, University Courtyard #203**

- TSU Residential Assistant (R.A.) reported that Three (3) TSU students were threatening to fight each other in the parking lot of UC. TSU Student Adams, Tamya (T00782911) and Lewis, Erin (T00774765) threatened imminent bodily injury by asking Boseman, Jayla (T00758952) to meet them to fight. Jayla threatened imminent bodily injury to Tamya and Erin by agreeing to meet them to fight and stating she was bringing her mother to help. The case is closed (3) Harris County Citations and (3) referrals issued.

Thursday, October 06, 2022

**\*\*NO REPORTS**


Friday, October 07, 2022


### (22-00428) Criminal Trespass, Library Learning Center

- TSU Non- Affiliate Hines, Damon was found on campus harassing female students. Damon stated that Damon Hines stated that women were mentally requesting to jack him off. Damon was given a Criminal Trespass Warning and escorted off campus. Closed.

### (22-00429) Criminal Mischief, Warehouse


- TSU Officer R. Martin, reports that general manager Brown, Erick reported to him that a female employee Washington, Marcina slashed his front drivers side tire. Video patrol provided CCTV footage which shows Marcina approached the vehicle and slash the tires. Harris County D.A. was contacted, and charges were accepted. Criminal Trespass Notice was generated and To-Be Warrant filed. The amount of damage was $241.08, Case Open

Saturday, October 08, 2022

### (22-00430) Assault Class B, Off Campus Cullen Oaks 4600 Cullen Blvd.

- TSU Student Edmondson, Jalynn (T00757215) reported that she was assaulted by TSU Student Flowers, Mya (T00755156) who punched her in the face twice. Witness: Roberts, Damarion saw the incident take place and confirmed Jalynn's statement. Mya sent messages for Jalynn to come downstair to meet her and stood outside and waited for Jalynn when she was attempting to leave, Maya was accompanied by her Mother, Aunt, Grandmother and Grandfather. Jalynn stated that she felt pain, her thumb was swollen, and she has a scratch on her finger.  Harris County D.A. contacted and charges for Assault accepted. To Be Warrant to be filled. Open

Sunday, October 09, 2022

**(22-00431) Possession of Drugs, Transformation Village Parking Lot**

- TSU Students Robinson, Daaliyah (T0070380) and Caston, Ahleah (T00776354) were found to be in possession of marijuana while sitting in a car in the parking lot of Transformation Village. Officers conducted a welfare check on a suspicious vehicle and upon approach asked the driver to lower the window at which time they smelled a strong odor of marijuana. The students were found to be in possession of 0.192 oz of a green leafy substance. Harris County D.A. contacted charges declined. Students referred to Marijuana Diversion Program and student referrals completed. Closed

**** End of Report****

Weekly Reports Monday, October 10, 2022 — Sunday, October 16, 2022

| Arrests | |
|---|---|
| Citations | |
| Referrals | 17 |
| Trespasses | 4 |
| Traffic/Accidents | 4 |
| Other | 10 |

Monday, October 10, 2022

**(22-00432) Lost Property, General Services Building (Walk-In)**

- TSU Student Turner, Aiyana (T00774505) reported SHE lost her keys in either the game room or computer lab at the Student Center. Aiyana stated that she was at the location between the hours of 12:00PM and 1:00PM. Video Patrol was contacted; keys remain lost and belong to a black Lexus L546. Closed

**(22-00433) Duty on Striking Unattended Vehicle, Tierwester Oaks #2**

- TSU Student Nightingale, Alexa (T00680562) reported that someone struck her vehicle while parked in the TWO #2. Alexa states she parked there on October 10, 2022 at approximately 12:15 PM and returned and noticed the damage to the left side of her vehicle (paint scraped off by wheel cove). Alexa drives a red Mercedes Benz (Tennessee Plates # BKL8261) — Video Patrol found no footage. Closed

**(22-00434) Criminal Trespass, Transformation Village #706**

- TSU Housing Management Coe, Anthony reported that a previously trespassed individual had returned to the property. Non- Affiliate Brown, Vincent was identified and acknowledged that he was previous given a verbal warning not to return. Vincent was given a verbal by Officer Bell which was followed up by completing a written CTW. TSU Student(s) Faggett, Kalei (T00759519) and Allen, Ramiah (T00770803) were given Student Referrals for their involvement in inviting Vincent to the property. Case is Closed.

**(22-00435) Criminal Trespass, Transformation Village**

- TSU Housing Management Coe, Anthony reported that an unknown black male was observed on TSU Transformation Village property after visiting hours., Mr. Coe informed the individual it was after visiting hours, and asked him to leave the property at which time the unknown male became irate and refused to leave. Upon TSU Police arrival the male had left the property and was later located on Ruth Street. The male was identified

as Non- TSU Affiliate Dotson, James. James and was given a Criminal Trespass Warning and released. Case is closed.

Tuesday, October 11, 2022

### (22-00436) Found Property, University Towers 7th Floor

- TSU Resident Assistant Watson, Zaporah reported found drugs at the Towers North, 7th floor. R.A. Zaporah reported the finding to Security Officer White who contacted the Police. Upon arrival the officers were shown a clear plastic bag containing a green leafy substance believed to be marijuana. The drugs were weighed and placed into evidence. No suspect, case is closed.

### (22-00437) Damaged Property, Student Parking Lot #1 (Delayed from Oct. 10, 2022)

- TSU Student Richardson, Mikaela (T00701136) reported that someone slashed her front drivers side tire while parked in lot S-1. Mikaela is the Captain of TSU Sensations and was attending dance practice at the Student Center. Mikaela checked on her vehicle at approximately 2:00PM and returned at approximately 6:17PM and discovered the damage. Mikaela thinks the tire was slashed as apposed to being damaged. Video Patrol was contacted, and the case is Open, pending further investigation.

### (22-00438) Family Violence, Campus Vue #127

- TSU Student(s) Fincher, Taniyah (T00786588) and Weston, Tamiya (T00767994) reports that they were assaulted by TSU Student Dorsey, Hannah (T00774425), her mother Non-Affiliate Dorsey, Melissa, Non-Affiliate Dorsey, Heaven and two unknown black female family members while at Campus Vue and room #127D. Taniya and Tamiya both report that the incident occurred because Hannah supposedly appropriated some items from them without consent. TSU Student Goodwin, Alexandria (T00735486) witnessed the incident and stated that she felt that she had been attacked for attempting to break up the fight. Known Suspects in this case have provided statements and the case is under investigation. Referrals were sent for all involved students. (4)

### (22-00439) Theft, General Services Building (Walk-in) Social Media Hack

- TSU Student Simmons, Samaria J (T00772903) reports that someone hacked her Social Media Account and the individual requested nude photos and money for her to have her account back. Samaria states that an unknown female requested information from her as a business proposition and she complied, but states that shortly after giving out her phone number her Instagram Account was taken over. Samaria states that she was later contacted by an unknown person requesting that she send $50 to get her account

back and she complied but did not received access to her account. Samaria states that the same individual requested a nude picture of her to get the account back and she complied. Samaria states that the individual then threatened to post the nude photo if she did not send an addition $30 which she also sent and still did not regain access to her account. Case is Open pending further investigation.

### (22-00440) Failure to Stop and Render Aid, Library Learning Center

- TSU Student Dillon, Ronmille (T00759880) reported that a white Lincoln MKS struck him while he was crossing the street from Lot E. Ronmille states that the vehicle brushed his hip down to his knee. Ronmille stated that he held on to the driver's side window to keep his balance. The driver of the vehicle was described as a black female with black and blue braids. Video patrol was contacted and found no footage. Ronmille declined medical assistance. Case is Pending further investigation.

### (22-00441) Burglary, Campus Vue Apartment #227

- TSU Student Maroney, Marshawn (T00778207) reported that someone kicked his apartment door in and stole his Play Station and his roommate's game system. Marshawn stated that he left at approximately 2:00PM and returned at approximately 5:00PM and found the damage.  The estimated amount of loss was $800. The case is open and under investigation.

Wednesday, October 12, 2022

### (22-00442) ** VOID – Case Number Generated in Error**

### (22-00443) Criminal Trespass, Parking Lot B

- Security Officer Hicks reports a suspicious black male stopping people and making inappropriate remarks to women while in parking lot B. A black male was later identified as Non-TSU Affiliate and former employee Johnson, Darrick. Darrick was issued a Criminal Trespass Warning and escorted off TSU Property.

### (22-00444) Duty on Striking Unattended Vehicle, Off Campus

- TSU Student Sturdivant, Nyla (T00767538) reported that she was off campus at Target and someone struck her vehicle.  **In progress – No other information regarding this incident. Closed

### (22-00445) Burglary, Campus Vue #400D

- TSU Student Katsumbushi, Rahsul (T00618262) reported that someone knocked on he door and entered without consent. Rahsul stated that he was inside with a female friend and the female that entered was known as Tianna. Rahsul states that Tianna began

kicking the door until it came open and Tianna then began assaulting him causing pain. Rahsul stated that he and Tianna were not in a relationship but had previously had sex. At this moment no contact has been made with Tianna and Rahsul is not sure he wanted to file charges. Another involved party was TSU Student Ware, Tonna (T00610331). Case is closed, and student referrals were completed. (3)

### (J22-00446) Missing Person (Juvenile) REC Center @ REC Center

- TSU Student Dudley, Deja (T00764570) reported that she was approached by a Juvenile that she observed was bleeding on his forehead. Deja escorted the juvenile to the REC Center and the Police were called. The juvenile informed the Officer that he had been hit by a car earlier somewhere near the University of Houston. The juvenile also informed that he had just left a CPS group home. The juvenile was treated and released by EMS #25. It was later determined that the juvenile was listed as a runaway. The juvenile was transported to his address and released to CPS case worker Mott, Shetoynya. Case is Closed.

### (22-00447) Possession of Drugs, University Towers #447

- TSU Housing Management Daniels, David reported that he overheard information about two TSU Students selling marijuana at the Towers.  TSU student Parker, Bruce (T00760361) was later found to be in possession of a blue canister containing a green leafy substance believed to be marijuana. The marijuana was weighed and came up to 38.0 grams. Harris County D.A. was contacted and declined charges. Bruce was place on the Marijuana Diversion Program and received a student referral. The Case is closed.

Thursday, October 13, 2022

### (22-00448) Possession of Drugs, University Towers #418

- TSU Housing Management Daniels, David reported that he overheard information about two TSU Students selling marijuana at the Towers.  TSU student Tarrant, Trevyin (T00775492) was later found to be in possession of a small plastic container containing a green leafy substance believed to be marijuana. The marijuana was weighed and came up to 10.0 grams. Harris County D.A. was contacted and declined charges. Trevyin was place on the Marijuana Diversion Program and received a student referral. The Case is closed.

### (22-00449) Harassment, Technology Building #408

- TSU Student Whaley, Charlotte (T00135868) reported that her brother Stafford, Cedric a Non-TSU Affiliate called her at TSU work phone and was harassing her. Charlotte states that she has not contacted or spoken to Cedric is 18 months and that she has blocked

him from her cell phone, email, social media or third party. Charlotte stated that he contacted her and left messages she considers to be very hostile. Cedric was contacted and an informed not to contact Charlotte at any time and he agreed to comply with the request. It appears the matter is regarding the estate of their deceased mother's home, which is Civil. The case is considered closed.

### (22-00450) Disturbance, University Courtyard #1410 (Walk-In @ GSB)

- TSU Student Davis, Brooke (T00767656) reported that her roommate's girlfriend threatened to fight her if she leaves University Courtyard. Brooke reported to apartment management that TSU Student Thomas, Mariah (T00767656) allows her girlfriend to come to the apartment before visiting hours, and they make so much noise that she can't sleep. The girlfriends name is unknown at this time, but she contacted Brooke via cell phone threatening to fight her for getting her kicked out and Trespassed. The girlfriend received a Criminal Trespass Warning and Referrals were completed for the students. Case is open and pending further investigation

### (22-00451) Duty Upon Striking Unattended Vehicle, Student Lot -1

- Non- Affiliate/Contractor Robinson, Bruce reported that someone struck his vehicle while he was parked in Lot S-1.  ** No other Information**

Friday, October 14, 2022

### (22-00452) Burglary of a Motor Vehicle, 4709 Emancipation St. (Off Campus)

- TSU Non-Affiliate Monroe, Lewis reported that his vehicle was burglarized while parked on Emancipation Street, and his friend Non-Affiliate Shorter, Dion had left his weapon inside which was taken. Mr. Lewis reported that he drives a black Cadillac (NSS 1752. Lewis and Dion parked at approximately 10:50PM to visit The Spot Bar and returned at approximately 11:50PM to find the right rear passenger window broken.  The vehicle was stored inside the trunk and was taken. The firearm is a Micro AK47 Pistol. Case is closed.

### (22-00453) Accidental Injury, Student Center

- TSU Employee Sanchez, Deyanira (T00459281) fell and hit her head while walking on the Tiger Walk. Deyanira was transported by golf cart to the Student Health Center to get checked for injury but was not checked due to not being a student. EMS was called, EMS #25 arrived and found that Deyanira's blood sugar level was extremely high. Deyanira was transported to Houston Methodist Hospital by RA #13. Case Closed

**(22-00454) Possession of Drugs, Transformation Village**

- Four TSU Student were found in a silver Dodge Dart (PRM1281) smoking marijuana. The students admitted to smoking and showed the officer where the marijuana was. During a probable cause search of the vehicle of the vehicle a gun (Glock 19) was found inside of a black duffle bag. Also found was two- gun clips, bullets, and cash. Harris County D.A. was contacted and declined any charges. The amount of marijuana located was 0.12 grams. The case is closed, TSU Students Albrow, Gabriel (T00784290, Gilliam, Andre (T00776700), Zahir, Rogers (T00772713) and Warren, Derrion (T00777410) received student referrals. The case is closed.

Saturday, October 15, 2022

**NO REPORTS

Sunday, October 16, 2022

**NO REPORTS

**** End of Report****

**Young, Mary**

| | |
|---|---|
| **From:** | Starks, Jamal |
| **Sent:** | Tuesday, October 25, 2022 7:29 AM |
| **To:** | Young, Mary |
| **Cc:** | Etheridge, Leslie |
| **Subject:** | Weekly Reports Monday, October 17, 2022 – Sunday, October 23, 2022 |

EDTIT: This was in the que to send on the rear dispatch computer. I will be sure to wait until all mailings are sent before I log off.

## Weekly Reports Monday, October 17, 2022 – Sunday, October 23, 2022

Arrests: 0
Citations:  0
Referrals:  2
Trespasses:  1
Traffic/Accidents:  2

### Wednesday, October 19, 2022
**(22-00461) Duty Upon Striking, Lot S1**
- TSU Student Deloney-Winded, Tchaiyene (T00737734) reported an unknown person struck her vehicle while parking and walked away without leaving any information. Closed

### Thursday, October 20, 2022
**(22-00462) Duty Upon Striking, Westside Garage**
- TSU Student Bonds, Rashel (T00662933) reported an unknown person struck her vehicle failed to leave any information. Closed

**(22-00463) Trespass Notice, Durley Field/Recreation Center**
- TSU staff member Phillips, David reported a suspicious male that he told not to attend any practices. Non-Affiliate Rencher, Joseph was issued a trespass notice. Closed

**(22-00464) Missing Persons, University Towers**
- A concerned grandparent reported that their family member, a TSU student, JI'Bri Brown Martin, was missing.  Officers attempted to locate her with negative results. She was entered into the database as a missing person. The student later returned to her room. She stated that she was fine and her phone went dead. Closed

### Friday, October 21, 2022
**(22-00465) Unauthorized Use of a Motor Vehicle, City Streets 3800 Attucks St. (East of University Towers)**
- TSU Student Damazia Gaines (T00711867) reported an unknown person stole her vehicle. The student's vehicle was recovered by Pct. 6 in the early morning hours of 10/23/22. Case Closed

### Saturday, October 22, 2022
**(22-00466) Disturbance, University Courtyard**

1

- ☞ TSU Students Destiny Smith (T00758959) reported she got into a dispute with her roommate Makayla McQurren (T00769428). She further stated that she received a text from someone claiming to be McQurren's sister stating, "I want your head." No further information at this time. Student referrals issued. (2r)

Monday, October 24, 2022
**(22-00467) Unauthorized Use of a Motor Vehicle, City Streets 3800 Attucks St. (East of University Towers)**

- TSU Student Shamarah Victorian (T00643725) reported an unknown person stole her vehicle. Case closed

## Jamal D. Starks
*Lieutenant of Police*



Office: 713-313-7960 I Fax: 713-313-4425
East Garage, Room 102
3100 Cleburne Street, Houston, TX 77004
www.tsu.edu

2

## Weekly Reports Monday, September 26, 2022 – Sunday, October 02, 2022

| Arrests | 1 |
|---|---|
| Citations | 2 |
| Referrals | 12 |
| Trespasses | 2 |
| Traffic/Accidents | 4 |
| Other | 6 |

Monday, September 26, 2022

**(22-00404) Disturbance, Off Campus- The Aspen**

- TSU student Ragland, London (T00654160) reported a disturbance between her and her other roommates, that they were banging on her door and attempting to force their way inside her room. Roommates Osteen, Aaliyah (T00742629), Anderson, Joy (T00719489), and Vandross, Danie (T0087639) state they have been having on going problems. Building Manager Saileau, Quincy has set up a meeting to find a solution to the problem. Student Referrals were completed.

**(J22-00405) Recover Locally Stolen Vehicle – 3600 Eagle Street.**

- Call initially dropped as Four (4) males fighting in the street, upon arrival, officers discovered the males were just loud and attempting to change a tire on a vehicle. It was later determined that vehicle: Hyundai Elantra with Texas License plate LPF6607, was stolen. The juveniles having been released were later identified as students of Jack Yates High School. (1) Lenette, Tashon (2) Lenette, Javeon (3) Unknown (4) Unknown. The vehicle was towed, and the owner notified. Houston ISD Police were called to assist with investigation. Case is still open pending further investigation.

**(22-00406) Stalking, University Courtyard**

- TSU Student Hunt, Jolie (T00765411) reported that she met a male (Name Unknown) while on TSU Campus and they exchanged social media information (Instagram) Jolie states that the male found her mothers business page on Instagram through her page and has been messaging her mother. Jolie stated that the male stated that he was a TSU student, but she does not believe him. Initial report was completed, and follow-up conducted. Contact was made with mother Guest, Paulette who informed that no further communications have happened due to her and her daughter blocking the male from their pages. Case is still pending, attempting to locate information on the unknown male.