**300.30**

# Hate Crimes

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Hate crimes shall be given the department's highest investigative priority. Employees shall refer hate crime victims to the appropriate community resources whenever possible.

This Department Manual Policy applies to all employees.

## Definitions

**Bias.** A preformed negative opinion, prejudice, or attitude toward a person or group of persons based on race, color, disability, religion, national origin or ancestry, age, gender, or sexual preference.

**Hate Crime.** A criminal offense motivated by bias and committed against a person or property.

The Texas Code of Criminal Procedure, Article 42.014 and Texas Penal Code § 12.47 provide for punishment enhancements for defendants convicted of bias or prejudice motivated crimes.

## Incident Reporting

When officers responding to the scene collect sufficient objective facts to indicate the offender may have been motivated by bias, the incident report title shall include the words "Hate Crime" (e.g., Aggravated Assault – Hate Crime).

Objective evidence to be considered when titling an incident as a hate crime includes:

a. Was the incident known to have been motivated by bias?

b. Does the victim perceive the action of the offender to have been motivated by bias?

c. Were any remarks made that indicate bias?

d. Did the incident occur on or during an event or date that is significant to the victim's or the offender's group or interest (e.g., a religious holiday)?

e. Were there any offensive symbols, words, or acts that are known to represent a hate group, or other evidence of bias against the victim's group?

f. Are the demographics of the area significant in relation to the offense?

g. Were the victims engaged in activities promoting their group.

The mere utterance of a bias epithet by an offender does not provide sufficient evidence to title the incident as a hate crime. Utterances combined with other factors indicating bias could provide a basis to classify the incident as a hate crime. When in doubt, officers can consult the Houston Police Department's Criminal Intelligence Division (CID) for assistance in determining if the incident is a hate crime. If CID personnel are not readily available, officers shall proceed with titling the report as a hate crime.

All hate crimes are to be reported as significant events in accordance with the provisions of Department Manual 400.10, **Emergency Management**. The Command Staff shall be immediately notified of significant bias incidents for federal reporting purposes.

Incidents involving bomb threats or explosive devices shall be handled in accordance with provisions of Department Manual 300.32, **Bomb Threats, Explosive Devices, Explosions** and/or Department Manual 300.29, **Weapons of Mass Destruction**.

Any suspicious incident with potential terrorism connections relating to any hate crime, harassment, threat, vandalism, or graffiti directed at persons or ethnic groups as a result of issues related to terrorism shall be documented in an incident reported and forwarded to the Command Staff.

## Responding Officers

Officers shall notify a supervisor immediately when it has been determined that a hate crime has occurred. Supervisors shall ensure that the provisions of Department Manual 400.10, **Emergency Management** are followed including, but not limited to, notification of the Command Staff and the preparation and submission of a Significant Event Report.

The officer responding to the scene is responsible for:

     a.   Ensuring that the scene is processed and available evidence is collected and properly tagged or submitted. This includes taking photographs of any graffiti and collecting any relevant flyers and literature at the scene that indicates a crime motivated by bias.

     b.   Collecting any and all available objective facts at the scene that address whether the offense was motivated by bias (see the above *Incident Reporting* section of this Department Manual).

     c.   Preparing the initial incident report.

     d.   Sending a copy of the incident report to the Command Staff.

     e.   Providing victims with the appropriate social services referrals (see Department Manual 300.39, **Texas Crime Victims' Compensation Act**).

This may also include providing victims or complainants with additional resources.

## Deputy Chief

The Deputy Chief shall ensure that all activities necessary to assist in clearing a hate crime case are carried out with the highest priority. The Deputy Chief is also responsibility for coordinating both information and investigative activities with outside agencies, as necessary.

The Deputy Chief shall serve as the second-level judgment as defined by applicable federal guidelines concerning hate crimes. The Deputy Chief or designee shall make a final decision as to the existence or nonexistence of bias motivation in an incident. This decision shall include the final determination whether an incident is to be classified as a hate crime and reportable under the 1990 Federal Hate Crime Statistics Act, 28 United States Code § 534.

## Related Department Manual Policies

- 300.18, **Property and Evidence**
- 300.29, **Weapons of Mass Destruction**
- 300.32, **Bomb Threats, Explosive Devices, Explosions**
- 300.39, **Texas Crime Victims' Compensation Act**
- 400.10, **Emergency Management**
- 400.14, **Criteria for Submitting Incident Reports**
- 400.20, **Reception and Dissemination of Criminal Intelligence Information**

# Family Violence

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Pursuant to Article 5.04 (a) of the Texas Code of Criminal Procedure, "The primary duties of a peace officer who investigates a family violence allegation or who responds to a disturbance call that may involve family violence are to protect any potential victim of family violence, enforce the law of this state,... and make lawful arrests of violators."

Additionally, Article 14.03(a)(4) of the Texas Code of Criminal Procedure provides, "Any peace officer may arrest, without warrant... persons who the peace officer has probable cause to believe have committed an offense involving family violence."

Accordingly, officers shall enforce criminal laws to the maximum extent in the protection of potential or actual victims of family violence.

## General Provisions

### Family Violence

Section 71.004 of the Texas Family Code defines Family Violence as:

    a. An act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself;

    b. Child abuse as defined by law when the abuse is committed by a member of the family or household toward a child of the family or household; or

    c. Dating violence as defined in the Texas Family Code section 71.0021.

### Offenses Related to Family Violence

When a warrantless arrest is not made for family violence, officers shall evaluate whether any other criminal offense related to family violence has been committed. The following in a non-exhaustive list of offenses that may be related to family violence: terroristic threat, harassment, unlawful restraint, injury to elderly, violation of protective order or certain court orders, burglary with intent to commit assault, criminal trespass, interfering with an emergency request for assistance.

### Definitions

**Assault.** A person commits an offense if the person: (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative (Texas Penal Code 22.01(a)).

**Bodily Injury.** Physical pain, illness, or any impairment of physical condition. (Texas Penal Code section 1.07(8)).

**Dating Relationship.** A relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature. The existence of such a relationship shall be determined based on consideration of: (1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency and type of interaction between the persons involved in the relationship. A casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a dating relationship.  (Texas Family Code 71.0021 (b and c)).

**Family or Family Member.** Individuals who are related by blood or marriage, former spouses, or biological parents of the same child without regard to marriage. Family also includes foster children and foster parents regardless of residency. Family members may also include spouses, parents, grandparents, children, siblings, aunts, uncles, nephews, nieces, adopted children, cousins, and current in-laws.

**Household Members.** Individuals who live together in same dwelling whether or not related to each other.  This definition also includes any former household members, regardless of time of separation.

If it is unclear whether an individual is considered a family or household member, the investigating officer shall contact the appropriate District Attorney's Office for clarification.

## Officer's Responsibilities

When family violence occurs or is alleged, officers shall remain at the scene and conduct an investigation to verify the allegations and to prevent any further commission of family violence. Victims and suspects should be interviewed separately to determine what offense occurred.

When an officer makes contact with a victim away from the victim's residence, the officer may return to the residence to investigate a complaint of family violence and verify the safety of any other persons involved. The officer shall not participate in the division of property, but may escort the victim into the home to secure items of immediate necessity (e.g., clothes, medication, identification, baby items, and food). Any person asking questions regarding the division of property should be advised to seek private legal counsel.

Upon arrival at the scene, responding officers shall, as officer safety permits, do all of the following:

   a.  Identify and secure potential weapons in the surrounding.
   b.  Attempt to determine whether any parties at the scene possess a firearm in violation of state or federal law. If the officer determines any person is in violation of such firearms prohibitions, the officer shall seize the firearm(s) and tag the firearm(s) in the property storage facility. The officer shall also contact the District Attorney's Office for approval of charges against the person in violation of the firearms prohibition.
   c.  Encourage the voluntary surrender of any firearm at the scene (even if the person is not prohibited by law from possessing it) because of the danger a firearm poses to the complainant. The officer may take custody of firearms voluntarily surrendered and tag the firearm(s) in the property storage facility.
   d.  Separate the parties.
   e.  Restrain or remove the suspect, if necessary.
   f.  Assess and ask the parties about injuries, including those that may be concealed by clothing or otherwise not readily apparent including strangulation and internal injuries. An officer of the same sex as the victim may be needed as further visual investigation continues.

Officers shall ask the victim if he or she felt pain when a suspect made physical contact with the victim especially when there are no visible injuries. The definition of bodily injury includes physical pain, which is a low threshold. When the victim does not complain of pain, officers should consider the manner in which the suspect made contact with the victim or observable physical marks on the victim in determining if there is bodily injury.

g. Request medical services as necessary.

h. Identify all persons or witnesses on the premises.

i. Separate occupants and witnesses from the victim and the accused, keeping them out of sight and hearing range of one another, as safety permits.

j. Obtain a comprehensive account of the events from all parties including witnesses.

k. Officers should not rely solely on the images captured on their body cameras but should, when-ever possible, take digital photographs of the victim's injuries and any disarray or destruction at the scene. If the suspect is present, photographs of the suspect should be taken, especially if the suspect has suffered any injuries. Digital photographs that are taken shall be uploaded into the department's digital photograph storage database.

l. Complete an incident report set forth in Section *Family Violence Incident Reports*.

m. Complete requirements provided in section *Other Requirements*.

## Suspect On Scene

When a suspect is present on a scene involving family violence, officers with probable cause to believe an assault that meets the definition of family violence has occurred should arrest the suspect without a warrant.

There is no requirement that the officer witness the assault. Officers are to file the highest family violence charge possible when filing criminal charges.

The willingness of the victim to prosecute is not a factor as to whether an arrest should be made if there is probable cause to make an arrest for family violence as defined in section 71.004 of the Texas Family Code.

Pleas from any family or household member stating the violence will not occur again or an arrest may cause financial hardship should not impact an officer's decision to arrest the suspect. The victim shall be listed as the complainant and the officer may act as the affiant.

In situations involving family violence, officers are discouraged from arresting both parties involved in the altercation for assaulting each other. Officers shall make reasonable efforts to identify the primary aggressor.

Arrests of both parties should be avoided unless warranted and authorized by an on-duty supervisor.

Before filing any charges with the Harris County District Attorney's Office, an assistant district attorney shall be contacted to ensure that the charges will be accepted.

### Request On-Duty Supervisor To The Scene

When an officer is on a call involving family violence and the suspect is on the scene, the officer shall request the presence of an on-duty supervisor when the below applies:

a. A warrantless arrest is *NOT* made for:

1. Family violence *or*

2. An offense related to family violence

AND
b.  There is:
1.  bodily injury *or*
2.  a threat of bodily injury *or*
3.  physical contact regarded as offensive or provocative

## On-Duty Supervisor Responsibilities

The on-duty supervisor who is notified shall respond and proceed immediately to the scene. Once at the scene, the supervisor shall review all facts and make a decision on the best course of action.

If the supervisor agrees with the officers investigation and the ADA declines charges, an arrest will not be made, unless the facts support an arrest for Class C Assault (FV) (e.g., when there is a threat of imminent bodily injury or physical contact regarded as offensive or provocative).

## Family Violence Incident Reports

As mandated by the Texas Code of Criminal Procedure, a complete and thorough incident report shall be completed by the responding officer for every family violence situation or allegation of family violence. The requirement to complete an incident report also applies to situations involving violence between persons in a dating relationship, regardless of gender or sexual orientation. Supervisors shall ensure their officers generate incident reports when family violence occur.

When a victim leaves a suspect, the suspect may begin to stalk the victim. This offense includes behavior such as shadowing or following the victim. It also includes making threats against the victim, the victim's property or family, or a member of the victim's household. Officers shall make a written incident report documenting such behavior.

Officers should encourage victims to continue documenting any *stalking* behavior. When writing the incident report, officers shall include all of the following:
a.  The relationship of the suspect to the victim.
b.  Descriptions of the demeanor of the victim and suspect (when the suspect is present).
c.  Any spontaneous or excited utterances (*res gestae)* statements made by either party or any witnesses.
d.  Documentation of the interview with all children in the household who were witnesses to the assault.
e.  Description of any destruction or disarray (or lack of) at the scene.
f.  Documentation of any and all injuries as well as the location and description of the injury.
g.  Any prior history of family violence, when known.
h.  Disposition of the incident including, as applicable, facts leading to the decision not to make an arrest.
i.  The on-duty supervisor's name and employee/T-number who responded to the scene at the request of the officer pursuant to this policy, when applicable.

If an arrest is not made due to charges being declined by the Harris County District Attorney's Office, the following shall also be included in the incident report.
m.  The Harris County ADA's name, as applicable.
n.  Time and date the ADA was contacted about filing charges.
o.  Reason given for charges being declined.

See section *Other Requirements,* for additional incident report requirements.

# Other Requirements

Officer shall give adult victim any needed reference materials, including notice of their legal rights, possible remedies, and the availability of social services and community resources. Officers shall make every reasonable effort to help victims understand all their options, including the availability of a Magistrate's Order of Emergency Protection (MOEP).

If the suspect is gone upon the arrival, the officer shall make a written incident report and refer the victim to any additional resources.

When an arrest is made for any family violence or stalking offense (including Class C misdemeanor), an officer shall obtain the name and telephone number of the victim or a responsible person designated by the victim. **Information regarding the telephone number and the person to be notified shall be included in the incident report. The information shall also be given to the jail staff so victim notification can occur prior to the suspect's release from jail.** Jail personnel are not responsible for obtaining this information.

# Release of Suspect

The law provides persons charged in family violence cases may be held an additional four hours after bond has been posted if there is probable cause to believe the violence will continue when the suspect is released. When the facts indicate the four-hour hold is necessary, the officer must document the reasons for the hold in the incident report and contact the district attorney's office.

An additional 48-hour hold order (after bond is posted) may be obtained from a magistrate in writing. Should the facts gathered by the investigating officer indicate a need for this measure, the same procedure as the four-hour hold shall be followed.

State law requires victims be notified to the release of a suspect charged with a family violence crime or with stalking.  Jail personnel shall make the notification.

# Investigator Responsibilities

The investigator is responsible for:
   a. Follow-up investigation and filing criminal charges on incidents of family violence when the suspect is gone upon the officer's arrival.
   b. Follow-up incidents requiring additional investigations of facts not available to the responding officer at the time of the incident.
   c. Directing victims to information regarding the Texas Crime Victims' Compensation Fund for direct, unreimbursed, or out-of-pocket expenses incurred as a family violence victim.

# Protective Orders

When a valid protective order violation occurs in an officer's presence, the officer shall arrest the person. When the violation does not occur in the officer's presence, the officer may make a warrantless arrest if sufficient probable cause exits.

Protective orders are civil judicial orders with criminal penalties that help prevent family violence. Protective orders filed in any county in Texas are valid in the city of Houston. A protective order from another jurisdiction is presumed to be valid if it appears valid on the order's face. Orders of protection from other states' courts, military courts, tribes, or territories shall be enforced as if a Texas state court issued the protective order.

Temporary and *ex parte* protective orders are enforceable. However, before a suspect can be arrested for violating a temporary or *ex parte* protective order, the investigating officer shall verify that the suspect has been served with the temporary or *ex parte* protective order. The clerk of the court that issued the temporary or *ex parte* order may be able to provide this information. If an

officer has any questions, the District Attorney's Office should be contacted for clarification.

Officers shall accept a certified copy of a protective order as proof of its existence and it shall be presumed the order is valid for two years, unless:

    a.   The order contains a termination date that has expired.

    b.   The clerk of the court notifies the officer the order has been vacated and modified.

If the complainant does not have a certified copy of the order, the investigating officer shall verify the order's existence by contacting the District Attorney's Office. The officer may also check TCIC for evidence of the existence of a protective order since all protective orders are entered into TCIC. Victims desiring permanent protective orders should be referred to the district or county office in the county where the victim resides.

## Magistrate's Order of Emergency Protection (MOEP)

When a person is arrested for an offense involving family violence or stalking, the officer may offer the victim (or the victim's guardian) the option of obtaining a MOEP. MOEPs provide a temporary means of protection until a permanent protective order can be issued.

The purpose of a MOEP is to give a victim immediate, short-term protection from the suspect. These orders are similar to protective orders in wording and criminal penalty except that they are issued by a judge following the suspect's arrest. All MOEPs, as with protective orders, have an expiration date indicated on the form. Victims with a MOEP should be encouraged to seek a protective order.

Officers may request a MOEP through the District Attorney's Office when filing criminal charges on a Class B or higher family violence offense (this includes child abuse when the alleged perpetrator is a family or household member) or stalking violation. There is no prerequisite that a relationship ever existed between the victim and the suspect for a MOEP to be issued in stalking offenses.

Magistrate's Order of Emergency Protection request forms should be available on file at the police station or the district or county attorney's office in the county where the victim resides.

When a victim requests a MOEP, the officer shall complete the MOEP form and have the victim sign it. The completed form shall be faxed or hand delivered to the district or county attorney's office in the county where the victim resides at the same time the criminal charges are submitted.

Under unusual circumstances (e.g., the victim is seriously hurt or unconscious) and the victim is unable to request a MOEP, the officer may request the MOEP on the victim's behalf. The officer should clearly state the reasons why the victim is unable to ask for the MOEP on the Magistrate's Order of Emergency Protection request form and in the incident report.

A MOEP may also be obtained when the offense is a Class C assault. Such MOEPs must be requested from a municipal court judge.

## Protective Order Enforcement

A person is in violation of a protective order or MOEP if that person knowingly or intentionally violates any one of the specifically listed conditions of the order. Officers should read the order carefully as it may contain prohibitions that are civil in nature (e.g., orders to pay child support or alimony) and not criminally enforceable. Criminal acts that are specifically prohibited may include, but are not limited to:

    a.   Possessing a firearm in violation of section 46.04(c) of the Texas Penal Code.

    b.   Acts of family violence or an assault on the person protected under the order.

    c.   Any act furtherance of stalking (MOEP only).

    d.   Communications, either directly with or through a third party, to a member of the family

or household in a threatening or harassing manner. The protective order may also include prohibition of communications of any nature when not conducted through the protected person's attorney.

e.   Going to or near any of the following places (the address and distance the suspect must stay away should be specifically described in the order unless it is listed as confidential):

1.   Residences, places of employment, or businesses of any member of the family or household.

2.   Childcare facilities, residences, or schools where protected children normally reside or attend.

Persons violating a protective order or MOEP may be arrested for the violation and any other criminal offenses they have committed. Normally, a violation of a protective order or MOEP is a Class A misdemeanor. However, if a person violates a protective order or MOEP by assault or stalking, it is a third degree felony.

No person (including the protected person) may give any other person permission to violate a protective order or MOEP. Only the issuing court may change a protective order or MOEP. Reconciliatory actions or agreements made by persons affected by a protective order or MOEP do not affect the validity of the protective order or MOEP and do not diminish the officer's duty to enforce the protective order or MOEP.

An officer investigating a protective order or MOEP violation shall not arrest persons protected by the order for violation of that order.

## Related Department Manual Policy and Reference Material

- 300.06, **Body Worn Camera**
- 300.39, **Texas Crime Victims' Compensation Act**
- 300.41, **Required Booking Information and Procedures**
- 300.44, **Treatment of Prisoners, Suspects, and other Citizens**
- 300.46, **Preliminary and Follow-Up Investigations**
- 300.48, **Missing, Kidnapped, and Found Persons**
- 400.14, **Criteria for Submitting Incident Reports**
- Texas Code of Criminal Procedure, Article 5.04(a) and 14.03(a)(4)
- Texas Family Code, Section 71.004 and 71.0021
- Texas Penal Code, Section 1.07, 22.01(a), and 46.04(c)
- Texas Southern University Department of Public Safety Standard Operating Procedure, Report/Arrest in Domestic Violence

# Bomb Threats, Explosive Devices, Explosions
**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Employees shall handle suspected explosive devices and components, and explosions in accordance with the guidelines established in this Department Manual Policy.

This Department Manual Policy applies to all employees.

## Definitions

**Blast Seat.**  Point of detonation of a bomb or improvised explosive device (IED).

**Bomb Squad Commander.** The highest ranking classified police officer certified by the Federal Bureau of Investigation (FBI) Hazardous Devices School; may be a part of the Houston Police Department Tactical Operations Division Bomb Squad.

**Bomb Technician.** A classified officer who has successfully completed the FBI Hazardous School Basic Certification Course as approved by the National Bomb Squad Commanders Advisory Board; may be a part of the Houston Police Department Bomb Squad.

**CBRNE.** The five categories of weapons of mass destruction (WMD) materials including chemical, biological, radiological, nuclear, and explosive.

**Explosive Detection K-9 Team.** A law enforcement canine handler and the canine partner with exceptional abilities selected and trained for the detection of explosive material odors.

**Explosive Weapon.** Any explosive or incendiary bomb, grenade, rocket, or mine that is designed, made, or adapted for the purpose of inflicting serious bodily injury, death, or substantial property damage, or for the principle purpose of causing such a loud report as to cause undue public alarm or terror. Also includes a device designed, made, or adapted for delivery or shooting of an explosive weapon.

**Improved Explosive Device (IED).** A device placed or fabricated in a makeshift manner incorporating destructive, lethal, noxious, pyrotechnic, or incendiary chemicals and designed to destroy, incapacitate, harass, or distract. It may incorporate military explosives, but is normally devised from non-military components.

## Explosives

Officers encountering any of the following items or related material (explosives and component materials) shall contact the Houston Police Department Bomb Squad for guidance.

### Explosive types

    a.   **Military Explosive.**  Explosives manufactured for military use.

    b.   **Commercial Explosive.** Explosives that are available for purchase on the open market for commercial purposes.

    c.   **Improvised Explosive.** Energetic material composed of homemade explosives or a combination of chemicals that create a non-standard explosive compound or mixture. The material may include military and/or commercial explosives as a component.

### Components of IEDs

IED components include, but are not limited to, power sources, electrical components, switch mechanisms, and energetic materials or their ingredients.  IED components include the following:

a. Improvised explosive chemicals, specifically oxidizers (e.g., nitrates, peroxides, chlorates) and fuels (e.g., alcohols, metals, solvents, sugars), that when blended together produce energetic materials.

Binders such as greases, motor oils, petroleum jellies, or waxes can be used to hold mixtures together.

b. Containers used to house an IED or its components (e.g., metal or plastic pipe, end caps, military ordnance, plastic bottles).

c. Initiators used to start an energetic material's deflagration or detonation (e.g., cannon fuse, rocket igniters, electric bulbs, match heads, blasting caps).

d. Firing systems used to initiate IEDs (e.g., remote controls, cellular telephones, key fobs, two-way radios, mechanical switches).

e. Fillers used as energetic materials in IEDs such as gun powders, pyrotechnic powders, commercial explosives, military explosives, or chemical mixtures.

## Methods of Explosive Initiation

The following are three methods of IED initiations that may be encountered by officers.

a. Time delay initiated.

b. Victim initiated (including booby traps).

c. Command initiated (controlled by a suspect). May be controlled remotely or by hardwire. Multiple methods of initiation are common (e.g., time delay with a booby trap).

## Methods of Explosive Delivery

The following are methods of explosive delivery that may be encountered by officers.

a. **Placed.** The bomb is put in place by the bomber. The bomb could be placed inside of a building, vehicle, etc. A device in a vehicle is considered "placed" if the target is the vehicle or a person utilizing the vehicle. These devices are general time delay initiated or victim initiated, although use of command initiated devices is increasing especially when used against specific targets such as first responders.

b. **Shipped.** The bomb is mailed or delivered by common carrier to its target location. These devices are generally victim initiated.

c. **Person Borne IED (PBIED).** The bomb is carried or worn by a person. The person carrying the device may be the bomber (suicide/homicide bomber) or may be a person forced to carry or wear the bomb (proxy bomber). IEDs borne by a suicide bomber are generally command initiated (e.g., the bomber initiates the device when a sufficient target is presented). IEDs borne by a proxy bomber may be time delay initiated, victim initiated, or command initiated.

d. **Vehicle Borne IED (VBIED).** A vehicle is used as a part of the bomb by acting as the transportation component and additional fragmentation to enhance the destructiveness of the device. The devices tend to be large (in excess of 100 pounds of explosive weight) and can be time delay initiated, victim initiated, or command initiated. Due to the large amount of explosives that a vehicle may contain, officers shall consider expanding the standard minimum evacuation distances (see the *General Guidelines* section of the Department Manual).

## General Guidelines

In all situations involving an explosion or suspected explosive device, component, or material, officers shall:

a. Seek cover. This is similar to taking cover during a shooting, with additional considerations. Employees seeking cover from an explosive device shall take into account that surrounding and overhead structures can be weakened and may collapse or fall. Avoid areas adjacent to or underneath windows. A blast wave can travel around corners, so stay close as possible to cover.

b. Contain the threat. Prevent any suspected explosive device (whether worn, carried, or driven) from leaving the location.  Do not attempt to move any device away from the public.

c. Call for assistance. Notify the dispatcher of the threat. Request additional resources such as the Houston Police Department Bomb Squad, fire department, or additional officers for traffic and crowd control. Officers shall request the fire department only when there is a fire or explosion or at the request of the bomb technician.

d. Evacuate nearby citizens. Move citizens a minimum of 300 feet away and behind cover. See below subsection "Evacuation and Outer Perimeter Distance."

e. Establish and maintain an outer perimeter. 300 feet is considered the minimum distance from a small explosive device.  See below subsection "Evacuation and Outer Perimeter Distance."

f. Minimize cellular telephone and/or radio use. It is permissible to leave radios and cellular telephone on during a bomb threat search or life-saving measures at explosion scenes, but it a suspicious item is identified, officers shall not transmit from a position near the item.

Employees shall not attempt to move or touch a suspected explosive device, component, or material unless specifically directed to do so by a bomb technician.

In addition to suspected explosive devices, the HPD Bomb Squad shall be notified any suspicious radiological event. Radiological sources could be a component of an improvised nuclear device or a radiological dispersion device. The suspicious radiological sources shall be examined by a bomb technician.

## Evacuation and Outer Perimeter Distance

When evacuation of a crime scene involving a suspected explosive device is authorized, the standard minimum evacuation and outer perimeter distance from a small explosive device such as a pipe bomb is 300 feet. For larger explosive threats, this distance is significantly greater. Consider the following minimum distances for larger devices:

a. Sedan sized vehicles ................................... 1500 feet

b. Passenger vans ........................................... 2500 feet

c. Small box trucks .......................................... 3500 feet

d. Semi-trailers ................................................ 7000 feet

When a suspected explosive device is inside a building, the standard minimum evacuation distance includes the room with the device and all adjacent rooms including those directly above and below in multistoried structures. See sections *External Threats and Internal Threats* of the Department Manual Policy regarding evacuation authorization.

## Guidelines for Incidents Involving an IED

When considering response to resistance, a person does not have to be in possession of an IED to present a threat to officers or public safety. Suspects in possession of a remote triggering device (e.g., cellular telephone or wireless controller) shall be considered a threat as if they were in possession of the actual IED.  Determination of this level of threat shall be based on:

    a. Statements made by a suspect.

    b. Field intelligence.

    c. Suspect's possession of a possible remote trigger in conjunction with actions, statements, or other indicators that suggest the object may be used to trigger an explosive device or explosive weapon.

Officers shall not approach or allow other individuals to approach a person suspected of possessing (or wearing) an IED, even if the person is asking for assistance, has surrendered to officers, or is wounded or dead.

Officers shall not discharge or allow other first responders to discharge a conducted energy device (CED) at a person suspected or possessing (or wearing) an IED.

Officer shall avoid firing their weapon into a suspected IED possessed (or worn) by a person.

If a person in possession of (or wearing) an IED is cooperative, have the person self-remove the device if possible. Once an officer is confident the device and all components have been removed (e.g., by the person removing clothing and the officer conducting a remote visual search), the officer shall have the person step away from the device and to a position where officers can restrain the person without exposing themselves to the IED.

If the person cannot remove the device, have the person lie prone with their hands empty, arms outstretched, and palms facing officers. If this is not possible due to the suspected presence of a pressure switch or other reason, have the person sit or kneel with their hands empty, arms out-stretched, and palms facing officers. Officers shall use verbal commands while behind covers to direct the person and await the Bomb Squad's arrival.

If the person in possession of the IED is not cooperative, officers shall follow department policy in Department Manual 300.12, **Response to Resistance** and 300.25, **Special Threat Situations**.

## External Threats

Except as noted in the *Internal Threats* section of this Department Manual Policy, any employee upon learning of a bomb threat, suspected device or material, or explosion, shall immediately notify the dispatcher.

### Dispatcher Responsibilities

Dispatchers shall do the following:

    a. Dispatch a field supervisor and a patrol officer to the scene.

    b. Once a suspicious device or package is located, notify the Houston Fire Department for a hazardous material (HAZMAT) and emergency medical services (EMS) response if the Bomb Squad technician requests them.

    c. Notify the Command Staff.

## Patrol Responsibilities

The first arriving patrol supervisor in charge of the initial investigation shall advise the Command Staff upon discovery of an explosion or suspected explosive device, component, or precursor, and request a bomb technician be dispatched to the scene. A bomb technician will not normally be dispatched to a threat-only scene, but can be requested in the even of unusual circumstances. An Explosive Detection K- 9 team can be requested by the on-scene supervisor or bomb technician.

The Explosive Detection K-9 handler shall work with the on-scene supervisor and bomb technician to determine the most effective and safe way to deploy the K-9 team during the incident.

Patrol supervisors shall ensure that all information necessary for the incident report and continuing investigation is obtained and made available to the bomb technician immediately upon arrival at the scene. The patrol supervisor in charge of the scene shall ensure that the responding officer completes an original incident report and that the Command Staff is advised of the significant event as directed in Department Manual 400.10, **Emergency Management**. The patrol supervisor shall complete a Significant Event Report for the Chief of Police regarding any explosion or the discovery of a suspected explosive device, component, or precursor and there is a criminal intent in its use.

Patrol officers shall coordinate any search but shall not enter a suspected area unless a suspicious object is found. Only personnel familiar with the area shall conduct a search of the suspected area. Only the property owner or the property agent may determine if total evacuation is necessary prior to a suspected explosive device being found.

Upon locating a suspected IED or any explosive weapon, the highest ranking classified TSUDPS supervisor on the scene shall be responsible for evacuating the crime scene according to the standard minimum evacuation distance listed in the *General Guidelines* section of this Department Manual Policy.

On-scene officers shall secure the evacuation area from all persons; including fire department and law enforcement personnel unless, after consultation with a bomb technician, and alternative evacuation plan is established.

Officers are expected to exercise due caution and safety, and never act with undue haste or emotional behavior that might incite panic. Responding and on-scene officers shall conduct a search of their immediate assigned area (e.g., perimeter security, traffic control) for unusual or suspicious objects (e.g., secondary or entrapment devices) that may require the attention of a bomb technician.

## Investigative Responsibilities

Upon arrival at the incident location, the senior bomb technician shall take charge of the scene and determine the necessary action to ensure safety for all persons present.

The Command Staff shall be notified it appears necessary to recommend the establishment of a command post.

The Bomb Squad in conjunction with the department shall investigate all bombings, suspicious explosions, suspected explosive devices and materials, hoax devices, bomb threats and related incidents. The Bomb Squad is also responsible for the safe transport and disposal of all suspected explosives, including ammunition of .50 caliber and above (except handgun ammunition).

## Command Staff Responsibilities

The Command Staff shall support the Bomb Squad or any other personnel or law enforcement agencies in the investigation of CBRNE incidents including bomb threats, explosive devices, and explosions. CBRNE incidents are detailed in Department Manual 300.29, **Weapons of Mass Destruction**.

The Command Staff shall complete a report regarding CBRNE incidents in which a device or substance is discovered and there is a criminal intent in use. This report shall include information regarding the initial investigation; the results of any laboratory analysis performed; any local, national, or world trends; and the probability of future threats. If deemed necessary, the Command Staff shall complete an intelligence report regarding CBRNE incidents in which no device or substance is discovered.

## Outside Agency Notification and Jurisdiction

The Command Staff shall notify in additional agencies or teams that may be needed to investigate an incident. Upon recommendation from the on-scene bomb technician, the Command Staff personnel shall be responsible for the notification of any federal law enforcement agency or other out-side agency of any bomb related incidents involving their jurisdictions.

Outside agencies shall normally be in charge of the follow-up investigation involving their jurisdictions. Requests from other agencies for assistance may be approved only by the Deputy Chief or designee.

# Internal Threats

An employee upon learning of a bomb threat against a TSU or TUSDPS facility shall immediately notify the Command Staff.

The Command Staff is responsible for implementing the emergency notification as directed by Department Manual 400.10, **Emergency Management**.

The Command Staff shall also notify the dispatcher and HPD Bomb Squad. An Explosive Detection K-9 Team shall be dispatched if requested by an on-scene supervisor or a bomb technician. The Ex-plosive Detection K-9 handler shall work with the on-scene supervisor and bomb technician to determine the most effective and safe way to deploy the K-9 team during the incident.

Upon notification of a bomb threat at a TSU or TSUDPS building, the highest ranking on duty super-visor shall be responsible for the search of the needed areas. The on duty supervisor shall utilize an Explosive Detection K-9 Team if necessary.

If a suspected bomb is located on any TSU or TSUDPS property, the Command Staff shall be notified immediately. The Command Staff shall then follow their notification procedures including notifying the on-call bomb technician. An Explosive Detection K-9 team shall be notified by an on-scene supervisor or a bomb technician to help search for secondary devices. The possible blast radius of the initial device shall be taken into consideration when deploying a K-9 team or any additional personnel.

## Authority to Evacuate

The Captain or most immediate supervisor in charge of the area being searched shall have the authority to begin immediate evacuation of an area in which a suspected bomb has been located. Evacuation of the danger area shall begin immediately, leaving adequate police personnel to secure the area from intruders and to direct the bomb technician to the suspected bomb.

## Post Explosion (Post Blast)

Officers responding to the scene of an explosion shall use caution by utilizing distance and shielding upon approach. Post blast scenes may have dangers (e.g., unconsumed explosives, fragmentation, shrapnel, structural instability, blood-borne pathogens). A primary danger could be secondary devices placed to harm first responders.

### Bombing Response Priorities (in order of importance)

  a. Utilize personal protective equipment (PPE) as necessary

  b. Care for the wounded

  c. Ensure public safety

  d. Preserve the crime scene

### Patrol Responsibilities

  a. Establish an outer perimeter that is 50 percent further from the blast seat than the farthest blast debris item found, but no less than 300 feet from the blast seat.

  b. Consider immediate evacuation of victims, but minimize time in the scene area.

  c. Clear a path for EMS to exit but leave other response vehicles in place until the surrounding area is cleared of hazards and evidence.

  d. Contact the Command Staff and request a HPD Bomb Squad response.

  e. Attempt to utilize gas masks or respirators until airborne contaminants have dissipated.

### Post Incident Investigation

The Bomb Squad in conjunction with other concerned agencies shall be responsible for conducting any follow-up investigations for the type of incidents outlined in this Department Manual.

### Related Department Manual Policies and Reference Material

  • 300.12, **Response to Resistance**

  • 300.25, **Special Threat Situations**

  • 300.29, **Weapons of Mass Destruction**

  • 400.10, **Emergency Management**

  • Texas Southern University Manual of Administration Policies and Procedures (MAPP), 04.03.01 Fire and Physical Safety

# Animal Bites

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Any employee who knows of an animal bite or scratch to a person by an animal capable of transmit-ting rabies, or who knows of an animal the employee suspects is rabid, shall report the incident or the animal to the local rabies control authority listed in this Department Manual.

This Department Manual Policy does not apply to police service animals except if a service animal bites a person and soon thereafter exhibits any abnormal behavior, the animal's handler or rider shall immediately make the animal available for testing by the local rabies control authority.

This Department Manual Policy applies to all employees.

## Definitions

**Animal.** Non-human, warm- and cold-blooded living creatures.

**Animal Enforcement Officer.** A person employed by the City of Houston Administration and Regulatory Affairs Department, BARC Animal Shelter and Adoptions Division, Animal Enforcement section to enforce animal control regulations.

**Animal Shelter.** A facility that keeps or legally impounds stray, homeless, abandoned, or unwanted animals and complies with the standards and requirements of animal shelters prescribed in §823 and §826 of the Texas Health and Safety Code.

**Attack.** Act by an animal that causes bodily injury to a person.

**BARC Animal Shelter and Adoptions (BARC).** The division under the City of Houston Administration and Regulatory Affairs Department that is responsible for the City's animal shelter, animal adoptions, and enforcement of animal regulations.

**Bite.** Any abrasion, scratch, puncture, tear, or piercing of the skin that causes bleeding and is caused by or suspected of being caused by an animal.

**Custodian.** A person or agency, whether or not an owner, that feeds, shelters, harbors, has possession or control of, or has the responsibility to control an animal. The owner of an animal shall be deemed to be a custodian of the animal.

**Dangerous Dog.** This term is defined in §822.041 of the Texas Health and Safety Code as a dog that does one of the following:

    a.  Makes an unprovoked attack on a person that causes bodily injury and occurs in a place other than an enclosure in which the dog was being kept and that was reasonably certain to prevent the dog leaving the enclosure on its own.

    b.  Commits an unprovoked act in a place other than an enclosure in which the dog was being kept and that act causes a person to reasonably believe that the dog will attack and cause bodily injury to that person.

**Domestic.** As applied to a species of animal, indicates an animal that has been domesticated by humans so as to live and breed in a tame condition. This term does not include an animal that has merely been raised domestically.

**Low-Risk Animals.** Animals named in Chapter 169.22 of the Texas Administrative Code as having a low probability of transmitting rabies; they include all animals of the orders Didelphimorphia, Inspectivora, Rodentia, Lagomorpha, and Xenartha (e.g., opossums, shrews, moles, squirrels, gophers, mice, rabbits, rats, and armadillos).

**High-Risk Animals.** Animals named in Chapter 169.22 of the Texas Administrative Code as having a high probability of transmitting rabies; they include skunks bats, foxes, coyotes, and raccoons.

**Running At Large/Run At Large.** Refers to an animal that is allowed to go on public or private property without its owner or a person having direct physical control over the animal. The terms include any animal that is staked, tied, or hobbled in any manner as to allow the animal to access public streets or sidewalks.

**Stray.** An animal or pertaining to an animal that roams with no physical restraint.

**Vicious Animal.** An animal that kills or inflicts serious bodily injury to a person by attacking, biting, or mauling.

**Wild Animal.** This term is defined in Section 6-51 of the Houston Code of Ordinances as any mammal, amphibian, reptile, or fowl of a species that is wild by nature and that, because of its size, vicious nature, or other characteristics, is dangerous to human beings (e.g., lions, tigers, bears, chimpanzees, gorillas, bobcats, and coyotes).

## Officers' Responsibilities

When an officer arrives on a scene involving a dangerous, vicious, stray, or wild animal that poses a nuisance or a danger but there is no attack or bite to a person, the officer shall contact the City's BARC Animal Shelter and Adoption Division (BARC) to capture or contain the animal.

When an officer arrives on a scene involving an animal bite to a person, the officer shall:

a. Deal with any immediate threats. Secure and contain the scene as best as possible. Protect against anyone being bitten or attacked, and also warn nearby neighbors regarding the active scene.

b. Obtain appropriate information about the suspected animal, the victim, and the incident.

c. If the animal become mobile, attempt to keep the animal in sight.

d. Contact BARC, inform them of the details, and follow their instructions.

If BARC cannot make the scene in a timely manner (less than an hour), the officer shall continue the investigation by:

e. Obtaining complete information on what the animal and victim were doing prior to, during, and after the bite.

f. Advising the victim to seek immediate medical attention from a physician or hospital.

g. Attempting to locate the animal's custodian or owner and obtaining the following information:

1. Whether or not the animal has been vaccinated.

2. Name of the veterinarian used by the owner or custodian.

3. The location of the animal, if not already known.

4. Whether or not the owner or custodian allows the animal to roam as a stray.

5. Whether or not the animal has suffered from diseases or medical problems.

h. Talking with witnesses about the animal's prior behavior and if there existed any type of history between the victim and the animal.

i. Completing a detailed and thorough incident report.

j. Advising the victim to contact BARC regardless of the seriousness of the bite.

If BARC arrives at the scene before officers clear the call, officers shall:

    k.   Turn over the incident and the scene to BARC authority.

    l.   Turn over any information gathered to the animal enforcement officer.

    m.  Render any assistance needed.

    n.   When the scene is safe and secure, return to duty and clear the call by stating it was turned over to BARC. However, officers shall still make an incident report for future reference (a report in this instance does not need to be turned over to BARC).

## Rabies

When an officer arrives on a scene involving an animal that is suspected of having rabies, the officer shall:

    a.   Deal with any immediate threats. Secure and contain the scene as best as possible. Protect against anyone being bitten or attacked.

    b.   Contact BARC, inform them of the details, and follow their instructions.

    c.   Follow other appropriate procedures outlined in section *Officers' Responsibilities* of this Department Manual Policy.

Rabies is an acute viral disease that affects the central nervous system. It can infect both humans and other mammals. It is transmitted through close contact with saliva from infected animals (e.g., bites, licks on broken skin, and mucous membranes). Once symptoms of the disease develop, rabies is fatal to animals and almost always fatal to humans.

**NOTE:** The key to human survival of rabies is quick diagnosis and immediate treatment.

Only mammals can get rabies; birds, fish, reptiles, amphibians, and other animals cannot. Mammals with rabies may show a variety of signs (e.g., fearfulness, aggression, excessive drooling, difficulty swallowing, staggering, seizures, and self-mutilation). Rapid wild animals may display only unusual behavior (e.g., a nocturnal animal may be seen wandering in the daytime).

Except as otherwise provided by the Texas Board of Health (TBOH), owner of certain domestic pets (e.g., dogs, cats, and ferrets) are mandated to have their animals vaccinated against rabies by the time the animal is four months of age and at regular intervals as prescribed by TBOH.

## Response To Resistance

If any person is attacked by an animal or is in imminent danger of being attacked by an animal, officers are authorized to use any response necessary up to and including deadly force to stop the animal (Department Manual 300.12, **Response to Resistance** and 300.08, **Firearm and Soft-Impact Weapon Discharges**). However, if the situation can be contained without further danger of attack or injury, officers shall turn over the capture or destruction of the animal to BARC.

**NOTE:** Unless it is unavoidable, officer shall not use a conducted energy device against an animal.

If an animal must be immediately destroyed, officers should avoid damaging the heard of the animal (the brain is needed for rabies testing).

## Dead Animals

When officers are dispatched to investigate a dead animal and the animal is considered high risk or the animal has bitten someone, officers shall:

    a.   Secure the scene upon arrival.

    b.   Contact BARC, inform them of the details, and follow their instructions.

    c.   Follow other appropriate procedures as outline in section Officers' Responsibilities of this Department Manual.

When officers are dispatched to investigate a dead animal and the animal is considered low risk and the animal has not bitten anyone, officers shall:

    d.  If possible, place or have the animal (without directly touching it) in a plastic bag for the City of Houston Waste Management Department to pick up.

    e.  Try to secure the area to prevent contamination or human, animal, or insect contact.

    f.  Advise the citizen to call 3-1-1 and request pick up by the Solid Waste Management Department, Dead Animal Collection section.

When officers are dispatched to investigate a dead animal that was probably killed by a domestic animal (usually a pet), officers shall follow the above directives.

## Rabies Control Act

BARC makes the final decision on what happens to an animal that has bitten a person, BARC has the authority to enforce all provisions of the Rabies Control Act of 1981 (§826, Texas Health and Safety Code).

BARC cannot be overruled by other persons, including county judges, veterinarians, chiefs of police, or pet owners.

## Related Department Manual Policies and Reference Material

- 200.28, **Communicable Disease Policy**
- 300.08, **Firearm and Soft-Impact Weapon Discharges**
- 300.12, **Response to Resistance**
- 300.16, **Conducted Energy Devices**
- §822, Texas Health and Safety Code
- §823, Texas Health and Safety Code
- §826, Texas Health and Safety Code Centers for Disease Control and Prevention
- City of Houston Code of Ordinances, Section 6-51
- Texas Administrative  Code, Chapter 169.22
- Texas Local Government Code, Chapter 240

# Feeding Employees During Emergency Situations and Department Mobilization

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

The department shall be responsible for feeding employees during emergency situations or department mobilizations in which a large number of employees participate for extended hours and are unable to initiate meal breaks themselves.

The department shall feed employees only after an on-scene supervisor and the Captain have decided that it would be impractical to allow the employees to leave their assignments, to send in relief employees, to send an employee to get food for the employees at the scene, or to obtain food from an outside source while the scene is active. The Chief of Police or the Chief's designee shall obtain the President of the University's approval as required. The Department Manual Policy establishes procedures for providing food to employees during emergency situations or department mobilizations.

This Department Manual Policy applies to all employees.

## Definitions

**Department Mobilization.** An ongoing, large-scale emergency that requires as much manpower as the department can deploy over an extended period of time. Department mobilization shall conclude only when deemed appropriate by the Chief of Police.

Examples of situations requiring department mobilization would be hurricane preparation, evacuation and aftermath; flooding of a large portion of the city; other destructive storm aftermath; pandemic disease mitigation and aftermath; weapons of mass destruction (WMD); Chemical, Biological, Radiological, Nuclear, Explosive (CBRNE), or other terrorist type incident; large hazardous material (HAZMAT) incident; large-scale fire; non-localized riot; or any other situation meeting the definition above.

**Emergency Situation.** A short-term emergency requiring the efforts of patrol and other units within the department to resolve the situation.

Examples of emergency situations would be special weapons and tactics (SWAT) scene; spontaneous demonstration; localized riot; large planned demonstration; local evacuation of a small part of the city; traffic control at a large fire scene; or localized HAZMAT situation.

## Feeding Employees During Emergency Situations

During an emergency situation, when the on-scene supervisor and the Captain have determined that the department shall feed employees, the Captain shall contact the Chief of Police or the chief's designee and request authorization for the purchase of food.

Once the University President written approval has been obtained by the Chief of Police, the Chief of Police shall authorize the feeding of employees. The Captain shall procure the food through an approved process. The approved process shall include the written approval from the University President. The Purchasing Department shall be contacted for assistance or approvals, as needed.

If an emergency situation will require the feeding of employees and the situation can be anticipated, the Captain or the Captain's designee in charge of the operation should make feeding arrangements as early as possible. Employees likely to be assigned responsibilities for procuring food in emergency situations should be thoroughly knowledgeable of current procurement policies or procedures.

## Feeding Employees During Department Mobilizations

The university's Purchasing Department shall be responsible for maintaining an adequate stock of emergency rations and distributing emergency rations during department mobilizations.

To avoid duplication of efforts and additional expense to the department, requests for additional emergency rations such as food and water should be made to the Purchasing Department.

Each division, unit, or office shall be responsible for the food deliveries under their control. Inventory tracking sheets shall be provided to account for supplies that are furnished and depleted during the course of a department mobilization. The Deputy Chief shall collect the inventory tracking sheets and then make arrangements to replenish the department's stock back to a state of operational readiness.

## Special Dietary Needs

Employees that have special or specific dietary needs related to health issues or personal preference should be prepared to bring food, medicine, and other accommodations with them for the duration of the emergency situation or department mobilization as these items may not be available from the department.

### Related Department Manual Policy and Reference Material

- 400.10, **Emergency Management**
- Texas Southern University Manual of Administration Policies and Procedures (MAPP), 03.02.01 Purchasing Guidelines

# Foot Pursuits

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Foot pursuits are inherently dangerous police actions. It is the policy of this department that officer and public safety shall be the primary consideration in determining whether a foot pursuit shall be initiated or continued. Officers shall consider the balance between protecting the safety of the public during police foot pursuits and the duty to enforce the law and immediately apprehend suspects.

Foot pursuits occur in a wide variety of dynamic and unpredictable circumstances that require officers to make quick and often immediate decisions to initiate or continue a pursuit. Therefore, this Department Manual is intended to provide general direction and guidance to officers when deciding to initiate, conduct, or continue such pursuits.

This Department Manual Policy applies to all classified employees and dispatch personnel.

## Definitions

**Active Suspect Search.** A dynamic situation in which an officer no longer has sight of a suspect and substitutes approved tactics for apprehension, such as establishing a perimeter, canine search, helicopter search, etc.

**Evading Arrest or Detention.** A person commits an offense if he intentionally flees from a person he knows is a peace officer attempting to lawfully arrest or detain him.  (Texas Penal Code § 38.04(a)).

**Foot Pursuit.** An incident in which an officer is actively chasing (on foot) a person who is evading arrest or detention.  A foot pursuit may evolve into an active search suspect.

**Perimeter Search.** An active search for a suspect in which the suspect is contained within specified geographic borders.

**Plainclothes Officer.** For the purposes of this Department Manual, any on-duty or off-duty officer not in a department uniform.

## Guidelines

Officers may initiate a foot pursuit of a person only when they have established the necessary reasonable suspicion or probable cause to detain or arrest the person. A person leaving a location due to the presence of police officers should not serve as the sole justification for a detention, arrest, or foot pursuit. Such actions on their own do not constitute the offense of evading arrest or detention. Officers must be able to articulate one or more additional factors, other than the mere flight of the person, to establish the reasonable suspicion or probable cause to detain or arrest the person.

To the extent possible, coordination of the foot pursuit should be assumed by the initiating officer unless circumstances dictate otherwise or until relieved by a supervisor. The officer initiating a foot pursuit should as soon as practical, provide the following information to the police dispatcher:

a.  Unit number

b.  Officer location and direction of pursuit

c.  Number and description of suspects

d.  Whether the suspect is being pursued

e.  Why the suspect is being pursued

In deciding whether or not to initiate or continue a pursuit an officer should consider the following alternatives to foot pursuit:

    f.   Containment of the geographic area

    g.   Saturation of the area with patrol personnel

    h.   Canine availability for search

    i.   Air support

    j.   Apprehension at another time and place when the officer knows the identity of the subject or has other information that would likely allow for later apprehension

Risk factors officers should consider when deciding to initiate or continue a foot pursuit include, but are not limited to:

    k.   Whether the officer is acting alone or without immediate back-up

    l.   Communications availability

    m.   Officer fitness level

    n.   Environmental conditions such as weather and lighting

    o.   Whether the suspect is armed

    p.   If multiple suspects are involved

    q.   Officer's familiarity with the area

    r.   Area hostility

## Tactical Considerations

Generally, the primary (initiating) officer should not try to overtake a fleeing suspect but shall keep him in sight until sufficient back-up is available to apprehend the suspect.

Officers in a foot pursuit should:

    a.   Stop, Look, and Listen if the officers lose sight of the suspect.

    b.   Avoid going over the same obstacles or barriers as the suspect.

    c.   Utilize the "slicing the pie" technique when rounding corners or at the end of a fence.

    d.   Use a "quick peek" to obtain a glimpse of what is on the other side of an obstacle or barrier.

    e.   Be aware of hazards (dogs, swimming pools, clotheslines, etc.).

Officers should move to active suspect search mode if the suspect is no longer in sight. The primary officer, if possible, should immediately coordinate, directly or indirectly, through the dispatcher and with secondary officers to establish a perimeter in the geographic area to contain the suspect. Pursuing officers are reminded that voice transmissions while running and in other field tactical situations may be difficult to understand and may require repetition.

Assisting officers should immediately attempt to contain the pursued suspect. Unless the primary officer needs immediate assistance, secondary or back-up officers should consider that a better strategy may be to set up a perimeter rather than respond to the primary officer's location.

Under most circumstances officers shall have their firearms holstered when involved in a running foot pursuit. Although circumstances may dictate that officers may need to pursue a suspect fleeing on foot with an un-holstered weapon, special caution should be given to running with a firearm in hand. When handling a firearm, officers should always follow indexing procedures by keeping the trigger finger outside of the trigger guard until the officer has made the conscious decision to fire the weapon. Officers must re-holster the weapon, if possible under the circumstances, before physically restraining a person.

When pursuing a suspect believed to have a firearm, rather than continuing with a foot pursuit, it may be a better course of action to move to a containment strategy or to active suspect search mode should consider available tactical options, such as cover and concealment. The decision to pursue an armed suspect for apprehension may be accomplished when the suspect is at a tactical disadvantage and an arrest can be accomplished with limited risk to officers or innocent persons.

## Restrictions

An officer shall not engage in or continue a foot pursuit if the officer believes the danger to pursuing officers or the public outweighs the necessity for immediate apprehension. Unless there are exigent circumstances such as an immediate threat to safety of pursing officers or other persons, officers shall not engage in or continue a foot pursuit under any of the following conditions:

   a.   If the suspect achieves tactical superiority by entering a building, structure, confined space, or wooded or otherwise isolated area. The primary officer shall notify the dispatcher, communicate his location and the location of the suspect, and await the arrival of back-up officers to establish a containment perimeter. The use of a police canine shall be considered. See also Department Manual 300.25, **Special Threat Situation**.

   b.   If the officer loses possession of his firearm, radio, or other essential equipment.

   c.   If the suspect's identity is established or other information exists that allows for the suspect's probable apprehension at a later time and there is no immediate threat to the public or police officers. Officers should balance the possibility of losing evidence of a crime (e.g., narcotics, weapon used in a crime) with the safety of later apprehension.

   d.   If the primary officer loses communication with the dispatcher or communication with back-up officers is interrupted.

   e.   If an officer or another person is injured during the pursuit and requires immediate assistance and there are no other police or medical personnel able to render assistance.

   f.   If instructed to terminate by a supervisor.

When the pursuing officer terminates the pursuit, the dispatcher shall be notified of the location and any assistance needed.

## Supervisor's Responsibilities

The designated supervisor shall terminate a foot pursuit at any time the supervisor concludes that the danger to pursuing officer or the public outweighs the necessity for immediate apprehension of the suspect.

The supervisor should take command and control of and coordinate the foot pursuit, if possible. Given the primary officer's need for communication, the use of radio air time may be not be appropriate during a foot pursuit. As in any tactical incident, the supervisor does not have to be physically present to assert control over the situation. Once the foot pursuit has concluded, the designated supervisor should monitor the incident to determine if a supervisor response is needed.

## Plainclothes and Undercover Officer Guidelines

Foot pursuits of suspects by plainclothes or undercover officers can be inherently dangerous. Officers should exercise extreme caution in these situations including, but not limited to, the following guidelines:

a. Although circumstances may dictate that a plainclothes or undercover officer may need to pursue suspects, they shall always follow a uniformed officer's commands (e.g., to lay down a weapon). Plainclothes and undercover officers must be mindful that other officers, not apprised of their operation, may be responding to the scene and may not be aware of the officer's identity.

b. Plainclothes and undercover officers shall notify the police dispatcher as soon as practical that they are in plainclothes and attempt to provide their clothing description.

c. Plainclothes and undercover officers shall terminate participating in a foot pursuit when uniformed officers have joined the pursuit and it is reasonably safe to do so.

d. Plainclothes personnel should ensure that they are readily identifiable as police officers by wearing an outer garment such as a raid jacket along with their official police identification. Displaying the official police identification alone may not be sufficient.

## Dispatcher Responsibilities

The following procedures shall be completed by the police dispatcher upon being notified by a police officer that the officer is involved in a foot pursuit.

a. Receive, record, and immediately report to other officers the suspect information coming in from the officer involved in the pursuit and ensure back-up officers are immediately assigned.

b. Request the assistance of a canine unit and air support.

c. Notify a patrol supervisor of the foot pursuit.

## Related Department Manual Policies and Reference Material

- 200.02, **Conduct and Authority**
- 300.02, **Effecting Arrests and Searches**
- 300.12, **Response to Resistance**
- 300.24, **General Broadcasts**
- 300.25, **Special Threat Situations**
- 400.10, **Emergency Management**
- Texas Penal Code Section 38.04(a)

# Towing

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

When dealing with wreckers, towing of vehicles, and storage lots, employees shall not take action contrary to the City of Houston Code of Ordinances dealing with Auto Wreckers and Storage Yards (Chapter 8, Article III). Furthermore, employees shall follow the procedures indicated in this policy when handling such situations.

This Department Manual Policy applies to all employees.

## Definitions

**Auto Wrecker.** Any vehicle so designated by state law and used for the purpose of towing, carrying, pushing, or otherwise transporting any motor vehicle.  Also referred to herein as wrecker.

**Commercial Vehicle.** A truck, truck tractor, trailer, or combination thereof with a gross vehicle weight (GVW) rating of 10,001 pounds or greater.

**Consent Tow.** A tow by a wrecker that, prior to the arrival of an officer, is summoned or called to the scene by the owner or operator of the vehicle or by a person who has possession, custody, or control of the vehicle.

**Contract Auto Wrecker.** Any auto wrecker properly registered with the City of Houston under a Police Authorized Tow Service Agreement (PATSA), displaying the correct City of Houston wrecker medallion, and properly equipped to tow another vehicle.

**Freeway.** The entire public right-of-way of a divided, controlled-access highway located within the city of Houston, including its roadway lanes, entrance and exit ramps, shoulders, and unimproved areas, but including frontage or service roads.

**Heavy-Duty Wrecker.** A wrecker having a chassis rated at five tons of greater by the vehicle manufacturer and a winch rated by the winch manufacturer as capable of lifting a minimum of 30,000 pounds.

**Hooked Up.** According to the Texas Department of Licensing and Regulation, when a vehicle is fully prepared for transport by attachment to a wrecker, lifted in tow position, when tow lights and safety chains attached and, if required, placed on a dolly in a raised position and the only thing remaining is for the tow operator to drive away.

**Incident.** For the purpose of this Department Manual, an unplanned randomly occurring traffic event that adversely affects normal traffic operations.

**Incident Management Tow.** Any tow of a vehicle in which the wrecker is summoned to the scene of a traffic accident or to an incident, including the removal of a vehicle, commercial cargo, and/or commercial debris from a crash or incident scene.

**Large Vehicle.** A motor vehicle or a trailer in excess of eight feet in height at the highest point or in excess of 22 feet in length. This definition also includes a coupled motor vehicle and trailer having a combined length in excess of 30 feet.

**Nonconsent Tow.** A tow of a motor vehicle that is an incident management tow or a private property tow and is not a consent tow.

**Owner.** The owner of the vehicle towed or transported or any driver of the vehicle who reasonably appears to have authority to operate the vehicle.

**Police Authorized Tow.** Any tow authorized by a law enforcement officer. These tows are considered nonconsent tows.

**Police Scene.** For the purpose of this Department Manual, a scene requiring a police investigation, such as a vehicle crash, stolen vehicle recovery, or custodial arrest, or any other place a vehicle is subject to removal by a law enforcement officer.  Tows from a police scene are considered nonconsent tows.

**Private Property Tow.** Any tow of a vehicle authorized by a parking facility owner without the consent of the owner or operator of the vehicle.

**Special Incident.** A traffic scene that cannot be cleared by using only the services of a wrecker because of debris, special loads, or a vehicle of unmanageable size or condition (e.g., dislodged road barriers, truck rollovers, and lost loads of pipe, grain, gravel, or fuel).

**State Highway.** An interstate highway, U.S. highway, state of Texas highway, farm-to-market road, state spur, service roads of such highways, or any other type of road that is maintained by the Texas Department of Transportation (TxDOT). This also includes the intersection of other types of roads with state highways.

**Tow.** The removal from public or private property of a vehicle, including a trailer towed by the vehicle, by means of an auto wrecker only.

**Towing Zone.** An area in the city of Houston within towing boundaries designated by the Houston Police Department's Auto Dealers Detail to establish areas of responsibility for contract auto wreckers. Each contract auto wrecker is authorized to tow in one towing zone only.

**TxDOT Scene.** A special incident occurring on specifically designated state highways and requiring a heavy-duty wrecker or other support equipment to clear the roadway of vehicles and/or debris (e.g., a rollover truck or spilled load).

**Wrecker Driver License.** Wrecker drivers performing nonconsent tows shall have a wrecker driver license issued by the City of Houston.  The three categories of wrecker driver licenses issued are as follows:

   a. Private Property License: This license permits tows only from private property under a valid contract. The license shall state "Private Property Only." This license holder cannot tow away from any police scene unless called by the vehicle custodian.

   b. Police Authorized Tow Service Agreement (PATSA) License: This license permits tows from private property under a valid contract and from police scene with the exception of freeways. This license holder is allowed to tow from freeways if requested by a law enforcement officer or vehicle custodian.

   c. Tow-n-Go License: This license permits tows from any police scene including on and off the freeway. It also permits tows from private property under a valid contract.

## Use of Wreckers

Vehicle owners may contact any wrecker service to tow their vehicles. Except as indicated otherwise in this Department Manual, officers shall always use contract auto wreckers for police authorized tows. Officers authorizing the towing of vehicles shall ensure they are moved quickly and safely.

## Emergency Use

Under emergency conditions or when there are more disable vehicles than wreckers present, officers are empowered to order any contract auto wrecker to remove any wrecked or disabled vehicle a sufficient distance to clear the street for traffic.

When officers authorize tows under the above circumstances, a Record of Vehicle Disposition/ Wrecker Slip (wrecker slip) shall be completed and officers shall sign the slips as nonconsent tows. See section Wrecker Slips of this Department Manual Policy for information on wrecker slips.

## Towing from a Police Scene

Officers shall not allow wrecker drivers to solicit any business on a police scene. The City of Houston Code of Ordinances makes it unlawful for any wrecker driver to solicit the business of towing, removing, or repairing any abandoned or disabled vehicle at a police scene by words, cards, circulars, or gestures until such time as law enforcement officers have departed from the scene.

When officers authorize incident management tows, the following steps shall be followed:

   a. Officers shall ask the vehicle operator where he or she would like to have the vehicle towed.

   b. Officers shall direct the wrecker driver to deliver the vehicle where the owner requested.

   c. If the owner is capable and willing to decide on a destination location for the vehicle, officers shall obtain a signature in the Owner/Operator's Destination Authorization for Nonconsent Tow section of the wrecker slip.

   d. If the owner is not capable or is unwilling to decide on a destination location, officers shall have the vehicle towed as a nonconsent tow by a contract auto wrecker to a police private storage lot in the police scene's towing zone.

## Towing Fees

For consent tows the City of Houston or Texas Southern University does not regulate towing, towing fees, storage fees, or towing destinations.

For nonconsent tows the fee is set by City ordinance. There is an hourly rate prescribed for heavy-duty wrecker tows and a set fee for all other types of wrecker tows.

If the vehicle owner is present at or arrives at the scene where an auto wrecker is attempting to tow a vehicle and the vehicle owner does not desire the vehicle to be towed, no charge shall be made and vehicle owner shall be allowed to take possession of the vehicle if the vehicle has not been hooked up by the auto wrecker.

If the motor vehicle has been lawfully hooked up to the wrecker but not towed from the scene and the owner does not desire the vehicle to be towed, a half-price towing fee (a.k.a. drop fee) will apply. In this case, the vehicle shall be released to the owner upon payment of one-half the regular towing fee. A wrecker driver is required to tell the owner when the drop fee applies. If the vehicle has not been completely hooked up, the wrecker driver must drop it for no charge.

## Contract Auto Wrecker Regulations

Wrecker drivers performing nonconsent tows from a police scene shall have a City of Houston wrecker driver license prominently displayed on their person. The company identified on the driver license shall match the company displayed on the wrecker for the license to be valid.

## Towing Zones

Contract auto wreckers shall be registered for only one towing zone and may be utilized under PATSA only in that zone except as indicated otherwise in this Department Manual.

# Police Scenes

At police sense, officers shall ensure all wreckers:

    a.  Park as close to the curb as possible.

    b.  Not interfere with the flow of traffic.

    c.  Not park within a distance of 100 feet from a wrecked or stalled vehicle.

No wrecker driver is to remove or tamper with vehicles at a scene of a crash before the police investigation is complete. Wrecker drivers who tow vehicles from a scene are responsible for clearing the street and removing all debris, parts, or glass at no additional charge to the owners. Officers shall ensure the wrecker driver complies with these requirements.

No person shall be allowed to ignite any flammable object within a distance of fifty feet in any direction from a crash scene or enter in the area with any type of burning material.

## Requesting a Wrecker

To avoid any appearance of impropriety, officers shall make a general broadcast (GB) whenever they need a wrecker.  Officers shall not:

    a.  Make prior arrangements or show favoritism in any form with any wrecker company or driver.

    b.  Recommend any wrecker service (e.g., company, repair facility, towing location, or type of wrecker) to any owner.

    c.  Accept gifts, gratuities, or favors of any kind form wrecker drivers or wrecker owners.

    d.  Allow the number of wreckers at a scene to exceed the number required for the vehicles involved plus two additional wreckers to warn oncoming traffic.

## Wrecker Slips

A Record of Vehicle Disposition/Wrecker Slip (wrecker slip) is a four-part carbonless form. Officers shall be held personally responsible for competing a wrecker slip in legible print for all tows from police scenes. Officers shall not allow non-police personnel to fill out any portion of the wrecker slip except the signature line.  Officers shall ensure:

    a.  If the vehicle has been reported stolen, the reportee's name, address, and telephone number are listed on the wrecker slip.

    b.  The vehicle identification number (VIN) is listed on the wrecker slip. When the VIN cannot be located or is unreadable, "unavailable" shall be entered in the VIN field. This is a mandatory field on the Towed Vehicle entry screen.

    c.  When arresting a driver for driving while intoxicated (DWI), to check the "Other" designation on the wrecker slip and write "DWI – unable to consent" underneath.

There are no exceptions for completing a wrecker slip on each vehicle toward from a police scene. Every vehicle towed from a police scene shall be documented in the records system. A vehicle towed to a location requested by the vehicle owner shall be listed as a stored vehicle. The employee information shall be entered in the system and shall be noted on the wrecker slip.

## Vehicle Towing Information

Officers shall enter information for police authorized tows into the system within one hour following the time the vehicle was towed.

When entering towing information about a vehicle believed to be stolen or stripped, officers shall provide on both the wrecker slip and the incident report complete and accurate information regarding the missing vehicle parts, damage to the vehicle, and other pertinent details.

# Heavy-Duty Wreckers

The following guidelines apply to all scenes involving a heavy-duty wrecker unless indicated otherwise in the below subsection "TxDOT Scenes." When a heavy-duty wrecker is needed for a nonconsent tow, the officer in charge of the scene shall allow only a properly permitted and equipped heavy-duty wrecker to tow the vehicle.

Officers using heavy-duty wreckers shall observe the following guidelines unless a clear and present emergency exits.

a. If the owner involved vehicle does not indicate a heavy-duty wrecker preference, officers shall ask the police dispatcher to dispatch a heavy-duty wrecker. The officer in charge of the scene shall allow only the dispatched heavy-duty wrecker to tow the vehicle.

b. Officers shall allow only a heavy-duty wrecker to tow a disabled heavy-duty vehicle.

c. When a heavy-duty wrecker is dispatched, it shall be required to give its company name and an estimated time of arrival that is not to exceed 45 minutes. This information shall be relayed to the officer in charge of the scene.

d. If the dispatched wrecker has not arrived by the estimated time, the dispatcher, at the officer's request shall ask the heavy-duty wrecker company for an explanation concerning the delay and for a new estimated arrival time. This information shall be relayed to the officer in charge of the scene who shall decide if it is reasonable to continue to wait for the dispatched wrecker or whether another heavy-duty wrecker shall be dispatched. If a second wrecker is dispatched, only this wrecker shall be allowed to tow the vehicle for which it was called.

e. When complicated towing situations are encountered, officers are advised to consider the counsel of the heavy-duty wrecker driver. If the scene officers disagrees with the wrecker driver's suggestions, a supervisor shall be summoned to the scene.

# TxDOT Scenes

At Texas Department of Transportation (TxDOT) scenes, TxDOT is in charge of heavy-duty wreckers, necessary support equipment, and the cleanup of major debris. If a TxDOT official arrives at an incident involving a state highway and deems it to be a TxDOT scene, the scene shall be considered as such by the department.

Officers who need the services of heavy-duty wreckers or other support equipment to clear a roadway at TxDOT scenes shall observe the following guidelines unless a clear and present emergency exists.

a. Only companies authorized by TxDOT may clear a TxDOT scene of heavy-duty vehicles or major debris.

b. TxDOT officials shall be considered in charge of the cleanup when they are on the scene or in communication with dispatchers or investigating officers. Officers and dispatchers shall cooperate with TxDOT officials coordinating scene cleanup. Officers shall retain control of the scene or delay scene cleanup or delay scene cleanup as necessary to preserve a crime scene or its evidence.

The procedures for contract auto wreckers, which may also be needed to tow other vehicles from a TxDOT scene, remain the same as indicated elsewhere in this Department Manual for non-TxDOT scenes.

A heavy-duty wrecker company dispatched by TxDOT shall not determine which wreckers tow other vehicles from TxDOT scenes.

# Handling Prisoners' Vehicles

## Vehicle Disposition

An arresting officer shall always document the disposition of a prisoner's vehicle on a wrecker slip.

Prisoners are responsible for the disposition of their vehicles unless such vehicles are subject to a nonconsent tow or seizure or are needed as evidence. In all other instances, an officer shall release a prisoner's vehicle to a passenger or third party if all the following apply:

    a.  The vehicle is mechanically safe and not stolen or evidence of a crime, and there is proof of financial responsibility for the vehicle.

    b.  The prisoner wishes to release the vehicle to a passenger or third party that is at the scene, not under arrest, in possession of a valid driver license, and not intoxicated.

An officer may, at the officer's discretion, give an arrested person the option of leaving the arrestee's vehicle at the scene of the arrest or location. The vehicle may be left at the scene if it is legally parked. If the vehicle is to remain on private property, permission shall be obtained from the property's owner or manager.

If any of the above scenarios, officers shall note all pertinent information on a wrecker slip and all applicable forms and reports.  This information includes, but is not limited to:

    c.  Any location where the vehicle was left.

    d.  Any location to which the vehicle was towed.

    e.  The complete information on any other involved persons.

    f.  Any involved private property owner's information.

The prisoner shall sign the wrecker in the appropriate place to indicate the choice of disposition.

If the prisoner is not present or is unwilling or unable to select from the disposition alternatives, the arresting officer shall have the vehicle towed as a nonconsent tow by a contract auto wrecker to a private storage lot in the arrest scene's towing zone.

## Driving a Prisoner's Vehicle

Officers shall not operate a prisoner's vehicle unless an emergency or exigent circumstances exists. If an officer must move a prisoner's vehicle, it shall be moved only as far as necessary to make the situation safe or to accomplish the police mission. Officers shall not drive any type of vehicle they are not licensed by the state of Texas to operate.

## Vehicle Inventory

Whenever an officer authorizes a nonconsent tow a prisoner's vehicle, the officer shall personally conduct an inventory of items in the vehicle including any and all containers not secured by a lock and shall complete a wrecker slip. A detailed inventory list shall be written on the wrecker slip. Officers shall be specific in identifying inventoried items. General terms such as "miscellaneous property" shall not be used.

## Inventory of Seized Vehicles

All personal property shall be removed from a seized vehicle prior to it being towed by an approved contract auto wrecker. Everything not belonging to the vehicle shall be removed and handled in accordance with Department Manual 300.18, **Property and Evidence**.

# Towing Stolen Vehicles

Whenever a stolen vehicle or a vehicle suspected of being stolen is recovered (whether or not it is occupied or operable), the recovering officer shall:

a. Attempt to contact the owner or complainant. The contact or attempted contact shall be documented in the narrative of the officer's report.

b. Advise the owner of the location and condition of the vehicle and determine how the vehicle is to be handled.

c. Attempt to lift of have fingerprints lifted at the scene before the vehicle is removed.

d. Have the vehicle removed as a nonconsent tow if the owner cannot be contacted or indicates no preference for disposition.

If the owner or complainant is contacted and indicates a preference for disposition of the vehicle, the officer shall wait no longer than 45 minutes for the owner or the owner's towing choice to arrive. If the owner or the towing choice has not arrived within the allotted time, the officer shall have the vehicle removed as a nonconsent tow unless the owner has chosen to leave it at the scene.

## Vehicles Stolen Outside of Houston/TSUDPS Jurisdiction

In addition to the above procedures, officers shall follow the below guidelines when a vehicle stolen outside the TSUDPS jurisdiction is recovered inside the TSUDPS jurisdiction. The recovering officer should have the vehicle towed by a contract auto wrecker to a police private storage lot. If the reporting agency requests a forensic examination, the officer shall have the vehicle towed to the appropriate facility. The officer should also provide the vehicle's storage location to the reporting agency that submitted the TCIC/NCIC stolen entry.

## Reports

Whenever a vehicle is found and it is stolen or suspected of being stolen, officers shall do one of the following, as applicable:

a. Generate an offense report and indicate within the body of the report the vehicle's disposition and why it is believed to be stolen.

b. Supplement the stolen vehicle report (or initiate a report if the theft occurred outside of TSUDPS jurisdiction).

## Private Property Tows

When a suspected stolen vehicle is found on private property and the vehicle owner cannot be contacted, it is up to the private property owner or manager to remove the vehicle as a private property tow. As a courtesy to the owner or manager, officers may summon a wrecker, but shall not tow the vehicle under police authority. In other circumstances, officers shall consult a supervisor to determine if any further action shall be taken.

## Burned Vehicles

A patrol unit shall be dispatched to each vehicle fire at the same time the Houston Fire Department is notified. If arson is suspect, the Fire Department will notify its Arson Division. If police personnel arrive before arson investigators, the scene shall be secured as in other criminal investigations. After the arson investigator has been completed, the police officer in charge of the scene shall have the vehicle towed to a designated storage facility.

Officers shall also make a supplement recovery report or initiate an original theft report if the vehicle has not been reported as a stolen vehicle. Officers shall provide arson investigators with the department's incident number and shall obtain the Arson Division's case number for inclusion in the initial or supplement report.

When no criminal activity is suspected and a burned vehicle can be identified by the VIN, the officer on the scene shall contact a supervisor for authorization for the burned vehicle to be towed.

# Towing Vehicles In Other Specific Situations

Officers regularly face a variety of other situations that require a vehicle to be towed. When situations arise and there is no clear directive, officers shall contact a supervisor for directions. For the situations listed below, officers shall adhere to procedures as follows.

## Vehicle Creating a Traffic Hazard

When a vehicle is blocking a moving lane of traffic or is causing an obvious traffic hazard, the officer shall have the vehicle removed as a nonconsent tow.

## Abandoned Vehicle (No Traffic Hazard)

When a vehicle is parked on a public street, but presents no traffic hazard, there shall be a minimum of two parking tickets issued against the vehicle for being parked in excess of 24 hours on a public street before the vehicle is removed as a nonconsent tow.

## Time Limit for Trailer Parking

Trailers of any kind (e.g., semi, pole, or house), either attached or unattached to a motor vehicle, may be towed if left on a public street of the city for a period of time in excess of two hours. The exception to this is if the trailer is in the process of being loaded or unloaded. These tows shall be considered nonconsent tows.

## Commercial Vehicle Parking

Commercial vehicles shall not be parked on the city streets between 0200 and 0600 hours. The exception to this is if the vehicle is in the process of being loaded or unloaded. These tows shall be considered nonconsent tows.

## Large Vehicle Restrictions

Large vehicles are not allowed to park on any street or highway in any residential district and shall be towed as nonconsent tows.

Exceptions to the above include any situation in which the vehicle is:

    a. In the process of being loaded or unloaded.

    b. Performing a service visit.

    c. Leased or borrowed and parked for a period of not more than 72 hours.

## Abandoned or Junked Vehicle on Private Property

Vehicles on private property believed to be an abandoned or junked shall be reported to City of Houston Division of Inspections and Public Service for their processing and handling.

# Conflict of Interest

No employee shall have any ownership or interest in any wrecker or storage facility required to be permitted under the provisions of Chapter 8, Article III of the Houston Code of Ordinances.

# Exceptions

Unless otherwise indicated in this section, City of Houston wrecker ordinances and the above department towing policies do not apply in any of the following situations.

    a. The wrecker is owned by the owner of the vehicle being towed by the wrecker. This exception does not apply to wreckers unless merely under contract to the same owner. Officers shall ensure both vehicles are owned by the same person or company listed on the registration form or current bill of sale before allowing a wrecker to operate under this exception.

b. The vehicle is being towed as apart of a lawful repossession pursuant to a request by a lien-holder.

c. The wrecker's owner does not have a place of business in the city of Houston, the wrecker is not used to perform any nonconsent tows in the city of Houston, and the wrecker is operated in accordance with applicable state laws.

Wreckers operating under any of these exceptions shall still adhere to state law.

## Contact Auto Wrecker Exceptions

Contract auto wreckers are allowed to operate outside their assigned towing zones in any of the following situations.

a. A vehicle owner calls the auto wrecker to the scene.

b. The officer in charge of the scene GBs for a contract auto wrecker. Officers are allowed to use or call contract auto wreckers out of their assigned towing zones only when one or more of the following exist:

    1. An emergency condition exists as stated in section Use of Wreckers, subsection "Emergency Use" of this Department Manual.

    2. The situation is a nonconsent tow, there are no area contract auto wreckers available, and no area contract auto wreckers shall become available.

## Disputes Between Wrecker Drivers and Officers

Should a dispute arise between a wrecker driver and an officer at a police scene, officers shall adhere to the following guidelines:

a. Complaints regarding the officer's selection shall not be argued at the scene. No delay or disruption of the scene investigation shall be tolerated. Complaints may be made only after the scene has cleared. The officer's decision shall be subject to review by the appropriate authority.

b. Officers authorizing the tow shall contact their immediate supervisor to make the scene if warranted.

c. If needed, the on-scene officer or supervisor may contact the Houston Police Department's Auto Dealers Detail (HPD ADD) at its 24-hour telephone number.

d. If an on-duty or on-call HPD ADD officer is contacted regarding an incident, the HPD ADD officer shall review each situation to determine the most efficient and effective method to handle the incident.

e. An on-duty or on-call HPD ADD officer shall be notified of any serious incident involving a wrecker company or wrecker driver. Examples include, any incident involving criminal activity, multiple City ordinance violations, or any incident the on-scene officer determines to be serious.

f. Officers shall not confiscate a wrecker driver license or City of Houston wrecker medallion. The suspension or revocation of wrecker driver licenses shall be handled by HPD ADD.

## Related Department Manual Policies and Reference Material

- 300.18, **Property and Evidence**
- 300.23, **Crash Investigations**
- 300.26, **Response Management**
- 300.38, **Traffic Violations by Legislators and Military Personnel**
- 300.40, **Asset Seizure and Forfeiture**
- 400.14, **Criteria for Submitting Incident Reports**
- 400.18, **Auto Theft Reports**
- Code of Ordinances, City of Houston, Chapter 8, Article III, Auto Wreckers and Storage Yard
- Texas Occupations Code, Chapter 28, Vehicle Towing and Booting

# Parking Citations

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Employees shall follow the procedures outlined in the Department Manual Policy regarding violation books and voiding parking citations.

This Department Manual Policy applies to all employees.

## Definitions

**Violation Book.** A book containing parking citation forms.

## Violation Books

Employees shall complete a check-out slip for each violation book they obtain and return the check-out slip to the Parking Division supervisor.

Employees shall turn in issued parking citations at the end of their shift.

Civilians shall not check out violation books unless authorized to do so by the Captain.

Employees who lose, damage, or misplace any part of a violation book shall write a letter via their chain of command to the Chief of Police explaining the circumstances.

### Vehicle Identification Numbers

On parking citations, employees shall list the license plate number and the vehicle identification number (VIN) displayed on the concerned vehicle. The most common location for a VIN is on a vehicle's driver side interior dashboard.

Employees shall NOT use a VIN obtained from a check of the license plate number because license plates can be removed or altered.

## Voiding Parking Citations

Requests for voiding parking citations shall be allowed for one or more of the following reasons only:

 a. Errors in writing the parking citations.

 b. Other charges filed in county or district court.

 c. Inappropriate charge.

To void a parking citation, all copies of the citation shall be gathered. On the back of the number 2 copy, the requesting employee shall write the reason for voiding the citation and then sign that copy.

The parking citation shall be submitted to the employee's supervisor. Upon approval, the supervisor shall sign the back of the number 2 copy and forward the packet directly to the Parking Division supervisor.

## Related Department Manual Policies and Reference Material

- 300.26, **Class C Misdemeanors**
- 400.14, **Criteria for Submitting Incident Reports**
- Chapter 26, Parking, City of Houston Code of Ordinances
- Texas Southern University Department of Public Safety Standard Operating Procedure, University Parking Citations

# Traffic Violations By Legislatures and Military Personnel

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Under certain circumstances, legislatures and United States military personnel are exempt from arrest or issuance of citation for traffic violations.

This Department Manual Policy applies to classified employees only.

## Legislators

The Texas Code of Criminal Procedure, Chapter 1, Article 1.21, "Privilege of Legislatives" states: "Senators and Representatives shall, except in cases of treason, felony or breach of the peace, be privileged from arrest during the session of the Legislature, and going to and returning from the same, allowing one day for every twenty miles such member may reside from the place at which the Legislature is convened."

Officers should use their discretion when deciding whether to issue a citation to a Texas Senator or Representative when the legislature is in session. Also, officers shall not unnecessarily or unreason-able delay the legislator.

## Military Personnel And Equipment

When military vehicles display a military license plate, they are exempt from equipment violations and do not have to comply with state regulations. If a military vehicle displays a state plate it is regulated as any other vehicle.

The following are exempt from driver license requirements as stated in the Texas Transportation Code, Chapter 521, "Driver's Licenses and Certificates:"

    a.  Any person in military service of a state (e.g., National Guard) or the United States while operating an official motor vehicle in the scope of military service.

    b.  Any nonresident on active duty in the armed forces of the United States who holds a license issued by the person's state or Canadian province of residence.

Military personnel are not exempt from moving traffic violations or arrest, unless extraordinary circumstances exist (e.g., martial law or war). However, before issuing a citation to military personnel who are on duty and in uniform, officers should try to contact the person's commanding officer through the dispatcher in an effort to resolve the situation so the outcome shall be mutually beneficial.

Officers should use their discretion when deciding whether to issue a citation to military personnel traveling on orders of reassignment.

Officers shall not interfere with military convoy unless an unusual or extraordinary situation exist.

If the driver of a military vehicle is placed under arrest and there is no other person available to operate the vehicle, the vehicle shall be handled normally as per Department Manual 300.36, **Towing**. If the vehicle is unusual or extremely heavy (e.g., tanks and similar equipment) and cannot be removed by normal means, officers shall contact the dispatcher to have the military as-sign their personnel to remove the vehicle.

Military personnel arrested for any serious traffic offense (e.g., DWI, FSRA, or negligent homicide) shall be handled as any other citizen. This applies regardless of whether the person is operating a military or private vehicle or whether the person is on or off duty. But, before the prisoner is booked, officers shall call the district attorney's office and make every effort to contact the prisoner's commanding officer and advise them of the situation. The district attorney's office shall make the decision whether to charge the suspect or turn him over to the suspect's commanding officer or the military police.

## Related Department Manual Policies and Reference Material

- 300.26, **Class C Misdemeanors**
- 300.36, **Towing**
- Texas Code of Criminal Procedure, Chapter 1, Article 1.21
- Texas Transportation Code, Chapter 521

# Texas Crime Victims' Compensation Act

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Many innocent victims suffer personal injury or death as a result of criminal acts. Crime victims and persons who intervene crimes on behalf of peace officers may suffer disabilities, incur financial burdens, or become dependent on public assistance. The Texas Crime Victims' Compensation Act indemnifies victims of crime and citizens who suffer personal injury or death in the prevention of crime or the apprehension of criminals.

Officers are required to provide all victims of violent crime with information on the Crime Victims; Compensation Act by providing resources to all victims of violent crime or their dependents as soon as possible after the incident.

In addition to the victim themselves and their dependents, the Crime Victims' Compensation Act includes close relatives of a deceased victim and the guardian of a victim.

This Department Manual Policy applies to all employees.

## Definitions

**Close Relative of a Deceased Victim.** A person who was the spouse of a deceased victim at the time of the victim's death or who is a parent or adult brother, sister, or child of the deceased victim.

**Guardian.** A person who is the legal guardian of the victim, whether or not the legal relationship between the guardian and the victim exists because of the age or physical or mental capacity of the victim.

**Victim.** A person who is the victim of the offense of sexual assault, kidnapping, aggravated robbery, trafficking of persons, or who has suffered personal injury or death as a result of the criminal conduct of another.

**Violent Crime.** Any conduct that poses a substantial threat of personal injury or death and is punishable by fine, imprisonment, or death.

## Procedures

The Crime Victims Services Division in the Texas Office of the Attorney General supplies the Texas Southern University Department of Public Safety with information outlining the provisions of the Texas Crime Victims' Compensation Act and an appropriate number of assistance applications.

### Officers and/or Investigative Officers Responsibilities

Officers and assigned investigators shall do the following:

a. Advises the victim, or dependent of the victim, of the basis provisions of the Act.

b. Provide the victim, or other involved person, of the name and title of the department's crime victim liaison officer who will provide further information.

c. Provide the victim or other involved persons with the Victim Assistance Form and attach the return portion of the form to the incident report.

d. Makes an entry at the end of the narrative section of the incident report that "victims may be eligible for compensation under the crime victims compensation act."

e.   Give information to the victim/witness about applicable services (e.g., counseling, medical attention, compensation programs or emergency financial assistance, and victim advocacy).

f.   Advise the victim/witness about what to do if the suspect or the suspect's companions or family threatens or otherwise intimidates him or her.

g.   Inform victims/witnesses about the case number and subsequent steps in processing of the case.

h.   Provide a telephone number that the victim/witness may call to report additional information about the case or to receive information about the status of the case.

i.   Follow-up with the victim/witness periodically to determine whether their needs are being met.

j.   The investigator shall work the follow-up investigation including scheduling line-ups, interviews, etc.

## Crime Victim's Liaison Officer's Responsibilities

The sergeant that is designated as the liaison officer for the department for implementation of the Crime Victim Compensation Act and shall do the following:

a.   Consult with the victim's assistance coordinator in the Office of the Attorney General regarding the requirements imposed on the liaison officer and provide their information to the office.

b.   Ensure that a victim, guardian of a victim, or close relative of a deceased victim is afforded the rights granted to them.

c.   Ensure that the department complies with the laws pertaining to crime victims and witnesses.

d.   Screen each report to ensure that victims are aware of the services available.

e.   Ensure that a supplement report is completed when notification is made and keep necessary records on crime victimization as required by law.

f.   Respond to all inquiries from interested persons concerning victim assistance.

g.   Biannually complete an analysis of victim/witness assistance needs with the University community.

h.   Maintain a liaison with the Harris County Family Violence Task Force.

i.   Ensure the confidentiality of victims and witnesses.

j.   Make sure the required information for victims and witnesses is attached to the offense report of any case that is turned over to the district attorney's office for prosecution.

k.   Respond to all inquiries from the Attorney General's Office, Industrial Accident Board concerning a victim's claim for benefits, or the District Attorney's Officer concerning facts and circumstances of a case.

l.   Maintain a supply of application forms supplied by the Texas Industrial Accident Board.

m.   When appropriate, notify the victims and witnesses of any arrests, the charges, and the arrestee's custody status or any changes in this status.

## Related Department Manual Policy and Reference Material

- 300.30, **Hate Crimes**
- 300.31, **Family Violence**
- 300.48, **Sexual Assaults**
- Texas Southern University Department of Public Safety Standard Operating Procedure, Implementation of Crime Victim's Compensation Act

# Asset Seizure and Forfeiture

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

The department shall establish criteria and procedures for seizure of assets in accordance with Chapter 59 of the Texas Code of Criminal Procedure and other related state and federal statues regulating forfeiture of contraband.

This Department Manual Policy applies to classified employees only.

## Criteria For Seizure

In order for asset to be seized as contraband, it must first meet the definition of contraband as stated in Chapter 59 of the Texas Code of Criminal Procedure. In general the asset must match one or more of the following descriptions by having been:

    a.  Used in the commission of a criminal act.

    b.  Intended for use in a criminal act.

    c.  Direct proceeds of a criminal act.

    d.  Obtained by a criminal act.

    e.  Obtained with the proceeds from a criminal act.

All seizures shall be economically beneficial to the department. Before contraband may be seized, the following criteria shall be met:

    f.  Cash amounts must be $1,000 or more. (All money shall be counted and totaled and all loose coins shall be rolled by the seizing officer before being placed into the property storage facility).

    g.  Vehicles seized for fleet use shall:

        1.  Be in good repair and operable.

        2.  Not be more than five years old.

        3.  Have less than 50,000 miles.

        4.  Be inspected by Fleet personnel.

        5.  Be taken only to the contracted seized vehicle storage location, by the contracted seized vehicle towing company.  All property must be removed from the vehicle prior to it being towed.

    h.  Vehicles seized for an auction:

        1.  Can be any year but must be in good working condition and have projected profitable resale value.

        2.  Shall be taken only to the contracted seized vehicle storage location. All property must be removed from the vehicle prior to it being towed.

    i.  Boats shall be in good repair and operable.

    j.  Aircraft shall be operable and in good repair. The airframe and engine logbook and the Federal Aviation Administration (FAA) Airworthiness Certificate shall be with the aircraft. All available databases, including FAA and Nation Transportation Safety Board, shall be checked for accident and damage history. Any aircraft under consideration for seizure shall be inspected by an aircraft mechanic who holds an Inspection Authorization certificate.

k.  Seizure of contraband with a lien against it must be approved by the appropriate district attorney's office.

l.  All other seized contraband shall be both of the following:

1.  Serviceable.

2.  Worth more than $1,000 wholesale. Like items may be seized (e.g., numerous tools seized when a chop shop is raided), but their cumulative value must meet this criteria.

## Procedural Guidelines

When the department seizes contraband, the seizure shall be conducted according to the legal guidelines of the appropriate county's district attorney. That district attorney is responsible for reviewing and filing the civil actions required in contraband seizure cases. The final decision to file a contraband seizure case lies with the district attorney's office.

Officers seizing contraband in Harris County shall immediately complete the Notice of Seizure packet, which includes the Seizure Fax form to the Harris County District Attorney's Special Crimes Unit using the numbers provided.

When a seizure operation involves department personnel and other agencies (e.g., FBI, DEA, U.S. Immigration and Customs Enforcement, or other police departments), regardless of the department's benefit, department personnel are:

a.  Regulated by this Department Manual's guidelines and criteria for seized items.

b.  Responsible for notifying the appropriate supervisors and/or investigators.

When a conflict arises about which agency or division takes possession of the seized contraband, the Captain shall coordinate efforts to resolve the issue with the other agencies involved. If the matter cannot be resolved, the issue shall be forwarded through the chain of command until the issue is settled.

When seizures are processed federally, the seizing officer shall coordinate the action with the appropriate federal agency.

## Delegation of Responsibilities

### Seizing Officer

The seizing officer is responsible for:

a.  Identifying items for possible seizure.

b.  Documenting items in the incident report.

c.  Determining all items seized meet prevailing state and federal statutes and the department's seizure criteria.

d.  Completing all appropriate forms.

e.  Faxing all appropriate forms to the proper district attorney's office.

f.  Deliver the original paperwork to the appropriate district attorney's office for state seizures or the appropriate federal agency for federal seizures.

g.  Act as liaison between the department and the various district attorneys' offices.

h.  Provide any additional follow-up investigation for the district attorney's office to complete the investigation.

i.  Process the seized contraband according to the district attorney's banking procedures.

j.  Track the process of seized items through the courts and civil procedures.

## Exceptions To The Established Seizure Criteria

It is recognized there may be occasions when exceptions to the seizure criteria must be granted (e.g., real estate seizures). Any contraband that does not meet the department's established criteria can be seized when the Deputy Chief agrees the guidelines should be waived. This type of seizure shall be evaluated on a case-by-case basis.

## Related Department Manual Policies and Reference Material

- 300.18, **Property and Evidence**
- 300.36, **Towing**
- 300.41, **Required Booking Information and Procedures**
- Texas Code of Criminal Procedure, Chapter 59
- Texas Southern University Department of Public Safety Standard Operating Procedure, Seizure and Forfeiture of Contraband

# Required Booking Information

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Officers will obtain all the needed information to book any prisoner into the Joint Processing Center (JPC) and filing the appropriate charges with Harris County District Attorney's Office. The required booking information will allow the officer to complete the Harris County Sheriff's Office (HSCO) Booking Registration, inventory of the prisoner's property, and enter the prisoner's money into the cash kiosk.

This Department Manual Policy applies to classified employees only.

## Definitions

**Valid Identification.** Current driver license, passport, Lawful Permanent Resident card (Green card) issued by the U. S. Citizen and Immigration Services, any issued Department of State consul identification card, Mexico's Matricula Consular de Alta Seguridad card (MCAS), and U. S. military identification. Officers are to presume these forms of identification are valid unless circumstances bring their authenticity into question.

## Procedures

Officers will adhere to the following procedures when detaining or arresting any person.
a. Officers have the discretion to check the wanted status of anyone legally detained.
b. Officers will check the wanted status of everyone that is ticketed, arrested, or jailed. However, if there is a warrant hit and confirmation is not received within 15 minutes, officers may release the detainee if they do both of the following:
  • Obtain a supervisor's approval.
  • Document the detainee's identification information.
    **Note:** Consideration should be given to the nature of the warrant and the circumstances of the detention.
c. Thoroughly search each prisoner.
d. Acquire all information required for reports and charges.
The following applies to persons arrested and booked in Harris County:
e. All individuals arrested and booked into jail shall be entered into the reporting system in the department's system.
f. Officers shall complete the jail registration process and scan the prisoner's 2 index fingers utilizing the designated fingerprinting system to verify the prisoner's identity and to determine if a prior criminal history exists.
g. Officers shall inventory the prisoner's property and money during the registration process.
h. Officers shall enter Class B or higher charges via the District Attorney Intake Management System (DIMS) within 2 hours of booking and registration process.
i. The transporting officer is responsible for completion of the booking and registration process.
j. Suspects arrested for either fugitive warrants or Southeast Texas Crime Information Center (SETCIC) warrants outside of Harris County shall be taken before a magistrate to receive the magistrate warnings before being booked into jail.

## Jail Safety

Officers entering a prisoner processing room shall secure all of their weapons and the keys to their vehicle in a weapon lock box prior to entry, except in emergency situation.

Weapons include:

    a.  Firearms

    b.  Conducted Energy Devices (CED)

    c.  Knives

    d.  Batons

    e.  Oleoresin Capsicum (OC) Spray or Chlorobenzalmalonoitrile Spray (OC)

Officers shall remain vigilant in regards to their surroundings and the other prisoners in the booking area while completing the booking and registration process.

# Municipal Prisoners

## New Traffic or Municipal Charges

Arresting officers shall book all prisoners on municipal charges and "new traffic" via the electronic citation (e-citation) writing machine. Only the arresting officer's name shall be used to login into the e-citation device. The electronic citation shall indicate that the person is "in custody" and the prisoner's Harris County Sheriff's Officer (HSCO) registration number shall be entered in the "Incident Number" field. The names of any complainants and/or witnesses who need to be subpoenaed to court shall be placed in the "Witness" section of the e-citation machine.

Officers shall conduct a public intoxication or a Class C assault person check for all prisoners being arrested for public intoxication or Class C assault for possible charge enhancement.

## Southeast Texas Crime Information Center (SETCIC) Warrants

When an officer contacts the warrant-issuing agency and verifies that a suspect has a SETCIC warrant, the officer shall then have the SETCIC warrant confirmation of the warrant(s) against the suspect sent to the jail, enter "SETCIC Warrants" for the incident, and enter the SETCIC warrants into the jail registration system. Officer shall ensure that the SETCIC information has been received by jail personnel during the booking and registration process.

Officers are reminded they may attempt a field transfer of a suspect with only a SETCIC warrant and no new local or county charges prior to transporting the suspect to jail.

Suspects without new local or county charges who have a Class C SETCIC warrant from a Harris County Constable Precinct or any of the local agencies contracted with HCSO will be allowed to be booked into the jail. Suspects with SETCIC capias pro fine warrants will not be presented a City of Houston magistrate in regards to the warrant fine. Suspects with SETCIC warrants outside of Harris County shall be taken to  a magistrate to receive the magistrate warnings.

# Class B Misdemeanor or Higher Warrants and Procedures

## Inside Fugitive Warrant

A warrant originating inside Harris County is considered an Inside Fugitive Warrant. The suspect shall be placed in jail and the officer shall complete an original incident report or supplement report. The officer shall enter the warrant information in the appropriate section and ensure that the warrant was received by jail personnel.

## Outside Fugitive Warrant

When a suspect is arrested for a warrant originating outside Harris County, the officer shall contact the dispatcher and have the TCIC/NCIC wanted hit confirmation sent to the jail. The officer shall enter the appropriate Outside Fugitive Warrant information in the offense report as well as the war-rant information and ensure that the warrant was received by jail personnel.

## Out-of-State Fugitive

When a suspect is wanted as an out-of-state fugitive and has new county charges or warrants, the officer shall take the suspect to jail, advised jail personnel that the suspect has an out-of-state war-rant, and book the suspect into jail.

When a suspect is wanted as an out-of-state fugitive and has no other in-state warrants or charges, then the officer shall verify the warrant, ensure the warrant confirmation was sent to the jail and contains the proper extradition language, and contact the warrant-issuing agency to have them sent a copy of the warrant to the jail. The officer shall complete the affidavit and fax, warrant confirmation, and a copy of the warrant to the Harris County District Attorney's (DA's) Office. After the officer receives the extradition packet from the DA's Office, the officer shall then take the suspect in front of a judge for an extradition hearing and book the suspect into jail.

## Absent Without Leave (AWOL) from the Military

Persons arrested solely for being absent without leave (AWOL) from the military shall be booked in-to the county jail in the county where the arrest occurred.

## Immigration and Customs Enforcement (ICE) Hits

Officers who receive an NCIC immigration hit (Criminal Enforcement of Administrative Warrant of Removal or an Immigration and Customs Enforcement Detainer on Previously Deported Felons) on a person shall confirm the information as instructed by NCIC. Officers shall personally contact the Law Enforcement Support Center (LESC) and advise them of the NCIC information hit.

The communications dispatcher is responsible for sending hit confirmation requests to the entering agency asking for positive or negative confirmation with a Routine or Urgent response. Once the identity of the person and the warrant or detainer is confirmed, personnel in communication's division will send the hit confirmation to the jail. The officer shall confirm that the hit confirmation from dispatch has been received by jail registration personnel.

If a suspect has been arrested on other charges and is being booked into jail, LESC will send the immigration warrant or detainer to the jail. If an immigration warrant or detainer is confirmed on an individual that has been detained and there are no other charges, then the officer shall follow the instructions given by the LESC personnel (e.g., meet the LESC personnel in the field).

Officers shall document the name of the LESC contact person, the warrant or detainer information, and the officer's actions in an incident report.

## Inventory of Prisoner Property

A list of each prisoner's inventoried property shall be included in or on official department records (e.g., wreckers slips, incident reports, or prisoners' property records).

Before taking custody of a prisoner from another officer, officers shall inventory the prisoner's property and compare their inventory with that of the officer who is relinquishing custody. If at any point in the custody of a prisoner a dispute arises in regards to the safeguarding of a prisoner's property, the immediate supervisor of the officer involved in the custody of the prisoner shall be contacted and a preliminary investigation shall be conducted. If the dispute is not settled, Internal Affairs shall be conducted per Department Manual 200.19, **Investigation of Employee Misconduct**, within 24 hours.

## Prisoner's Personal Property

Officers shall search all prisoners and enter a list of all of the prisoner's personal property into the jail registration system during the booking and registration process. Officer shall list every item separately and enter a detailed description of each item. The description shall include the following if applicable:

a.  Item (e.g., ring, bracelet, watch, cellular telephone, driver license, identification)

b.  Brand

c.  Color (e.g., yellow ring with clear round stone)

d.  Identification or serial number

e.  Damage (e.g., red Samsung cellular telephone cracked screen)

Upon completion of the registration process, the officer shall give the prisoner's personal property to the jail processing personnel.

## Prisoner's Money

Officer shall utilize the money kiosk for inventorying the prisoner's money (U.S. currency). Officer shall collect the prisoner's money, enter the required prisoner information, and insert the money in-to the kiosk. The officer shall review the prisoner's information and money amount to ensure that it is correct before finalizing the transaction. If the prisoner does not have any money, then the office shall make sure the transaction shows a zero balance. The officer shall acquire the transaction receipts and complete the booking process.

Prisoners who possess currency from other countries or currency that they perceive as personal property (e.g., keepsake $2 bills) shall have those items inventoried as personal property. Officers shall not circumvent entering the prisoner's money into the money kiosk by claiming the money is a keepsake.

There is no limit to how much money can be entered into the prisoner's account; however, if the kiosk does not have the capacity, the officer shall utilize another machine to complete the transaction.

Officers are reminded that if the prisoner is in possession of large amounts of money that may be related to the prisoner's case, then the officer should refer to the procedures outlined in Department Manual 300.40, **Asset Seizure and Forfeiture**.

## Mandatory Items to be Tagged at the Secure Property Facility

The following items of prisoners' property shall be tagged into the property storage facility and documented in the incident report:

a.  Firearms or prohibited weapons (e.g., machetes).

b.  Large items such as luggage or bags, packages, or boxes that will not fit into the jail's property room (e.g., items larger than an airline carry-on bag).

c.  Property of unknown ownership or that does not belong to the prisoner. The officer shall investigate and determine the reason for the prisoner possessing the item. The officer shall tag the property as evidence or safe keeping as determined by the officer's investigation and document the details in the incident report (e.g., credit cards, identifications, birth certificates).

d.  Unopened beer, wine, liquor when an officer determines that no other disposition is possible (e.g., items are inventoried with a vehicle or given to a responsible third party, or permission is granted by the property owner to dispose of the property).

e.  Perishable food items, excluding single serving sizes, when no other disposition is possible (e.g., shoplifting suspect arrested with groceries and the store offers a refund, items are inventoried with a vehicle or given to a responsible third party, or permission is granted by the property owner to dispose of the property).

Officers tagging items in the property storage facility as safekeeping shall complete the appropriate paperwork and list the items as safekeeping in the original incident or supplement report.

## Related Department Manual Policies

- 200.19, **Investigation of Employee Misconduct**
- 200.37, **Contact with Representatives of Foreign Governments**
- 200.38, **Immigration**
- 300.18, **Property and Evidence**
- 300.20, **Handling Publicly Intoxicated Persons**
- 300.40, **Asset Seizure and Forfeiture**
- 300.42, **Filing Proper Charges**

# Filing Proper Charges
**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

The Texas Southern University Department of Public Safety shall work cooperatively with district attorney's offices to help reduce the number of cases dismissed. Proper documentation of the facts and supervisory review should help reduce incidents of charges being dismissed as well as protect officers from frivolous Internal Affairs complaints.

Effective law enforcement requires cooperation between police officers and members of the district attorney's offices. This Department Manual outlines procedural guidelines for officers and supervisors to use when consulting with the district attorney's office in Harris county regarding the filing of charges.

This Department Manual Policy applies to classified employees only.

## Arrests Made In Harris County

Before filing charges with the Harris County District Attorney's Office, the officer filing the charges shall speak with an assistance district attorney to ensure that the charges will be accepted.

During the consultation, the officer shall provide the elements of the offense, sufficient details to show that probable cause existed to arrest the person, and evidence that the person being charged did in fact commit the offense. These probable cause details shall be included in the charges filed via the District Attorney Intake Management System (DIMS).

An assistant district attorney shall also be consulted before the simultaneous filing of both county and municipal charges against one suspect if these charges are based on the same set of circumstances of the same criminal action. This consultation eliminates the possibility of a case being dis-missed because of noncompliance with the Speedy Trial Act of because of violations of legal restraints against placing a defendant in double jeopardy.

Whenever an officer is unsure of the elements of a particular case, he shall discuss the matter with his immediate supervisor or contact the Harris County District Attorney's Office.

Under no circumstances shall a lesser charge be filed merely as a matter of convenience. For example, a charge of Public Intoxication shall not be filed if the actual offense was Driving While Intoxicated (DWI). Appropriate charges shall be filed according to the elements of the offense.

## Rejection of Charges by Assistant District Attorneys

If an officer tries to file charges through the Harris County District Attorney's Intake Office and the charges are rejected, the officer shall include all of the following information in the original or supplemental incident report:

    a. Time and date the officer spoke with the assistant district attorney about filing charges in the case.

    b. Name of the assistant district attorney who rejected the charges.

    c. Reasons given by the assistance district attorney for rejecting the charges.

If the officer feels that the appropriate charge was not accepted by an assistant district attorney, then the officer shall notify a supervisor. If the supervisor finds mishandling on the part of the officer, the supervisor shall instruct the officer on policy and proper procedures to avert reoccurrences. If the supervisor finds no mishandling on the part of the officer, the supervisor shall instruct the officer to call and request to speak to the Chief District Attorney or ask for a rejection letter.

## Filing Charges on Prisoners for Class "B" or Greater Offenses

Officers shall ensure that all elements of the offense and sufficient details are included in the charge filed via DIMS or Juvenile Offender Tracking System (JOTS). Details of the offense need to show that probable cause existed to arrest the person and that there was evidence to prove that the person being charged did in fact commit the offense.

It is imperative that there is a compelling probable cause statement in the charge details, given that this may be the only information available to the assistant district attorney when the defendant is arraigned before a magistrate during a probable cause hearing. The officer filing charges shall document the exact time of arrest.

When officers are required to file Class B or greater charges on suspects, the officer shall do all of the following:

   a.  Complete a General Person's Inquiry on the prisoner.

   b.  Complete the required incident or supplement report and related paperwork.

Officers shall refer to Department Manual 300.41, **Required Booking Information and Procedures** and 400.14, **Criteria for Submitting Incident Reports**, for further information.

   c.  Enter charges in DIMS or JOTS, as applicable. Officers shall not delay entering the charge documents in order to wait for a fingerprint identification number.

Upon completion of charges being filed and after required information and paperwork has been provided and accepted, officer shall return to service.

The officer transmitting the charges via DIMS shall confirm with District Attorney (DA) Intake that they have received all necessary information.

## Resisting Arrest, Search, Or Transportation; Evading Arrest or Detention; and Interference With Public Duties

Officers shall use their training and experience in evaluating the totality of the circumstances when assessing whether charges should be pursued. If an event warrants an officer making an arrest of a person for Resisting Arrest, Search, or Transportation; Evading Arrest or Detention; or Interference with Public Duties, the arresting officer shall immediately notify a supervisor of the arrest and request his presence at the scene.

A supervisor shall check by on all scenes involving any of the above incidents. Once at the scene, the supervisor shall do all of the following:

   a.  Observe the suspect's physical condition, if possible.

   b.  Ensure the suspect receives medical attention if injured.

   c.  Speak with all officers at the scene and review the facts with them.

   d.  Review all the facts with the arresting officer and discuss with the arresting officer the range of charges that may be applicable.

If the incident occurs in Harris County, then after the supervisor has completed the above requirements, the officer shall contact the District Attorney's Office to determine if criminal charges will be accepted. After the officer speaks with the District Attorney's Office, the officer shall immediately notify the scene supervisor of the assistant district attorney's decision.

In addition to the above listed requirements, the supervisor shall do all of the following:

 e. Take and maintain accurate field notes to the incident.

 f. Review the officer's incident report to ascertain that sufficient details of the incident are documented to support the arrest charge.

 g. Ensure any response to resistance is properly documented.

The officer shall also document in the incident report the name of the supervisor that checked by on the scene and reviewed the facts with the officer.

## Driving While License Invalid (DWLI)

A Texas driver license is considered invalid if it is confirmed to be suspended, revoked, canceled, non-renewed, or expired. A DWLI first offense is a Class C misdemeanor. DWLI becomes a class B misdemeanor if the person has a previous conviction for DWLI or the person's driver license was previously suspended as a result of an offense involving the operation of a motor vehicle while intoxicated.

## Use of Retail Value

The value of items in theft cases shall be determined by the retail value of the stolen goods.

## Related Department Manual Policies

- 200.32, **Disposition of Arrested Juveniles**
- 300.02, **Effecting Arrests and Searches**
- 300.21, **Driving While Intoxicated**
- 300.26, **Class C Misdemeanors**
- 300.41, **Required Booking Information and Procedures**
- 400.14, **Criteria for Submitting Incident Reports**

# Referral Of Drivers For Re-Examination By Licensing Authority

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

To enhance transportation safety, officers shall submit a *Law Enforcement Medical Evaluation Request* form when appropriate for motor vehicle operators.

This Department Manual Policy applies to classified employees only.

## Procedural Guidelines

A *Law Enforcement Medical Evaluation Request* form shall be completed by any officer who comes into contact with a motor vehicle operator who has a medical or psychological condition that could prevent safe operation of a motor vehicle. Examples of motor vehicle operators who have or may have an unsafe driving condition include habitual abusers or alcohol or narcotics, epileptics, blind persons, and those who have been adjudged mentally incompetent and have not been restored to competency by a judicial decree or released from a hospital for the mentally incompetent.

Officers shall not confiscate the license of any suspected driver. Only the licensing authority may revoke a license after investigation and review of the information supplied.

The completed *Law Enforcement Medical Evaluation Request* form shall be reviewed by an on-duty supervisor and forwarded to the Texas Department of State Health Services.

# Treatment of Prisoners, Suspects, and Other Citizens

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Employees of the Texas Southern University Department of Public Safety shall treat all prisoners, suspects, and citizens in a humane and lawful manner.

This Department Manual Policy applies to all employees.

## Guidelines

Employees shall avoid all unnecessary physical contact with all prisoners, suspects, and other citizens. Unnecessary contact may include, but is not limited to, pushing, shoving, dragging, punching, or kicking.

Employees shall not place handcuffs on prisoners tighter than is necessary to ensure the prisoner does not remove the handcuffs. Tightening the handcuffs to the point circulation is impaired is prohibited. Officers shall double lock the handcuffs to ensure that they are not inadvertently tightened during transport.

## Reporting Requirements

All employees are reminded of their duty to ensure the safety of all suspects, prisoners, and citizens. Mandatory reporting requirements are outlined in Department Manual 200.19, **Investigation of Employee Misconduct**, regarding the mistreatment of prisoners, suspects, or citizens. Failure to report even minor mistreatment of any person shall result in disciplinary action.

Supervisors who witness mistreatment or are present at the scene where mistreatment is occurring or is alleged are responsible for ensuring the safety of suspects, prisoners, and citizens. Supervisors are also responsible for ensuring that all necessary department notifications are made, incident reports are generated, and forms are completed.

## Related Department Manual Policies

- 100.10, **Disciplinary Process**
- 200.02, **Conduct and Authority**
- 200.19, **Investigation of Employee Misconduct**
- 300.02, **Effecting Arrests and Searches**
- 300.05, **Handling and Transporting Prisoners and Other Persons**
- 300.12, **Response to Resistance**
- 300.13, **Restraint Devices**
- 400.14, **Criteria for Submitted Incident Reports**
- Texas Southern University Manual of Administration Policies and Procedures (MAPP), 02.05.03 Discipline and Grievance Policy

# Handling Dead Bodies Exposed To Public View

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Police officers may be called upon to handle situations in which there is a dead human body ex-posed to public view. The department expects officers to display the highest regard for human remains and to handle dead bodies in such a manner that also provides for a thorough criminal or forensic examination.

This Department Manual Policy to all employees.

## Covering Bodies

A dead human body that is exposed to public view shall be protected by way of extending the crime scene to inhibit the public's view of the decedent until the arrival of personnel from the Harris County Medical Examiner's Office. Patrol vehicles or cones should also be used to obscure public view when it is not practical to extend the crime scene. Covering the body with a body sheet should only be used when it is absolutely necessary to maintain the integrity of the crime scene during extenuating circumstances (e.g., inclement weather). Officers have discretion to cover a body if failure to do so would form the basis of a disturbance and covering it would assist in maintaining peace and order.

Body sheets used to cover a dead body shall be kept in marked vehicles.

## Searching Bodies

Officers shall not search a dead body without express consent of a medical examiner or designee.

When a fatality occurs, no one may disturb or remove the body (or body parts) from the position in which it was found unless the medical examiner or designee so allows. The only exceptions to this policy are when there is no other way to preserve the body from loss or destruction or there is no other way to maintain traffic flow.

## Related Department Manual Policies

- 300.18, **Property and Evidence**
- 300.23, **Crash Investigations**
- 300.46, **Preliminary and Follow-Up Investigations**

# Preliminary and Follow-Up Investigations

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

The Texas Southern University Department of Public Safety shall establish guidelines for officers conducting preliminary investigations and for the disposition of follow-up investigations in order to provide efficient police services.

This Department Manual Policy applies to classified employees only.

## Preliminary Investigations

It shall be the responsibility of the officer who was dispatched or who viewed an incident requiring police service to conduct the preliminary investigation. When an officer who is not assigned to a position responsible for answering calls for service, views or is made aware of a crime, the officer shall contact the appropriate unit to handle the scene and contact any medical personnel if needed. If a conflict arises in determining which officer shall conduct the preliminary investigation, a patrol supervisor responsible for that area shall make the determination. The investigation shall include, but not be limited to, the following:

a.   Ensure that any injured persons receive medical attention.

b.   Observe and make note of all conditions, events, and remarks.

c.   Establish whether a crime has been committed. When appropriate, consult with the district attorney's office of the concerned county.

d.   Secure the crime scene and protect evidence.

e.   Locate and identify witnesses.

f.   Interview the complainants and witnesses. The use of a body worn camera to record statements is preferred.

g.   Determine how the crime was committed.

h.   Collect or arrange for collection of evident.

i.   In family violence cases, assaults, or any incident involving an injury, take photographs and/or video depicting the crime scene and the victim's injuries. If a camera is not available, all injuries shall be thoroughly described in an incident report.

j.   Conduct a noncustodial interview or custodial interrogation of the suspect(s) only after consulting with the concerned investigator. The use of a body work camera to document is preferred.

k.   Effect an arrest if appropriate and possible.

l.   Contact the appropriate investigator from the scene as required by policy.

m.   Complete all appropriate records, documenting the incident fully and accurately.

With serious crimes such as homicides, aggravated assaults, or kidnappings, the investigator or supervisor shall take charge of the investigation upon his arrival. The supervisor may request assistance from the Houston Police Department on such serious crimes. Officers can request a Houston Forensic Science Center (HFSC) Crime Scene Unit to assist on scene.

When HFSC is responsible for processing and collecting evidence, red inner crime scene tape shall be placed around the crime scene area. The red crime scene tape can be obtained from HFSC personnel on the scene.

In addition, protective gloves, particle mask, and shoe covers shall be the default requirement at any crime scene for which HFSC is responsible for processing. The level of protection could potentially be increased or decreased based on the nature of the scene and the type of evidence needing to be collected. Should investigators need to enter the crime scene area, they shall avoid contaminating the scene utilizing crime scene Personal Protection Equipment (PPE), which can be obtained from HFSC Crime Scene Unit personnel on the scene.

## Follow-Up Investigations

When immediate follow-up investigation provides a high probability the suspect can be arrested, the investigation may be continued by the patrol officer. Officers not otherwise authorized shall contact the investigator or a supervisor prior to continuing the investigation.

### Related Department Manual Policies

- 300.06, **Body Worn Cameras**
- 300.18, **Property and Evidence**
- 300.31, **Family Violence**
- 300.47, **Missing, Kidnapped, and Found Persons**
- 300.50, **Photograph and Lineup Identification Procedures**
- 400.14, **Criteria for Submitting Incident Reports**

# Missing, Kidnapped, and Found Persons

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Officers shall immediately respond to all incidents involving a missing adult, juvenile, or child. Officers shall immediately contact a supervisor if a reported kidnapping victim has not been located. The supervisor may contact the Houston Police Department Homicide Division or Juvenile Division for assistance.

All appropriate missing person and interference with child custody incidents reports shall be immediately generated by the primary patrol officer. There is no 24 hours waiting period to report a missing person of any age.

This Department Manual Policy applies to all employees.

## Definitions

**Adult.** For the purposes of this Department Manual, a person 18 years of age or older.

**Child.** For the purposes of this Department Manual, a person 10 years of age or younger.

**Emergency Alert System (EAS).** Known as the Emergency Broadcast System, EAS is typically used for alerting the public of severe weather emergencies. It is also the warning system for civil and national emergencies.

**Intellectual Disability.** Means significantly subaverage general intellectual functioning that is concurrent with deficits in adaptive behavior and originates during the developmental period. The term includes a pervasive developmental disorder.

**Juvenile.** For the purposes of this Department Manual, a person 11 years of age through 17 years of age.

## Initial Investigation

Officers responding to missing person calls shall generate a missing adult, juvenile, or child incident report. After arriving and gathering all pertinent facts, officers shall contact the appropriate TSUDPS individual (within 2 hours of the time the call was received) and provide all necessary information for a TCIC/NCIC entry on the missing child, juvenile, or adult.

Even though it is not a crime to be missing, a missing person's information is entered as wanted.

The primary officer should be prepared to provide the following information to the appropriate individual:

   a.   Complete identification information (e.g., name, date of birth, and identification, driver license, and social security numbers).

   b.   Complete description of the person (e.g., gender, race, height, weight, clothing, age, hair color, eye color, marks, scars, or tattoos).

   c.   Vehicle description (if applicable).

   d.   Possible destination.

   e.   Last known location.

   f.   Any other pertinent information.

After notification of a missing person, the appropriate TSUDPS individual shall immediately enter the missing person's information into TCIC/NCIC with all available information and complete a supplement to the original incident report with their actions and any additional information.

Federal Law (Suzanne's Law) requires law enforcement agencies to report to NCIC each case of a missing person under 21 years of age. This requires an incident report to be generated.

When a photograph is available, officers are responsible for the development of a missing persons flyer. This shall be documented in the incident report.

## Special Circumstances

Special circumstances for missing persons shall include all life endangerment situations such as child abductions, juveniles, or adults missing under suspicious circumstances, missing elderly, or missing persons with life endangering mental illness. Officers shall notify a supervisor of all abductions or life endangerment situations.

Additionally, for missing person incidents with special circumstances, the patrol officer dispatched to the scene shall:

a.  Respond in a timely manner.

b.  Gather essential information and broadcast this information along with a description of the missing adult, juvenile, or child.

c.  Search the area where the missing adult, juvenile, or child was last known to be or is reasonably believed to be.

d.  Utilize department resources or outside agency resources, if needed (e.g., helicopters, tracking dogs).

## Follow-Up Investigation

The assigned investigator shall investigate all missing, runaway, and life endangerment cases. Officers who respond to such life endangerment scenes shall contact an investigator or supervisor to make the scene.

## Found Persons

### Adult

If an officer finds a person who is elderly or an adult that is confused or mentally challenged, the officer shall:

a.  Contact an investigator or on-duty supervisor to determine if the found person has been reported missing.

b.  Coordinate with the investigator or on-duty supervisor in an effort to contact a responsible person (e.g., relative or caregiver) to whom the found person may be released.

### Juvenile or Child

If an officer finds a juvenile or child, the officer shall:

a.  Contact an investigator or on-duty supervisor to determine if the found juvenile or child has been reported missing. The Houston Police Department Juvenile Division of Harris County Juvenile Probation department may be contacted to assist in these incidents.

b.  Coordinate with any necessary personnel in an effort to locate and contact a parent or legal guardian to whom the found juvenile or child may be released.

**Disposition of Found Persons**

If a parent or legal guardian of a found juvenile or child cannot be located, then the on-duty supervisor shall advise the patrol officer where to transport the person. Juveniles and children shall be transported in accordance with state laws and with Department Manual 200.32, **Disposition of Arrested Juveniles**.

If a child safety seat is used, employees shall also follow the seat's instructions and safety procedures as set forth by the manufacturer.

When officers believe that releasing a found person would not be in the person's best interests (e.g., due to their infirmities or the fact that they are a danger to themselves or others), the person should be transported to a hospital or the NeuroPsychiatric Center (NPC) in accordance with Department Manual 300.11, **Handling Persons Exhibiting Mental Health Crisis**.

## Kidnapping or Foul Play

Officers dispatched to a missing persons incident shall conduct an initial investigation and cursory search. Officers shall attempt to gather all relevant information as well as descriptive information and a photograph of the missing person.

Officers may call the Houston Police Department Homicide Division when the incident involves either of the following:

  a.  A kidnapping and the victim is still missing, including incidents of family violence.

  b.  A missing person incident that may involve foul play.

The HPD Homicide Division, along with the TSUDPS personnel, shall investigate all kidnapping incidents (regardless of age) and all other cases involving suspicious circumstances. Officers responding to an attempted child abduction incident shall immediately contact the appropriate TSUDPS individual and provide the needed information for a TCIC/NCIC entry.

Additionally, all personnel shall follow general broadcast procedures in accordance with Department Manual 300.24, **General Broadcasts**, as long as the victim in not further endangered.

## Alert Systems

The alert systems outlined in this section are programs between law enforcement and local broadcasters to send an emergency alert to the public when a child, juvenile, person with intellectual disability, or elderly person is missing or abducted and it is believed the person is in danger of becoming the victim of sexual assault, serious bodily harm, or death. The alert systems described below shall be used whenever the appropriate criteria are met.

### Amber Alert

All of the following criteria must be met before activating the Houston Regional AMBER Plan or the statewide Amber Alert System:

  a.  The missing person is 17 years of age or younger.

  b.  Law enforcement believes the missing person has been abducted.

  c.  Law enforcement believes the missing person is in danger of serious bodily harm or death.

  d.  Law enforcement has conducted an investigation that verified the abduction or ruled out alternative explanations.

  e.  Sufficient information is available to disseminate to the public that could assist in locating the missing person, suspect, or suspect's vehicle.

Activation of the statewide Amber Alert System also applies to:

 f. A missing person 17 years of age or younger who law enforcement believes is in immediate danger of becoming a victim of sexual assault.

 g. A child younger than 14 years of age, regardless of whether the child departed willingly with the other person, who has been taken from the care and custody of the child's parent or legal guardian without the permission of the parent or legal guardian by another person who is more than 3 years older than the child not related to the child by any degree of consanguinity or affinity.

Officers with situations meeting the criteria outlined in this subsection can contact the HPD Homicide Division for further assistance.

## Silver Alert

The Texas Department of Public Safety implemented the Silver Alert System as a means to assist law enforcement in the recovery of missing senior citizens with a documented mental impairment. Silver Alerts typically resemble those alerts issued for abducted children (Amber Alerts), using similar notification technologies (with the exception of EAS) to alert the public.

The state network has the ability to disseminate Silver Alerts to any geographical area in Texas, based upon investigative recommendations. Not all activations are considered "statewide."

All six of the following criteria must be met before activating the Silver Alert System:

 a. The missing person must be 65 years of age or older.

 b. The senior citizen's domicile must be in the state of Texas.

 c. The senior citizen must be diagnosed with an impaired mental condition and the senior citizen's disappearance has to pose a credible threat to his or her health and safety. Officers shall require the family or legal guardian of the missing senior citizen to provide documentation from a medical or mental health professional of the senior citizen's condition.

 d. Confirmation that an investigation has taken place verifying that the senior citizen's disappearance is due to his or her impaired mental condition and alternative reasons for the senior citizen's disappearance have been ruled out.

 e. Silver Alert request must be made within 72 hours of the senior citizen's disappearance.

 f. There must be sufficient information available to disseminate to the public that could assist in locating the senior citizen. Highway signs will be activated only if accurate vehicle information is available and it is confirmed that the senior citizen was driving the vehicle at the time of the disappearance.

## Endangered Missing Persons Alert

All of the following criteria must be met before activating the Endangered Missing Persons Alert.

 a. The missing person has been diagnosed with an intellectual disability and/or a Pervasive Developmental Disorder, including Asperger's Disorder, Autistic Disorder, Autism Spectrum Disorder, Childhood Disintegrative Disorder, Rett's Disorder, or a Pervasive Developmental Disorder not otherwise specified.

If the missing person has been diagnosed with an intellectual disability, law enforcement shall require a written diagnosis from a physician or psychologist licensed within Texas, or certified by the Texas Department and/or Texas Department of State Health Services.

b.  Law enforcement has confirmed that an investigation has taken place verifying that a reasonable explanation for the missing person's disappearance has been ruled out and the disappearance poses a credible threat to the health and safety of the missing person.

c.  The Endangered Missing Persons Alert request is made within 72 hours following the missing person's disappearance.

d.  There is sufficient information available to disseminate to the public that could assist in locating the missing person. Highway signs will be activated only if accurate vehicle information is available and it is confirmed that the missing person was in the vehicle at the time of the disappearance.

## Interference With Child Custody

Under federal law, children 17 years of age or younger who are subjects of interference with child custody cases are considered missing. Therefore, the primary officer shall generate an incident report for interference with child custody and contact the appropriate TSUDPS individual to provide information required for a TCIC/NCIC entry if needed. Due to the complexity of these cases a determination shall be made by the appropriate TSUDPS individual as to whether a TCIC/NCIC entry will be made.

## Related Department Manual Policies

- 200.32, **Disposition of Arrested Juveniles**
- 300.11, **Handling Persons Exhibiting Mental Health Crisis**
- 300.24, **General Broadcasts**
- 300.31, **Family Violence**
- 300.46, **Preliminary and Follow-Up Investigations**
- 300.48, **Sexual Assaults**
- 400.14, **Criteria for Submitting Incident Reports**
- 400.19, **NCIC/TCIC**

# Sexual Assaults

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

The Texas Southern University Department of Public Safety (TSUDPS) procedural guidelines shall ensure that sexual assault victims receive efficient police services as well as sympathetic and understanding treatment. These procedures will benefit sexual assault victims and aid in the investigation of cases. The responsive, professional treatment of sexual assault victims by the police also should encourage more victims to report offenses and generally increase public confidence in and respect for the police.

This Department Manual Policy applies to all employees.

## Procedural Guidelines

Officers shall at all times treat sexual assault victims with compassion, consideration, understanding, and patience; although this shall not prevent officers from collecting evidence and asking necessary questions.

Officer who respond to the scene of a sexual assault (adult or child victim) may call the Houston Police Department's Special Victims Division for assistance or guidance.

If an officer has a complete license plate number for a vehicle involved in a serious crime such as sexual assault, a supervisor holding the rank of lieutenant or higher may approve usage of the Harris County Toll Road Authority (HCTRA) automated license plate recognition system. See Department Manual 300.46, **Preliminary and Follow-Up Investigations**, for requirements and procedures.

Officers responding to a sexual assault involving a peace officer shall immediately notify the HPD Homicide Division Special Investigations Unit and the Harris County District Attorney's Office.

The officer making the original incident report shall provide the sexual assault victim with the incident number and the name and telephone number of any additional resources.

### Sexual Assault Examination Kit

Texas law states if a sexual assault is reported to a law enforcement agency within 120 hours following the assault, with the consent of the victim, the agency shall request a forensic medical examination. If a sexual assault is not report with 120 hours, the agency may request a forensic medical examination if appropriate.

The primary officer assigned to the crime scene shall refer all sexual assault victims to the nearest designated sexual assault treatment center for a medical examination. These designated treatment centers are hospitals located in Houston and Harris County that have made a commitment to prioritize the treatment of sexual assault victims in order to reduce the treatment time for these victims and to reduce the time an officer is out of service.

If an officer is dispatched directly to the hospital to take a report, the officer making the original incident report shall provide the hospital official with the following information:

   a.   Incident number

   b.   Names of the complainants and witnesses

   c.   Date and time of the offense

The address of the hospital shall not be used as the offense location in the incident report. The officer shall list the offense location as the location where the crime occurred.

When an officer has a prisoner in custody or is otherwise unable to go directly from the crime scene to the hospital for needed follow-up, the officer shall first advise a supervisor and then the dispatcher. The officer shall supplement the call history with the following information:

    d.  Type of offense

    e.  Incident number

    f.  Location of crime scene

    g.  Date of incident

    h.  Suspect information

    i.  Complainants' and witnesses' names

    j.  Investigating officer's name

    k.  Name of sexual assault treatment center (e.g., hospital)

The dispatcher contacted shall then be responsible for assigning another unit to make the needed hospital follow-up.

The officer responsible for picking up the sexual assault kit prepared form the treatment center shall deliver it to the Medical Examiner storage facility regardless of whether the kit is a Texas Southern University Department of Public Safety kit or another kit the hospital may have used inadvertently for the examination. The officer shall complete a supplement to the original report detailing the pickup and tagging of the sexual assault kit.

## Evidence

In addition to the normally required report information, the officer making the original incident report or the officer making the follow-up call shall enter and identify all property, articles, and evidence on a separate and appropriate property screen.

Officers shall collect all evidence that could aid in the prosecution of the sexual assault including, but not limited to, the following:

    a.  Weapons

    b.  Scene photos

    c.  Photos of injuries

    d.  Blood, semen, hairs

    e.  Items that may contain evidentiary biological materials including, but not limited to:

        1.  Clothing

        2.  Undergarments

        3.  Sheets

    f.  Bindings

    g.  Audio or video recordings

    h.  Cellular telephones

    i.  Other digital evidence

## Sexual Abuse of a Child (Younger than 17)

When responding to an incident involving the sexual abuse of a child younger than 17 years of age, officer shall generate an incident report and forward it to an investigator. This also applies to delayed reports of sexual abuse.

Officers shall ensure that victims of sexual assaults occurring within the previous 120 hours are immediately referred for a sexual assault examination. Child victims who have been sexually abused within the previous 120 hours shall be referred to the Texas Children's Hospital in the Houston

Medical Center or to any hospital in the Memorial Hermann Hospital System in order to obtain a sexual assault examination.

If a sexual assault is not reported with 120 hours following the assault, the department may request a forensic medical examination if appropriate. Officers may contact an investigator or on-duty supervisor for guidance.

Officers shall not direct victims or caretakers to the Children's Assessment Center in lieu of generating an original incident report. Officers becoming aware of an incident are required to generate an incident report. Officers shall advise victims or the non-offending caretakers that a child sexual abuse investigator will contact them to schedule an interview.

The Texas Department of Family and Protective Services (DFPS) shall be contacted by the responding patrol officer for allegations of sexual assault of a child in which the alleged perpetrator is a family member or caretaker.  Statewide Intake may be contacted by calling 1-800-877-5300.

## Related Department Manual Policies
- 300.02, **Effecting Arrests and Searches**
- 300.18, **Property and Evidence**
- 300.31, **Family Violence**
- 300.46, **Preliminary and Follow-Up Investigations**
- 300.47, **Missing, Kidnapped, and Found Persons**
- 300.50, **Photograph and Lineup Identification Procedures**
- 400.14, **Criteria for Submitting Incident Reports**

# Gang Crime

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Gang crimes shall be given high investigative and intelligence priority. The policy implements directives in accordance with Chapter 61 of the Texas Code of Criminal Procedure. Employees have a responsibility to be aware of and collect information regarding gang activity. Employees may contact the Houston Police Department Gang Division for guidance and assistance.

This Department Manual Policy applies to all employees.

## Definitions

**Criminal Street Gang.** A group of three or more persons having a common identifying sign, symbol, or leadership and who continuously or regularly associate in the commission of criminal activities. This definition includes, but is not limited to, adult, juvenile, and transnational criminal street gangs, criminal motorcycle gangs, and prison gangs.

**Documentation.** An official record of an individual created when information regarding the individual is entered into any department gang tracking database.

**Gang Crime.** A reported incident or crime that occurs or is committed for the benefit of, at the direction of, or in association with any criminal street gang. It is emphasized that all of the gang types included under the definition of a criminal street gang should be considered when making a determination whether or not an incident or offense is a gang crime.

**Gang Intelligence.** Information related to gangs, gang membership or association, gang activity, planned or spontaneous responses to gang activity, statistical data related to gangs, and all other data related to gangs.

**Gang Member.** Any person belonging to or having membership status in a criminal street gang.

## Retention of Gang Intelligence

All gang intelligence is the property of the Texas Southern University Department of Public Safety. Except as authorized by this Department Manual, no individual or division of the department shall retain gang intelligence that has not been authorized.

An exception to this information relative to an active criminal investigation for which an incident report has been generated.

A file may be maintained on an individual for up to 60 calendar days while determining whether there is sufficient information to document the person as a criminal gang member. After 60 calendar days, all files on a suspected gang member shall be purged if there is not enough information to document the person as a gang member. Officers shall not maintain copies of gang information once the information is officially entered into a gang database. However, any information contained in an officer's field notes that was gathered during the course of an investigation shall be retained and made available to the prosecutor upon request.  The dissemination and purging of gang data is strictly controlled by state and federal law.

# Gang Member Submittal Process

When seeking to have an individual documented as a gang member, employees shall utilize a gang database by entering the information into the system. Entering the information into a gang database that is approved by a gang intelligence officer is the only way an individual shall be officially recognized as a gang member.

## Gang Database Criteria

Employees shall follow state laws when documenting a criminal gang member. For an individual to be documented as a gang member, gang intelligence must satisfy the criteria listed in either item (a) or (b) below.

   a. Information on the individual must be relevant to the identification of an organization reasonably suspected of involvement in criminal activity and consist of the following:

      1. Judgment under any law that includes, as a finding or as an element of a criminal offense, participation in a criminal street gang.

      2. Self-admission by the individual of being a criminal street gang member during a judicial proceeding.

   b. If the criterion listed in item (a) above is not met, then information on the individual must consist of at least two of the following:

      1. Self-admission by the individual of criminal street gang membership that is not made during a judicial proceeding including the use of the Internet or other electronic format or medium to post photographs or other documentation identifying the individual as a member of a criminal street gang.

      2. Identification of the individual as a criminal street gang member by a reliable informant or other individual.

      3. Corroborated identification of the individual as a criminal street gang member by an informant or other individual of unknown reliability.

      4. Evidence the individual frequents a documented area of a criminal street gang and associated with known criminal street gang members.

      5. Evidence the individual uses, in more than an incidental manner, criminal street gang dress, hand signals, tattoos, or symbols, including expressions of letters, numbers, words, or marks, regardless of how or the means by which the symbols are displayed, that are associated with a criminal street gang that operates in an area frequented by the individual.

      6. Evidence the individual has been arrested or taken into custody with known criminal street gang members for an offense or conduct consistent with criminal street gang activity.

      7. Evidence that the individual has visited a known criminal street gang member other than a family member of the individual while the gang member is confined in or committed to a penal institution.

      8. Evidence of the individual's use of technology, including the Internet, to recruit new criminal street gang members.

## Retention Schedule for Gang Member Information

Adult criminal street gang information shall be purged from any gang database after five years if the individual has not been arrested for criminal activity. The five-year period does not include the time line if the individual is:

    a. Confined in a correctional facility operated by or under contract with the Texas Department of Criminal Justice;

    b. Committed to a secure correctional facility operated by or under contract with the Texas Youth Commission; or

    c. Confined in county jail in or committed to a facility operated by a juvenile board in lieu of being confined in a correctional facility operated by or under contract with the Texas Department of Criminal Justice or being committed to a secure correctional facility operated by or under contract with the Texas Youth Commission.

Records of juveniles 10 through 16 years of age shall be purged after two years if the child has not been into custody for delinquent conduct or arrested for criminal activity. The two-year period does not include the time the child is:

    d. Committed to the Texas Youth Commission for a felony; or

    e. Confined in the Texas Department of Criminal Justice

## Gang Crime Incident Reporting

Employees should indicate when an incident is gang related. Objective evidence in coding an incident or offense as a gang crime includes, but is not limited to, the following:

    a. The incident was known or alleged to have been motivated by gang rivalry or gang retaliation.

    b. The complainant, suspect, witness, or reportee was known or suspected member of a criminal street gang. An exception would be for DWI, DWLS, or any other offense for which the incident would not likely have been committed in furtherance of the gang organization's mission.

    c. The modus operandi of the specific incident or offense suggested possible gang involvement (e.g., drive-by shooting, robbery, assault, murder, or any crime in which the complainant was targeted due to assumed gang affiliation based on clothing, race, or location).

    d. The incident, involved multiple suspects or complainants wearing the same or similar clothing (particularly the same color), or clothing displaying a specific name of symbol.

    e. The suspect, complainant, witness, or reportee alleged possible involvement by a gang.

    f. The incident or offense occurred in an area known for gang activity.

If facts indicate the incident or offense may have been motivated, committed, or directed by a criminal street gang, it should be indicated in the incident report as a gang crime.

## Officers' Responsibilities

Each patrol officer shall be able to recognize or identify:

    a. Gang graffiti.

    b. Indications of gang membership (e.g., tattoos, hand signs, clothing).

    c. Signs of gang involvement at crime scenes.

    d. Individuals who may be gang members (according to established criteria).

Each patrol officer shall:

    e.   Submit gang intelligence via an incident report.

    f.   Use gang information for criminal justice purposes only. When accessing gang information, employees shall NOT allow suspects or other citizens to view the information even if it is the citizen's or suspect's own information.

Patrol officers are expected to familiarize themselves with:

    g.   Known neighborhood gang handouts and gang influenced areas.

    h.   How to code gang related incident reports.

All officers shall actively seek to identify and suppress gang related activities. Officers' actions shall be proactive in nature and include:

    i.   Efforts to identify individuals involved in gang related activities.

    j.   Observing and interviewing individuals displaying behavior common to gang members (e.g., using gang lingo, symbols, or signs, having gang tattoos, frequently gang hangouts, or involvement in gang fights).

    k.   Acting on gang intelligence and reasonable suspicion that illegal gang activities are about to occur and intervening and suppressing those activities.

## Release of Gang Information

The Texas Comptroller of Public Accounts shall ensure the public is made aware the department gives all incidents involving gang crimes high investigative priority.

Except as noted below, employees are strictly prohibited from making statements or releasing information regarding any gang information or investigation to anyone who is not a department employee.

The release of gang intelligence to other law enforcement agencies may be authorized by the Captain.

## Related Department Manual Policies and Reference Material

- 200.01, **Keys, Passwords, and Personal Identification Numbers**
- 200.31, **Acceptable Use of Computers**
- 300.18, **Property and Evidence**
- 400.14, **Criteria for Submitting Incident Reports**
- 400.15, **Police Records**
- Texas Code of Criminal Procedure, Chapter 61
- Texas Southern University Manual of Administration Policies and Procedures (MAPP), 04.06.03 Computer Use Policy

**300.50**

# Photograph and Lineup Identification Procedures

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Witness identification is a frequently used investigative tool. As such, officers shall adhere to the procedures outlined in this Department Manual to reduce erroneous eyewitness identifications and to enhance the reliability and objectivity of eyewitness identifications.

Additionally, irrespective of the identification, or lack thereof, of a suspect, officers are required to diligently follow up with the investigation by seeking corroborating evidence, documenting the identification procedures utilized, and completing all appropriate reports pursuant to Department Manual 300.46, **Preliminary and Follow-Up Investigations**.

Every effort shall be made to determine that each witness is literate and proficient enough in the English language to participate in a viewing. Officers shall make every attempt to get an interpreter if they encounter a witness who is a limited English proficient individual.

Officers shall follow the guidelines set out in Department Manual 300.09, **Dealing with the Deaf or Hard of Hearing**, if they encounter a witness participating in a viewing who is deaf or hearing impaired.

This Department Manual Policy applies to all employees.

## Definitions

**Administrator.** The employee charged with presenting the photo spread, live lineup, video lineup, or show-up to the witness.

**Assigned Investigator.** The officer primarily responsible for investigating an incident.

**Blinded Administrator.** An administrator who may know the identity of the suspect, but does not know the suspect's position in the photo spread, live lineup, or video lineup.

**Double-Blind Administrator.** An administrator who knows neither the suspect's identity nor the suspect's position in the photo spread, live lineup, or video lineup.

**Fillers.** The photographs used in a photo spread or the individuals used in a live lineup or video lineup whose race, sex, age, height, weight, hair style, and general appearance resemble the suspect.

**Folder Method.** A photo spread within a folder or envelope that is given to the administrator for presentation to the witness.

**Lineup.** See live lineup.

**Live Lineup.** Also referred to as a lineup. The presentation of individuals to a witness for the purpose of identifying and eliminating suspects.

**Mock Lineup.** A lineup procedure that is conducted without the presence of witnesses. The lineup is video recorded so that it can be shown to a witness at a later time.

**Photo Lineup.** See photo spread.

**Photo Spread.** Also referred to as a photo lineup. A collection of photographs including a suspect photograph and filler photographs that are placed in random order and shown to a witness for the purpose of identifying and eliminating suspects.

**Sequential Viewing.** An identification procedure in which photo spread photographs or lineup participants are shown one at a time to a witness. All photographs or lineup participants are shown to the witness even if an identification is made before all individuals are viewed.

**Show-up.** The presentation of a suspect to a witness within two hours following the commission of a crime for the purpose of identifying and eliminating suspects.

**Simultaneous Viewing.** An identification procedure in which photo spread photographs or lineup participants are shown all at once to a witness.

**Video Lineup.** A video recording of either a live lineup or a mock lineup.

**Viewing.** The viewing of a photo spread, live lineup, video lineup, or show-up by a witness.

**Witness.** A term referring to a complainant, eyewitness, or any other form of witness to an incident.

## Admonishments To Witnesses

Prior to a viewing for any photo spread, live lineup, video lineup, or show-up the administrator shall review the below admonishments with each witness.

Prior to viewing any photo spread, live lineup, or video lineup, the administrator shall also have each witness complete a Witness Admonishment Form.

    a. The individual who committed the offense may or may not be present.

    b. The witness is not required to select any individual and that it is equally important to clear persons not involved in the crime from suspicion as it is to identify persons believed to be responsible for the crime.

    c. The investigation shall continue whether or not an individual is identified.

    d. Individuals presented may not appear exactly as they did at the time of the incident because features such as head hair, facial hair, and clothing are subject to change.

    e. Individuals presented shall be positioned in random order. (This is not applicable to show-ups).

    f. The witness shall not discuss the identification procedure with other witnesses.

    g. While participating in the viewing, the witness shall not speak or make gestures or outcries that may be seen or heard by other witnesses.

    h. While participating in the viewing, the witness shall not look for guidance from the administrator.

    i. The administrator is prohibited from providing feedback to the witness regarding a selection or non-selection.

In addition to the above, prior to any photo spread viewing, the administrator shall admonish each witness to remain in a position so that no one else including the administrator can see the photo spread.

## Procedures For A Photo Spread (Photo Lineup)

### Photo Spread Composition

A photo spread should contain the suspect's photograph plus a minimum of five fillers, whose race, sex, age, height, weight, hair style, and general appearance resemble the suspect. Officers shall create a consistent appearance between the suspect and the fillers with respect to any unique or unusual feature (e.g., scars, tattoos, facial hair) used to describe the perpetrator by artificially adding or concealing that feature.

Officers shall avoid using fillers who so closely resemble the suspect that a person familiar with the suspect might find it difficult to distinguish the suspect from the fillers.

If possible, all photographs should be of the same type. No photograph type should stand out from the others and the photographs should be reasonably contemporary.

The identity or identifying numbers (e.g., TDL, HPD, and SID) of all filler photographs shall be known. If adequate identifiable fillers cannot be found, only the Captain may authorize the use of a photo spread that contains unknown filler photographs.

The officer creating the photo spread shall use the same photographs to produce as many additional photo spread as needed for multiple witnesses. The photographs in each photo spread shall be shuffled to minimize the chances of the suspect's photograph being in the same position in subsequent photo spreads.

Once assembled using the folder method, the photo spread shall be given to an administrator to be presented to the witness.

Photo spreads involving juvenile suspects are composed and conducted in the same manner as for adults.

## Photo Spread Viewing

The viewing of a photo spread may be video or audio recorded.

Photo spreads may be presented as either a simultaneous viewing or a sequential viewing. A photo spread shall be shown to a witness by a double-blind administrator using the folder method. If the identity of the suspect is widely known such that a double-blind administrator cannot be located, then a blinded administrator shall present the photo spread. Officers shall document in the incident report the justification for not utilizing a double-blind administrator.

The administrator shall be in a position so that the administrator cannot see the photographs while the witness views the photo spread.

Prior to the viewing, the administrator shall admonish each witness as outlined in section *Admonishments to Witnesses*, of this Department Manual.

The administrator shall not make suggestive statements or gestures that may influence the judgment or perception of the witness.

Multiple witnesses shall be shown separate photo spreads prepared and shuffled as described in the previous subsection. Each witness shall be presented the photo spread outside the presence of the other witnesses. The administrator shall instruct witnesses not to speak to or otherwise communicate with each other regarding the viewing.

Employees shall not provide any feedback regarding the viewing results to the witness.

Following the viewing, the administrator shall ask the witnesses about their observations individually and outside the presence of the other witnesses. Each witness shall be asked if any individual can be identified. Whether or not a witness answers in the affirmative, the witnesses shall be asked to describe in their own words how confident they are of the identification or lack thereof.

If a photo spread viewing results in a positive identification by a witness, the witness shall be asked to sign the photo spread or an acknowledgment confirming the results of the viewing in a manner that shall not be seen by subsequent witnesses.

Whether a viewing results in a positive or negative identification by a witness, the administrator's observations including any statements, gestures, or reactions by the witness shall be documented in the incident report.

Officers shall report in the incident report, the identity or identifying numbers of all persons displayed in the photo spread and their respective positions in each photo spread so that the photo spreads could be reproduced if needed.

All photo spreads shall be maintained as part of the case file.

# Procedures For A Live Lineup and Mock Lineup

## Rights of a Suspect

A suspect has the right to be represented by an attorney at a live lineup to be viewed by a witness in the case in which the suspect is charged. The suspect may waive the right to counsel by signing a written waiver.

If a suspect in the above situation does not waive the right to counsel and he or she already has an attorney, the suspect shall be given sufficient notice of the live lineup time and location so that the attorney can attend the viewing.

If a suspect in the above situation does not waive the right to counsel and he or she is not represented by an attorney, officers shall contact the District Attorney's Office to allow the court to appoint an attorney prior to the live lineup viewing.

An investigator does not have a legal obligation to provide an attorney for a suspect in a live lineup under either of the following circumstances:

    a.  The suspect is not charged with committing a crime in the case involving a witness viewing the live lineup.

    b.  The suspect was arrested on a probable cause warrant (a.k.a. pocket warrant) and is placed in a live lineup.

An investigator does not have a legal obligation to provide an attorney for a suspect in a mock lineup for video recording purposes.

Even if an investigator does not have a legal obligation to provide an attorney for a suspect, the suspect may still be allowed to make arrangements to have an attorney present for the live lineup or mock lineup.

A suspect shall be given the option of arranging the order of individuals participating in the live lineup or mock lineup, including his or her position in the live lineup or mock lineup.

## Live Lineup and Mock Lineup Composition

A live lineup or mock lineup should contain the suspect plus a minimum of four fillers, whose race, sex, age, height, weight, hair style, and general appearance resemble the suspect. Officers shall create a consistent appearance between the suspect and the fillers with respect to any unique or unusual feature (e.g., scars, tattoos, facial hair) used to describe the perpetrator by artificially adding or concealing that feature.

Officers shall avoid using fillers who so closely resemble the suspect that a person familiar with the suspect might find it difficult to distinguish the suspect from the fillers.

## Live Lineup and Mock Lineup Viewing

Live lineups or mock lineups may be presented as either a simultaneous viewing or a sequential viewing. Live lineups shall be conducted by a double-blind administrator. If the identity of the suspect is widely known such that a double-blind administrator cannot be located, then a blinded administrator shall present the live lineup. Officers shall document in the incident report the justification for not utilizing a double-blind administrator.

Prior to the viewing, the administrator shall admonish each witness as outlined in section *Admonishments to Witnesses* of this Department Manual.

The administrator shall not make suggestive statements or gestures that may influence the judgment or perception of the witness.

The administrator shall instruct witnesses not to speak to or otherwise communicate with each other regarding the viewing. The administrator shall also instruct witnesses not to address the suspect or other live lineup participants.

Any instructions to the participants in a live lineup or mock lineup shall be given by a single administrator. The participants in a live lineup or mock lineup may be asked to speak, repeat certain words, walk, turn, or make a gesture. Any conduct, gesture, or spoken words asked of one participant shall be asked of each participant of the live lineup or mock lineup.

Any objections to the procedure by the suspect's attorney or any changes that were made as a result of an objection shall be documented in the incident report.

Employees shall not provide any feedback regarding the viewing results to the witness.

Following the viewing, the assigned investigator or designee shall ask the witnesses about their observations individually and outside the presence of the other witnesses.  Each witness shall be asked if any individual can be identified. Whether or not a witness answers in the affirmative, the witness shall be asked to describe in their own words how confident they are of the identification or lack thereof.

If a live lineup viewing results in a positive identification by a witness, the witness shall be asked to sign an acknowledgment confirming the results in a manner that shall not be seen by subsequent witnesses.

Whether a viewing results in positive or negative identification by a witness, the administrator's and investigator's observations including any statements, gestures, or reactions by the witness shall be documented in the incident report.

Officers shall record in the incident report, the identity or identifying numbers of all persons displayed in the live lineup or mock lineup and their respective positions in the lineup. In addition, the report shall include a description of any actions required of the lineup participants and the names of all witnesses and persons viewing the lineup.

A record of the live lineup or mock lineup revealing the identity and the positions of the individuals displayed in the live lineup or mock lineup shall be preserved by a video recording or photograph and maintained as part of the case file.

A juvenile may appear in a physical lineup for the purpose of identification. Due to a number of regulations and limitations, a juvenile lineup should only be considered under the most exigent circumstances.

## Procedures For A Video Lineup

### Video Lineup Composition

Composition requirement for video lineups are the same as for live lineups and mock lineups outlined in section *Procedures for a Live Lineup and Mock Lineup*, of this Department Manual.

### Video Lineup Viewing

The administrator of a video lineup viewing shall be a double-blind administrator. If the identity of the suspect is widely known such that a double-blind administrator cannot be located, then a blinded administrator shall present the video lineup. Officers shall document in the incident report the justification for not utilizing a double-blind administrator.

Prior to the viewing, the administrator shall admonish each witness as outlined in section *Admonishment to Witnesses* of this Department Manual.

The administrator shall not make suggestive statements or gestures that may influence the judgment or perception of the witness.

The administrator shall instruct witnesses not to speak to or otherwise communicate with each other regarding the viewing.

Employees shall not provide any feedback regarding the viewing results to the witness.

Following the viewing, the administrator or an investigator shall ask the witnesses about their observations individually and outside the presence of the other witnesses. Each witness shall be asked if any individual can be identified. Whether or not a witness answers in the affirmative, the witnesses shall be asked to describe in their own words how confident they are of the identification or lack thereof.

If a video lineup viewing results in a positive identification of the suspect by a witness, the witness shall be asked to sign an acknowledgment confirming the results of the viewing in a manner that will not be seen by subsequent witnesses.

Whether a viewing results in a positive or negative identification by a witness, the administrator's and investigators' observations including any statements, gestures, or reactions by the witness shall be documented in the incident report.

Officers shall record in the incident report, the identity or identifying numbers of all persons displayed in the video lineup and their respective positions in the video lineup. In addition, the report shall include a description of any actions required of the video lineup participants and the names of all witnesses and persons viewing the video lineup.

All video lineups shall be maintained as part of the case file.

## Procedures For A Show-Up

Due to the inherent suggestiveness of show-ups, this practice shall be avoided whenever possible in preference for the use of a photo spread, live lineup, or video lineup. However, if a show-up is utilized, the following procedures and restrictions must be followed:

a. A show-up shall not be used more than two hours following the commission of the crime.

b. The same suspect shall not be presented to the same witness more than once.

c. Show-up suspects shall not be required to put on clothing worn by the perpetrator, to speak words uttered by the perpetrator, or to perform other actions of the perpetrator.

d. Prior to the viewing, the administrator shall admonish each witness as outlined in section *Admonishments to Witnesses* of this Department Manual.

e. The administrator shall not make suggestive statements or gestures that may influence the judgment or perception of the witness.

f. Multiple witnesses shall each be presented the suspect outside the presence of other witnesses. Suspects shall be presented individually to the witness and not as a group. The administrator shall instruct witnesses not to speak to or to otherwise communicate with each other regarding the viewing.

g. If multiple witnesses are involved in a show-up procedure, the show-up procedure shall end once a witness positively identifies a suspect. The contact information of all remaining witnesses shall be documented so a different identification procedure (e.g., photo spread, live lineup, or video lineup) can be subsequently conducted.

h. The administrator shall not provide any feedback regarding the viewing results to the witness.

i. Following each viewing, the administrator shall ask the witness about his or her observations individually and outside the presence of the other witnesses. Each witness shall be asked if any individual can be identified. Whether or not a witness answers in the affirmative, the witnesses shall be asked to describe in their own words how confident they are of the identification or lack thereof.

j. Whether a viewing results in a positive or negative identification by a witness, the administrator's observations including any statements, gestures, or reactions by the witness shall be documented in the incident report.

## Single Witness Identifications

Situations may arise in which there is only a single witness who identifies a suspect and there is no corroborating evidence to link the identified suspect to the crime committed. All reasonable and practical leads must be investigated in an effort to corroborate or refute the single witness's identification of the suspect. Reviewing supervisors shall ensure these procedures are following and documented in the incident report.

## Training

The Captain shall ensure their personnel receive training in the procedures outlined in this Department Manual.

## Related Department Manual Policies and Reference Material

- 200.32, **Disposition of Arrested Juveniles**
- 300.09, **Dealing with the Deaf or Hard of Hearing**
- 300.46, **Preliminary and Follow-Up Investigations**
- 400.14, **Criteria for Submitting Incident Reports**
- Texas Code of Criminal Procedure, Article 38.20

# CHAPTER 400:
## ADMINISTRATIVE FUNCTIONS

Mary Young

*Executive Director and Chief of Police*
*Texas Southern University, Department of Public Safety*

# Body Armor Policy and Maintenance

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

It is the policy of the Texas Southern University Department of Public Safety to maximize officer safety through the use of body armor in combination with prescribed safety procedures. While body armor provides a significant level of protection, it is not a substitute for the observance of safety procedures.

All Officers who receive departmental issued body armor must wear their body armor at all times while on duty, with the exception of the below guidelines.

## Definitions

**Field Activities.** Duty assignments and/or tasks that place or could reasonably be expected to place officers in situations where they would be required to act in enforcement rather than administrative or support capacities.

**Officers.** All sworn Police Officers of the Texas Southern University Department of Public Safety, regardless of rank, who have received department issued body armor.

## Procedures

**Issuance of Body Armor**

a. All Officers issued body armor will be responsible for its safe keeping.

b. Body armor that is worn or damaged shall be immediately reported to the department equipment supervisor.

c. Body armor that is misused, neglected or abused by the officer shall be paid for by the officer.

**Use of Body Armor**

a. Officers shall wear body armor when it has been issued by the department.

b. Officers that are assigned to the uniformed function are required to wear body armor during their shift while engaged in field activities. In addition, all officers must wear body armor during high risk and/or tactical situations. (e.g., search warrant executions, drug raids, initial crime scene response, and serving felony warrants).

c. All officers assigned to investigations or while working extra employment traffic control jobs, shall wear body armor during their tour of duty.

d. Those uniformed officers assigned to administrative duties, that have been issued departmental body armor shall wear body when outside the confines of their office building.

e. Any exceptions to this policy will be authorized by the Chief of Police.

- When an agency-approved physician determines that an officer has a medical condition that would preclude wearing body armor.

- When the officer is involved in undercover or plain clothes work that his supervisor determines could be compromised by wearing body armor; or

- When the Department determines that circumstances make it inappropriate to mandate wearing body armor.

## Inspection of Body Armor

a. Supervisors shall be responsible for ensuring that body armor is worn and maintained as required by this policy through routine observation and periodic documented inspections at roll call and spot checks in the field.

b. Annual inspections of body armor shall be conducted for fit, cleanliness, and signs of damage, abuse and wear.

## Care and Maintenance of Body Armor

a. Officers shall routinely inspect personal body armor for signs of damage and for general Cleanliness.

b. As dirt and perspiration may erode ballistic panels, each officer shall be responsible for cleaning personal body armor in accordance with the manufacturer's instructions.

c. Officers are responsible for the proper storage, maintenance and care of body armor in accordance with manufacturer's instructions.

d. Officers are responsible for reporting damage or excessive wear to the ballistic panels or cover to their immediate supervisor, and the equipment supervisor.

## Cleaning Body Armor

a. Remove the armor panels, trauma inserts and special threat plates from the carrier.

b. Gently wipe the armor panels with a damp sponge and a mixture of cool water and mild laundry detergent or antimicrobial soap.

c. Wipe off excess soap with clean water and a damp sponge.

d. Lay flat and wipe dry.  DO NOT HANG OR LINE DRY.  DO NOT PLACE IN THE SUN.

e. Ensure panels are completely dry before reinserting into the carrier.

- Make sure panels are reinserted properly with the "Strike Face" side facing away from your body.

- Be sure to engage the shoulder suspension tabs which secure the armor panel to the carrier garment.

f. DO NOT dry clean armor panels. Do NOT commercially launder armor panels. DO NOT expose armor panels to bleach (liquid or vapor).

## Related Department Manual Policy and Reference Material

- 200.8, **Appearance and Grooming**
- Texas Southern University Department of Public Safety Standard Operating Procedure, Body Armor

# Command Staff Meeting

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

To facilitate effective communications between the Texas Southern University Department of Public Safety staff and employees, and promote growth within the organization, a system utilizing the exchange of ideas and information is a necessity. The goals of this organization are accomplished through the integration of ideas presented by and through the Department's staff.

## Definitions

**Command Staff.** The Chief 's Command Staff shall be composed of:

- Deputy Chief
- Captain
- Security Director

**Supervisory Staff.** Supervisory Staff shall be composed of the:

- Lieutenants
- Patrol Sergeants
- Security Supervisors

## Procedures

In an effort to, promote effective verbal communication and cooperation between all aspects of the Texas Southern Department of Public Safety, scheduled staff meetings shall be convened based on the following guidelines. Individuals outside each respective management group may periodically be asked to attend meetings for cause.

a.  The Chief of police Command Staff shall, when possible, meet weekly. The Chief of Police will determine the date and may delegate specific duties in relation to the staff meeting.

b.  The Supervisory Staff shall meet whenever determine by the Chief of Police.

c.  Rollcall shall be held on a daily basis or at the call of the first line supervisor as needed. Rollcalls provide a forum for personnel to receive information, as well as provide feedback to their supervisor in areas such as:

- Assignments and scheduling
- Departmental Policies, including review and updates
- Supervisors shall review all amendments to the Department Manual with employees under their command and document employee receipt of amendments.
- In-Service Training
- Personnel and Equipment Inspections

# Expunction of Records

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

All orders of expunction from the District Courts shall be processed in accordance within the Texas Code of Criminal Procedure, Chapter 55 Expunction of Criminal Records.

## Procedures

Any expunction order issued by a District Court, regardless to whom it may have been delivered to within the Texas Southern University Department of Public Safety, will be immediately delivered to the Texas Southern University Department of Public Safety administrative supervisor for initiation and compliance procedures. Following the receipt of an expunction order by the Texas Southern University Department of Public Safety, compliance will be completed by the administrative supervisor, and in the manner set out below:

    a.  The original expunction order will be forwarded to the administrative supervisor for compliance.

    b.  The administrative supervisor will ensure each lieutenant is given a copy the expunction order.

    c.  When a record or file is located which is subject to the expungement order such record or file shall be removed.

    d.  If removal of the record or file is impracticable, then all portions of such record or file that identify the person whose record is to be expunged shall be removed.

## Code Of Criminal Procedure, Chapter 55 Expunction of Criminal Records

**Article 55.03, Effect of Expunction**

After entry of an expunction order:

    a.  The release dissemination or use of the expunged records or files for any purpose is prohibited; an offense under this article is a Class B misdemeanor.

    b.  Except as provided in Subdivision 3 of this article, the petitioner may deny the occurrence of the arrest and the existence of the expunction order; and

    c.  The petitioner or any other person, when questioned under oath in a criminal proceeding about an arrest for which the records have been expunged, may state only that the matter in question has been expunged.

**Article 55.04, Violation of Expunction Order**

**Section 1.** A person who acquires knowledge of an arrest while an officer or employee of the state or of any agency or other entity of the state or any political subdivision of the state and who knows of an order expunging the records and files relating to that arrest commits an offense if he knowingly releases, disseminates, or otherwise uses the records or files.

**Section 2.** A person who knowingly fails to return or to obliterate identifying portions of a record or file ordered expunged under this chapter commits an offense.

**Section 3.** An offense under this article is a Class B misdemeanor.

## Related Reference Material

- Texas Code of Criminal Procedures, Chapter 55

# Employees Facing Legal Actions

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Employees notified of any civil or criminal action pending against them as a result their employment with the Texas Southern University Department of Public Safety, shall immediately inform the Deputy Chief in writing. Employees shall also notify the Deputy Chief in writing of any pending criminal action against them as a result of their employment with the TSUDPS, including any criminal investigation from another law enforcement agency.

Officers shall notify the Deputy Chief in writing of any civil action that arises from their actions at any extra employment or while taking action in their capacity as a peace officer. Employees shall also notify the Deputy Chief in writing of any claim brought against them arising from their employment as a TSUDPS employee.

This Department Manual Policy applies to all employees.

## Procedures

When employees are notified that a civil or criminal action is pending against them as described in the above Policy section, they shall notify the Deputy Chief in writing. The employee's original letter along with copies of all documentation shall be sent to the Deputy Chief through the chain of command, within 24 hours.

A copy of the employee's letter along with the originals of any papers served on the employee shall be immediately hand delivered to the department's legal representative or for any civil lawsuit, all papers should be delivered to the Office of Texas Southern University General Counsel. The employee should keep back-up copies of all papers.

## Pending Criminal Investigation

Employees who become aware they are under investigation for any criminal matter by any lawfully authorized agency other then department's Internal Affairs shall notify the Chief of Police in writing, within 24 hours.

Employees charged with a crime shall monitor the status of their criminal charges and immediately notify Internal Affairs if there are any changes. Employees are relieved of duty shall follow the procedures as outlined Department Policy 200.19, **Investigation of Employee Misconduct**.

## Legal Representation In Civil Actions

The Texas Southern University Office of General Counsel may refuse to represent an employee named as a defendant in a civil lawsuit. This may occur in situations where, for example, it is determined that such representation would create a conflict of interest or if the Office of General Counsel determines that the employee's actions were intentional or outside the course and scope of his/her employment with the Texas Southern University Department of Public Safety. In all cases where there exists uncertainty that representation will be provided by the Office of General Counsel, employees are cautioned to consult with their own attorney(s) as soon as possible.

Employees shall inform the Deputy Chief of their choice of legal counsel in their notification letter. Employees shall include the following information in their notification letter to the Deputy Chief: Date, time, and method by which they were served; their shift, current assignment, regular days off,

office telephone number, and department issued cellular telephone number; and an affirmative statement requesting Texas Southern University Office of General Counsel representation or a statement that they will retain their own legal counsel and will not use the Texas Southern University Office of General Counsel.  Employees shall submit copies of the citation and citation page with the notification letter.

## Notice of Arrest or Citation

Employees who are the subject of an arrest action shall immediately notify an on-duty supervisor of their location and the charge. Employees shall notify the Chief of Police in writing upon their release from custody.

Employees receiving traffic citations shall immediately notify the Deputy Chief in writing via their chain of command and forward a copy of the citation with the correspondence.

## Related Department Manual Policy

• 200.19, **Investigation of Employee Misconduct**

# State Property

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

All employees are responsible for the security of State or University property. Employees shall protect such property from loss, damage, destruction, or misuse. When State or University property is lost, stolen, or damaged, employees shall report the matter to their immediate supervisor. Super-visors shall take appropriate steps to ensure State and University property is protected from misuse.

Employees shall properly maintain department property and keep their officers, lockers, desks, and work areas clean and orderly.

Employees shall use or provide State and University equipment or services for only official University or Department business.

This Department Manual Policy applies to all employees.

## Responsibility For Property/Equipment

Employees shall be responsible for the proper care, maintenance, and serviceable condition of any State property issued or assigned for their use. Employees shall not alter or repair, or in any way remove any parts or accessories from any State-owned property, office equipment, machines, clothing, firearms, communications equipment, or motor vehicles without the permission of the Captain.

Willful or negligent abuse or destruction, carelessness or inattention in the handling or operation of Texas Southern University Department of Public Safety property and/or equipment which results in damage or loss to the said property may subject the responsible employee to disciplinary action, and the employee making restitution for the loss or damaged equipment.

Employees should immediately report to their immediate supervisor in writing any loss of, damage to, or unserviceable condition of Texas Southern University Department of Public Safety property assigned to or used by them.

Employees shall not appropriate for their own use any evidence, lost, found, stolen, recovered, or any State property.

## Damage to Real or Personal Property

Any damage to real or personal property committed in the execution of official duties and responsibilities shall in every instance be promptly reported in writing to the employee's immediate supervisor.

Damaged or inoperable inventoried property or equipment (except motor vehicles) shall be immediately reported to the Administrative Sergeant.

Each employee shall be personally responsible for the items of identification issued them as a member of the Texas Southern Department of Public Safety. (e.g., badge, Identification credentials, access card, tiger card). An employee shall not permit any other person to borrow or use the items of identification issued by the Department. Loss of such items shall be reported immediately to the Deputy Chief through the chain of command, together with a written report detailing the circumstances of the loss.

## Authorized Use of State Vehicle

The Texas Southern Department of Public Safety provides vehicles for employees' use in order to accomplish its mission.

Vehicles are assigned to employees at the discretion of the Chief of Police or his/her designee. No employee has a right to a vehicle by virtue of his or her position.

Authorized use is defined as:

a.   Any lawful use during the employee's scheduled tour of duty.

b.   To and from work and home or car–share partner's residence.

c.   While on scheduled call–out duty.

d.   In response to a supervisor's order to duty.

e.   Use, not defined above, that furthers the mission of the Texas Southern University Department of Public Safety.

All other uses of State vehicles by employees are prohibited.

Violation of this policy may subject the employee to disciplinary action, to include termination.

No employee of the Texas Southern Department of Public Safety shall allow, at any time, an unauthorized person to operate a State owned or leased vehicle, or have in their possession the keys to such vehicle.

Employees of the Texas Southern University Department of Public Safety, when driving vehicles of any description, private or State owned/ leased, shall not violate the traffic laws; exception in cases of absolute emergency, and then only in conformity with the law on regarding it. They shall set a good example for other persons in the operation of their vehicle. All employees, passengers, as well as all prisoners, shall wear a seat belt at any time they are occupying a State owned/leased vehicle.

See Department Manual 400.08, **City Vehicle Crashes** for policies and procedures regarding fleet vehicle damage.

## Separation From The Department

Whenever any employee of the Texas Southern University Department of Public Safety is suspended, resigns, or is separated from the Department due to termination, leave of absence, military leave, family leave, worker compensation, other extended absences either long term or temporary, death, or for any reason, he/she shall surrender all assigned/issued State property (badge, identification credentials, access card, tiger card) to his/her commanding supervisor. Additionally, the employee shall return his/her Department uniforms directly to the Administrative Sergeant.

## Related Department Manual Policies and Reference Material

- 200.13, **TSUDPS Badges and Identification Cards**
- 200.18, **Appearance and Grooming**
- 200.19, **Investigation of Employee Misconduct**
- 200.26, **Unit and Radio Numbering**
- 200.29, **Mobile Computing Devices**
- 200.30, **Police Computer Systems**
- 300.18, **Property and Evidence**
- 400.08, **City Vehicle Crashes**
- Texas Southern University Department of Public Safety Standard Operating Procedure, Issuance & Maintenance of State Equipment and Supplies

# Testifying In Legal Proceedings

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

It is the policy of the Texas Southern Department of Public Safety that employees who are subpoenaed to testify on behalf of the defense in a criminal court proceeding or on behalf of a plaintiff in a civil court proceeding, will not do so as a representative of the Texas Southern University Department of Public Safety, unless directed by the Chief of Police, Deputy Chief, or Captain. This sets specific guidelines for employees who are subpoenaed as character witnesses or factual witnesses on behalf of the defense.

## Definitions

**Character Witness.** A witness who testifies on behalf of a person as to that person's character, reputation, or moral traits.

**Factual Witness.** A witness whose testimony concerns events that occurred which are within the witness's personal knowledge.

**Legal Action.** Any criminal or civil court proceedings, Texas Board of Pardons and Paroles proceeding, or civil service, arbitration, or administrative hearing.

**Subpoena.** An order to appear at a certain time and place to give testimony upon a certain matter.

**Professional Witness Fee.** Any compensation received by employees from any source other than Texas Southern University Department of Public Safety for testimony given in any legal action.

## Handling Subpoenas and Notification

Employees subpoenaed or requested to testify on behalf of the defense in a criminal case or against the State in a civil case or against the interest of Texas Southern University, or the Texas Southern University Department of Public Safety in any civil hearing, arbitration, administrative hearing, or trial will immediately notify the Chief of Police through the chain of command. In addition, employees will immediately notify the Office of General Counsel, the prosecutor in the case, for which the subpoena was issued.

## Compliance With Subpoenas

When properly served, an employee shall comply with the terms of a subpoena naming him or her as a witness in any legal proceeding unless the subpoena is legally challenged and the employee is excused from compliance or if the good cause is shown to excuse the employee's compliance or failure to comply.

## Attire

Employees are prohibited from wearing the official uniform in any criminal or civil proceeding, civil hearing, arbitration, administrative hearing, or trial to which they are subpoenaed or requested to testify as a character witness or give testimony on behalf of any person. Employees are also prohibited from wearing the official uniform to any of the above listed functions if they will be testifying against the State, against the interest of Texas Southern University Department of Public Safety, or against Texas Southern University.

# Compensation

Texas Southern University Department of Public Safety will not compensate employees for responding to a subpoena and/or testifying in a civil or criminal proceeding, when the testimony is not directly related to the course and scope of the employee's employment and performance of duties.

## Factual Witness

Employees who are subpoenaed by either side to testify as factual witness in a legal action will receive compensation as outlined in the overtime guidelines.

Employees are authorized to receive off-duty court attendance compensation and/or regular duty pay when they serve as a witness or are required to give depositions between private litigants if the testimony provided was the result of a service rendered in their official capacity as a Texas Southern University Department of Public Safety employee. Employees must have officially been notified to attend as a witness or to give a deposition.  The official notice (subpoena) must be attached to the overtime form.

## Character Witness

Employees who are subpoenaed to testify as character witnesses for the defense or on behalf of another member of the Texas Southern University Department of Public Safety, in legal actions, must do so on their own time.  When testifying such in cases, employees are ineligible for overtime compensation.

## Professional Witness Fees

Employees may not accept professional witness fees for appearing as witnesses in any matter investigated by the Texas Southern University Department of Public Safety or in which the State has an interest. Employees accepting witness fees will follow the guidelines as it pertains to the extra employment policy.

## Related Department Manual Policies

- 200.02, **Conduct and Authority**
- 200.08, **Work Hours**
- 200.18, **Appearance and Grooming**

# Use of Electronic Media

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

The Texas Southern University Department of Public Safety has made available to its employees, through hardware and software applications, e-mail capability and access to the Internet. This has been done to improve the ability of our employees to complete their job tasks and functions. This policy applies to the use of all State owned electronic media, personal electronic media connected to a State-owned system, or electronic media used in such a way that identifies the user as an employee of Texas Southern University.

This Department Manual Policy applies to all employees.

## Guidelines

a.  Electronic media technology is provided by the State as a tool to facilitate the accomplishment of the Texas Southern University Department of Public Safety objectives. Its use is to be limited to that purpose only.

b.  The electronic media technology system is State property. All messages composed, sent, or received on the system are, and remain, the property of the State or the Texas Southern University Department of Public Safety. No message composed, sent, or received on the system is the private property of any employee.

c.  The electronic media technology system is reserved solely for conducting Texas Southern University Department of Public Safety business.  It may not be used for personal business.

d.  The electronic media technology system may not be used to promote or solicit on behalf of any commercial ventures, religious or political causes, outside organizations, charitable events, or other non-job-related solicitations.

e.  The electronic media technology system is not to be used to create any offensive or disruptive messages. Among those which are considered offensive are any messages which contain sexual implications, racial slurs, gender-specific comments, or any other comment that offensively address someone's age, sexual orientation, religious or political beliefs, national origin, or disability.

f.  The Texas Southern University Department of Public Safety reserves and intends to exercise the right to review, audit, intercept, access, and disclose all messages created, received, or sent over the electronic media technology system.

g.  No user of this technology has any right to an expectation of privacy in its use. The confidentiality of any message should not be assumed. Even when a message is erased, it is still possible to retrieve and read that message. Further, the use of passwords for security does not guarantee confidentiality. All passwords must be disclosed to the Texas Southern University Department of Public Safety upon legitimate request or they are invalid and cannot be used.

h.  Employees shall not use a code, access a file, or retrieve any stored information, unless authorized to do so. Employees should not attempt to gain access to another employee's

messages without the latter's permission. Employees should treat information obtained through electronic media technology as privileged, and not for public discussion, unless otherwise instructed.

i.    Employees may not make changes to the Texas Southern University Computer Network or any State-owned computer system including modifications to connections, software installations, or any changes to the computer's setup, without written authorization from the Chief of Police, and Texas Southern University O.I.T.

j.    Violation of any provision of this policy may result in the application of disciplinary sanctions, including termination.

## Related Department Manual Policies and Reference Material

•    200.01, **Keys, Passwords, and Personal Identification Numbers**

•    200.30, **Police Computer Systems**

•    200.31, **Acceptable Use of Computers**

•    400.05, **State Property**

•    Texas Southern University Manual of Administration Policies and Procedures (MAPP), 04.06.03 Computer Use Policy

# State Vehicle Crashes

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## POLICY

All traffic crashes involving State vehicles or equipment, whether on public or private property, and regardless rather the State vehicle is being driven, occupied, or is parked, must be reported immediately by the employee having care and custody of the vehicle or equipment at the time of the crash.

State vehicle crashes which occur on a freeway or major roadway shall be immediately moved to a crash investigation sight, when available or another safe sight off the freeway when:

    a.  No one is injured and

    b.  Each vehicle involved can be normally and safely driven.

Vehicles are not to be moved to the shoulder of the roadway, but are to be moved to a location completely off the roadway. An officer who is involved in a crash, in which no one is injured, shall immediately notify the dispatcher and then move the vehicle off the roadway.

An employee involved in a State vehicle crash shall make a report of such accident or damage in writing upon the proper forms within 24 hours.

This Department Manual Policy applies to all employees.

## Definitions

**State Vehicle.**  A vehicle owned or leased by the Texas Southern University Department of Public Safety.

## Reporting Requirements

If the State vehicle crash occurs within the TSUDPS jurisdiction, as soon as possible, employees shall notify the Communications dispatcher that they have been involved in a crash. The dispatcher shall then notify the on duty supervisor and the command staff.

If the State vehicle crash occurs outside the TSUDPS jurisdiction, the employee shall notify the law enforcement agency having jurisdiction over the crash location and an on duty supervisor as soon as possible.

Any employee involved in a crash with a State vehicle shall have a crash report prepared in accordance with the procedures of the law enforcement agency having jurisdiction over the crash location. A copy of this report shall be obtained by the employee involved in the crash and submitted to the employee's immediate supervisor.

If the State vehicle crash occurs outside the TSUDPS jurisdiction and involves serious bodily injury or a fatality, the employee shall notify their lieutenant as soon as possible.

In all cases, the employee shall obtain the following information from all persons involved in the crash unless the information is obtained by another employee or the employee is incapacitated or advised otherwise by a supervisor.

    a.  Complete names, addresses, and phone numbers (home and business).

    b.  Driver license, identification, and social security numbers (where applicable).

    c.  Make, model, year, vehicle identification number, and license plate number of all vehicles involved.

    d.  Name, address, phone number, and policy number of the vehicle owner's insurance carrier.

    e.  Witness information.

If the vehicle can be operated safely, it will be the responsibility of the employee and/or the supervisor to contact the Fleet Coordinator to ensure that an estimate is completed within three (3) working days. If any damage is sustained to the State vehicle by other means, the same procedure will be adhered to as in a fleet crash, but an offense report must be included.

## Supervisor and Fleet Coordinator Responsibilities

The on duty supervisor will make the scene and determine if the crash requires an on scene investigation and what agency will investigate the crash.

If there are any injuries or a fatality, a lieutenant will make the scene and ensure that the crash is investigated by an outside agency.

Any Texas Southern University Department of Public Safety supervisor or the Fleet Coordinator may order any State vehicle involved in an accident out of service for safety reasons, or inspection.

    a.   If the Fleet Coordinator or Supervisor places a State vehicle out of service for safety reasons or inspection, it will be that individual's responsibility to notify the Command Staff.

## Crash Investigation

The Department's designated Safety Officer will review the accident/damage report to determine if the accident occurred or if the damage was due to other causes (e.g., vandalism, weather, etc.). Once that determination is made, a report of the Departments' Safety Officer findings will be forwarded to the Captain for action.

The Captain's report will indicate one of the following:

- No violation
- No Violation of Texas Southern University Department of Public Safety Policy or Procedure
- Not an accident, damage caused by
- Violation of Traffic Law
- Violation of Texas Southern University Department of Public Safety Policy or Procedure
- Other

At no time will the Texas Southern University Department of Public Safety Officer make any recommendation for or against any punishment. It shall be the responsibility of the Captain to comply as follows:

    a.   Assure that a damage estimate is obtained through the Fleet Coordinator, and forwarded to Risk Management, along with a State Office of Risk Management (SORM) Automobile Accident Report.

    b.   Keep a record of each employee's accidents.

    c.   Place a copy of the findings in the employee's personnel file, along with any action taken resulting from the investigation.

## TSUDPS Safety Officer

In order to comply with the investigation of the accident involving an employee of the Texas Southern University Department of Public Safety, the following information shall be forwarded in its entirety to the Department's Safety Officer.

    a.   A copy of the Texas Peace Officer's Accident Report if an outside agency investigated the accident, or appropriate offense report.

    b.   The estimated vehicle damage report.

    c.   A copy of the SORM Automobile Accident Form.

## Remedial Action

The following disciplinary levels for at–fault fleet crashes are MINIMUM levels for disciplinary, and the Chief of Police may go outside these established discipline levels when aggravated factors exist, up to and including foot patrol.

a. First Crash: Written Reprimand

b. Second Crash within any (36) month period: One (1) day suspension and successful completion of an approved driving course, within the time frame given by the Captain.

c. Third crash within (36) month period: Five (5) day's suspension and/or termination from employment.

For employees who hold the rank of lieutenant or above, the required (5) day's suspension and/or termination, under paragraph (c) may be substituted with revocation of their vehicle use privileges for a period of not less than one (1) year.

Any employee who as a driver of a State owned, leased, or rented vehicle that is criminally charged as the result of an accident with any offense above a "Class C Misdemeanor" may be subject to Termination.

Failure to successfully complete an approve Driving Course within the designated time frame will result in possible termination.

**NOTE:** The purpose of an approve Driving Course, is for remedial training and is not considered part of the disciplinary process.

## Related Department Manual Policies

- 200.34, **Vehicle Use and Assignment**
- 200.35, **Emergency Notification**
- 300.10, **Motor Vehicle Crashes**
- 300.23, **Crash Investigations**
- 400.05, **State Property**
- 400.10, **Emergency Management**

# Line Inspections

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Command Staff members of the Texas Southern University Department of Public Safety shall conduct regular line inspections (those carried out by personnel in charge of the employees, facilities, or procedures being inspected) using procedures appropriate to the structure and mission of their respective office, division, or unit. Command Staff members and supervisors at all levels  shall participate in the responsibility for such inspections and for the correction for such inspections and the corrections of conditions discovered by the inspections.

This policy applies to all classified employees.

## Personnel Inspections

Line inspections will be conducted at the beginning of each tour of duty. The inspection shall ensure  each officer's official uniform, special assignment uniform, or plainclothes attire complies with Department Manual 200.18, **Appearance and Grooming**.

All Command Staff members shall conduct an annual inspection of classified plainclothes personnel under their control to ensure they have a functional official uniform.

Command Staff members shall monitor inspections of classified personnel and shall be accountable for enforcing regulation within their office, division, or unit.

## Vehicle Inspections

Each Command Staff member or designee shall inspect all vehicles assigned under his or her control on  a regular basis. Vehicle condition and presence of prescribed equipment shall for the basis for such inspections.

## Frequency of Inspections

The inspections covered in the Department Manual shall be carried out as described herein. For those inspections intervals not specifically described, the inspections shall be conducted frequently enough to be useful and effective. A command Staff member may hold an unannounced inspection at any time as long as the inspection and the consequences of the inspection conform to the published procedures of the office, division, or unit.

### Related Department Manual Policy and Reference Material

- 100.09, **Supervision**
- 200.18, **Appearance and Grooming**
- Texas Southern University Department of Public Safety Standard Operating Procedure, Inspectional Services

# Emergency Management

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

This Department Manual and the Emergency Response Plan (ERP) establish procedures and responsibilities for emergency and required notifications. The Deputy Chief is responsible for ensuring emergency management procedures are invoked and required notifications are made.

During alerts and emergencies, employees shall take reasonable steps to monitor the various media outlets for announcements concerning when to report to duty.

This Department Manual Policy applies to all employees.

## Definitions

**Alert Status.** A precursor to mobilization; a heightened awareness throughout the department that the emergency activation plan may be put into effect.

**Civil Disorder.** A public assembly or public gathering wherein some or all the individuals engage in violations of City ordinance or state law.

**Command Post.** The location from which an operational commander coordinates all TSUDPS response activities to an incident. The command post is located outside any danger or hazard zone and its location may change as the need arises.

**Disaster.** A catastrophe that threatens extraordinary loss of life or property (e.g., severe weather, hazardous material accidents, large fires, explosions, terrorist incidents).

**Essential Employees.** All classified officers, all civilian employees so designated by the Captain, or any employee so designated by the Chief of Police.

**Mass Arrest.** The arrest of 20 or more persons arising out of a single incident.

**Operational Commander.** The individual responsible for coordinating all TSUDPS response activities at an incident, but not limited to, the development of strategies and tactics, ordering and releasing resources, and managing all incident operations at the site. As an incident evolves, the individual serving as the operational commander may change depending upon the type of incident, geographic area, or delegation of authority based on rank or qualification, or due to unforeseen operational issues.

**Public Assembly.** An individual or group of individuals gathered for the purpose of exercising constitutionally-protected free speech and assembly rights. Police resources may be required depending on the scope and nature of the assembly.

**Public Gathering.** A gathering of individuals not associated with a constitutionally-protected activity (e.g., flash mob). Depending upon the activity and scope of the gathering, police resources may be required.

**Serious Injury/Illness.** An event involving an on-duty employee that requires notification of the Texas Southern University Human Resources Department.

**Significant Event.** Any event that seems likely to result in media attention or substantial public attention, or that may require additional action or police resources.

**Staging Area.** A temporary location for personnel, supplies, vehicles, and/or equipment awaiting operational assignment or deployment to an incident. Staging areas may also include support services for emergency responders.

# Significant Event Notification

## Significant Events

Significant events require specific notifications and documentation. Significant events include, but are not limited to:

a. Incidents that require a police response and that draw the attention of the media.

b. Incidents that involve any law enforcement officer or an TSUDPS employee shot at or shot.

c. Incidents involving any of the following except while engaged in training or lawful recreation. Discharge of a:

1. Firearm by an officer

2. Soft-impact weapon by an officer

3. Conducted energy device (CED) by an officer

d. Vehicle pursuits that involve TSUDPS personnel and entail one or more of the following criteria:

1. A pursuit that receives media coverage

2. A pursuit excessive in duration

3. A vehicular crash caused as a result of the pursuit

4. An injury or fatality to any individual as a result of the pursuit

5. A driver of the pursued vehicle that is a juvenile under the age of 11

6. A weapon discharge by any of the parties involved in the pursuit

The guidelines of Department Manual 300.10, **Motor Vehicle Pursuits**, shall be followed in addition to significant event notification.

e. Major vehicular crashes with serious bodily injury involving an on- or off-duty department employee in a State vehicle.

f. Death of or life-threatening injury to an TSUDPS employee's immediate family member.

h. Injuries to TSUDPS personnel:

1. On duty

2. Off duty and police-related

3. Self-inflicted (on or off duty), regardless of severity

This includes any type of communicable disease to which a classified or civilian employee might have been exposed (see Department Manual 200.28, **Communicable Disease Policy**).

i. Arrest (including traffic citations) of any of the following individuals:

1. TSUDPS employees

2. Celebrity/prominent citizen

3. Any other Texas Southern University employee

j. Incidents involving a foreign government representative (employee of an embassy or consulate) who:

1. Claims diplomatic immunity

2. Is seriously injured

3. Is deceased

4. Is arrested

k.   Disasters (natural or man-made).

l.   Drownings that occur on campus.

m.   Any public assembly, public gathering, or civil disorder in which:

   1.   The media shows an interest

   2.   An arrest is made

   3.   The actions of the participants are newsworthy

   4.   The nature of the event is controversial or noteworthy

n.   Bomb threats, suspicious devices, explosions, or incidents involving weapons of mass destruction (WMD) or hazardous material (HAZMAT).

o.   Hate crimes, including threats of violence.

p.   Threat of serious injury or death against:

   1.   An officer

   2.   An elected official

   3.   A head of state

   4.   Immediate family of any of the above

q.   Police actions involving

   1.   Special threat situations (SWAT)

   2.   Active shooter situations

   3.   Large undercover operations

   4.   Mass arrests

   5.   Evacuations

   6.   Elected officials

r.   Death of or serious bodily injury to a citizen or suspect while under police detention.

s.   Police impersonations while committing a crime.

t.   Suspicious activity or information that may relate to terrorist or extremist activity. Additionally, incidents involving the theft or loss of weapons, explosives, chemicals, or radiological material, especially if it occurs at a location considered a critical infrastructure.

u.   Whenever TSUDPS requests the following assistance from an outside agency (e.g., HPD or HCSO):

   1.   Dive Team

   2.   Canine Detail

   3.   Air Support Division

   4.   SWAT Detail

   5.   Bomb Squad

v.   The following noteworthy events:

   1.   Adulterated or tampered food incidents

   2.   Arrest of a law enforcement officer

   3.   Lost or stolen TSUDPS identification or equipment

   4.   Incidents involving federal judges

   5.   Any equipment failure that impacts the continuity of operations

   6.   Power outages or blackouts affecting police services or an area of the campus

7. Request of a sign language or language interpreter
8. Lost or stolen police property containing criminal justice information (e.g., stolen police vehicle containing a laptop, computer from a police facility)

The above list is not meant to be all inclusive; officers should use their judgment in the on duty supervisor regarding incidents not listed (such as multiple arrests of less than 20 persons or significant occurrences responding personnel the Chief of Police should be aware). See definition of significant event.

## Notification and Response

Officers made aware of a significant event shall immediately inform their supervisor, who shall notify the chain of command. In the absence of a supervisor, the senior officer on the scene shall have this responsibility.

Employees discovering information involving a significant event shall notify their supervisor as soon as information becomes available and provide updates. Notifications shall not be delayed due to incomplete information.

On-scene personnel shall cooperate with the Command Staff and provide all the information requested.

Upon notification of a significant event, the highest ranking on duty supervisor shall exercise operational authority and depending on the circumstances, may re-allocate personnel and other departmental resources to address any significant event or to further the police mission. After hours, the on-duty supervisor is responsible for responding to all relevant incidents addressed by this policy to ensure that they are properly handled and that the integrity of the scene is maintained.

Employees on-scene are responsible for keeping their chain of command informed of events. Supervisor shall document the significant event in a supplemental report.

## Catastrophic Event Notification

Department personnel shall contact the on duty supervisor to report all catastrophic events (see below). The on duty supervisor shall make the required notifications to the chain of command. Officers made aware of a catastrophic event shall immediately inform their supervisor, who shall notify the chain of command. In the absence of a supervisor, the primary responding officer on the scene shall have this responsibility. Notifications shall not be delayed due to incomplete or unavailable information.

A catastrophic event includes, but is not limited to, on-duty incidents involving:

a. A fatality involving a department employee.
b. More than two department employees seriously injured.
c. A State vehicle crash involving more than three vehicles.
d. An injury to a department employee consisting of amputation, head injury, heart attack, serious electrical shock, or spinal injury.
e. A crash involving a department employee and that is spectacular enough to draw media attention.
f. An illness or exposure due to a serious contagion or biological hazard (see section Hazardous Material Incidents of this policy and Department Policy 200.28, **Communicable Disease Policy**).

# Emergency Response

The Emergency Response Plan (ERP) is the department's written plan for mobilizing departmental personnel to respond to a wide range of incidents, events, and disasters. The ERP describes the basic response concepts of, but not limited, to the following:

a. Managing and mitigating incidents under the National Incident Management System (NIMS)

b. Operational commander

c. Special Response Group (SRG)

d. Rapid Mobilization Personnel (RMP)

e. Alert status and emergency readiness

f. Partial and full mobilization procedures and responsibilities

g. Specialized equipment

h. Required reports

i. Outside assistance

j. Response guidelines to specific types of incidents or emergencies

The Chief of Police may place the entire department in an alert status when an emergency is anticipated or has already occurred. The location and type of emergency shall determine what impact an alert status has. During an alert, personnel should anticipate the following:

k. Working extended hours and different shift hours.

l. Cancellation of days off and leaves of absence.

m. Reassignment to different duties and responsibilities, supervisors, and divisions.

o. Classified personnel reporting to work with a complete uniform including authorized and issued equipment.

p. Civilians designated as essential employees reporting for assignment.

Unless otherwise directed, lieutenants, sergeants, and police officers, once notified of an emergency response, are to report at their regular shift times to the designated mobilization site in full uniform with all authorized and issued equipment. If officers are unable to report to their regular duty stations during an emergency response (e.g., due to weather or road conditions), they shall report to the nearest police facility. Upon arriving, officers shall report for duty to their supervisor and advising them of the situation. For more information regarding absences weather see Department Manual 200.08, **Work Hours**.

Essential employees' duty to report supersedes any announcement of an ordered evacuation or an announcement from the Mayor or local media outlet.

During an emergency response, civilian personnel not designated as essential employees shall make a reasonable effort to report to work during their shift for duties and special assignments. However, if it is necessary for employees to leave their residence for another location, they shall make a reasonable effort prior to leaving to call their work assignment in order to confirm they are not needed. For more information regarding absences due to adverse weather see Department Manual 200.08, **Work Hours**.

The Chief of Police shall make the initial call-up notifications necessary to set the department's emergency response in motion. In emergencies, the Chief of Police has the authority to reassign department personnel and resources to ensure the effectiveness of the department's initial response.

## Seven Critical Tasks

During an emergency response, the on-duty area patrol sergeant or lieutenant shall immediately respond to the scene of emergency and take charge of the department's response until relieved. The first supervisor on the scene of an emergency should ensure all of the following seven critical tasks are accomplished:

   a.   Secure and establish communications

   b.   Identify any danger or kill zones and safe routes to the scene

   c.   Establish an inner perimeter

   d.   Establish an outer perimeter

   e.   Establish a field command post

   f.   Establish a staging area

   g.   Request additional resources as necessary

See Department Manual 300.29, **Weapons of Mass Destruction**, for definitions of inner perimeter and outer perimeter.

# Evacuation

The Texas Southern University Department of Public Safety is responsible for the evacuation of the Texas Southern University campus. Officers shall assist and encourage persons to seek shelter or safety away from a disaster zone.

## Police-Related Incidents

The decision and responsibility to evacuate due to police-relate incidents (e.g., SWAT situations, bomb threats), shall be made by the ranking TSUDPS classified supervisor on the scene.

## Fire Department Related Incidents

If the Houston Fire Department (HFD) is involved in an incident (e.g., HAZMAT event or major fire), the on-scene ranking supervisor from HFD shall make the decision to evacuate.

## Mandatory Evacuations

Texas law allows the Mayor or county judge to declare all or part of an area a disaster area and to order mandatory evacuation. The declaration authorizes officers to control not only entry and exit to a declared disaster area, but also the movement of persons inside a disaster area including restricting persons from occupying their home or other dwelling.

# Hazardous Material Incidents

HFD has a primary responsibility for HAZMAT incidents. Officers working a scene involving a hazardous material must protect themselves as well as citizens from the harmful effects of hazardous materials.

## Duties

When emergencies involve hazardous materials, the following actions shall be taken in addition to the seven critical tasks (see section Emergency Response, of this policy):

   a.   Immediately notify the dispatcher of a HAZMAT incident. The dispatcher shall notify the chain of command.

   b.   Resist rushing in. Stay clear of all spills, vapors, fumes, and smoke. If a harmful chemical release occurs, officers should seek shelter (e.g., vehicle or building) upwind from the incident.

c. If possible, cautiously approach the incident from upwind to a point where the HAZMAT placard or orange panel information can be read.

d. Identify the hazardous material by finding any one of following:

1. The 4-digit identification number on the placard or orange panel.

2. The 4-digit identification number on (after UN/NA) on a shipping paper or package.

3. The name of the material on the shipping paper, placard, or package.

e. Determine what hazardous material is involving by researching the abbreviation for the chemical.

After determining the material involved, read the entire on-scene information before initiating any action.

f. If possible, remove injured persons from the affected area with as little direct, personal contact as feasible and wearing multiple layers of clothing.

g. Separate and detain for further examination all persons, including emergency first responders, who may have had contact with hazardous or radioactive materials or persons.

h. Ensure all equipment and persons are checked by HFD personnel for radiation or other HAZMAT contamination.

i. Do not eat, drink, or smoke in the affected area.

## Reports

Officers dispatched to the call of an incident involving hazardous material shall make the original report and/or any crash report. A supervisor shall be dispatched in all cases involving HAZMAT incidents. The supervisor dispatched to the incident shall make a supplement report to the original incident report.  The supervisor's supplement report is necessary to provide a formal record for future unforeseen medical complications from exposure to the hazardous material. All HAZMAT reports and supplements shall contain the following information:

a. Names of all officers involved in the incident or crash.

b. Name of the hazardous material(s) involved.

c. Actions taken by officers to evacuate personnel and handle the scene.

d. Details of the incident or crash.

If an employee is injured, the supervisor shall submit the appropriate injury-on-duty paperwork.

## Related Department Manual Policies and Reference Material

• 200.08, **Work Hours**

• 200.19, **Investigation of Employee Misconduct**

• 200.28, **Communicable Disease Policy**

• 200.34, **Vehicle Use and Assignment**

• 200.35, **Emergency Notifications**

• 200.36, **Workers' Compensation**

• 200.37, **Contact with Representatives from Foreign Governments**

• 300.08, **Firearm and Soft-Impact Weapon Discharges**

• 300.10, **Motor Vehicle Pursuits**

• 300.12, **Response to Resistance**

- 300.16, **Conducted Energy Devices**
- 300.25, **Special Threat Situations**
- 300.27, **Response Management**
- 300.28, **Labor Disputes**
- 300.29, **Weapons of Mass Destruction**
- 300.30, **Hate Crimes**
- 300.32, **Bomb Threats, Explosive Devices, Explosions**
- 300.34, **Feeding Employees During Emergency Situations and Department Mobilization**
- 400.08, **State Vehicle Crashes**
- 400.17, **Assistance to Employees Involved in Critical Incidents**
- Texas Southern University Department of Public Safety Standard Operating Procedure, Emergency Recall
- Texas Southern University Manual of Administration Policies and Procedures (MAPP), 02.03.04 Leave of Absence Policy
- Texas Southern University Manual of Administration Policies and Procedures (MAPP), 02.05.12 Work Schedules

# Meal Period

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

The department shall allow classified employees to take meal periods provided it does not interfere with the delivery of necessary police services to the community.

Employees shall limit period locations to within reasonable proximity of their work assignment as predetermined by the Captain to ensure rapid response to emergencies.

## Restrictions For Officers Wearing The Official Uniform or A Special Assignment Uniform

Officers assigned to patrol shall not call out of service for a meal period within two hours following the beginning of their shift or be out of service on a meal period within two hours before the end of their scheduled shift without an on-duty supervisor's permission. The on-duty supervisor shall make the decision on a case-by-case basis.

Officers are limited to 40 minutes for a meal period.

At no time shall there be more than two marked police vehicles or no more than four uniformed officers (official uniform or special assignment uniform), regardless of rank, eating at the same food establishment at the same time. It shall be the responsibility of individual officers and department supervisors to ensure this policy is followed.

With a lieutenant's permission, the uniformed officer limit of four may be exceeded due to a special event or circumstance (e.g., banquets, large operations such as SWAT, Vice, and Narcotics team).

When calling out of service to eat a meal, uniformed on-duty patrol officers shall advise their respective dispatchers of the exact location of the eating establishment and shall seek their dispatcher's approval for the meal period.

If uniformed officers arrive at an eating establishment and find that the number of marked police vehicles would be more than two or the number of uniformed officers in the eating establishment would be more than four, the newly arriving officers shall do either of the following:

    a.  If working patrol duty, the newly arrived officers shall immediately notify the dispatcher and go back into service. The officers then may call out of serve at a different eating establishment at that time, or with the dispatcher's approval, call out of serve at a later time.

    b.  If on duty at a fixed-post assignment (e.g., desk officer), the newly arrived officers shall immediately leave the establishment, and comply with the number of officer and vehicle restrictions stated above.

Upon completion of the meal period, patrol officers shall immediately advise the dispatcher they have returned to service.

The emergency communications dispatcher or a supervisor may preempt meal periods due to operational necessity (e.g., response priority code E, 1, or 2 calls for service).

## Procedures For Plaincothes Officers

Plainclothes officers are not limited to four officers at an eating establishment unless it is obvious to the general public by method of transportation or circumstance that the officers are on duty.

## Related Department Manual Policies and Reference Material

- 200.16, **Carrying Concealed Fire-arms**
- 200.18, **Appearance and Grooming**
- 300.01, **Firearms and Qualification**
- 300.34, **Feeding Officers During Emergency Situations**
- Texas Southern University Manual of Administration Policies and Procedures (MAPP), 04.06.29 Campus Carry Policy

# Standards of Productivity

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

The department shall establish standards of productivity as outlined in the Department Manual to help patrol officers understand what is expected of them on a daily basis. The standards of productivity shall also help patrol supervisors understand what activities they should expect to see of their officers every day and what factors should be taken into consideration when each officer is evaluated. Under no circumstance shall Family and Medical Leave Act (FMLA), injured on duty (IOD), or approved funeral leave be considered a negative factor when an officer's productivity is evaluated.

The activities listed in the Department Manual and the standards of productivity established for these activities are not simply a set of numbers that officers are expected to attain at some point during their shift. The activities and standards serve as representation of the duties and responsibilities of patrol officers throughout the entire course of their tour of duty.

When this Department Policy is directed at the patrol function, the concepts discussed should be utilized be each division in establishing standards of productivity unique to the functions and job assignments of the personnel assigned to that division.

The Department Manual Policy to classified employees only.

## Definitions

**Arrest Activity.** Citations or arrest for traffic or City ordinance violations, or arrests for misdemeanors or felonies. This definition also includes persons incarcerated or authorized holds for which no charges are filed.

**Assignment.** The shift and regular days off assigned to an officer.

**Call Activity.** For the purpose of the policy, primary calls, secondary calls, self–initiated activity, court attendance, or special assignments.

**Leave.** Scheduled and unscheduled leave.

**Report Activity.** Incident Reports, supplements, or crash reports.

## Captain

The Captain shall ensure that a work assignment is conducted for their division regarding the following categories: call activity, arrest activity, report activity, scheduled leave, and unscheduled leave. See Department Manual 200.08, **Work Hours**, for information on scheduled and unscheduled leave.

Standards of productivity shall be developed on the average of each of the above listed categories over the prior 30 calendar days.  Any disparities based on assignment shall be taken into account.

Captains shall ensure these monthly standards of productivities are properly posted in prominent locations easily accessible by patrol officers where they report for duty.

The standards of productivity shall be update and posted each month. The standards shall remain posted at all times until replaced by updated standards.

## Supervisors

Supervisors shall ensure each subordinate has reviewed and understands the posted standards of productivity.

Supervisors are expected to monitor daily activities of subordinates with particular attention given to standards of productivity. Supervisor shall not merely ensure that the standards are met but shall review the activities to ensure officers are accountable for their entire shift. Supervisors shall consider it a violation of policy, and other policies, if subordinates meet the standards of productivity in the first few hours of their shift, but fail to provide any evidence or documentation of activities for the remaining hours of the shift.

The standards of productivity are but one area each supervisor is expected to monitor and review with each subordinate. Other areas include, but are not limited to:

    a. Quality of work
    b. Quality of investigations and/or reports
    c. Scene initiative
    d. Procedural knowledge
    e. Safety and driving habits
    f. Cooperation with coworkers
    g. Cooperation with supervisors
    h. Interaction with citizens, including suspects
    i. Judgment
    j. Personal appearance and grooming

Sergeants are also expected to complete a full day's work for a full day's pay.

## Officers

Officers shall complete a full day's work for a full day's pay. To assist officers in completing that responsibility, standards of productivity shall be posted at officers' stations. Each officer is expected to become knowledgeable regarding these standards.

Officers are expected to not simply meet these standards on a daily basis but to ensure that each hour of their shift is accounted for and that their job duties and responsibilities are completed throughout the entire shift.

On a daily basis patrol officers shall document all productivity on a workcard or CAD and include arrest activity, call activity, and report activity.

## Prohibited Conduct

The implementation of a ticket quota system is prohibited under the Texas Transportation Code and this policy. A quota is an arbitrary, predetermined number that has no relation to the standards established by a particular division or unit and is not supported by a work assessment.

It is well established and documented in the history of the legislation prohibiting ticket quotas that the law does not prohibit a supervisor from considering the number of tickets written when evaluating an officer. The legislative history of this law clearly distinguishes between a quota and a standard of productivity.

## Related Department Manual Policies and Reference Material

- 200.08, **Work Hours**
- 200.11, **Personnel Early Warning System (PEWS)**
- Texas Southern University Manual of Administration Policies and Procedures (MAPP), 02.0302 Family and Medical Leave Policy
- Texas Southern University Manual of Administration Policies and Procedures (MAPP), 02.03.04 Leave of Absence Policy

# Use of Social Media and The Internet

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Information or material posted to the Internet or in the social media (e.g., Twitter, YouTube, Facebook, Instagram, Web sites, blogs, forums, and message boards) may be considered part of the public domain even if access is restricted, or it may be geotagged, and as such, privacy of the information should not be assumed. Photographs and other material posted to Web sites, social media, or other applications may become the property of that Web site or provider.

While employees are allowed to maintain a Web page and make comments or postings in the social media, this policy outlines the department's right to regulate the speech and actions of its employees in certain circumstances.

This Department Manual Policy applies to all employees.

## Department Use of Social Media and The Internet

Only the Chief of Police may approve an official department Web site of other official department presence on the Internet or in the social media.

The Office of Internal Audit and Information Technology (OIT) shall exercise oversight of and monitor content on each official department Web site and social media site to ensure the content information and postings are correct and appropriate and to ensure adherence to federal, state, and lo-cal laws and department policies. This includes, but is not limited to, adherence to copyright and privacy laws, records retention requirements, the Texas Public Information Act, and information security policies established by the department.

## Employee Use of Social Media and The Internet

Employees who post or allow to be posted information or material to the Internet or in the social media or in any publicly accessible communication application or medium are subject to this policy at all times. Actions taken while on or off duty and that violate any Department Manual Policy shall be subject to appropriate review and possible disciplinary action.

Employees are not barred from presenting themselves on the Internet or in the social media as Texas Southern University Department of Public Safety employees. However, when posting information or material to the Internet or in the social media or in any publicly accessible communication application or medium, employees shall carefully consider whether or not to identify them-selves as employees of TSUDPS or members of law enforcement. Any information posted may re-main accessible to the public for an indefinite length of time even if access is restricted, and this may impact open records requests, courtroom credibility, potential citizen contacts, or the ability to seek and obtain an undercover assignment within the department.

## Restrictions

Except as required by official duties, employees shall not knowingly post or allow to be posted to the Internet or in the social media or in any publicly accessible communication application or medium:

a. Photographs or anything depicting or regarding themselves or other employees in compromising or inappropriate locations or circumstances.

b. Anything that would identify an employee or another person in law enforcement as a coworker, police officer, or member of law enforcement, without permission from that person.

    c.   Anything identifying, depicting, or regarding employees or other persons in law enforcement, on or off duty, who work in an undercover capacity.

Undercover officers shall not post or allow to be posted images of themselves on any Internet or social media site, whether the image is of the undercover officer in an on-duty or off-duty capacity. Additionally, undercover officers shall not identify themselves as police officers or as Texas Southern University Department of Public Safety employees on any Internet or social media site. Undercover officers who engage in any of these activities may be considered for reassignment within the department.

    d.   Anything depicting or regarding an employee, without permission from that person.

    e.   Anything depicting or regarding TSUDPS property or policy, the public release of which would compromise national, local, or employee security or the department mission.

    f.   Anything that would produce a reasonable expectation of harm to the reputation of the Police Department, Texas Southern University, of any employee.

    g.   False, derogatory, offensive, or inappropriate comments, material, or depictions regarding any coworker or other employee.

    h.   Anything false, derogatory, offensive, or inappropriate regarding their official duties or any department or university policy.

    i.   Anything depicting or regarding an ongoing law enforcement or Texas Southern University investigation, including investigations that have not resulted in a final adjudication.

    j.   Anything that relates to official department activities including, but not limited to, crime scenes, potential evidence, witnesses, incident reports, or personnel performing official duties.

    k.   Confidential or privileged information or material made available to them by their capacity as police officers or their position within the Police Department.

    l.   Anything appearing to be officially sanctioned by the Police Department or Texas Southern University.

    m.   Anything appearing to use a TSUDPS employee's official position for personal profit or business interests, to endorse a political candidate, platform, or commercial product, or to participate in political activity.

    n.   Anything that would attribute to personnel statements or opinions to the Police Department of Texas Southern University.

## Related Department Manual Policy and Reference Material

- 200.10, **Political Lobbying/Endorsement**
- 200.18, **Appearance and Grooming**
- 200.19, **Investigation of Employee Misconduct**
- Texas Southern University Manual of Administration Policies and Procedures (MAPP), Discipline and Termination Policy
- Texas Southern University Manual of Administration Policies and Procedures (MAPP), 04.06.12 Internet Use Policy
- Texas Southern University Manual of Administration Policies and Procedures (MAPP), 04.06.20 Information Resource & Technology Privacy Policy
- Texas Southern University Manual of Administration Policies and Procedures (MAPP), 08.03.01 Open Record Policy

# Criteria For Submitting Incident Reports

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Incident reports shall be completed when an officer views or becomes aware of any activity that may indicate the occurrence of a crime or becomes aware of a suspicious incident with a potential for terrorism connection.  Incident reports shall be completed and submitted for review prior to the end of each shift.

This Department Manual Policy applies to all employees.

## Exceptions

Under most circumstances, officers are not required to generate an incident report regarding civil matters. A first-line supervisor shall be contacted in all cases in which there is a disagreement between a citizen and an officer regarding the generation of a report.

With the exception of department or state property, firearms explosives, or circumstances addressed in section Suspicious Activity of this policy, generating lost or stolen property reports for items believed to be lost rather than stolen, shall be left to the discretion of the officer.

When a loss involves credit cards, banking checkbooks, automated teller machine (ATM) cards, pagers, keys, or other items that can be devalued by closing accounts, discontinuing service, or changing locks, complaints shall be directed to notify the concerned company or financial institution. When a wireless device is stolen, officers shall contact the relevant investigator and/or department prior to advising the complainant to terminate services associated with the device.

Nothing prohibits completing a lost or stolen property report if the officer feels the circumstances surrounding the loss support generate an incident report (e.g., sensitive documents, expensive items, driver licenses, or social security cards).

## Situation That Always Require An Incident Report

The following situations always require the creation and submission of an incident report.

    a.  Felony or Class A or B misdemeanor.

    b.  Family violence (see Department Manual 300.31, **Family Violence**).

    c.  Hate crime (see Department Manual 300.30, **Hate Crime**).

    d.  Home invasion.

    e.  Class C misdemeanor assault, trespassing, or trespassing on school property.

    f.  Juvenile involvement of any type.

    g.  Threat of or action bodily injury sustained by a citizen, suspect, or a police employee.

    h.  Tagged property, including video evidence.

    i.  Death of a person.

    j.  Stolen vehicle.

    k.  Response to resistance by an employee, (see Department Manual 300.12, **Response to Resistance**).

    l.  Display of any weapon necessitating a police response.

    m.  Rejection of a prisoner by jail personnel for medical reasons.

n.   Suspicious activity, as listed in section Suspicious Activity of this policy.

o.   Contact with a diplomatic representative of a foreign government (see Department Manual 200.37, **Contact with Representatives of Foreign Governments**)

p.   Any incident involving a person suspected of mental illness. If a mentally ill citizen has been handled more than once in any given calendar year for emergency detention and an original report exists, officer may supplement the original report.

q.   Lost firearms or explosives.

r.   Lost, stolen, or damaged department property (see Department Manual 400.05, **State Property**).

s.   Trafficking of persons. When a person has been found and it is reported they were smuggled or trafficked, officers shall generate a report.

t.   Documentation of an offender in the Misdemeanor Marijuana Diversion Program.

## Reports and Approval In The Records Management System

Anytime an original or supplement incident report is created in the department's records management system, the officer shall complete and approve and send the report by the end of the shift, with the exception of high priority reports (e.g., stolen or recovered vehicles, stolen or recovered license plates), which shall be approved and sent immediately. Supervisors shall be responsible for the quality of work performed by their subordinates.

After a report has been approved and sent and it is determined that corrections or modification need to be made, the officer or supervisor can reopen the report for the modifications.

### Unapproved Reports and Corrections

All employees who enter incident reports in the report management system shall log into the system daily to check for any unapproved reports or needed corrections. If the employee is notified that a report needs to be corrected, the report shall be corrected and approved and sent by the end of the employee's shift.

### Extra Employment

All incident reports created while working extra employment shall be approved and sent on the officer's own time by the end of the extra employment hours. See Department Manual 200.24, **Extra Employment**.

## Suspicious Activity

Suspicious activity is defined as observed behavior reasonably indicative of pre-operational planning associated with terrorism or other criminal activity. While a single instance of suspicious activity may not be a precursor to terrorist or criminal activity, other factors and circumstances may be present that cause concern and require additional investigation. If there is a criminal offense associated with the incident, officers shall conduct the investigation, complete the offense report, and inform the chain of command.

When a suspect is in custody or suspicious circumstances require additional investigative assistance, officers shall contact the Houston Regional Intelligence Service Center (HRISC).

In order to ensure appropriate review and analysis of suspicious incidents with a potential terrorism connection, officers shall complete an offense report concerning any of the suspicious activities listed below:

a. **Terrorist Watch List Encounters:** Incidents when an officer receives an NCIC "hit" from the Terrorist Screening Center (TSC) on a suspect or license plate. Officers shall first follow the instructions from the TSC on how to proceed with the encounter. Additionally, if a positive identification is made, officers shall contact the HRISC.

b. **Materials Acquisition on Storage, Weapons Collection or Discovery:** Incidents involving suspicious events or persons associated with weapons that would arouse suspicion of terrorism. This includes incidents involving weapons of mass destruction (chemical, biological, radiological, nuclear, or explosive) or the discovery of unusual amounts or types of weapons, explosives, chemicals, or other destructive material.

c. **Violent Extremism and Radicalization:** Incidents that involve suspicious persons that glorify violent extremists acts or persons who express support for or inspire violence.

d. **Photography:** Incidents of a person taking photographs or video of a facility, critical infrastructure, or a secured, protected site in an unusual or surreptitious manner that would arouse suspicion of terrorism. This could include, but is not limited to, taking photographs or video of infrequently used access points, the superstructure of a bridge, personnel performing security functions (e.g., patrols, badge/vehicle checking), or security-related equipment (e.g., perimeter fencing, security cameras).

e. **Observations/Surveillance:** Incidents involving unusual or prolonged interest facilities, buildings, or infrastructure beyond casual or professional interest that would arouse suspicion of terrorism. Examples include marking or noting distances, taking detailed notes, or making diagrams.

f. **Aviation Activity.** Incidents involving suspicious events or persons associated with aviation that would arouse suspicion of terrorism. This could include interfering with the operations of an aircraft, disturbances at an airport, violating flight restrictions, pointing a laser beam an at aircraft, or flying a drone in a suspicious manner over a facility or infrastructure without consent of the owner.

g. **Misrepresentation, Eliciting Information, Testing or Probing Security, Breach, or Attempted Intrusion:** Incidents involving suspicious events or persons associated with the security of a facility, infrastructure, or secured, protected site that would arouse suspicion of terrorism. This could include presenting false documents, credentials, or badges or donning uniforms in order to gain entrance; or a person asking probing questions beyond mere curiosity about a building's purpose, operations, or security procedures; or a person who deliberately challenges the physical security or security systems of a facility; or a person who attempts or actually breaches a restricted area.

h. **Theft/Loss/Diversion.** The theft of badges, uniforms, identification, or emergency vehicles associated with a facility, infrastructure, or secured, protected site.

i. **Sabotage/Tampering/Vandalism:** Incidents involving the damaging, defacing, or destroying any part of a critical infrastructure. Critical infrastructure includes, but is not limited to, the chemical and petrochemical sector, government and emergency sector, sporting venues and mails, energy and water facilities.

j. **Miscellaneous Activity.** Incidents of suspicious events or persons that cannot be vetted and based on additional factors continue to arouse suspicion of terrorism or criminal activity.

## Related Department Manual Policies And Reference Material

- 200.01, **Keys, Passwords, and Personal Identification Numbers**
- 200.24, **Extra Employment**
- 200.29, **Mobile Computing Devices**
- 200.32, **Disposition of Arrested Juveniles**
- 200.37, **Contact with Representatives of Foreign Governments**
- 300.10, **Motor Vehicle Pursuits**
- 300.11, **Handling Persons Exhibiting Mental Health Crisis**
- 300.12, **Response to Resistance**
- 300.20, **Handling Publicly Intoxicated Persons**
- 300.21, **Driving While Intoxicated**
- 300.22, **High Risk Vehicle Approaches**
- 300.26, **Class C Misdemeanors**
- 300.30, **Hate Crimes**
- 300.31, **Family Violence**
- 300.36, **Towing**
- 300.42, **Filing Proper Charges**
- 300.46, **Preliminary and Follow-Up Investigations**
- 400.05, **State Property**
- 400.18, **Auto Theft Reports**
- Texas Southern University Manual of Administration Policies and Procedures (MAPP), 04.06.17 Password Security Policy

# Police Records

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Employees of the Texas Southern University Department of Public Safety shall communicate truthfully and openly with the public.

Retention and disposal of State records and dissemination of information contained therein shall be done in accordance with applicable laws and ordinances.

This Department Manual Policy applies to all employees.

## Definitions

**Agreed Order of Expunction/Sealing of Criminal Records.** A court-ordered physical destruction or obliteration of a criminal, civil, or juvenile record or portion thereof by any criminal justice agency having possession of such record.

**Criminal Justice System.** Courts and governmental agencies that perform the administration of criminal justice pursuant to a statue or executive order and allocate a substantial part of their budge to the administration of criminal justice.

**Hard Copy.** Printed output on paper distinguished from data stored on electronic media.

**Open Records Request.** A written request for any information collected, assembled, or maintained by the Texas Southern University Department of Public Safety.

## Open Records

All open records requests shall be submitted in writing to the University's Office of General Counsel.

The Office of General Counsel shall advise whether disclosure of the requested record is required or prohibited by law or whether an exception to disclosure is available to the department under the law.

If disclosure of the information is required or if an exception to disclosure will not be claimed by the department, the Office of General Counsel shall gather the information appropriate and respond to the requestor.

If disclosure of the information is prohibited or the department will claim an exception to the dis-closure, the Office of General Counsel shall gather the information and follow the guidelines set forth in the Texas Public Information Act.

Any personnel that receive a request from the Office of General Counsel shall immediately deter-mine if the requested information is available. If the Captain determines that the information is not available, they shall advise the Office of General Counsel as to why the information cannot be provided. If the information is available, it shall be forwarded to the Office of General Counsel in a timely manner.

Requests from other law enforcement agencies or other governmental entities for statistics, policy and procedure material, survey participation, or information of a general nature, shall be sent directly to the Office of the Chief of Police.

# Release of Information

Employees shall not release copies of an official police report or information obtained from any police report unless authorized by the Chief of Police or this Department Manual Policy.

If not prohibited by law, employees authorized by their supervisor or assignment may release the following information if the release will not jeopardize an investigation, criminal prosecution, civil litigation in which Texas Southern University of the Police Department is a party, or a pending or ongoing police mission.

   a.   Suspect's name, alias, sex, race, address, occupation, and physical condition.

   b.   Name of arresting officer.

   c.   Date and time of arrest.

   d.   Booking information.

   e.   Charge.

   f.   Identification of the court in which charges have been filed.

Employees shall not release the following information:

   g.   Incident report information (other than the public release front page).

   h.   Suspect's personal history or arrest records to persons outside of the department.

   i.   The name of deceased persons until the next of kin have been official notified.

   j.   Information about the identity and description of criminal assault victims.

Requests for information regarding juvenile arrests shall be directed to the Office of General Counsel.

# Citizen Requests

Employees who receive verbal requests from citizens for information shall refer such requests to the Office of General Counsel.

# Removal of Records

Employees shall not remove any official State record or report from the department without the approval of the Captain.  The removal must be directly related to official police business.

# Personnel Photographs

Employees within the department that maintain employee photographs shall secure such photo-graphs so that they are not accessible to unauthorized personnel. Except as provide by this Department Manual Policy, hard copies of TSUDPS personnel photographs shall not be obtained with the use of any department computer imaging system database unless authorized by the Chief of Police.

## Internal Use of Personnel Photographs

Employees may acquire photographs of other employees only with approval from the Captain. The photographs shall be used for official business only and the use of such pictures shall not endanger the life or physical safety of the employee.

Photographs of employees may be given to other employees for the following reasons only:

   a.   Investigative purposes

   b.   Awards/Commendations

   c.   Media release

**Release to the Public**

All public requests for photographs of employees shall be referred to the Office of General Counsel. Only the Office of General Counsel may release an employee's photograph to the public.

Photographs of classified employees may be released to the public for the following reasons only:

    a.  The classified employee is under indictment or charged with an offense by information.

    b.  The photograph is introduced as evidence in a judicial proceeding.

A photograph exempt form disclosure may be made public only if the classified employee gives written consent to the disclosure.

## Dissemination of Criminal History Records

The dissemination of criminal history information by the Texas Southern University Department of Public Safety is subject to the Department of Justice regulations found in the United States Code.

The following persons and agencies are eligible to receive criminal history information from this department:

    a.  Criminal justice agencies (if the information will be used for criminal justice purposes).

    b.  Federal or state agencies specifically authorized by statute to receive such information.

The Office of General Counsel shall not disseminate criminal history records and information (CHRI) to any person or agency outside the strict definition of the criminal justice system, unless the agency or person is specifically authorized by statute to receive such information.

All personnel of the department shall maintain a dissemination log cross-indexed by name for CHRI given to an individual is done in the normal course of processing through the criminal justice system or the information is disseminated to a criminal justice agency within Harris County.

Dissemination of CHRI includes oral, printed, or computer-to-computer communication.

## Subpoenas For Records

All criminal and civil subpoenas that require testimony about information contained in the subpoena are the responsibility of the personnel served. If the validity of a subpoena is in question, the Chief's Command and the Office of General Counsel shall be contacted.

All subpoenas in which the Texas Southern University is a party to the lawsuit, or any civil process that is served on the Chief of Police or the department, shall be handled by the Office of General Counsel.

Subpoenas that are served on the department for the production of records or documents shall be forwarded to the Office of General Counsel. If the Office of General Counsel does not have the records that are requested in the subpoena, the subpoena shall be forwarded to the appropriate office.

Questions concerning subpoenas shall be directed to the Office of General Counsel.

## Expunction of Records

### Responsibilities

Any personnel that receives an agreed order of expunction/sealing of criminal records is responsible for ensuring that is executed properly.

**Process**

The Office of General Counsel shall complete the following procedures:

a. Ensure electronic data files related to the case are removed from the electronic data systems.

b. Create a single document to replace the file. The document shall state only the date of the expunction order, the court and number of the expunction proceedings, and the TSUDPS incident number.

c. Confirm no electronic and written copies of the criminal records are maintained.

**Multiple Defendants**

If an agreed order of expunction/sealing of criminal records relates to a case with multiple suspects, the Office of General Counsel is required only to destroy the documents and computer files related to the suspect named in the order. Identifying information relating to the individual suspect named in the order shall be redacted or deleted.

Questions concerning agreed orders of expunction shall be directed to the Office of General Counsel.

**Related Department Manual Policies and Reference Material**

- 200.01, **Keys, Passwords, and Personal Identification Numbers**
- 200.29, **Mobile Computing Devices**
- 200.31, **Acceptable Use of Computers**
- 300.06, **Body Worn Camera**
- §2-111 and §2-119, Code of Ordinances City of Houston, Texas
- Texas Code of Criminal Procedure, Chapter 45, Subchapter B
- Texas Code of Criminal Procedures, Chapter 55, Expunction of Criminal Records
- Texas Family Code, Chapter 58, Juvenile Justice Information System
- Texas State Library and Archives Commission
- Texas Southern University Manual of Administration Policies and Procedures (MAPP), 08.03.01 Open Record Policy
- Texas Statues, Government Code, Chapter 441, Subchapter J

**400.16**

# Media Relations

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

All employees of the Texas Southern University Department of Public Safety shall be open, fair, and honest with the media in accordance with the rules of the department and the laws of the city, state, and federal governments.

This Department Manual Policy applies to all employees.

## Introduction

Media requests for information, including interviews, shall be handled as follows:

a. Department employees shall refrain from making public statements about departmental policy or initiatives unless the statements have been approved by the Office of the Chief of Police. The department recognizes, however, that each employee has constitutional rights with regard to free speech and respects each employee's right to express personal opinions.

b. In emergency or scene-related situations, officer shall provide the media with information regarding the scene or event in a timely manner. The department's media relations personnel shall be notified of this release of information as soon as possible after the information has been released. Examples of such situations include: shootings, robberies, rashes, disasters, etc.

c. In follow-up or other non-emergency situations, department employees receiving media inquiries shall first coordinate the release of this type of information by calling the media relations personnel. Employees shall talk to the media relations personnel who shall assist in handling the media request prior to the response. When it is impractical to contact the media relations personnel prior to the release of information, department employees shall do as soon as possible after the release of information is made.

d. When an officer is involved in a shooting, discharge of a firearm, or injury, or any other significant incident, the media release shall be handled by the media relations personnel. It shall be the responsibility of the Command Staff to contact the media relations personnel upon receipt of a call of this nature.

## Media Access Through Police Lines

The department appreciates the media's right to have access to certain information concerning noteworthy events.  The department also recognizes its primary missions are investigating criminal acts and taking action at the scene of emergencies. It is therefore necessary for the department to place certain constraints on non-police personnel in order to conduct a successful police action.

Others shall adhere to the following guidelines when dealing with the media at crime scenes and at other police emergencies:

a. The first officers to arrive at a crime scene or other police event shall quickly establish a tight perimeter around the immediate crime scene. Only police and emergency personnel necessary for the on-scene investigation and operation shall be allowed inside this perimeter.

b. Department employees are expected to assist members of the media by providing accurate information and allowing passage through police lines when it does not jeopardize public safety or compromise a criminal investigation.

c. If a media relations personnel is needed to assist in the dissemination of information to the media at crime scenes or police events, the Command Staff shall be contacted and advised to have the duty media relations personnel respond to the scene.

d. Investigative personnel, when they are present at a police action, shall be responsible for releasing appropriate information to the media. Examples include homicides, robberies, burglaries, auto thefts, and other scenes at which investigative personnel routinely handle the release of information to the media.

e. During special threat situations, media representatives shall be directed to an area predetermined by the scene commander.  When appropriate, information may be released to the media at that area.

## Police and Media Relations

Officers shall permit media representatives to question witnesses, complainants, or suspects only after such persons have been questioned by the police.

Employees shall not arrange interviews of persons under arrest. (Note: Media representatives who attempt to interview an arrested person while that person is being walked from a scene of the arrest should not be viewed as interfering)

No details of an internal investigation shall be given to the media until the case has been concluded, and then only with the approval of the Chief of Police.

When an employee is unsure if a person requesting information is in fact a representative of the media, the employee shall direct the person to contact the media relations personnel.

When the volume of media requests for information about a specific incident exceeds the ability of a command to answer the inquiries, or when an answer to such requests would compromise the success of an investigation or operation, a supervisor of that command shall contact the media relations personnel and brief the personnel about the incident, and ask them to handle calls on the matter. All future media calls shall then be referred to the media relations personnel.

## Confidentiality of Information

No employee shall release confidential information contained in any personnel database without proper authority. Items deemed to be confidential are employee numbers, home addresses, home and cell telephone numbers, and absences.

Officers' home addresses and home and cell telephone numbers shall not be placed on forms such as offense report and accident reports.

If personal information about an officer is required on such forms, the following information shall be use:

a. Name (officer's initials and last name)

b. Address (3100 Cleburne Street)

c. Phone Number (officer's work phone number)

This policy applies regardless of the duty status of the officer at the time of an incident.

## Related Department Manual Policies and Reference Material

- 200.35, **Emergency Notification**
- 300.10, **Motor Vehicle Pursuits**
- 300.25, **Special Threat Situations**
- Texas Southern University Manual of Administration Policies and Procedures (MAPP), 08.03.01 Open Record Policy

# Assistance To Employees Involved In Critical Incidents

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

The Texas Southern University Department of Public Safety is concerned about the well-being of all its employees and recognizes that the psychological impacts of a critical incident may extend beyond the moment of the actual incident.

The university's Employee Assistance Program (EAP) provides post-critical incident intervention for any employee who sustains a serious injury, is exposed to a critical incident, or causes death or serious injury to another, or for any other circumstance as determined by the Chief of Police. In addition, the EAP provides voluntary counseling for employees and their family members including significant others.

This Department Manual Policy applies to all employees.

## Definitions

**Counseling.** Professional guidance provided by a staff psychological to address, explore, and resolve problems or complaints identified by the individual or the psychologist by using various psychological techniques and strategies.

**Critical Incident.** A work-related event that is extraordinary in nature with an expectation of producing a significant reaction on the part of an employee. An employee may be directly or indirectly involved with the critical incident and suffer a physical or psychological injury as a result.

**Fitness-for-Duty Evaluation.** A formal, specialized physical or psychological examination of an employee because of (1) objective evidence that the employee is unable to safely or effectively perform the essential functions of assigned job duties (2) a reasonable basis for believing that the inability to perform may be attributable to physical or psychological factors.

**Post-Critical Incident Investigation.** A stress management session with a staff psychologist to provide support, education, and an informal assessment to reduce the probability of long-lasting psychological and emotional problems resulting from a critical incident. The intervention is also designed to screen for unusual circumstances (past or present) that could intensify the impact of a critical incident on an employee.

## Guidelines and Regulations

### Special Duty Status

Any employee, whether on or off duty, who causes death or serious injury to any person, shall immediately be placed on temporary restricted duty by the Captain for a minimum of three workdays.

Restricted duty shall include non-street and limited police-service citizen interaction assignments. These assignments are intended to protect employees from potential emotional and psychological problems that might arise should they become involved in another critical incident before the first incident is addressed.

The Captain may authorize special duty status for officers who discharged their firearm and the discharge did not cause death or serious injury. Special duty status shall be authorized if it is in the best interest of the officer or the department.

### Relieved of Duty Status

The Chief of Police, or designee, may order an employee relieved of duty if it is in the best interest of the employee of the department. If the employee is to be relieved of duty, the relief of duty and return to duty shall be handled by the Internal Affairs Division in accordance with Department Manual 200.19, **Investigation of Employee Misconduct**.

### Extra Employment Restrictions

An employee shall not work any police-related extra employment during the entire period of special duty status. If an employee's relieved of all duties, the employee shall not work any extra employment until the employee is returned to full duty status by Internal Affairs.

## Post-Critical Incident Intervention

If an employee, whether on or off duty, causes death or serious injury to another person, the employee shall contact the EAP within two business days to schedule a post-critical incident intervention session. The employee's appointment shall be no later than one week after the date of the critical incident.

Employees who are injured in a critical incident shall call for an appointment with the EAP upon or before returning to duty. Employees are not required to wait until returning to duty and are encouraged to call as soon as possible after the critical incident.

Additionally, the EAP provides post-critical incident intervention sessions for employees indirectly exposed to a critical incident. Employees are encouraged to call the EAP for an appointment if they are indirectly exposed to such an incident. Attendance at these sessions is not mandatory for employees.

A university or department psychologist shall immediately notify an employee's Captain should it be determined through a post-critical incident intervention session that the employee should be on or remain on special duty status.

A post-critical incident intervention is separate and distinct from a fitness-for-duty evaluation. This does not preclude supervisors and other employees from notifying the Captain and Chain of Command regarding concerns about any employee's ability to perform their job to medical, physical, or psychological conditions as directed in Department Manual 200.36, **Workers' Compensation**.

### Attendance

Employees shall be allowed to attend mandatory post-critical incident intervention sessions while on duty. If an employee must attend the mandatory session(s) during off-duty hours, the employee shall be given overtime compensation (or flex time if applicable) for the actual time spent in the session. The EAP shall provide the employee written documentation of attendance at mandatory session(s). The employee shall give the documentation to the employee's Captain.

Attendance to subsequent or other non-mandatory sessions at the EAP is confidential information and documentation of such sessions attended shall require a written and signed release from the employee.

## Return To Duty

Before returning an employee to active duty from special duty status, the employee's Captain, or designee, shall consult with the EAP and Internal Affair Division, and then meet with the employee.

The Captain shall notify the Chief of Police in writing through the chain of command if the employee is fit to return to active duty.  A copy of the letter shall be sent to Internal Affairs.

The employee's Captain, or designee, shall ensure the returning employee is integrated back into the work environment. The returning employee shall be assigned to work with another employee for a period to be determined by the Captain and EAP. This time period shall be no fewer than three workdays. The returning employee may continue to work with another employee at the direction of the Captain or EAP.

## Related Department Manual Policies and Reference Material

- 200.19, **Investigation of Employee Misconduct**
- 200.24, **Extra Employment**
- 200.36, **Workers' Compensation**
- 200.40, **Temporary Alternative Assignments**
- 300.12, **Response to Resistance**
- 300.16, **Conducted Energy Devices**
- 400.10, **Emergency Management**
- Texas Southern University Department of Public Safety Standard Operating Procedure, Psychological Guidance/Assistance
- Texas Southern University Manual of Administration Policies and Procedures (MAPP), 02.05.03 Discipline and Termination Policy

# Auto Theft Report

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

This Department Manual Policy establishes criteria and procedures to be followed by Texas Southern University Department of Public Safety personnel when taking auto theft reports.

This Department Manual Policy applies to all employees.

## Dispatcher/Communications Personnel

A General Broadcast/Lookout (See Department Manual 300.24, **General Broadcasts**) shall be made to alert officers in the area of a possible stolen vehicle. In such cases, the vehicle status shall be given as "Possible Stolen" because the report is incomplete until the vehicle is entered into TCIC/NCIC. The General Broadcast shall not be considered as probable cause for an arrest.

The procedures for recovery and towing of stolen or possibly stolen vehicles are outlined in Department Manual 300.36, **Towing**.

## Officer Responsibilities

Officers responding to an auto theft shall follow the following guidelines and a stolen status shall be entered on the vehicle as soon as possible:

    a. When the incident is clearly an auto theft, the vehicle shall be considered stolen and an auto theft incident report shall be completed.

    b. When the complainant knows the person who took the vehicle and the incident is not clearly an auto theft, an investigation auto theft incident report shall be completed and the vehicle shall be listed as general and not stolen.  Such cases may include, but are not limited to:

        1. An acquaintance or a family member has the vehicle.

        2. A vehicle that has been leased or rented but not returned.

        3. A mechanic who will not return the vehicle because of nonpayment.

        4. The complainant has loaned the vehicle to another person.

In such cases, employees shall advise the complainant that the circumstances may be civil in nature and that the report will be listed as investigation auto theft.  Employees shall also ad-vise the complainant that the vehicle will not be listed as stolen in TCIC or NCIC until further investigation. In these investigation auto theft cases, the complainant shall be given the procedures for sending a demand letter (see section Demand Letter Procedures for Investigation Auto Theft Cases).

## Procedures

When officers are dispatched or flagged down by a complainant regarding a possible auto theft, officers shall complete an incident report. This includes incidents that may be civil in nature or situations when a complainant does not have a vehicle license plate number or a vehicle identification number (VIN).

When a complainant does not immediately have the required vehicle identification information available, an investigation auto theft report shall be made. The complainant shall be given the incident number and instructions to supplement the report with the VIN or license plate number.

The complainant shall be advised that failure to provide this information will prevent the vehicle from being entered into the system as stolen.

Once the VIN or license plate number is received from the complainant, the officer shall:

    a. Supplement the incident report.

    b. Validate the VIN and license plate number and enter the VIN and license plate number into HCIC, TCIC, and NCIC.

Once the required information is received, a stolen status shall be entered on the vehicle as soon as possible.

## Incident Report Entry

Officers shall use the department's records management system to document auto theft and/or auto recovery incidents as soon as possible. Officers shall be responsible for entering their own vehicle recoveries.

## Demand Letter Procedures For Investigation Auto Theft Cases

Complainants shall not be referred to the District Attorney's Office when an investigation auto theft report has been entered.

When investigation auto theft reports meet the criteria outlined in section Officers Responsibilities of this Department Manual Policy, the complainant shall be informed that:

    a. If the complainant has the complete name and address of the suspect in the case, the complainant must send a letter to the suspect demanding return of or compensation for the vehicle. The letter shall be sent via certified mail with a return receipt requested and must contain:

        1. An accurate and complete description of the circumstances under which the vehicle was obtained from the complainant.

        2. An accurate and complete description of the vehicle that the complainant owns and wishes returned.

        3. An affirmative demand that the complainant be allowed to take possession of the vehicle at the place where it is presently located, or that the vehicle be returned, or that the complainant be compensated for the full present market value of the property.

        4. A statement indicating that if one of the above demands is not satisfied within ten business days following receipt of this letter, the matter shall be turned over to the District Attorney's Office for appropriate action.

    b. If the demand letter is not satisfied within the specified ten-business-day period, the complainant shall give the investigator:

        1. A copy of the demand letter.

        2. The certified mail, return receipt from the Post Office.

        3. The unopened letter, if it was returned to the complainant for any reason.

    c. If the complainant does not have a complete name and address for the suspect, the complainant must attempt to obtain this information. If the complainant is unable to obtain a complete name and address to send the demand letter, the complainant shall be told to contact the investigator after the incident report has been made.

## Additional Considerations

Employees shall be aware of the following regarding auto theft cases:

a. A vehicle taken in the course of repossession by the lienholder is not a theft.

b. If the complainant had care, custody, and control of the vehicle but is not the owner, a report shall be accepted. The employee accepting the report shall attempt to determine the current owner of the vehicle in question. Upon ownership determination, the employee shall generate an auto theft report and include a notation regarding determination of ownership of the vehicle in the narrative section of the incident report. If there is a doubt as to ownership, the employee shall make an investigation auto theft report and include an explanation in the narrative section of the incident report.

c. If the employee is doubtful about significant elements of the offense, the employee shall call an investigator or the District Attorney's Office for guidance.

d. Auto rental agencies are permitted to file auto theft reports after the demand letter paperwork is completed and an investigative follow-up is conducted.

## Related Department Manual Policies

• 200.24, **Extra Employment**

• 300.24, **General Broadcasts**

• 300.36, **Towing**

• 400.14, **Criteria for Submitting Incident Reports**

# NCIC/TCIC

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

This Department Manual Policy provides guidelines for conducting Texas Crime Information Center (TCIC) and National Crime Information Center (NCIC) entries and inquiries in accordance with the Texas Department of Public Safety (DPS) and the Federal Bureau of Investigation's Criminal Justice Information Services (CJIS).

The Texas Southern University Department of Public Safety's participation in the TCIC/NCIC systems is conditional on adherence to the policy set forth in the NCIC Operating Manual, which makes the department subject to compliance audit by the Department of Public Safety and the Federal Bureau of Investigation (FBI) on a triennial basis.

This Department Manual Policy applies to all employees.

## Definitions

**NCIC.** National Crime Information Center.

**NLETS.** National Law Enforcement Telecommunication System.

**TAC.** Terminal Agency Coordinator.

**TCIS.** Texas Crime Information Center.

**TLETS.** Texas Law Enforcement Telecommunication System.

## Security, Restrictions, and Requirements

All systems capable of accessing TCIC/NCIC shall be kept secure at all times and access shall be restricted to authorized personnel only. All authorized personnel are responsible for ensuring their TCIC/NCIC inquiries are conducted for official criminal justice purposes only.

## Required TCIC/NCIC Training

The Captain is responsible for identifying assignments under their command that require various levels of TCIC/NCIC access and training.

All employees and non-TSUDPS personnel (e.g., contractors) working for the department with unescorted access rights shall complete, at a minimum, the TCIC/NCIC Criminal Justice Practitioner training course and the CJIS Compliance Security Awareness course in order to comply with DPS and FBI regulations. In addition, every two years a Security Awareness Refresher test shall be taken and passed in order to maintain this security privilege. Any vendor or contractor who is escorted by personnel authorized to access CJIS data is exempt this mandate for physical access only, not logical (computer) access.

Any employee who is responsible for entering, editing, or deleting criminal justice data in the TCIC/NCIC systems or TLETS shall complete the TCIC/NCIC Full Access course prior to gaining security privileges at this level. In order to maintain security privileges, all full access users shall take and pass a Full Access Recertification test and the TLETS LE Certification test every two years during their birthday month.

Any less than full access employees or authorized non-TSUDPS personnel (e.g., contractors) accessing or querying criminal justice information via department computers or mobile computing devices (MCDs) shall be required to complete the TCIC/NCIC Less Than Full Access course prior to gaining security privileges allowing access. In addition, recertification tests for less than full access

as well as the TLETS Mobile Certification (DL and REG only) test shall be taken and passed every two years during the individual's birthday month in order to maintain this security privilege.

## TCIC/NCIC Access

The Captain shall ensure that criminal history background checks have been completed for all employees and non-HPD personnel requesting TCIC/NCIC access.

If it is discovered that a criminal history check was not completed for a non-TSUDPS individual, the Captain shall determine if the individual meets the minimum standards for TCIC/NCIC systems access.

Once the Captain determines that an employee or any non-TSUDPS personnel requiring TCIC/NCIC access meet all the minimal standards for access, the individual shall obtain the required level of TCIC/NCIC training according to the type of security access needed (see section *Security, Restrictions, and Requirements* of this Department Manual). After completion of the required training, the Captain shall coordinate with DPS and notify the employee when access has been authorized. The Office of Internal Audit of Informational Technology shall be contacted to complete the individual's access capability.

If an employee is discovered or reported to be under criminal investigation or current indictment, supervisors shall follow procedures in Department Manual 200.19, **Investigation of Employee Misconduct**. Additionally, Internal Affairs shall request from the Office of Internal Audit of Information Technology, in writing, the removal of the employee's computer access and TCIC/NCIC access pending the outcome of the investigation or return to full duty status.

When employees (classified or civilian) are relieved of duty their access to the computer system, including TCIC/NCIC, is automatically suspended until the employee returned to full duty.

When an employee is returned to duty while under criminal indictment or after final conviction, the employee's TCIC/NCIC access shall remain suspended due to FBI and DPS access restrictions. These employees shall be assigned duties that do not require TCIC/NCIC access for the time period determined by the Texas CJIS Systems Access Policy. Limited non-CJIS system access may be granted by the Captain upon request as noted below.

There may be times when limited non-CJIS system access is needed for employees who return to duty while under indictment, or who are relieved of duty. The Captain may submit correspondence to the Office of Internal Audit of information Technology, requesting limited non-CJIS system access. The appropriate access shall be completed and forwarded to the Office of Internal Audit of Information Technology.

When the employee is no longer under investigation or indictment and has been returned to full duty, the employee's temporary ID number and password shall become inactive. The employee's full computer access, including TCIC/NCIC access, shall be restored.

## TCIC/NCIC Property Record Entry

Property record entries to TCIC/NCIC shall be made only when a valid theft report is on file or other TCIC/NCIC entry criteria are met. Mandatory property record entries shall be entered as soon as possible after the theft report is documented and on file.

## Officer Responsibilities

The investigating officer shall:

    a.  Ensure an official warrant is issued or a missing report is made.

    b.  Obtain a forecast of extradition for wanted persons.

    c.  Verify identification information with driver license and criminal history checks.

d.  Include all available information including, but not limited to, driver license and criminal history returns in the person record entry. Such information should be added to the entry only when there is a high degree of certainty that the returns are subject of the warrant.

e.  Have a second party check the entry for accuracy and completeness before the entry is submitted to TCIC/NCIC. TCIC/NCIC requires a second check by another party of any entry made before it is submitted.

f.  Forward a hard copy of the record to the officer for inclusion in the proper incident file. The hard copy should include the date, operator's initials, and a copy of the entry acknowledgment. Copies of motor vehicle registration, driver license, and criminal history checks should also be included.

h.  Enter the wanted person's record into TCIC only or into TCIC and NCIC, as indicated by the forecast of extradition.

## Supervisor Responsibilities

The supervisor shall:

a.  Ensure the validity of the record and ensure the accuracy of the record entry is double checked by a second party.

b.  Ensure all data entered is checked against the warrant or missing persons report, and against the DMV, driver license, and criminal history checks.

c.  Ensure driver license and criminal history information is added, as appropriate. This includes verification that the wanted person is entered into TCIC only, or TCIC or NCIC, as appropriate according to the forecast of extradition.

d.  Ensure the record is entered as soon as possible after the receipt of the warrant or missing per-sons report. Supervisors are reminded that record entry of a missing person is required within two hours following the notification to law enforcement and record entry of protective orders is required within seventy-two hours following notification.

e.  Coordinate with the officers to obtain complete information when it is not included in the warrant or missing persons report.

# Record Cancellation and Modification

Employees shall complete a supplement when information becomes available that a theft report is invalid or when property listed in a theft report is recovered.

# Quality Control of Records

The DPS and FBI initiate quality assurance checks on records entered into TCIC/NCIC for all agencies statewide.

## DPS/TCIC Messages

The dispatcher on duty at the time any TCIC messages are received shall immediately forward the messages to officers.

Officers shall attempt to resolve any issues with records and create supplements to modify the appropriate incident report.

## FBI/NCIC Messages

Error messages received from the FBI will have "$.E." at the top of the message. The record will already have been canceled by the FBI/NCIC. The dispatcher shall take immediate action by

attempting to resolve the error and re-entering the record if possible. If the dispatcher cannot resolve the problem, the dispatcher shall notify a supervisor of the "$.E." message.

## Records Validation

Every month DPS sends an electronic copy of one month of the department's records that shall be verified by a supervisor as being accurate, valid, and complete.

Validation of vehicle, boat, fugitive, securities, boat part, vehicle part, gun, license plate, and missing persons entries requires the department to confirm the record is complete, accurate, and active. Validation is accomplished by reviewing the original entry and current supporting documents, and by recent consultation with the appropriate complainant, victim, prosecutor, court, motor vehicle registry files, or other appropriate sources. For purposes of TCIC/NCIC records validation, recent consultation may be accomplished by various means including telephone communication or written notification.

If the investigating officer is unsuccessful in its attempts to contact the victim, complainant, etc., the investigating officer shall make a determination based on the best information and knowledge available whether or not to retain the original entry in the file. All efforts to validate a vehicle or missing person record shall be documented by completing a supplement report.

TCIC/NCIC records related to vehicles, vehicle parts, boats, and boat parts shall be validated be-tween 60 and 90 calendar days after they are entered.

## TCIC/NCIC Hit Confirmations

Employees shall follow all of the guidelines in this section whenever they are acting on or providing information form the TCIC/NCIC network or requesting hit confirmations form other agencies.

### Providing Hit Confirmation

The department shall provide written TCIC/NCIC hit confirmation to requesters whenever possible. If it is impossible to do so, confirmation shall be made over the telephone and a teletype message shall be sent when it becomes possible to do so.

Under no circumstances shall employees allow hit confirmation requests to the Texas Southern University Department of Public Safety to go unanswered.

The on-duty supervisor shall reply to all requests for hit confirmations within the time limit specified in the request. If the on-duty supervisor is unable to provide the positive or negative confirmation within that time frame, the on-duty supervisor shall immediately send a message to the requesting agency giving them a specific amount of time needed to confirm or deny a hit.

The on-duty supervisor shall confirm all hits by reviewing the original incident report and supplements or warrant to accomplish the following applicable tasks:

    a.   Ensure that the person or property inquired about is identical to the person or property identified in the record by performing a thorough and skillful investigation.

    b.   Ensure that any warrant, missing persons report, or theft report is still outstanding.

    c.   Obtain a decision regarding the extradition of any wanted person.

    d.   Obtain information regarding the return of any missing person to the appropriate authorities.

    e.   Obtain information regarding the return of stolen property to its rightful owner.

    f.   Obtain information regarding the terms, conditions, and service of a protective order.

Employees having doubt about a piece of property or a person's connection to the TCIC/NCIC hit should consult with their supervisor for further assistance.

## Requesting Hit Confirmations

When a dispatcher receives a TCIC/NCIC hit confirmation request from an officer to confirm a record, the employee shall do the following:

a. Notify the requesting officer that the hit confirmation request was received and that confirmation is being requested.

b. Send a teletype to the agency that originated the entry and fully describe the person or property in custody via a dispatcher.

If the entering agency does not provide positive or negative confirmation within the time limit specified in the first request, the dispatcher shall send another message to the entering agency requesting confirmation. The dispatcher shall enter the number 2 in the request number field. This will cause the message to be sent also to the appropriate state control terminal agency (CTA).

If the agency does not provide the confirmation within the time specified in the second request, the operator shall send another message to the entering agency, and enter the number 3 in the request number field. This will cause the message to be sent also to the appropriate state CTA and the FBI/NCIC in Washington, D.C.

A hit alone is not probable cause to arrest. The hit confirmed with the originating agency is one factor to be added to other factors at the scene to arrive at an arrest decision.

Officers shall contact dispatch to obtain hit confirmation from the entering agency before taking any of the following actions on hits:

c. Arresting the wanted person.

d. Detaining the missing person.

e. Seizing the stolen property.

Department Manual 300.41, **Required Booking Information and Procedures**, provides clear guidance in checking the wanted status of any individual who is ticketed, arrested, or jailed. If there is a warrant hit and confirmation is not received within 15 minutes, officers may release the detainee if they do both of the following:

f. Obtain a supervisor's approval.

g. Document the detainee's identification information.

**Note:** Consideration should be given to the nature of the warrant and the circumstances of the detention.

Officers recovering a vehicle reported stolen by an outside agency must request and receive a hit confirmation via a dispatcher before taking any action regarding the vehicle.

## Police Records

Procedures regarding the dissemination of criminal history records and release of police information are outlined in Department Manual 400.15, **Police Records**.

## Related Department Manual Policies and Reference Material

- 200.01, **Keys, Passwords, and Personal Identification Numbers**
- 200.19, **Investigation of Employee Misconduct**
- 300.41, **Required Booking Information**
- 400.15, **Police Records**
- 400.24, **Training**
- Texas Southern University Department of Public Safety Standard Operating Procedure, Communications Center

# Reception and Dissemination of Criminal Intelligence

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

The Texas Southern University Department of Public Safety shall collect store, and disseminate police service information as outlined in this Department Manual or as approved by the Chief of Police.

Police service information is the term used to describe the combination of crime event data and computer aided dispatch (CAD) event information. This can include real-time data and information that can change as new information streams in about in-progress and recent events.

The collection and dissemination of police service information is a vital function of the Texas Southern University Department of Public Safety. These processes impact not only internal operations, but also how the department interacts with external groups such as other law enforcement and government agencies, private citizens, business groups, elective officials, and the media.

This Department Manual Policy establishes policies and procedures for how police service information is collected, stored, and disseminated both within and outside the department.

This Department Manual Policy applies to all employees.

## Definitions

**CAD Event.** A recorded occurrence that requires a response or action. A computer aided dispatch (CAD) event includes citizen requested service, directed service, and officer created service. Each CAD event generates an Event Display Record (a.k.a. call slip), which contains a unique event number (a.k.a. incident number) for tracking purposes.

**Citizen Requested Service.** A CAD event that is initiated by a citizen contacting the Police Department and requesting some form of assistance. Other examples of a citizen requested service include, but are not limited to, an incident report made in person at the police station or an officer flagged down by a citizen and made aware of an incident.

**Directed Service.** CAD events that are commonly initiated by a supervisor, or other assigned activity that is tracked for administrative purposes, such as Outreach and Mobility and fleet activity. A directed service will typically involve any activity that is not in response to a citizen's request for service or that is not self-generated by an officer.

**National Incident-Based Reporting System (NIBRS).** The Federal Bureau of Investigation (FBI) program used by law enforcement agencies for collecting and reporting crime event data. National criminal offense data types are divided by two major groups: Group A offenses and Group B offenses.

**Officer Created Service.** A CAD event that is self-generated by an officer and does not originate from a citizen's request for service or a directed service by a supervisor or other departmental operation. An officer created service shall be classified as a self-initiated activity or a traffic stop.

## Collection and Dissemination of Crime Event Information and Statistics

An incident report of a crime event can be generated in a variety of ways including, but not limited to, an officer responding to a computer aided dispatch (CAD) event or a walk-in at the police station. Regardless of the method by which it is generated, each incident report shall be loaded directly into the department's records management system. All records are maintained by Texas Southern University's Office of Internal Audits and Information Technology.

All records will uploaded into the appropriate statistical reports that shall be used for press conferences and briefings by the Chief of Police or the University President.

## Collection and Dissemination of Cad Event Information

The Police Department tracks many of the services it provides for various purposes including, but not limited to, proper manpower and resource allocations, personnel management, and accountability to the public. For tracking and documentation purposes, these services are grouped under the global umbrella known as CAD events.

Reports from CAD events are considered the department's official records with regard to CAD event information and the information from these reports shall be used for press conferences and briefings by the Chief of Police or the University President. Information from CAD events shall be used for any public release requests. Open records requests for CAD event information not found in these report shall be handled in accordance with Department Manual 400-15, Police Records. Public requests for CAD event data shall be coordinated through the Texas Southern University Office of General Counsel.

Only the Office of the Chief of Police may release TSUDPS CAD event information to another agency or elected official. The Texas Southern University Office of General Counsel will assist as it relates to studies, surveys, or other formal reports that may be part of a memorandum of understanding signed by the Chief of Police. Other requests for CAD event information not addressed in this Department Manual Policy shall be directed to the TSU Office of General Counsel for an open records request.

## Related Department Manual Policy

- 400.15, **Police Records**

# Polygraph Examinations

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Employees shall follow the procedural guidelines outlined in this Department Manual to ensure compliance with the rules and regulations of the Texas Department of Licensing and Regulation (TDLR) and the Polygraph Law Enforcement Accreditation (PLEA) program.

This Department Manual Policy applies to all employees.

## Polygraph Examination Guidelines

Unless stated otherwise in this Department Manual, all polygraph examinations performed by department personnel shall adhere to the following guidelines.

   a.  All polygraph examination requests shall be made through a written order, during an administrative investigation, by the Chief of Police.

   b.  An authorized representative or designee of the Chief of Police shall accompany the examinee for the polygraph and ensure that the examinee has valid photo identification.

   c.  The examiner shall be furnished a copy of all pertinent information, incident reports, all statements, and any other information necessary to conduct a valid examination.

   d.  The authorized representative or designee of the Chief of Police shall remain readily available to the examiner throughout the examination. In the event the representative is not available, an alternate point of contact must be available.

## Confidential Information

Any information, reports, or statements given to the polygraph examiner to conduct an examination are strictly confidential. The release of such information shall be handled by only the authorized representative.

## Exceptions

Any exception to the above listed policies and procedures may be approved by only the Chief of Police or in the Chief's absence by the following in descending order of availability:

   a.  Deputy Chief

   b.  Captain

## Related Department Manual Policies and Reference Material

   •  200.19, **Investigation of Employee Misconduct**

   •  Texas Local Government Code, Chapter 143

   •  Texas Southern University Department of Public Safety Standard Operating Procedure, Internal Affairs

# Officer Funerals and Ceremonial Honors

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

The Texas Southern Police Department of Public Safety recognizes and honors officers who have died. This Department Manual Policy establishes guidelines regulating the rendering of appropriate honors.

This Department Manual Policy applies to all employees.

## Definitions

**Full Department Honors.** The rendering of honors for a Texas Southern University Department of Public Safety police officer killed while performing a police-related task or duty.

**Department Honors.** The rendering of honors upon the honorable (as determined by the department) death of an active or honorably retired Texas Southern University Department of Public Safety police officer who death was unrelated to employment by the department. Civilian employees while performing a police-related task or duty may receive department honors.

**Ceremonial Honors.** The rendering of honors by representatives of the department, as approved by the Chief of Police, at special events or at the funeral of anyone who should be honored in this manner because of their relationship with the department.

## Full Department Honors

All classified employees shall wear black tape or a mourning badge cover on the horizontal center of their badges as directed in Department Manual 200.18, **Appearance and Grooming**. All flags at police facilities shall be flown at half-staff from the time of the officer's death until burial.

The Honor Guard shall follow their approved protocol for line of duty deaths. With approval of family members, the Honor Guard shall conduct the following ceremonies:

a.  Prior to the Honor Guard arriving for the funeral service, officers shall post a casket guard during viewing on the day of the service.

The Honor Guard shall assume the casket guard duty one hour prior to the funeral service.

b.  Colors shall be presented at the time of the funeral services and at the grave site. A flag-folding ceremony shall be conducted.

c.  A 21-gun salute shall be performed.

d.  Taps shall be played at the grave site or at the ceremonial site.

## Department Honors

With approval of family members, the Honor Guard shall assume casket guard duty one hour prior to the funeral service.

Colors shall be presented by the Honor Guard at the grave site or at the ceremonial site.

A flag-folding ceremony shall be conducted for those deceased employees who were veterans of the United States Armed Forces and upon approval of the deceased employee's family.

## Ceremonial Honors

With approval of family members, the Honor Guard shall stand at an appropriate location while ceremonies are conducted or, on the day of the funeral, where the body of the person to be honored is lying in repose.

The Honor Guard shall present the colors during the appropriate time of the ceremonies or at the grave site of the person being honored.  Taps, when appropriate, shall be played.

The Honor Guard shall march during parades or activities in which the department wishes to participate.

## Out-of-Town Funerals

For out-of-town funerals, if the family of a TSUDPS officer killed in the line of duty requests the honor Guard and the funeral is to be held within the state of Texas, members of the Honor Guard shall attend. If the funeral is to be held outside of the state of Texas, but within the 48 contiguous United States, only the Chief of Police may authorize travel for the Honor Guard to attend.

If a TSUDPS's officer's death is not in the line of duty or if the funeral involves an honorably retired TSUDPS officer, the decision to send the Honor Guard or other official representative of the department to an out-of-town funeral shall rest solely with the Chief of Police.

### Related Department Manual Policies and Reference Material

- 200.18, **Appearance and Grooming**
- Texas Southern University Department of Public Safety Standard Operating Procedure, Line of Duty Death/Serious Injury to Member

# Solicitation, Gifts, and Bribery

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

Employees, while on duty or off duty, while representing the Texas Southern University Department of Public Safety, shall not solicit, sell, or accept anything of value unless authorized by the Chief of Police.

This Department Manual Policy applies to all employees.

## Definitions

**Solicitation.** The direct or indirect seeking of contributions or selling of products, services, or programs; or the approaching of any employee regarding support of an outside agency, organization, or company. Solicitation shall further include the posting or distribution of non-work-related literature or notices as well as electioneering activities.

## Soliciting Business

Employees shall not, while on duty, solicit subscriptions, sell books, papers, tickets, merchandise, or other items of value, nor collect or receive money or items of value for any purpose except as authorized by the Chief of Police.

The following activities are prohibited on all department property at all times except as authorized by the Chief of Police:

    a.   Solicitation by citizens.

    b.   Solicitation by employees.

    c.   Distribution of non-work-related literature by employees.

Violations of this policy shall be brought to the attention of the employee's immediate supervisor who shall ensure the Captain is notified.

## Accepting Gifts From Subordinates

Employees shall not receive or accept any gift or gratuity from subordinates, without approval from the Chief of Police.

## Accepting Gifts and Gratuities

Employees shall not accept any reward, gratuity, gift, or other compensation for any service performed as a result of or in conjunction with their duties as employees of the department, regardless of whether the service was performed while on or off duty.

Employees shall not directly or indirectly accept a benefit or gift under any circumstances that create the appearance of impropriety or intent to influence department affairs.

Any division or unit within the department must receive approval from the Chief of Police before accepting any gift or donation.

## Soliciting and Accepting Special Privileges

Except as noted below, employees shall not use their official position for identification to solicit any gift, gratuity, loan, present, fee, or reward or to see or accept special privileges for themselves or others, such as free admission to places of amusement, discounts on purchases, free or discounted meals or refreshments. Employees seeking to enter the roadway to solicit charitable contributions must file a written application with the City of Houston.

# Accepting Benefits From Suspects And Prisoners

Employees shall not seek, accept, loan, borrow, buy, or sell anything of value from or to any known suspect, prisoner, defendant, or other person involved in any case involving the Texas Southern University Department Public Safety. These activities are also prohibited with persons of ill repute, professional bondsmen, or other persons whose vocations may profit from information obtained from the Texas Southern University Department Public of Safety.

# Reporting Bribe Offers

If any employee receives an offer of a bribe, the employee shall immediately submit a letter to the Captain. Officers shall generate an incident report. All civilian employees shall contact an officer to generate an incident report for them.

## Related Department Manual Policies

- 200.02, **Conduct and Authority**
- 200.19, **Investigation of Employee Misconduct**

# Training

**Reference:** *Supersedes all prior conflicting Policies and Directives*

## Policy

The Texas Southern University Department of Public Safety shall provide training programs that fulfill the requirements of both the department and the Texas Commission on Law Enforcement (TCOLE). All civilian employees shall fulfill in-service training required to meet minimum department standards.

This Department Manual Policy applies to classified and civilian employees.

## Training Requirements

Officers shall fulfill minimum in-service training as required by TCOLE and the department.

## Mandatory Training

Each year the Chief of Police shall announce department required training hours, the curriculum, and schedule guidelines per department needs and as mandated by TCOLE. All mandatory training shall be completed on duty.

## Specialized Training

The Captain is responsible for identifying assignments under their command that require special skills. Required training for these skills must begin as soon as possible. This requirement includes newly promoted personnel. Specialized training shall be completed on duty.

All specialized training must:

    a. Adhere to the department's policies, procedures, directives, and regulations specific to the specialized duty assignment.

    b. Develop and enhance the knowledge, skills, and abilities of the personnel assigned to the specialized activity.

    c. Make personnel aware of any administrative concerns that may be inherent in the specialized assignment.

## Division Level Training

Any division intending to conduct an internal training, or roll call training, is required to submit the lesson plan in writing for approval to the Training Coordinator at least 30 calendar days prior to the class or training being held. Also, any instructor or lesson plan must be approved and on file with the Training Coordinator prior to the class being held. (See section Review and Approval of Proposed Training Programs of this Department Manual Policy for further requirements.)

## Internet Training

Internet classes may be taken in lieu of attending classes. However, any Internet classes taken to meet required in-service training must have sanctioned and approved by TCOLE. Officers may take internet classes on duty with supervisor approval.

## Intermediate and Advances Peace Officer Proficiency Certification

Officers may complete any instructor-led courses authorized by the Training Coordinator to obtain intermediate or advance peace officer proficiency certification while on duty.

## New Hire Training

All civilian employees will complete all required new hiring training within the department standards. New hire training shall be completed on duty.

## Waiver of In-Service Training

Civilian employees who are unable to attend or satisfactorily complete mandatory in-service training or other required training shall request a waiver of extension from the Captain through the chain of command.

Waivers for civilian directors shall be at the discretion of the Chief of Police.

## Additional Training

Courses taken in addition to mandatory, specialized, and other required training may be attended on duty only with the prior approval of the Captain. Any other training shall be attended on the employee's own time or while using authorized leave.

# Training From Outside Providers

For employees to receive credit for outside training, it must be job related. Meetings are not considered training. To obtain TCOLE credit the following items and information shall be submitted to the Training Coordinator within 10 calendar days following course completion:

    a. Certification of completion containing the following;
1. Officer's name
2. Employee/T number
3. TCOLE personal identification number (PID)
4. Start and end date of training
5. Number of hours completed
6. Name of the provider or sponsor agency

# Attendance Requirements

Officers scheduled for in-service training shall report on time or as ordered by any instructor (starting, break, or lunch times), and complete all required course work.

Officers shall follow all applicable rules, regulations, or guidelines set by the department or outside agency.

## In-Service Training Dress Code

Officers shall wear the department official uniform or conservative business causal attire while attending in-service training. Officers wearing the official uniform may forgo wearing the duty belt while inside the classroom. Any clothing with inscriptions or decorative artwork must be in good taste and reflect a professional appearance. Officers shall not wear shorts, beach or sport sandals, tank or halter tops, sweat pants or any type of gym pants, or any clothing that is distracting such as tights or leggings. Jeans shall be allowed as long as they are not dirty, torn, or ripped.

## Display Official Department Identification

Department issued identification shall be displayed at all times while attending training at the department or any department contracted training site.

## In-Service Training Roster

Officers shall sign-in by printing their name and PID number on any available sign-in sheet or roster. These rosters are official government documents and are the only documents that verify the attendance of officers for specific courses.

Officers shall not for any reason fill out any part of the roster for another employee.

## Review and Approval of Proposed Training Programs

Before any new training program is implemented or taught, the below listed materials must be submitted to the Training Coordinator at least 30 calendar days before training is to begin.

   a.   A curriculum formatted in approved TCOLE lesson plan format that includes the course goals, participant learning objectives, teaching outline, and class time schedule.

   b.   One copy of all handout materials for participants.

   c.   A copy of all visual presentations (e.g., PowerPoint and transparencies).

   d.   A copy of any video or photograph not stored within the visual presentation.

   e.   Test questions (if applicable).

   f.   The instructors' current resumes.

After reviewing the course materials, the Training Coordinator shall approve or revise material and schedule the training.

## Training Coordinator's Responsibilities

The Training Coordinator is responsible for the following:

   a   Ensure that all commissioned officers comply with the in-service training requirements established by TCOLE.

   b.   Ensure that all non-commissioned personnel comply with the training specified by the Chief of Police.

   c.   Assist personnel in obtaining research materials for preparation of lesson plans.

   d.   Submit proposed lesson plans and training material to the Office of the Chief of Police for approval.

   e.   Notify the requesting personnel when training has been approved.

   f.   Coordinate appropriate training schools with outside agencies.

   g.   Maintain current training records on all personnel.

   h.   When a specific training need is defined which will be presented department-wide, the Training Coordinator will assist in the preparation of all necessary materials and coordinate establishing training dates and times, and provide necessary information to the Captain and other staff elements.

   i.   In an instance of department-wide training, the Captain will be given information on the dates and times training will be presented.

   j.   All employees are required to attend training schools or classes assigned through the Training Coordinator.

## Related Department Manual Policies and Reference Material

- 200.08, **Work Hours**
- 200.18, **Appearance and Grooming**
- 200.33, **Overtime Compensation**
- 300.01, **Firearms and Qualification**
- Texas Southern University Department of Public Safety Standard Operating Procedure, Department Training/In Service Roll Call
- Texas Southern University Manual of Administration Policies and Procedures (MAPP), 02.05.16 Training Policy

# APPENDIX:
## FORMS, DOCUMENTS AND REPORTS

Mary Young
*Executive Director and Chief of Police*
*Texas Southern University, Department of Public Safety*

# Texas Southern University

## Office of Human Resources

3100 Cleburne St Houston TX, 77004   Phone 713-313-7521 Fax 713-313-4347

**Important Notice**:  Unless your request for leave is unforeseeable, employees must submit request for FMLA leave and physician's certification at least 30 days in advance of their schedule leave to The Human Resources Department**.**

☐ Family & Medical Leave Request Form (completed by employee & supervisor)

☐ Certification of Health Care Provider (completed by physician)

☐ Return to work Certification (completed by physician & returned to HR)

# Texas Southern University

## Family and Medical Leave/Parental Leave Request

### Employee Information

**Name**: _____ **T No**: _____

**Preferred email Address**: _____ **Phone #**:_____

**Home Address**: _____ **State**: _____ **Zip**: _____

**Department**: _____ **Supervisor's Name**: _____

**Pay Type**: ☐ Monthly  ☐ Semi-Monthly

**Months Worked Per Year**: ☐12 month's ☐ 9 Months ☐ other

**Request for**: ☐ Family and Medical Leave      ☐ Parental Leave

---

### Leave Request Summary

**Is this a joint application with a spouse who is a TSU employee?**                 ☐ Yes ☐ No

**Is the qualifying condition due to the birth of a child or care for a new born?**       ☐Yes   ☐ No

**Is the qualifying condition due to the adoption or state-approved foster care of a child?** ☐Yes   ☐No

**Is the qualifying condition due to Military Leave**: ☐Active Duty Leave ☐Military caregiver leave?

**Active Duty**: Qualifying exigency             Relationship:       Active duty paid vacation?  ☐Yes ☐No

**Military caregiver**: Certification of health care provider: ☐ Yes ☐ No
                                 Certification for next of kin?           ☐Yes ☐No

**Is the qualifying condition due to the serious health condition of a dependent?** ☐Yes   ☐No

Name: _____Relationship:_____ DOB (if child) _____

**Is the qualifying condition due to the serious health condition of the employee?**

**Date of event or onset of condition**: ____/____/____ **Duration**: _____

**Last day worked**: ___/_____/_____

**Are you requesting Intermittent Leave?** ☐ Yes   ☐ No

If yes, please provide Work/leave schedule:             Duration of leave:


NOTE: Recertification will be required every 6 months for intermittent leave.

---

# Texas Southern University

## Employee Section

I understand and agree to the following provisions:

-I certify that I have received the Health Care Provider Certification and must return it to HR within 15 calendar days or my FML will be denied.

-I must exhaust all sick, vacation, or other paid leave accumulations while taking FMLA leave. Once paid leave is exhausted I will be placed on leave without pay.

-After 12 weeks of FMLA have exhausted or the amount of approved leave has been used, if I do not return to work or contact my supervisor or manager on or before the date intended I will be considered that I abandoned my job.

-I will report periodically during the leave (at least once per week) to my supervisor on my leave status and intention to return to work.

-I must exhaust all sick, vacation, or other paid leave accumulations while taking FMLA leave. Once my paid leave has exhausted, I will be on leave without pay.

-I will receive the state credit for health insurance during the family or medical or parental leave and will be billed for any additional insurance premiums due.  Should I fail to pay the additional premiums, my health insurance coverage will be changed to employee only level and optional coverage will be canceled. Continuation of group insurance is subject to the conditions and policies of ERS relating to coverage without pay.

-I must provide a release to work from my physician to HR following my leave, should I fail to do so my department may deny restoration of employment.


Employee Signature_____   Date: _____

## Your rights under the Family and Medical Leave Act of 1993

The Family Medical Leave Act (FMLA) requires covered employers to provide up to 12 weeks (up to 26 weeks for military caregiver leave) of unpaid, job-protected leave to "eligible" employees for certain family and medical reasons.  Employees are eligible if they have worked for a covered employer for at least one year and for 1,250 hours over the previous 12 months, and if there are eat least 50 employees within 75 miles.

When returning from FMLA leave most employees must be restored to their original or equivalent positions with equivalent pay, benefits and other employment terms.

# Texas Southern University

## This section to be completed by your Department

**Employee's Job Title:** _____ **FTE:** _____ **Hire Date:** ___/_____/_____

**Pay type**: ☐ Monthly ☐ Semi-monthly  **Months worked per year**: ☐ 12 months  ☐ 9 months ☐ other

**Last Day Worked**: ____/____/_____

**Vacation Balance as of last day**: _____ **Sick leave balance as of last day**: _____

**Supervisor/Manager Signature**_____ **Date**: _____/____/_____

-Any changes in the approved leave must be reported immediately to the Human Resources Department.

-A Personnel Action Form (PAF) is required to place the employee on family medical leave and should be submitted to Human Resources once family medical leave or parental leave commences (noting paid or unpaid leave)

-The employee will be given state premium sharing towards the cost of health insurance while on FMLA.  The employee will be billed (or the amount will be deducted from any sick leave or vacation pay) for additional premiums in excess of the state premium sharing.  Should the employee fail to pay the additional premiums, the health coverage will be changed to employee only leave and optional coverage will be terminated.

-Continuation of group insurance is subject to the conditions and policies of the "Employee Retirement System of Texas" relating to coverage while on leave without pay.

-Human Resources may request the department to provide leave records on the employee if necessary for processing benefits including but not limited to disability applications, workers compensation claims, and death claims.

## Human Resources Section

Forms Received: ___/____/_____       Approved_____       Denied: _____

Reasons why denied:

_____

_____

_____

HR Signature: _____ Date: ___/___/_____

# Texas Southern University

## Office of Human Resources

3100 Cleburne St Houston TX, 77004   Phone 713-313-7521 Fax 713-313-4347

### FML PHYSICIAN'S INFORMATION RELEASE

**To:** _____

(Attending Physician)


**RE:** _____

(Printed Name of Patient)


This is an authorization to release all information pertaining to my condition to Texas Southern University, Office of Human Resources.  Please return the original with the Certification of Healthcare provide form and retain a copy with your records.


I understand that this authorization can be revoked at any time by me in writing, but it will not be retroactive for information previously released in good faith.


**Patient Signature:** _____


**Date signed:** _____/_____/_____

## AFFIDAVIT OF EXPOSURE TO A
## COMMUNICABLE DISEASE

I, _____ (employee number) _____ am an employee of the Texas Southern University Police Department and have reason to believe that I have been exposed to a communicable disease on (date) ___/___/___.   My exposure was the result of the contact with blood or body fluids of (suspect/source name) _____.   The circumstances and facts that lead me to believe I have been exposed are based on the following information:

**In order for the Health department to expedite their review of this exposure this affidavit MUST include all details of the circumstances surrounding your exposure.**

**Detail description** of how you were exposed:  (Example: human bite, needle prick, exposed to blood, or body fluids.)
_____
_____
_____ **Was your skin broken?**  Yes / No

**Body part that was exposed:** (Example: left index finger, right cheek.)_____

Full name of suspect/source: _____ Date of birth of suspect/source:_____

Last known physical address of suspect/source: _____

_____ Phone number of suspect/source: _____

**Is the suspect/source in Jail?**  Yes  /  No          2nd Contact Phone number: _____

Booking # of suspect: _____ HC SPIN # of suspect: _____

I hereby swear or affirm that the statement made above is true and accurate account of the circumstances surrounding my exposure to a communicable disease.   I request that the City of Houston, Department of Human and Health Services, Bureau of Epidemiology review this exposure to determine any control measures or medical treatment I should take.

Employee's Signature_____Payroll number_____

TSU Division Location_____ Shift/Hours_____

Contact phone number _____ 2nd number_____ E-mail_____

Before me, the undersigned authority, on this _____ day of _____, 20_____, personally appeared _____, who upon being duly sworn by me, upon his/her oath stated that the above and foregoing statement is true and correct and that the facts stated therein are within his/her personal knowledge.

_____

Notary Public In and For State of Texas

My commission expires on: _____/_____/_____

**Complete and fax to: Health & Safety Unit @ 713 313-4425.  The Health Department will evaluate the potential exposure and send the results to the DPS, and seek testing of the suspect/source if deemed necessary.  For detailed information, please refer to G.O. 300-21 "Communicable Disease Policy".**

Health & Safety
05/19/2014

## Instructions
## Employee's Report of Injury

**Purpose of Form:**

Injured employees complete this form to provide the Office of Risk Management with information pertaining to the circumstances surrounding an injury and what has happened since the date of injury. This will help to expedite benefits in a timelier manner.

**Step 1**.

Dial 713-313-7000 to report the injury to the Department of Public Safety - (Campus Police) and report the injury to your supervisor immediately.

**Step 2.**

Complete the Employee's First Report of Injury (TSU – SORM 29). This form shall be completed by the injured employee with assistance from the Supervisor or Accident Investigator, if needed. Address each of the questions completely and use additional pages if necessary. Provide a complete picture of the events surrounding the injury and how the injury occurred. Supply names and phone numbers of any witnesses, physicians/treatment providers. The employee should enter any previous workers compensation claims and the body parts injured. Sign and date the form thereby attesting that all information on the form is true and complete.

**Step 3.**

Complete the Authorization for Release of Information (SORM 16) and the Employee's Election Regarding the Use of Sick and Annual Leave for General Employees (SORM 80).

If medical attention is required an authorization for examination and/or Treatment will be provided for you. All University employees are required to seek attention at an authorized CompKey+ Health Care Network provider. The CompKey+ HCN is designed to provide employees with access to primary and specialty medical providers who are familiar with workers' compensation injuries and who will provide high quality medical care to help facilitate quick recovery and return to work. Several providers are conveniently located throughout the city for your convenience.

**Step 4.**

Return the completed original TSU-SORM 29 along with the SORM 16, SORM 80, SORM 74 and the Supervisor's Report of Injury to the Office of Risk Management GSB, Suite 213-D, not later than 24 hours after an employee injury or illness.

**Step 5.**

If medical treatment is obtained or if lost time occurs due to the injury, it is the employee's responsibility to return a work status report to the Office of Human Resources, Hannah Hall Suite 126.

TSU Police Report # _____



**TEXAS SOUTHERN UNIVERSITY**

DOB:_____

### EMPLOYEE'S FIRST REPORT OF INJURY

Dear University Employee:

We have received a report that you were injured in the course of your employment. To process your claim efficiently, please fill in all lines completely and print legibly. **Attach additional sheets if necessary.**

Name:_____
     Last       First    MI    Maiden

Address:_____

City: _____ State: _____

Primary Phone
Number:_____

Secondary Phone
Number:_____

Email
address:_____

Social Security #:_____ Gender:  M / F

Date of Injury: _____ Time of Injury:_____

Marital Status:   Single   Married   Divorced   Widowed   Unknown
                    (Circle One)

Job
Title:_____

Work
Schedule:_____

Supervisor's
Name:_____

Supervisor's Telephone_____

---

Did the employee remain on duty?  ☐ Yes  ☐ No

Was medical care declined on the date of injury?   ☐ Yes   ☐ No

Was the employee taken by ambulance to the emergency room?   ☐ Yes   ☐ No

If yes, to what hospital? _____

---

1)    What was the exact location of the accident (building name, stairs, dock, floor, room #):

2)    What was the employee doing just before the incident occurred? Describe the activity, as well as the tools, equipment or material the employee was using. Be specific. Attach additional pages if necessary.

3)    Briefly describe exactly what caused the injury:

4)    What areas of the employee's body were injured? Be more specific than hurt, pain or sore and include right or left to indicate the exact location.

5)    What object or substance directly harmed the employee? Examples: concrete floor, saw, acid, desk, chair.

6) When and to whom did you report your injury?   Date_____Time_____

Name: _____   Title_____

Phone Number: _____

7) List all known witnesses. (Continue on back if necessary)

Name _____   Phone:_____

Name _____   Phone:_____

Name _____   Phone:_____

8) **Please identify your Primary Care Physician or family doctor:**

**Name:**_____   **Phone:** _____

9) **Please list the names and phone numbers of all treatment providers you have seen for your injury:**

**Name:**_____   **Phone:** _____

**Name:**_____   **Phone:** _____

10) **Has a doctor taken you off work?**   ☐ Yes   ☐ No

**If so, when was the first day you missed work?** _____

11) **If the doctor took you off work, have you returned to work?**   ☐ Yes   ☐ No
**If not, when do you think you will return to work?** _____

12) **Date of Last Appointment:** _____

**Date of Next Appointment:** _____

13) **Have you had previous workers compensation injuries?**   ☐ Yes   ☐ No
**If Yes, please enter dates of injuries and the body parts injured.**

By affixing my signature, I attest that all information on this form is accurate and true.

Injured Employee Signature:_____   Date:_____

Printed name of person completing this form:

(If other than the injured employee) _____   Signature _____

Supervisor's Signature:_____   Date:_____

**SORM**
STATE OFFICE of RISK MANAGEMENT

TSU - SORM 29 Revised 6/2011

**OFFICE OF INJURED EMPLOYEE COUNSEL**

NORMAN DARWIN, PUBLIC COUNSEL

## Notice of Injured Employee Rights and Responsibilities in the
## Texas Workers' Compensation System

As an injured employee in Texas, you have the right to free assistance from the Office of Injured Employee Counsel.  This assistance is offered at local offices across the State. These local offices also provide other workers' compensation system services from the Texas Department of Insurance (TDI). TDI is the state agency that administers the system through the Division of Workers' Compensation.

You can contact the Office of Injured Employee Counsel by calling the toll-free telephone number 1-866-EZE-OIEC (1-866-393-6432).  Also, more information is available on the Internet at: **www.oiec.state.tx.us <http://www.oiec.state.tx.us>**.

You can contact the Division of Workers' Compensation by calling the toll-free telephone number 1-800-252-7031. More information about the Division of Workers' Compensation is available on the Internet at: **<http://www.tdi.state.tx.us/wc/indexwc.html>**.

### Your Rights in the Texas Workers' Compensation System:

1. **You may have the right to receive benefits.**
   You may receive benefits regardless of who was at fault for your injury with certain exceptions, such as:
   - You were intoxicated at the time of the injury;
   - You injured yourself on purpose or while trying to injure someone else;
   - You were injured by another person for personal reasons;
   - You were injured by an act of God;
   - Your injury occurred during horseplay; or
   - Your injury occurred while voluntarily participating in an off-duty recreational, social, or athletic activity.

2. **You have the right to receive medical care to treat your workplace injury or illness.  There is no time limit to receive this medical care as long as it is medically necessary and related to the workplace injury.**

3. **Choosing a treating doctor:**
   - If you are in a Workers' Compensation Health Care Network (network), you must choose your doctor from the network's treating doctor list.
   - If you are not in a network, you may choose any doctor who is willing to treat your workers' compensation injury.
   - If you are employed by a political subdivision (e.g. city, county, school district), you must follow its rules for choosing a treating doctor.
   It is important to follow all the rules in the workers' compensation system.   If you do not follow these rules, you may be held responsible for payment of medical bills.

4. **You have the right to hire an attorney at any time to help you with your claim.**

5. **You have the right to receive information and assistance from the Office of Injured Employee Counsel at no cost.**
   Staff is available to answer your questions and explain your rights and responsibilities by calling the toll-free telephone number 1-866-EZE-OIEC (1-866-393-6432) or visiting any Division of Workers' Compensation/Office of Injured Employee Counsel local field office.

6. **You have the right to receive ombudsman assistance if you do not have an attorney and a dispute resolution proceeding about your claim has been scheduled.**
   An ombudsman is an employee of the Office of Injured Employee Counsel. Ombudsmen are trained in the field of

workers' compensation and provide free assistance to injured employees who are not represented by attorneys.   At least one Ombudsman is located in each local field office to assist you at a benefit review conference (BRC), contested case hearing (CCH), and an appeal.   However, Ombudsmen cannot sign documents for you, make decisions for you, or give legal advice.

**7.   You have the right for your claim information to be kept confidential.**
In most cases, the contents of your claim file cannot be obtained by others. Some parties have a right to know what is in your claim file, such as your employer or your employer's insurance carrier.   Also, an employer that is considering hiring you may get limited information about your claim from the Division of Workers' Compensation.

## Your Responsibilities in the Texas Workers' Compensation System

**1.   You have the responsibility to tell your employer if you have been injured at work or in the scope of your employment.**
You must tell your employer within 30 days of the date you were injured or first knew your injury or illness might be work-related.

**2.   You have the responsibility to know if you are in a Workers' Compensation Health Care Network (network).**
If you do not know whether you are in a network, ask the employer you worked for at the time of your injury.  If you are in a network, you have the responsibility to follow the network rules.  Your employer must give you a copy of the TDI network rules.  Read the rules carefully.  If there is something you do not understand, ask your employer or call the Office of Injured Employee Counsel.  If you would like to file a complaint about a network, call TDI's Customer Help Line at 1-800-252-3439 or file a complaint online at **<http://www.tdi.state.tx.us/consumer/complfrm.html#wc>**

**3.   If you worked for a political subdivision (e.g. city, county, school district) at the time of your injury, you have the responsibility to find out how to receive medical treatment.  Your employer should be able to provide you with the information you will need in order to determine which health care provider can treat you for your workplace injury.**

**4.   You have the responsibility to tell your doctor how you were injured and whether the injury is work-related.**

**5.   You have the responsibility to send a completed claim form (DWC-41) to the Division of Workers' Compensation.  You have one year to send the form after you were injured or first knew that your illness might be work related.**
Send the completed DWC-41 form even if you already are receiving benefits.  You may lose your right to benefits if you do not send the completed claim form to the Division of Workers' Compensation.  Call 1-800-252-7031 or 1-866-393-6432 for a copy of the DWC-41 form.

**6.   You have the responsibility to provide your current address, telephone number, and employer information to the Division of Workers' Compensation and the insurance carrier.**

**7.  You have the responsibility to tell the Division of Workers' Compensation and the insurance carrier any time there is a change in your employment status or wages.  Examples include:**
  - **You stop working because of your injury;**
  - **You start working; or**
  - **You are offered a job.**



**STATE OFFICE** *of* **RISK MANAGEMENT**

## AUTHORIZATION FOR RELEASE OF INFORMATION

Patient:_____

TO WHOM IT MAY CONCERN:

You are hereby expressly authorized to release and furnish to the State Office of Risk Management (SORM), and/or any associate, assistant, representative, agent, or employee thereof, any and all desired information (including, but not limited to, office records, medical reports, memos, hospital records, laboratory reports, including results of any and all tests including alcohol and/or drug tests, X-rays, X- ray reports, including copies thereof) pertaining to the physical and/or mental condition which is the basis of my workers' compensation claim.  This includes not only all current and/or future information but also all past medical information which is related to the injury or injuries which form the basis of my claim.

(Print name)_____

      Photostatic copies of this signed authorization will be considered as valid as the original.

      This is not a release of claims for damages.

SIGNED:_____   DATED:_____

PLEASE SIGN THE ABOVE MEDICAL AUTHORIZATION AND RETURN IT, SO WE MAY SECURE RELEASE OF YOUR MEDICAL RECORDS.

THANK YOU.

STATE OFFICE *of* RISK MANAGEMENT

SORM-16 Rev 07/09

# Instructions
## Authorization for Release of Information

## Required:

This document is required immediately after sustaining a work-related injury.  The injured employee should complete this release form.  This enables SORM to obtain, from healthcare providers, copies of relevant medical documents that will assist in the handling of the claim.

## Filing Deadline:

The form must be received by SORM not later than the **5th calendar day** after the first notice of injury is reported to the agency.

## Completed by:

The employee must complete this form.  If the employee is incapacitated the spouse, child, or legal guardian may sign the form.  **THIS FORM MUST BE SIGNED AND DATED.**  The Claims Coordinator should make this form available for all injuries.

## Instructions:

1.      The injured employee must clearly print his or her name on the patient line.
2.      The injured employee must clearly print his or her name on the second line.
3.      The injured employee must sign and date the form.

## Distribution:

The TSU Claims Coordinator shall retain the original for the University file and fax or mail a copy to:

State Office *of* Risk Management
PO Box 13777
Austin, TX  78711
Fax: (512) 370-9025

**Notice:**   With few exceptions, an individual is entitled, upon request, to be informed about the information a state governmental body collects about the individual.  Under Sections 552.021 and 552.023 of the Government Code the individual is entitled to receive and review the information and under Section 559.004 of the Government Code the individual is entitled to have the state governmental body correct any information about the individual that is incorrect.

SORM-16 Rev 07/09

# IMO MED-SELECT NETWORK®

## A Certified Texas Workers' Compensation Health Care Network

### *Employee Network Notification Packet*






## Notice of Network Requirements

**Important Medical Care Information for Work-Related Injuries and Illnesses:**

1. Effective September 1, 2014, your employer is partnering with IMO Med-Select Network® a certified Texas workers' compensation health care network. You are covered by the Network if you live in any of the counties listed below.

2. For any questions you may contact IMO by:

   a. Calling IMO Med-Select Network® at 888.466.6381
   b. Writing to P.O. Box 118577, Carrollton, TX 75011
   c. E-mailing questions to netcare@injurymanagement.com

3. Each certified workers' compensation network must have one or more service areas where doctors and other health care workers are available to treat you if you are hurt on the job. The IMO Med-Select Network® service areas include the following counties:

| Atascosa | Austin | Bandera | Bastrop |
|----------|--------|---------|---------|
| Bell | Bexar | Blanco | Brazoria |
| Burleson | Burnet | Caldwell | Cameron |
| Chambers | Colorado | Collin | Comal |
| Dallas | Denton | El Paso | Ellis |
| Fayette | Fort Bend | Galveston | Gonzales |
| Grayson | Guadalupe | Harris | Hays |
| Henderson | Hidalgo | Hill | Hood |
| Hunt | Johnson | Karnes | Kaufman |
| Kendall | Lee | Liberty | Medina |
| Montgomery | Navarro | Parker | Rains |
| Rockwall | San Jacinto | Smith | Starr |
| Tarrant | Travis | Van Zandt | Waller |
| Washington | Wharton | Williamson | Wilson |
| Wise | Wood | | |

2 | Revised 8.6.14
IMO Med-Select Network®

4. A map of the service area with the above counties can also be viewed on the IMO website at **www.injurymanagement.com** or on page 9 of this packet.

5. Except for emergencies, if you are hurt at work and live in the network service area, you <u>must</u> choose a treating doctor from the list of network doctors.  All services and referrals are to be received from your treating doctor.

6. You have the right to select your HMO primary care physician (PCP) as your treating doctor if your HMO PCP was selected prior to your injury at work.  The network prefers that you make this decision as soon as possible. Your HMO PCP must agree to abide by the workers' compensation health care network's contract and rules.

7. Except for emergencies, the network must arrange for services, including referrals to specialists, to be accessible to you on a timely basis and within the time appropriate to the circumstances and your condition, but no later than 21 days after the date of the request.

8. If you need emergency care, you may go anywhere. If you become injured after business hours and it is not an emergency, go to the closest health care facility.

9. If you cannot contact your treating doctor after business hours, and you are in need of urgent care, go to the closest urgent care facility.

10. If you do not live in a network service area, you are <u>not</u> required to receive care from network providers.

11. If you are hurt at work and you do not believe you live within the network service area, call the State Office of Risk Management (SORM) at 877.445.0006.  SORM must review the information within seven calendar days and notify you of their decision in writing.

12. SORM may agree that you do not live in the network service area. If you receive care from an out-of-network provider, and it is later determined that you live in the network service area, you may be required to pay the bill for health care services.

13. If you disagree with SORM's decision in regards to the network service area, you may file a complaint with the Texas Department of Insurance. Complaint form information is addressed in #27.

14. Even if you believe you do not live in the network service area, you still may receive health care from network doctors and other network health care staff while your complaint is reviewed by SORM and the Texas Department of Insurance.

15. SORM will pay for services provided by the network treating doctor and other network health care providers.  Except for emergency care, you may be required to pay the bill if you get care from someone other than a network doctor without approval.

16. All network doctors and other providers will bill SORM for medical services related to your compensable work injury. The employee should not be billed by the network provider. Unless there is an emergency need, the network must approve any of the following health care services before they are provided to you:

   a. Admission to a hospital
   b. Physical therapy/occupational therapy, beyond allowable sessions
   c. Chiropractic care, beyond allowable sessions
   d. Any type of surgery
   e. Some initial and repeat diagnostic testing
   f. Certain injections
   g. All work hardening or work conditioning programs
   h. Equipment that costs more than $1,000
   i. Any investigational or experimental services or devices
   j. Any treatment, service, medication, diagnostic test, or durable medical equipment that falls outside of, or not recommended by, any one of the following Evidence Based Guidelines: i) Official Disability Guidelines; ii) American College of Occupational and Environmental Medicine; iii) Medical Disability Advisor
   k. Mental health care
   l. All chronic pain programs

17. "Adverse Determination" means a determination, made through utilization review or retrospective review, that the health care services furnished or proposed to be furnished to an employee are *not* medically necessary or appropriate.

18. If the proposed health care services are for concurrent hospitalization, the person performing utilization review must, within 24 hours of receipt of the request, transmit a determination indicating whether the proposed services are pre-authorized.  For all other requests for preauthorization, the person performing utilization review must issue and transmit the determination no later than three business days after the date the request is received.

19. If the network issues an adverse determination of the request for health care services, you, a person acting on your behalf, or your doctor may file a request for reconsideration by writing a letter or calling the network. Even though you can request a reconsideration of the denial yourself, the network encourages you to talk to your doctor about *filing* the reconsideration. He or she may have to send medical information to the network. This reconsideration must be submitted within 30 days of the date that your doctor receives the adverse determination in writing.

20. The network will respond to the reconsideration request within five business days of receipt demonstrating that the network has received the information.  The network has up to 30 business days for the final determination.  If it is a reconsideration request for concurrent review, the network will respond within three business days.  The network will respond within one business day if it is a reconsideration request which involves a denial of proposed health care services involving post-stabilization treatment, life-threatening conditions or for continued length of stay in a facility.

21. Independent Review Organization (IRO) exemption: An employee with a life-threatening condition is entitled to an immediate review by an IRO and is *not* required to comply with the procedures for a reconsideration of an adverse determination.

22. If the network renders an adverse determination on a reconsideration of the following: i) a preauthorization review, ii) a concurrent review or iii) a retrospective review, the notification will include information on how to request an IRO.  Requests for an IRO must be sent no later than 45 days from the date of the denial of the reconsideration.

23. If the situation is life threatening, you do not have to go through the network reconsideration process. You, the person acting on your behalf, or the requesting provider may request a review by an IRO. IRO requests shall be made to the Texas Department of Insurance on behalf of the patient by the Utilization Review Agent (URA).

24. An IRO review may be requested for several other reasons besides a life-threatening situation. The reasons may include: i) if the network denies the health care a second time by denying your reconsideration; ii) if the network denies the referral made by your treating doctor because it is not medically necessary; or iii) if the network denies your care because it is not within treatment guidelines.

25. After the review by the IRO, they will send a letter explaining their decisions. SORM will pay the IRO fees.

26. Your treating doctor may decide to leave the network.  If so, and if it may harm you to immediately stop the doctor's care, SORM must pay your treating doctor for up to 90 days of continued care.

27. If you are dissatisfied with any part of the network, you can file a complaint. Any complaint must be filed within 90 days of the event with which you are dissatisfied.  When a complaint is received, you will be sent a notification letter within seven days, which will describe the complaint procedures.  The network will review and resolve the complaint within 30 days of receipt.  *You can contact the network by:*

      a.  Calling:  877.870.0638
      b.  Writing: IMO Med-Select Network[®]
                  **Attention: Net Complaint Dept.**
                  P.O. Box 118577
                  Carrollton, TX 75011
      c.  E-mailing: netcomplaint@injurymanagement.com

28. The network will not retaliate if:

      a.  An employee or employer files a complaint against the network, or appeals a decision of the network, or
      b.  A provider, on behalf of the employee, files a complaint against the network or appeals a decision of the network.

29. If you file a complaint with the network and are dissatisfied with the network resolution, you may file an appeal with the Texas Department of Insurance (TDI).  *You can receive a complaint form from:*

    a.   The TDI website at **www.tdi.texas.gov**, or
    b.   Write to TDI at the following address:
        **Texas Department of Insurance**
        HMO Division, Mail Code 103-6A
        P.O. Box 149104
        Austin, TX 78714-9104

30. Within five business days, the network will send a letter confirming they received the appeal.

31. A list of network providers will be updated every three months, including:

    a.   The names and addresses of network providers grouped by specialty.  Treating doctors shall be identified and listed separately from specialists; and
    b.   Providers who are authorized to assess maximum medical improvement and render impairment ratings shall be clearly identified.

32. You can view, print, or email a provider directory online at **www.injurymanagement.com**.

**Cut here**

**Attention Participating Network Employee**



- Show this card to each and every medical provider that treats you for your work-related injury.
- With the exception of emergency medical care, you must treat with a network provider.
- This card is for information purposes only and does not guarantee coverage.

Please contact IMO at 888.466.6381 with any questions.

**WORKERS' COMPENSATION IDENTIFICATION CARD**

**Fold here**

**FOR WORKERS' COMPENSATION HEALTH CARE NETWORK ONLY**

**Attention Provider**

- With the exception of emergency and initial medical treatment, you are required to notify the network of all referrals.
- You must also be an approved network provider.
- Contact the IMO Med-Select Network® to verify if you are an approved provider, or with questions regarding medical services.

**IMO Contact Information:**
Phone:  888.466.6381, Fax: 877.946.6638
Email: netcare@injurymanagement.com

**Send Medical Bill to:**
State Office of Risk Management, PO Box 13777, Austin, TX 78711





## Workers' Compensation Network
## Acknowledgement Form

I have received the Notice of Network Requirements which informs me how to get health care under workers' compensation insurance.

If I am hurt on the job and live in the service area described in this information, I understand that:

1. I must choose a treating doctor from the list of physicians in the ***IMO Med-Select Network***<sup>®</sup> or, I may ask my HMO primary care physician to agree to serve as my treating doctor by completing the Selection of HMO Primary Care Physician as Workers' Compensation Treating Doctor Form # IMO MSN-5.
2. I must go to my network treating doctor for all health care for my injury. If I need a specialist, my treating doctor will refer me. If I need emergency care, I may go anywhere.
3. The insurance carrier will pay the treating doctor and other network providers.
4. I *may have to pay* the bill if I get health care from someone other than a network doctor without network approval.
5. If I receive the Notice of Network Requirements and refuse to sign the Acknowledgement Form, *I am still required to use the network*.

Please fill out the following information before signing and submitting this completed Acknowledgement Form:

**Name of Employer:** _____

**Employee ID #:** _____       **Name of Network:** IMO Med-Select Network<sup>®</sup>

**Hire Date:** _____       **Department:** _____

**Home Address:** _____
          **Street Address – No P.O. Box or Work Address**

_____
    **City**         **State**    **Zip Code**       **County**

_____       _____
**Employee Signature**       **Date**

_____       _____
**Printed Name**       **Employee Phone Number**

8 | Revised 8.6.14
IMO Med-Select Network<sup>®</sup>



# IMO MED-SELECT NETWORK®
## Service Area Map

| IMO Med-Select Network® | | | |
|---|---|---|---|
| **Austin** | **Houston** | **North Texas** | **San Antonio** |
| Bastrop | Austin* | Collin | Atascosa* |
| Bell | Brazoria | Dallas | Bandera* |
| Blanco* | Chambers | Denton | Bexar |
| Burleson* | Colorado* | Ellis | Comal |
| Burnet* | Fort Bend | Grayson | Gonzales* |
| Caldwell | Galveston | Henderson | Guadalupe |
| Fayette* | Harris | Hill* | Karnes* |
| Hays | Liberty | Hood | Kendall* |
| Lee* | Montgomery | Hunt | Medina* |
| Travis | San Jacinto | Johnson | Wilson |
| Williamson | Waller | Kaufman | |
| | Washington* | Navarro* | **Valley** |
| **El Paso** | Wharton* | Parker | Cameron |
| El Paso | | Rains* | Hidalgo |
| | *Rural Counties | Rockwall | Starr* |
| | | Smith | |
| | | Tarrant | |
| | | Van Zandt* | |
| | | Wise | |
| | | Wood* | |

9 | Revised 8.6.14
IMO Med-Select Network®



## Find a Provider Search Instructions
### www.injurymanagement.com

The snapshots below show samples of the following: **1)** A visual of the website homepage where the "Find a Provider" search can be easily located on the blue bar across the middle or under the "Services" tab; **2)** A visual of the page where the "Find a Provider" search and database are located; **3)** Step 1 and 2 of the search process; **4)** Search results format based on a sample zip code**.**



10 | Revised 8.6.14
IMO Med-Select Network®

### Step 1:  Define Your Search

One or more  of the following can be used to define your search.

........................................................................................................................................................

Define Your Search

Enter Your Zip Code:                    To search by multiple zip codes, insert a comma OR space in between each.

Tell us Your Preferred Distance:   ○ Less than 5 Miles   ◉ 15 Miles   ○ 30 Miles   ○ 60 Miles   ○ 75 Miles

Search by Practice / Facility Name:                    Search by Provider Tax ID Number:

Search by Provider Last Name:                    Search by City Name:

### Step 2: Choose Your Provider Type

Select the provider type you want to search and use the dropdown  menus to best narrow  your criteria.

........................................................................................................................................................

Choose Your Provider Type

◉  **Treating Doctors**   The IMO Med-Select Network® requires your ***treating doctor*** to be a physician chosen from the network directory and who is a licensed Medical Doctor (MD) or Doctor of Osteopathy (DO). Treating doctors' primary service ***must*** be one of the following: Family Practice / Family Medicine, General Practice / General Medicine, Occupational Medicine, Internal Medicine or Physical Medicine & Rehabilitation (in El Paso only).

[ Select Treating ▾ ]

○  **Specialists / Facilities**   Your treating doctor must be the one to refer you to a specialist.

[ Select Specialty ▾ ]

○  **MMI / IR Physicians**   Your treating doctor must be the one to refer you to a Maximum Medical Improvement and / or an Impairment Rating Physician.

○  **All Providers**   Your treating doctor must be the one to refer you to a Maximum Medical Improvement, Impairment Rating Physician or Specialist.

( Search )  ( Reset )

## Review Search Results

After Steps 1 and 2 are submitted, you will see the below information shown in this sample snapshot including the option to print and email the list, in addition to Google Map directions if desired.

To view the **"Provider Details"** page, click on the "Practice / Facility Name" in red you wish to see.

..........................................................................................................................................................................



*For further questions, please contact the IMO Med-Select Network® at 888.466.6381.*



### SORM
#### STATE OFFICE *of* RISK MANAGEMENT

## EMPLOYEE'S ELECTION REGARDING
## UTILIZATION OF SICK AND ANNUAL LEAVE
## FOR GENERAL EMPLOYEES

Employee's Name _____          Date of Injury _____

**You are not required to use your leave.**  Texas Labor Code §501.044 allows an injured state employee to *elect* to use accrued sick and annual leave before receiving income benefits.  Accrued sick leave must be exhausted before annual leave may be used.  Other categories of leave (compensatory leave, holiday leave, administrative leave, etc) may not be used prior to sick and annual leave.

**Complete Election 1 or Election 2.**

---

**ELECTION 1**  *(must choose A, B, or C)*
### *Sick leave must be exhausted before annual leave may be used*

When I lose time from work due to this injury or illness, I elect to use all of my accrued sick leave **AND**:

☐  **A.**  All of my accrued annual leave.

☐  **B.**  A portion of my accrued annual leave (*enter number of hours:* _____).

☐  **C.**  None of my accrued annual leave.

---

**ELECTION 2**

☐  When I lose time from work due to this injury or illness, I elect to **not** use any accrued sick leave and/or annual leave.  I understand I will not receive workers' compensation payments until after the seven (7) calendar day waiting period.

---

**I understand that I may not change my election after my eighth (8th) day of disability and signing this form.  I have read the reverse side of this form, and I fully understand the election I am making.**

_____                              _____
Hours of Sick Leave                                              Hours of Annual Leave

_____                              _____
Employee's Social Security Number                         Agency

_____                              _____
Employee's Signature           Date                      Claims Coordinator's Signature        Date

This form may not be altered in any way.

SORM-80 Rev 07/09v2

**Instructions**
**Employee's Election Regarding**
**Utilization of Sick and Annual Leave**
**For General Employees**

Injured employees may elect to use accrued sick leave and all, part, or none of their accrued annual leave for time missed from work due to the work related injury.  Accrued sick leave and accrued annual leave are the amounts of paid leave available at the time of injury in addition to leave earned after the injury.  The following details the effects of the different choices available to you.

| If You Choose Election 1 |
| --- |

- You must use all accrued sick leave but may elect to use all, some, or none of your accrued annual leave.
- All sick leave must be exhausted before annual leave may be used.
- If you select 1A and return to work but later have additional days of disability, you must use any accrued sick and annual leave before receiving workers' compensation income benefits.
- If you select 1B, you must use any sick leave balance and any authorized annual leave before you will be eligible to receive workers' compensation income benefits.
- If you select 1C, you must use any/all accrued sick leave before receiving workers' compensation income benefits.
- Workers' compensation income benefits do not begin until the eighth day of disability.  Employees who are disabled for at least 14 days will receive retroactive benefits for any portion of the seven-day waiting period not paid by leave.
- You will continue to receive your full pay as long as you have accrued time to use and have authorized your agency to use it for your injury.  If your elected leave is exhausted, you may receive income benefits to replace a portion of your lost wages.  This may be 70% or 75% of your average weekly wage depending on your wages at the time of your injury.
- It is recommended that you consult with your Human Resources Department to discuss the impact of your selection on your leave balances and insurance benefits should you be off work for an extended period of time.

| If You Choose Election 2 |
| --- |

- You choose to not use any sick or annual leave for your compensable injury.  Your agency may immediately place you in a leave without pay status.
- You may not receive any workers' compensation income benefits for the first seven (7) calendar days you are unable to work.  If eligible, your income replacement benefits will begin on the 8th day of disability and employees who are unable to work for 14 days will receive retroactive benefits for the first seven days.  You will be paid at a rate of 70 or 75% of your weekly wage depending on your wages at the time of your injury.

**Notice:**  With few exceptions, an individual is entitled, upon request, to be informed about the information a state governmental body collects about the individual.  Under Sections 552.021 and 552.023 of the Government Code the individual is entitled to receive and review the information and under Section 559.004 of the Government Code the individual is entitled to have the state governmental body correct any information about the individual that is incorrect.

SORM-80 Rev 07/09v2



## WITNESS STATEMENT

**MUST BE TYPED**
**OR PRINTED**

Injured Employee _____

SORM Claim Number  WC _____

Date of Injury _____

Statement Taken By _____

Witness Name:_____     Witness email address:_____

Residence Address:_____

Primary Telephone:_____     Secondary Telephone:_____

Witness Employer:_____

On this date, _____, at about _____PM / AM I was in or at (clearly state your own location)
_____ when an accident involving the above
employee is reported to have occurred.

Check only one box

☐   **I saw the incident.**
    The accident occurred in the following manner: _____
_____
_____
_____
_____
_____

Other pertinent information and source: _____
_____
_____

☐   **I did not see the incident.**  Information given to me by (name of person) _____
    indicates it occurred as follows: _____
_____
_____
_____

Other pertinent information and source: _____
_____
_____

☐   I know nothing whatsoever about the occurrence.

_____          _____
            Signature                              Date

SORM-74 Rev 07/09

# Instructions
# Witness Statement

## Required:

Immediately after receiving notice of any injury, the Claims Coordinator should determine the names, addresses, and telephone numbers of all witnesses to the incident.  A statement should be taken from each witness and forwarded to SORM.

## Filing Deadline:

The form must be received by SORM not later than the 5th calendar day after the first notice of injury is reported to the agency.

## Completed by:

This form should be completed by the person giving the statement with assistance from the Claims Coordinator.

## Instructions:

1. Except for the witness signature, the statement should be typewritten, if possible.  If it must be handwritten, PLEASE PRINT to ensure legibility.
2. Please provide the SORM claim number, if known.
3. The witness may have actually seen the incident or may have acquired knowledge about the accident from another source.  The witness information may relate to how the incident occurred or to something else that is relevant.  Check the first or second box and fill in the blanks following those boxes, as appropriate.  Be specific and complete.  Sometimes you will be given a witness name but, when asked, denies any knowledge of the incident.  In such a case the third box should be checked.
4. If the space provided on the form is insufficient please attach additional sheets.  Be as specific and complete as possible.

## Distribution:

The Claims Coordinator shall retain the original for the agency file and fax or mail a copy to:

State Office *of* Risk Management
PO Box 13777
Austin, TX  78711
(512) 472-0228

**Notice:**  With few exceptions, an individual is entitled, upon request, to be informed about the information a state governmental body collects about the individual.  Under Sections 552.021 and 552.023 of the Government Code the individual is entitled to receive and review the information and under Section 559.004 of the Government Code the individual is entitled to have the state governmental body correct any information about the individual that is incorrect.

SORM-74 Rev 07/09



## Workers' Compensation Network
## Acknowledgement Form

I have received the Notice of Network Requirements which informs me how to get health care under workers' compensation insurance.

If I am hurt on the job and live in the service area described in this information, I understand that:

1. I must choose a treating doctor from the list of physicians in the **IMO Med-Select Network®**. Or, I may ask my HMO primary care physician to agree to serve as my treating doctor by completing the Selection of HMO Primary Care Physician as Workers' Compensation Treating Doctor Form # IMO MSN-5.
2. I must go to my network treating doctor for all health care for my injury.  If I need a specialist, my treating doctor will refer me.  If I need emergency care, I may go anywhere.
3. The insurance carrier will pay the treating doctor and other network providers.
4. I *may have to pay* the bill if I get health care from someone other than a network doctor without network approval.
5. If I receive the Notice of Network Requirements and refuse to sign the Acknowledgement Form, *I am still required to use the network*.

Please fill out the following information before signing and submitting this completed Acknowledgement Form:

**Name of Employer:** _____

**Employee ID #:** _____        **Name of Network:** IMO Med-Select Network®

**Hire Date**: _____        **Department**: _____

**Home Address**: _____
                 **Street Address – No P.O. Box or Work Address**

_____
    **City**                **State**        **Zip Code**            **County**


_____        _____
**Employee Signature**                         **Date**

_____        _____
**Printed Name**                               **Employee Phone Number**

Revised 8.5.14

# TEXAS SOUTHERN UNIVERSITY
## Supervisor's Report of Incident, Injury or Illness

| Employee's Name (First M.I. Last) | Sex ☐M ☐F | Date of incident | Time of incident a.m. p.m. | Date lost time began |
|---|---|---|---|---|

| Marital Status ☐Married ☐Widowed ☐Separated ☐Single ☐Divorced | T# | Date of Birth | Home Phone |
|---|---|---|---|

Does employee speak English?   ☐ Yes   ☐ No       If no, please specify language _____

| Employee Work Phone # | How did the incident / injury occur?  (Continue on reverse if necessary) |
|---|---|
| Employee's Mailing Address | |
| Street or P. O. Box | |
| City          State      Zip Code     County | |

| Job Title _____ Status: ☐ Faculty  ☐ Staff  ☐ Student  ☐ Visitor | Was employee doing his / her regular job? | PPE required ☐ Yes ☐ No | Issued ☐ Yes ☐ No | Used ☐ Yes ☐ No |
|---|---|---|---|---|
| ☐ Part-Time ☐ Full Time ☐ Temporary | Date Hired | Length of service in current position | Length of service in occupation | Cause of injury (slip, fall, machinery, equipment etc.) | Witness statements obtained ☐ Yes ☐ No | Police notified ☐ Yes ☐ No | Risk Management notified ☐ Yes ☐ No |

| Department _____  Department Phone _____ | Work location of incident (stairs, dock, building name, etc.) |
|---|---|

| Was medical attention required?   ☐ Yes   ☐ No  Name of Treatment location _____  Within HCN?          ☐ Yes   ☐ No | Transported by? ☐Ambulance ☐Personal vehicle ☐DPS vehicle | Was medical attention refused? ☐ Yes ☐ No | Did employee remain on the job? ☐ Yes ☐ No | Anticipated return to work date |
|---|---|---|---|---|

| Supervisor's Printed Name: | Title: |
|---|---|
| Supervisor's Signature | Date: |

Please return the original to: **The Office of Risk Management GSB 213-D**

*SRI 12/12/2011- MWP*

How did the incident / injury occur?  (Continued)

Recommended Action:

Signature: _____   Date: _____

Risk Management Comments:

Signature: _____   Date: _____

Please return the original to: **The Office of Risk Management GSB 213-D**

*SRI 12/12/2011- MWP*

Employee - You are required to rep
your employer has workers' compe
assistance from the Texas Dep
Compensation and may be entitle
further information call your local Di

Empleado - Es necesario que repo
fecha en que se lesionó es es que
trabajadores. Usted tiene derecho
Compensación para Trabajadores
monetarios. Para mayor informac
1-800-252-7031

## TION WORK STATI
(for tran

**PART I: GENERAL IN**

1. Injured Employee's Name

9. Em

2. Date of Injury    3. So
(4)
xxx-x

Fax

10. En

4. Employee's Description of Inj

street address)

11. Ins

Zip

12. Ca

**PART II: WORK STAT**

**CLUDING ESTIMATED DATES A**

13. The injured employee's

sation injury:

☐ (a) will allow the employe

ithout restrictions.

☐ (b) will allow the employe
through _____

ith the restrictions identified

☐ (c) has prevented and still p

_____ (date) and is exp

The following describes how

o work:

**PART III: ACTIVITY**

**3(b) IS CHECKED)**

**14. POSTURE RESTRICTI**

**TIONS (if any):**    1

Max Hours per day:  0  2  4

2  4  6  8   Other

| | 0 2 4 | | | | | |
|---|---|---|---|---|---|---|
| Standing | ☐☐☐ | ☐☐☐☐ | | ☐ |
| Sitting | ☐☐☐ | ☐☐☐☐ | | ☐ |
| Kneeling/Squatting | ☐☐☐ | ☐☐☐☐ | | ☐ |
| Bending/Stooping | ☐☐☐ | ☐☐☐☐ | | ☐ |
| Pushing/Pulling | ☐☐☐ | ☐☐☐☐ | | ☐ |
| Twisting | ☐☐☐ | ☐☐☐☐ | | ☐ |
| Other: | ☐☐☐ | ☐☐☐☐ | | ☐ |

**15. RESTRICTIONS SPEC**

**RICTIONS (if any):**

☐ Left Hand/Wrist

jects more than ____ lbs.

☐ Right Hand/Wrist

urs per day

☐ Left Arm

☐ Right Arm

☐ Neck

lifting/carrying

Other:

**16. OTHER RESTRICTION**

* These restrictions are based on
meets these restrictions is not av

functions. If a particular restriction do
ese restrictions should be followed ou

**PART IV: TREATMEN**

**MATION**

**21. Work Injury Diagnosi**
**Information:**

_____ (date

_____ on _____

_____ weeks starting on ____

_____ on __

this problem. At this time, no f

| Date / Time of Visit | E | URE | Visit Type: | Rol |
|---|---|---|---|---|
| | | | ☐ Initial | ☐ |
| Discharge Time | | | ☐ Follow-up | ☐ |

DWC FORM-73 (Rev. 02/11) Pag

sked Questions
ort (DWC Form-073)

**Under what circumst**
Filing requirements for
requirements are shov

**rm-073?**
pe of doctor filing the Wo

| Type of Doctor | | Where to File |
|---|---|---|
| **Treating Doctor** **or** **Referral Doctor** | • | • injured employee |
| | • | • insurance carrier |
| | • | |
| | • | • employer |
| | • | • injured employee |
| | • | • insurance carrier • employer |
| **Designated Doctor** | • NO rep | • injured employee • injured employee's   representative (if any) |
| | | • insurance carrier • treating doctor |
| | | • TDI-DWC |
| **RME Doctor** **selected by** **insurance carrier** | • | • injured employee • injured employee's   representative (if any) |
| | | • insurance carrier • treating doctor |
| **RME Doctor** **selected by DWC** | Not Div | rdered in accordance with §40: |

**Where can I find mor**                    **?**
For complete requiren                    e 28 TAC §§126.6, 127.
on the TDI website at                    f you have additional qu
*Care Providers* at 1-8(                   and select option 3.

**NOTE:  With few exce**                    ed to be informed about
**receive and review th**                   )21 and 552.023); and h
**incorrect (Government**

# C        NING AND MAI
## FFIDAVITS

The following          hat find trespass affi
completing th          way mandatory that
trespass affida         consistent level of serv
given the prov        ons should feel free to
owners, or th        lexes and businesses,
trespass affida       having jurisdiction o

I. When ob      ed patrol division shal
   order to      affidavit is the owner
   reference     arking lot as one would
   businesse     executed by the owne
   land on v     often a realty manage
   *Trespass*    ous versions of the affi
   replaced.    rm attached) shall be co
   trespass

II. Persons     pecifically reminded o
   fact that     O BE POSTED. Furthe
   signs sho    nticipated to be used as
   Persons     be advised that while
   LOITER     HPD will arrest perso

III. Each pat    ass affidavits for the di
   a databas    have supplied trespass
   trespass    ield Operations. Additi
   should en   ory that a trespass affid

IV. When a    cation with an existing
   new own    agent shall be notified
   required

V. On an an    eview existing trespass
   complain   iction to verify that the
   is up-to-   e database.

VI. If subpo    ecutor, an officer shou
   trespass    ectly or indirectly inv
   affidavit    detention or probable

Questions re    directed to Houston
Command/Le    A Intake at (713) 755-

*Houston Police Dep*
*Chief's Command/L*

# **AFFIDAVIT**
## MERCIAL PROPER

My name is _ _____. I am the ___
                                    (c
of the propert _____, Hc
              ss)

I hereby requ            JICE DEPARTMENT

location and,            able trespass laws on

above  refere            that  on  my  behalf,

DEPARTME                 ot patrons in the nor

immediately              rsuant to Section 30.0

"NO TRESP,               oughout the property.

In addition, I,          in the prosecution of

violation of a

My business _____

My business _____


                         _____

Subscribed a             _____ day of _____
to certify whi           e.


                         _____
                         NOTARY PUBLIC
                         THE STATE OF T

# C                                    NING AND MA
## AFFIDAVITS

The following                    hat  find  trespass  affi
completing th                    o way mandatory that
trespass affida                  consistent level of serv
given the prov                   ons should feel free to
owners, or th                    lexes and businesses,
trespass affid                   n having jurisdiction o

I.  When ob                  ed patrol division shal
    order to a                  affidavit is the owner
    reference                  arking lot as one woul
    business                  e executed by the owne
    land on                  s often a realty manage
    *Trespass*                  us versions of the aff
    replaced                  rm attached) shall be c
    trespass

II.  Persons                  pecifically reminded o
     fact that                  O BE POSTED. Furthe
     signs sho                  nticipated to be used as
     Persons                  o be advised that while
     LOITER                  HPD will arrest perso

III.  Each pat                  ass affidavits for the di
      a databa                  have supplied trespass
      trespass                  ield Operations. Additi
      should e                  ory that a trespass affid

IV.  When a                  cation with an existing
     new own                  agent shall be notified
     required

V.  On an a                  eview existing trespass
    complai                  iction to verify that the
    is up-to-                  e database.

VI.  If subpo                  ecutor, an officer shou
     trespass                  ectly or indirectly inv
     affidavit                  detention or probable

Questions  re                  directed  to  Houston
Command/Le                  A Intake at (713) 755-

*Houston Police Dep*
*Chief's Command/L*

# AFFIDAVIT

(IAL PROPERTY)

My name is _____. I am the ___

of the propert_____, H(
ss)

I hereby requ_____LICE DEPARTMENT

location and, _____:able trespass laws on

above refere_____that on my behalf,

DEPARTME_____ot residents, or invi

immediately _____rsuant to Section 30.0

"NO TRESPA_____oughout the property.

In addition, I,_____ in the prosecution of

violation of a

My business _____          _____

My business _____          _____


                                                      _____

**Subscribed a**_____ _____ day of _____
to certify whi_____:.


                                                 _____
                                                 NOTARY PUBLIC
                                                 THE STATE OF TI



Texas
Department
of Transportation
Form CR-2
(Rev. 04/15)
Instructions

ions for

## ASH REPORT

### PLEASE I
### INSTRUCT
### CAREFU

(Actual form be
following pa

ail this form to:
f Transportation
cords
49349
78714

l: 844/274-7457

The driver of a mo
injury or death c
extent of at least o
report in accordan

**Who Should Con**
in the crash. If the
driver, with an exp

stigated by a law enforce
y of any one person, inc
in 10 days after such c

mpleted and signed by t
another person may su
e to complete the form.

| Section of Form | |
|---|---|
| LOCATION | f your knowledge; howe<br>and should include suffi<br>s an important element<br>. **County or City** in the<br>vided, the report will be |
| DATE | *eld* and must include th<br>e time of the crash if kr<br>e date that the damage<br>will be returned to you. |
| VEHICLES | the name of the **Drive**<br>formation should be con<br>**ther Vehicle**, please sp<br>estrian, etc. and provide<br>se complete the remain |
| DAMAGE TO PROPERTY | **perty other than vehic**<br>ocation, owner, etc.). |
| INJURIES | n, select the position of<br>sh and complete all dat<br>ect the position of the ot<br>a fields to the best of yo<br>seatbelt. |
| DRIVER'S STATEMENT | is section please provid<br>insufficient, attach a *fu*<br>*hotographs!* Photograp |
| SIGNATURE | curacy and completene<br>aving the report returne<br>pleteness of the report, s<br>ction page. |



Texas
Department
of Transportation

Form CR-2 (Rev. 04/15)
Page 1 of 1

ions on reverse side)

## ASH REPORT

equired Field

ll: 844/274-7457

**LOCATION**

Place Where
Crash Occurred

If crash was outside cit
indicate distance from

Road on which
crash occurred

Complete one:

• Intersecting street

• Not at intersection

           * City or Town:

of

Rcute Num

Rcute Num

of

Show nearest intersecting num

**DATE**

* Date of Crash

Hour

**VEHICLES**

#1 — Your Vehicle

Year
Model

* Driver

Driver's
License          State

Owner

Insurance
Information          Insuranc

#2 — Other Vehicle

Year
Model

Driver

Owner

For additional vehicles use another form.

Insurance
Information          Insuranc

dent. No.

Sedan, Truck, Van, etc.

Mail Address

Sex

Mail Address

City

rian☐  Bicyclist☐  Other☐
e — if unknown, mark "Nct Known"

Sedan, Truck, Van, etc.

Mail Address

Mail Address

City

Damage to Property
other than vehicles

and state nature of damage.

**INJURIES**

#1 Injured Person

Name

Age

Describe Injury

#2 Injured Person

Name

Age

Describe Injury

illed?

illed?

State Briefly What Happened
(If space is insufficient, continu

raphs.

* Driver's Signature
(Please use blue or black ink only.)

Date

## TO SIGN AFF

**STATE OF T**
**COUNTY OF**

AFFIDAVIT C

Before me, the                                                    peared Officer _____

_____                                    _____

My name is __                                                    _____

_____                                    _____ for the Hou

_____                                    _____ Houston, Texas

I attest to the fa                                    on is true and correct:

1.  At the time                                    yed as a Houston poli

2.  The vehicle                                    _____ l

    was operate                                    _____

    TDL#, ID#                                    _____,

3.  I personall                                    _____

    following v

    _____                                    _____

    _____                                    _____

    _____                                    _____

    _____                                    _____

                                                 _____
                                                 *ignature of officer*

                                                 worn to and subscribe

                                                 f _____

                                                 _____
                                                 Notary Public in and fo

                                                 My commission expire

*Houston Police Depa*

## HOUSTON POLICE DEPARTMENT
## VOLUNTARY CONSENT TO SEARCH COMPUTER(S)

Incident # _____

I,_____, have been asked by officers of the Houston Police Department (HPD) to permit a complete search by HPD or its designees of any and all computers, any electronic and/or optical data storage and/or retrieval system or medium, and related computer peripherals described below (include make, model and serial number, if available) : _____

_____

_____

_____

_____

_____

and located at _____, which I own, possess, control, and/or have access to, for any evidence of a crime or other violation of the law.  The required passwords, logins, and/or specific direction for computer entry are as follows:_____

_____

By my signature I acknowledge I have read this form and understand I have the right to refuse to consent to this search, limit the scope of the search and revoke my consent at any time. I give permission for this search, freely and voluntarily, and not as the result of threats or promises of any kind.

I authorize those officers to take any evidence discovered during this search, together with the medium in/on which it is stored, and any associated data, hardware, software, and computer peripherals.

| | | | | |
|---|---|---|---|---|
| Date | Time | Printed Name | | Signature |

Witnessed:

| | | | |
|---|---|---|---|
| Name | | Empl # | Name |

| | |
|---|---|
| Supervisory Review | Empl # |

*******************************OFFICIAL USE ONLY*********************************

## YES     NO     (Circle One) ORIGINAL TAGGED IN PROPERTY ROOM

- *IF NO ARREST MADE AND/OR NO PROPERTY SEIZED, ORIGINAL SENT BY INTER-OFFICE MAIL (ONLY) TO THE OFFICE OF PLANNING*
- *IF AN ARREST IS MADE AND/OR PROPERTY SEIZED, ORIGINAL TAGGED IN PROPERTY ROOM AND COPY SENT BY INTER-OFFICE MAIL (ONLY) TO THE OFFICE OF PLANNING*
- *COPY TO BE FILED WITHIN THE DIVISION COMMANDER'S ADMINISTRATIVE OFFICE*

## VOLUNTARY CONSENT FOR SEARCH AND SEIZURE

Incident # _____

Date: _____

Time: _____

I, _____, by my signature acknowledge that I have reviewed this consent form and I understand that I have a constitutional right to not have a search made of the premises and/or vehicle and/or other item or location hereafter referenced without a search warrant, but that I may consent to such a search voluntarily. By my signature I also acknowledge that I understand my right to limit the scope of the search and of my right to revoke my consent at any time.

Having acknowledged my right to voluntarily consent to such a search, I hereby authorize _____, Peace Officer(s) of the Houston Police Department, to conduct a complete search of the premises or vehicle or other item or location as follows:

o   Premises,   including   all   structures   and   vehicles   and   curtilage,   located   at
_____, _____County, Texas

o   Vehicle described as:   Year _____ Make _____ Model _____
         License No. _____ State _____ VIN _____

o   Other (Please specify): _____
_____

These officers are further authorized by me to seize, inspect and analyze any and all letters, papers, material and other property which they desire.  This consent is being given to the above Peace Officers freely and voluntarily and without threats or promises of any kind.

_____        _____
Printed Name                                                      Signature

WITNESSED:

_____   _____        _____   _____
Name                                      Empl #                Name                                     Empl #

_____   _____
Supervisory Review            Empl#

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*OFFICIAL USE ONLY\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**YES      NO   (Circle One) ORIGINAL TAGGED IN PROPERTY ROOM**

- *IF NO ARREST MADE AND/OR NO PROPERTY SEIZED, ORIGINAL SENT BY INTER-OFFICE MAIL (ONLY) TO THE OFFICE OF PLANNING*
- *IF AN ARREST IS MADE AND/OR PROPERTY SEIZED, ORIGINAL TAGGED IN PROPERTY ROOM AND COPY SENT BY INTER-OFFICE MAIL (ONLY) TO THE OFFICE OF PLANNING*
- *COPY TO BE FILED WITHIN THE DIVISION COMMANDER'S ADMINISTRATIVE OFFICE*
Vehicle/Premises - Revision Date: October 2, 2014

## HOUSTON POLICE DEPARTMENT
## VOLUNTARY CONSENT TO GIVE SPECIMEN OR SPECIMENS

Incident # _____

I, _____, being of lawful age, have been requested by _____, a peace officer with the Houston Police Department, to provide a sample of my blood, saliva, hair, latent fingerprints, or other bodily fluids or tissues, for examination and analysis. I understand that blood samples will only be drawn by a qualified doctor, nurse, or medical technician. I have been informed that I have the right to refuse to provide consent for the collection of any samples.

I do hereby freely and voluntarily consent and do authorize the following samples to be taken from my person:

| Specimens | Subject's Initials |
|---|---|
| o  Blood | _____ |
| o  Saliva | _____ |

*(Has the subject had anything to eat or drink in the past 30 minutes? Yes____ No____ )*

| | |
|---|---|
| o  Penile swab | _____ |

*(If offense is less than 8 hours prior to collection)*

| | |
|---|---|
| o  Head hair (loose and pulled) | _____ |
| o  Pubic hair (loose and pulled) | _____ |
| o  Other _____ | _____ |

I am aware that the purpose of the sample(s) being taken from me is to submit the sample(s) to a qualified laboratory for analysis and possible comparison.

I give consent of my own free will and accord, and without being subjected to threats, promises, compulsion, or unlawful influence. I know that the examination results obtained from the sample(s) can and may be used against me and/or others in a criminal prosecution proceeding.

_____     _____     _____
Signature                                                Date                  Time

_____
Printed Name

Officer Present: _____        Officer Present: _____
              Name/Employee #                             Name/Employee #

Witnessed:

_____   _____     _____   _____
        Name                        Empl #                  Name                  Empl #

_____   _____
Supervisory Review          Empl#

*****************************OFFICIAL USE ONLY*********************************

**YES     NO**   (Circle One) ORIGINAL TAGGED IN PROPERTY ROOM

- *IF NO ARREST MADE AND/OR NO PROPERTY SEIZED, ORIGINAL SENT BY INTER-OFFICE MAIL (ONLY) TO THE OFFICE OF PLANNING*
- *IF AN ARREST IS MADE AND/OR PROPERTY SEIZED, ORIGINAL TAGGED IN PROPERTY ROOM AND COPY SENT BY INTER-OFFICE MAIL (ONLY) TO THE OFFICE OF PLANNING*
- *COPY TO BE FILED WITHIN THE DIVISION COMMANDER'S ADMINISTRATIVE OFFICE*

Biological - Revision Date: October 2, 2014



1of ___

## RECEIPT AND NOTICE OF RIGHTS FOR
## SEIZED FIREARMS

Incident#_____ - __

Section 573.001, Health and Safety Code, Emergency Detention, authorizes a peace officer, without a warrant, to take a person into custody if the officer has a reason to believe and does believe that the person is mentally ill and because of that mental illness there is a substantial risk of serious harm to the person or to others unless the person is immediately restrained and believes that there is not sufficient time to obtain a warrant before taking the person into custody.  A peace officer who takes a person into custody may immediately seize any firearm found in possession of the person.  After seizing a firearm the peace officer shall comply with the requirements of Article 18.191, Code of Criminal Procedure.

Pursuant to the Texas Health and Safety Code, Chapter 573.001, Emergency Detention, the firearms listed below were seized from you on _____ (date).

List make, model, caliber, serial number and ammunition:

1. _____

2. _____

3. _____

<span style="color:red">NOTE: *Use Receipt and Notice of Rights – Additional Items" if extra fields are needed.*</span>

Code of Criminal Procedure, Article 18.191., Disposition of Firearm seized from certain persons with Mental Illness, authorizes a law enforcement officer who seizes a firearm from a person taken into custody under Section 573.001, Health and Safety Code, and not in connection with an offense involving the use of a weapon or an offense under Chapter 46, Penal Code, shall immediately provide the person a written copy of the receipt for the firearm and a written notice of the procedure for the return of a firearm under this article. The law enforcement agency holding a firearm subject to disposition under this article shall, as soon as possible, but not later than the 15th day after the date the person is taken into custody under Section 573.001, Health and Safety Code, provide written notice of the procedure for the return of a firearm under this article to the last known address of the person's closest immediate family member as identified by the person or reasonably identifiable by the law enforcement agency, sent by certified mail, return receipt requested.  The written notice must state the date by which a request for the return of the firearm must be submitted to the law enforcement agency.

List an address of an immediate family member or point of contact:

1. _____
   Last,  First M.                                                    Address

   (      )_____-_____                    _____
   Phone number                                      City, State Zip

Once approved for release according to the Code of Criminal Procedure, Article 18.191, all property will be available at:

The Houston Police Department Property Division
1201 Washington Avenue
Houston, Texas 77002
(832) 394-4000

I acknowledge receipt of a copy of this notice

I, _____
(Officer's Name/Title) declare under penalty of perjury under the laws of the State of Texas, that I served the above named person with a copy of the above notice, and this declaration is executed on_____(Date) at _____ (City), Texas.

_____
Date

_____
Signature of Person Notified

_____
Mailing Address

_____        _____
Signature of Officer Serving Notice        Badge #

THIS RECEIPT DOES NOT CONSTITUTE RECOGINITION OF LEGAL TITLE TO ABOVE PROPERTY

CODE OF CRIMINAL PROCEDURE Art. 18.191. DISPOSITION OF FIREARM SEIZED FROM CERTAIN PERSONS WITH MENTAL ILLNESS.

(a)  A law enforcement officer who seizes a firearm from a person taken into custody under Section 573.001, Health and Safety Code, and not in connection with an offense involving the use of a weapon or an offense under Chapter 46, Penal Code, shall immediately provide the person a written copy of the receipt for the firearm and a written notice of the procedure for the return of a firearm under this article.

(b)  The law enforcement agency holding a firearm subject to disposition under this article shall, as soon as possible, but not later than the 15th day after the date the person is taken into custody under Section 573.001, Health and Safety Code, provide written notice of the procedure for the return of a firearm under this article to the last known address of the person's closest immediate family member as identified by the person or reasonably identifiable by the law enforcement agency, sent by
certified mail, return receipt requested.  The written notice must state the day by which a request for the return of the firearm must be submitted to the law enforcement agency as provided by Subsection (h).

(c)  Not later than the 30th day after the date a firearm subject to disposition under this article is seized, the law enforcement agency holding the firearm shall contact the court in the county having jurisdiction to order commitment under Chapter 574, Health and Safety Code, and request the disposition of the case.  Not later than the 30th day after the date of this request, the clerk of the court shall advise the requesting agency whether the person taken into custody was released under Section 573.023, Health and Safety Code, or was ordered to receive inpatient mental health services under Section 574.034 or 574.035, Health and Safety Code.

(d)  Not later than the 30th day after the date the clerk of the court informs a law enforcement agency holding a firearm subject to disposition under this article that the person taken into custody was released under Section 573.023, Health and Safety Code, the law enforcement agency shall:

(1)  conduct a check of state and national criminal history record information to verify whether the person may lawfully possess a firearm under 18 U.S.C. Section 922(g); and

(2)  provide written notice to the person by certified mail that the firearm may be returned to the person on verification under Subdivision (1) that the person may lawfully possess the firearm.

(e)  Not later than the 30th day after the date the clerk of the court informs a law enforcement agency holding a firearm subject to disposition under this article that the person taken into custody was ordered to receive inpatient mental health services under Section 574.034 or 574.035, Health and Safety Code, the law enforcement agency shall provide written notice to the person by certified mail that the person:

(1)  is prohibited from owning, possessing, or purchasing a firearm under 18 U.S.C. Section 922(g)(4);

(2)  may petition the court that entered the commitment order for relief from the firearms disability under Section 574.088, Health and Safety Code; and

(3)  may dispose of the firearm in the manner provided by Subsection (f).

(f)  A person who receives notice under Subsection (e) may dispose of the person's firearm by:

(1)  releasing the firearm to the person's designee, if:

(A)  the law enforcement agency holding the firearm conducts a check of state and national criminal history record information and verifies that the designee may lawfully possess a firearm under 18 U.S.C. Section 922(g);

(B)  the person provides to the law enforcement agency a copy of a notarized statement releasing the firearm to the designee; and

(C)  the designee provides to the law enforcement agency an affidavit confirming that the designee:

(i)  will not allow access to the firearm by the person who was taken into custody under Section 573.001, Health and Safety Code, at any time during which the person may not lawfully possess a firearm under 18 U.S.C. Section 922(g); and

(ii)  acknowledges the responsibility of the designee and no other person to verify whether the person has reestablished the person's eligibility to lawfully possess a firearm under 18 U.S.C. Section 922(g); or

(2)  releasing the firearm to the law enforcement agency holding the firearm, for disposition under Subsection (h).

(g)  If a firearm subject to disposition under this article is wholly or partly owned by a person other than the person taken into custody under Section 573.001, Health and Safety Code, the law enforcement agency holding the firearm shall release the firearm to the person claiming a right to or interest in the firearm after:

(1)  the person provides an affidavit confirming that the person:

(A)  wholly or partly owns the firearm;

(B)  will not allow access to the firearm by the person who was taken into custody under Section 573.001, Health and Safety Code, at any time during which that person may not lawfully possess a firearm under 18 U.S.C. Section 922(g); and

(C)  acknowledges the responsibility of the person and no other person to verify whether the person who was taken into custody under Section 573.001, Health and Safety Code, has reestablished the person's eligibility to lawfully possess a firearm under 18 U.S.C. Section 922(g); and

(2)  the law enforcement agency holding the firearm conducts a check of state and national criminal history record information and verifies that the person claiming a right to or interest in the firearm may lawfully possess a firearm under 18 U.S.C. Section 922(g).

(h)  If a person to whom written notice is provided under Subsection (b) or another lawful owner of a firearm subject to disposition under this article does not submit a written request to the law enforcement agency for the return of the firearm before the 121st day after the date the law enforcement agency holding the firearm provides written notice under Subsection (b), the law enforcement agency may have the firearm sold by a person who is a licensed firearms dealer under 18 U.S.C. Section 923.  The proceeds from the sale of a firearm under this subsection shall be given to the owner of the seized firearm, less the cost of administering this subsection.  An unclaimed firearm that was seized from a person taken into custody under Section 573.001, Health and Safety Code, may not be destroyed or forfeited to the state.

2of ____



RECEIPT AND NOTICE OF RIGHTS FOR
SEIZED FIREARMS

**ADDITIONAL ITEMS**

Incident #_____-___

List make, model, caliber, serial number and ammunition.

1. _____
2. _____
3. _____
4. _____
5. _____
6. _____
7. _____
8. _____
9. _____
10. _____
11. _____
12. _____
13. _____
14. _____
15. _____
16. _____
17. _____
18. _____
19. _____
20. _____

I acknowledge receipt of a copy of this notice

_____
Date

_____
Signature of Person Notified

I, _____
(Officer's Name/Title) declare under penalty of perjury under the laws of the State of Texas, that I served the above named person with a copy of the above notice, and this declaration is executed on_____ (Date)
at _____ (City), Texas.

_____
Mailing Address

_____
Signature of Officer Serving Notice      Badge #

THIS RECEIPT DOES NOT CONSTITUTE RECOGINITION OF LEGAL TITLE TO ABOVE PROPERTY

Notification – Emergency Detention      **NO.** _____

Date: _____ Time: _____

**THE STATE OF TEXAS**
**FOR THE BEST INTEREST AND PROTECTION OF:**

_____

## NOTIFICATION OF EMERGENCY DETENTION

Now comes _____, a peace officer with (name of agency) _____

_____, of the State of Texas, and states as follows:

1.  I have reason to believe and do believe that (name of person to be detained) _____ evidences mental illness.

2.  I have reason to believe and do believe that the above-named person evidences a substantial risk of serious harm to himself/herself or others based upon the following:

_____

_____

_____

_____

_____

3.  I have reason to believe and do believe that the above risk of harm is imminent unless the above-named person is immediately restrained.

4.  My beliefs are based upon the following recent behavior, overt acts, attempts, statements, or threats observed by me or reliably reported to me:

_____

_____

_____

_____

5.  The names, addresses, and relationship to the above-named person of those persons who reported or observed recent behavior, acts, attempts, statements, or threats of the above-named person are (if applicable):

_____

_____

_____

_____

For the above reasons, I present this notification to seek temporary admission to the (name of facility) _____ inpatient mental health facility or hospital facility for the detention of (name of person to be detained) _____ on an emergency basis.

6.  Was the person restrained in any way? Yes ☐ No ☐

_____     BADGE NO. _____
PEACE OFFICER'S SIGNATURE

Address: _____     Zip Code: _____

Telephone: _____

A mental health facility or hospital emergency department may not require a peace officer to execute any form other than this form as a predicate to accepting for temporary admission a person detained under Section 573.001, Texas Health and Safety Code.

# Houston Center for Sobriety
# Public Intoxication—Jail Diversion

DATE: ____ / ____ / _____     TIME: _____     INCIDENT #: _____

LAST NAME _____ FIRST _____ M: _____ DOB _____

SSN _____ SEX _____ AGE _____ RACE _____ ID # _____ STATE _____

ADDRESS _____ CITY _____ STATE _____ ZIP _____

HOMELESS ☐     HOME PHONE _____ WORK PHONE _____

PHYSICAL CONDITION _____

U.S. MILITARY VETERAN?   YES ☐   NO ☐   ALIAS (NICK NAME) _____

| | | EMPLOYEE # | BADGE # | UNIT # | HPD | OTHER |
|---|---|---|---|---|---|---|
| **OFFICER (S)** | 1. _____ | _____ | _____ | _____ | ☐ | ☐ |
| | 2. _____ | _____ | _____ | _____ | | |
| **TRANSPORT OFFICER (S)** | | EMPLOYEE # | BADGE # | UNIT # | HPD | OTHER |
| | 1. _____ | _____ | _____ | _____ | ☐ | ☐ |
| | 2. _____ | _____ | _____ | _____ | | |

INCIDENT LOCATION _____     DISTRICT / BEAT _____

CITY _____ COUNTY _____ STATE _____ ZIP _____

DETAILS OF INCIDENT _____

_____

_____

### *** FOR OFFICER USE ONLY ***

MUNICIPAL CHARGES?   YES ☐   NO ☐   (WRITTEN CITATION ONLY)   CITATION # _____

WAS THERE ANY OTHER CLASS 'B' OR HIGHER CRIMINAL CHARGES REFUSED BY THE D.A. OFFICE?   YES ☐   NO ☐

IF YES, NAME OF A.D.A. REFUSING CHARGES: _____

OFFENSE TYPE: _____

# Reminder: No DWI's Accepted at the Sobering Center

**STATUTORY AUTHORIZATION – MANDATORY BLOOD SPECIMEN**   THP-51 (Rev. 9/09)

Name of Arrestee: _____

Date and Time Specimen Extracted: _____

Facility Where Specimen Extracted: _____

Pursuant to the provisions of Texas Transportation Code, § 724.012, the undersigned peace officer requires that the above-named person (hereafter "suspect") give a specimen of blood under the provisions of Texas Transportation Code (TRC), Ch. 724, Subchapter B.

Acting in my capacity as a peace officer, I have arrested the suspect for an offense under Chapter 49 of the Texas Penal Code, based on my reasonable belief that the suspect was operating a motor vehicle or watercraft while intoxicated. The suspect refused my request to voluntarily submit to the taking of a specimen. When I arrested the suspect, I reasonably believed that (check all that apply):

☐ **Accident with death, serious bodily injury, or hospital treatment for bodily injury.** The suspect was involved in an accident that I reasonably believe occurred as a result of the suspect's intoxication. When I arrested the suspect, I reasonably believed that as a direct result of the accident:
  ♦ a person other than the suspect has died or will die;
  ♦ a person other than the suspect suffered serious bodily injury; or
  ♦ a person other than the suspect suffered bodily injury and was transported to a hospital or medical facility for medical treatment

☐ **DWI With Minor Child Under 15**. A child under 15 years of age was a passenger in the vehicle operated by the suspect while intoxicated.

☐ **Prior Conviction for Specified Offense**. At the time of the suspect's arrest, I possessed or received reliable information from a credible source that the suspect had previously been convicted or received community supervision of an offense under Section 49.045 (DWI With/Child Under 15), 49.07 (Intoxication Assault), or 49.08 (Intoxication Manslaughter), Texas Penal Code, or an offense under the laws of another state containing elements substantially similar to the elements of an offense under those sections.

☐ **DWI 3rd.** At the time of the suspect's arrest, I possessed or received reliable information from a credible source that on two or more occasions the suspect had previously been convicted of or placed on community supervision of an offense under Section 49.04 (DWI), 49.05 (FWI), 49.06 (BWI), or 49.065 (Amusement Ride W/Intoxicated ), Texas Penal Code, or an offense under the laws of another state containing elements substantially similar to the elements of an offense under those sections.

Therefore, I now am invoking my authority under TRC, Section 724.012(b), to require the suspect to submit to the taking of a specimen of the suspect's blood as required by TRC, Section 724.012(b).

Pursuant to my authority under TRC, Section 724.012(b), this is an **ORDER FROM A PEACE OFFICER** to you to draw a specimen of blood from the suspect. As provided by TRC, Section 724.017, the person who takes a blood specimen under TRC, Chapter 724, or the hospital or medical facility where the blood specimen is taken, is immune from civil liability for damages arising from this ORDER to take the blood specimen if the specimen is taken according to recognized medical procedures, although TRC, Section 724.017 does not release a person from liability for negligence in the taking of the specimen. Under TRC, Section 724.017, the taking of a blood specimen from a person who resists the taking of the specimen does not in itself constitute negligence and may not be considered evidence of negligence. A person whose blood specimen is taken under TRC, Chapter 724, is not considered to be present in the hospital for medical treatment or screening unless the appropriate hospital personnel determine that medical treatment or screening is required for proper medical care of the person.

_____
Officer's Signature / Agency

_____
Printed Name                        Badge or ID No.

_____
Name of Person Form Delivered To

_____
Name and Occupation of Person Taking Specimen

| **DIB USE ONLY** |
| --- |
|  |

## PEACE OFFICER'S SWORN REPORT

DIC-23 (Rev. 9/11)

STATE OF TEXAS
COUNTY OF _____

My name is _____, and I am a Texas Peace Officer. I certify that the following information is

true and correct:  I had probable cause to believe and do believe that _____
Subject's Name

was driving or in actual physical control of a motor vehicle in a public place, or watercraft powered by an engine having a manufacturer's rating of 50 horsepower or above, in this state while intoxicated or under the influence of alcohol. Facts in support of this belief are:

☐   A. Contained in report(s) incorporated by reference for all purposes as if written and copied herein.

Specify report(s) or document(s) _____ No. of pages _____

OR
☐   B. Noted in the following:

I.   On or about _____, a _____, was observed by _____
     Date and Time of Offense          Description of Motor Vehicle or Watercraft                     Observer

in the following public place _____
Location (address, including city and county)

II.   Reasonable suspicion to stop or make contact:

III.   The driver was identified to me as _____
                                   Name                              Driver License No.          DOB

IV.   Probable cause for arrest or detention:

a.  Signs of intoxication or consumption of alcohol:

b.  Sobriety tasks requested, if any, and performance obtained (explain):
I ☐ am ☐ am not certified to administer standardized field sobriety tests, ☐ including ☐ not including horizontal gaze nystagmus

☐ _____ continuation page(s) incorporated by reference for all purposes as if written and copied herein.

V.   Check one:
☐ Subject provided specimen - Intoxilyzer results: _____ , _____
☐ Subject refused test
☐ Subject provided blood sample, results pending
☐ Subject was a minor and was not requested to provide a specimen

**The statutory warning given to the person is set out in detail in the document DIC-24, which is incorporated by reference for all purposes as if written and copied herein.**

| FOR DEPARTMENT USE ONLY |
| --- |
|  |

_____
Officer's Signature

_____
Printed Name

_____
Agency

My name is _____. My date of birth is _____.
          First          Middle          Last

My agency address is _____, and U.S. of A.
                     Street               City          State          Zip Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed in _____ County, State of Texas on the _____ day of _____ , _____
                                                                                   Month          Year

_____
          Declarant

# STATUTORY WARNING

DIC-24 (Rev. 9/11)

SUBJECT'S NAME                                  DL NO./STATE                    DOB

PHYSICAL DESCRIPTION (if unlicensed)  Race: _____  Sex: _____  Height: _____  Weight: _____  Eyes: _____  Hair: _____

DATE OF ARREST: _____  TIME OF ARREST: _____  COUNTY OF ARREST: _____

You are under arrest for an offense arising out of acts alleged to have been committed while you were operating a motor vehicle in a public place, or a watercraft, while intoxicated, or an offense under Section 106.041, Alcoholic Beverage Code. You will be asked to give a specimen of your breath and/or blood. The specimen will be analyzed to determine the alcohol concentration or the presence of a controlled substance, drug, dangerous drug or other substance in your body.

If you refuse to give the specimen, that refusal may be admissible in a subsequent prosecution. Your license, permit or privilege to operate a motor vehicle will be suspended or denied for not less than 180 days, whether or not you are subsequently prosecuted for this offense.

If you refuse to submit to the taking of a specimen, the officer may apply for a warrant authorizing a specimen to be taken from you.

If you are 21 years of age or older and submit to the taking of a specimen and an analysis of the specimen shows that you have an alcohol concentration of 0.08 or more, your license, permit or privilege to operate a motor vehicle will be suspended or denied for not less than 90 days, whether or not you are subsequently prosecuted for this offense.

If you are younger than 21 years of age and have any detectable amount of alcohol in your system, your license, permit or privilege to operate a motor vehicle will be suspended or denied for not less than 60 days. However, if you submit to the taking of a specimen and an analysis of the specimen shows that you have an alcohol concentration of less than 0.08, you may be subject to criminal penalties less severe than those provided for under Chapter 49, Penal Code.

If you were operating a motor vehicle and you refuse to give the specimen or provide a specimen that shows you have an alcohol concentration of 0.08 or more, you may be disqualified from driving a commercial motor vehicle for a period of not less than one year.

You may request a hearing on the suspension or denial. This request must be received by the Texas Department of Public Safety at its headquarters in Austin, Texas, no later than 15 days after you receive or are presumed to have received notice of suspension or denial. The request can be made by written demand, fax, or other form prescribed by the Department.

I certify that I have informed you both orally and in writing of the consequences of refusing to submit to the taking of a specimen or providing a specimen. I have provided you with a complete and true copy of this statutory warning.

I am now requesting a specimen of your       **☐ Breath**     **☐ Blood**

       ☐ Subject refused to allow the taking of a specimen and further refused to sign below as requested by this officer.

       OR

       ☐ Subject refused to allow the taking of a specimen as evidenced by his/her signature below.

       _____

       Subject's Signature

☐ I further certify that because you are a child as defined in Section 51.02, Family Code, the above request for a specimen and your response have been videotaped.

**FOR DEPARTMENT USE ONLY**

_____
Officer's Signature

_____
Officer's Printed Name

_____
Agency

_____
Telephone No.

**DPS Copy—White**         **Driver's Copy—Yellow**

## ADVERTENCIA ESTATUTARIA

DIC-24S (Rev. 9/11)

_____   _____   _____

SUBJECT'S NAME                                                    DL NO./STATE                          DOB

PHYSICAL DESCRIPTION (if unlicensed) Race: _____ Sex: _____ Height: _____ Weight: _____ Eyes: _____ Hair: _____

DATE OF ARREST: _____   TIME OF ARREST: _____   COUNTY OF ARREST: _____

Queda usted detenido por motivo de un delito surgiendo de determinadas acciones que se alega fueron cometidas mientras manejaba un vehículo motorizado en un lugar público o una embarcación estando intoxicado, o un delito según la Sección 106.041 del Código de Bebidas Alcohólicas. Se le solicitará una muestra de su aliento y/o sangre. La muestra será analizada para determinar la concentración de alcohol o la existencia de alguna sustancia controlada, fármaco, droga peligroso u otra sustancia en su cuerpo.

Si usted se niega a proporcionar una muestra, esa denegación podría ser admisible en un enjuiciamiento posterior. Su licencia, permiso o privilegio para manejar un vehículo motorizado será suspendido o negado por un período no inferior a ciento ochenta (180) días, independientemente de si llegara a ser enjuiciado posteriormente por este delito.

Si se niega a someterse a la toma de la muestra, el oficial prodría aplicar para una órden autorizándolo a obtener la muestra de usted.

Si es mayor de veintiún (21) años de edad y acuerda proporcionar una muestra y el análisis de la muestra indica una concentración de alcohol de 0,08 o mayor, su licencia, permiso o privilegio para manejar un vehículo motorizado será suspendido o negado por un período no inferior a noventa (90) días, independientemente de si llegara a ser enjuiciado posteriormente por este delito.

Si es menor de veintiún (21) años de edad y tiene cualquier cantidad perceptible de alcohol en su cuerpo, su licencia, permiso o privilegio para manejar un vehículo motorizado será suspendido o negado por un período no inferior a sesenta (60) días. Sin embargo, si acuerda proporcionar una muestra y el análisis de la muestra indica una concentración de alcohol de menos de 0,08, es posible que su castigo penal sea menor que los castigos que se han establecido conforme al Capítulo 49 del Código Penal.

Si estaba manejando un vehículo motorizado y se niega a proporcionar una muestra, o si la muestra indica que usted tiene una concentración  de alcohol de 0,08 ó mayor, usted podría quedar inhabilitado para manejar vehículos motorizados comerciales por un período mínimo de un año.

Usted puede solicitar una audiencia para disputar la suspensión o la negación. El Departamento de Seguridad Pública de Tejas debe recibir la solicitud correspondiente en su sede central en Austin, Texas dentro de un plazo máximo de quince (15) días a partir de la fecha en que usted recibe, o se supone que haya recibido, el aviso de suspensión o negación. Puede hacer la solicitud por correo, por fax o por medio de algún otro procedimiento que haya establecido el Departamento.

Por la presente certifico que le he informado, por vía oral y escrita, de las consecuencias de negarse a que le tomen una muestra o a proporcionar una muestra. Le he facilitado una copia fiel y completa de esta advertencia estatutaria.

Ahora le solicito una muestra de su   ☐ **Aliento**   ☐ **Sangre**

    ☐ El/la sujeto/a se negó a permitir que le tomaran una muestra y además se negó a firmar donde se indica más adelante según la solicitud de este oficial.

     O

    ☐ El/la sujeto/a se negó a permitir que le tomaran una muestra según lo indica su firma a continuación:

_____
(Firma del/de la sujeto/a)

☐ Certifico además que, siendo usted menor de edad según se especifica en la Sección 51.02 del Código Familiar, esta solicitud de una muestra y la respuesta que me ha dado al respecto se han documentado en cinta de vídeo.

_____
Officer's Signature

_____
Officer's Printed Name

_____
Agency

_____
Telephone No.

**FOR DEPARTMENT USE ONLY**

     **DPS Copy—White**     **Driver's Copy—Yellow**

## NOTICE OF SUSPENSION
## TEMPORARY DRIVING PERMIT

DIC-25 (Rev. 10/09)

SUBJECT'S NAME _____   DL/ID NO./STATE _____   DOB _____

ADDRESS _____

PHYSICAL DESCRIPTION (if unlicensed)   Race: _____   Sex: _____   Height: _____   Weight: _____   Eyes: _____   Hair: _____

DATE OF ARREST: _____   TIME OF ARREST: _____   COUNTY OF ARREST: _____

**YOUR LICENSE, PERMIT OR PRIVILEGE TO OPERATE A MOTOR VEHICLE OR WATERCRAFT WILL BE SUSPENDED OR DENIED EFFECTIVE 40 DAYS AFTER THE DATE YOU RECEIVE THIS NOTICE BECAUSE YOU:**

**ADULT:**

☐ **REFUSED** to provide a specimen or specimens of breath or blood following an arrest for an offense prohibiting the operation of a motor vehicle or watercraft while intoxicated, while under the influence of alcohol, or while under the influence of a controlled substance.

☐ **PROVIDED** a specimen of breath or blood, and an analysis of the specimen showed an alcohol concentration of .08 or greater following an arrest for an offense involving the operation of a motor vehicle or watercraft.

**MINOR (Under 21):**

☐ **REFUSED** to provide a specimen or specimens of breath or blood following an arrest for an offense prohibiting the operation of a motor vehicle or watercraft while intoxicated, while under the influence of alcohol, or while under the influence of a controlled substance.

☐ **PROVIDED** a specimen of breath or blood, and an analysis of the specimen showed either an alcohol concentration of .08 or greater or a detectable amount of alcohol following an arrest for an offense involving the operation of a motor vehicle or watercraft.

☐ **WERE NOT REQUESTED TO SUBMIT** to the taking of a specimen following an arrest involving the operation of a motor vehicle or watercraft, as the presence of alcohol was detected or measured by other means.

> **If your Texas driver license was confiscated, this document will serve as your temporary driving permit. It is subject to the same restrictions and endorsements as your Texas driver license. If you hold a commercial driver license, this permit authorizes the operation of commercial motor vehicles. This permit does not provide you with any driving privileges if you do not have a Texas driver license or if your Texas driver license is expired, suspended, revoked, cancelled, or disqualified. This permit is valid for 40 days from the date of service shown below. If you request a hearing, this permit will remain in effect until the administrative law judge makes a final decision in your case.**

Driver License Confiscated:   ☐ **Yes**   ☐ **No**   If no, explain _____

**Date Notice Served:** _____

_____
Officer's Signature

_____
Officer's Printed Name

_____
Agency

_____
Telephone No.

| FOR DEPARTMENT USE ONLY |
|---|
|  |

## DRIVER INFORMATION

**You may request a hearing to contest the suspension by calling (800) 394-9913, faxing (512) 424-2650 or writing the Texas Department of Public Safety, Driver Improvement Bureau, at PO Box 4040, Austin, Texas 78765-4040.** All correspondence must include the following information: Full name, date of birth, driver license number and state, current mailing address, home and daytime telephone numbers, date and county of arrest, arresting agency, arresting officer, whether the test was failed, refused or not requested, and such other information as requested by the Department. Please specify if you wish to have your hearing by telephone or in person. **The request for hearing must be received by the Texas Department of Public Safety no later than 15 days after you receive or are presumed to have received notice of suspension. Failure to request a hearing within this time is a waiver of your right to a hearing.** You will be notified of the date, time, and location of your hearing. You will be required to pay a $125 reinstatement fee to the Texas Department of Public Safety, Driver Improvement Bureau, PO Box 15999, Austin, Texas 78761-5999, in addition to any other fees required by law. See reverse side for periods of suspension and statutory references.   **DPS Copy—White**      **Driver's Copy—Yellow**

# PERIODS OF SUSPENSION

**ADULTS:**

Refused to provide a specimen or specimens of breath or blood following an arrest for an offense prohibiting the operation of a motor vehicle or watercraft while intoxicated, while under the influence of alcohol, or while under the influence of a controlled substance (Tex. Transp. Code Ann. Ch. 724):

| | |
|---|---|
| 180 DAYS | First Offense |
| 2 YEARS | If previously suspended for failing or refusing a breath or blood test or previously suspended for a DWI, Intoxication Assault or Intoxication Manslaughter conviction during the 10 years preceding the date of arrest. |

Provided a specimen of breath or blood with an alcohol concentration of 0.08 or greater following an arrest for an offense under Section 49.04, 49.07 or 49.08, Penal Code, involving the operation of a motor vehicle or watercraft (Tex. Transp. Code Ann. Ch. 524):

| | |
|---|---|
| 90 DAYS | First Offense |
| 1 YEAR | If previously suspended for failing or refusing a breath or blood test or previously suspended for a DWI, Intoxication Assault or Intoxication Manslaughter conviction during the 10 years preceding the date of arrest. |

**MINORS (UNDER 21 YEARS OF AGE):**

Refused to provide a specimen or specimens of breath or blood following an arrest for an offense prohibiting the operation of a motor vehicle or watercraft while intoxicated, while under the influence of alcohol or while under the influence of a controlled substance (Tex. Transp. Code Ann. Ch. 724):

| | |
|---|---|
| 180 DAYS | First Offense |
| 2 YEARS | If previously suspended for failing or refusing a breath or blood test or previously suspended for a DWI, Intoxication Assault or Intoxication Manslaughter conviction during the 10 years preceding the date of arrest. |

Provided a specimen of breath or blood with an alcohol concentration of 0.08 or greater or a detectable amount of alcohol following an arrest for an offense under Section 49.04, 49.07 or 49.08, Penal Code, or Section 106.041, Alcoholic Beverage Code,  involving the operation of a motor vehicle or watercraft (Tex. Transp. Code Ann. Ch. 524):

| | |
|---|---|
| 60 DAYS | First Offense |
| 120 DAYS | If previously convicted of an offense under Sections 49.04, 49.07 or 49.08, Penal Code, or Section 106.041, Alcoholic Beverage Code, involving the operation of a motor vehicle or watercraft. |
| 180 DAYS | If previously convicted twice or more of an offense under Sections 49.04, 49.07 or 49.08, Penal Code, or Section 106.041, Alcoholi Beverage Code, involving the operation of a motor vehicle or watercraft. |

**COMMERCIAL DRIVER LICENSE (CDL) HOLDERS:** Pursuant to Tex. Transp. Code Ann. Chapter 522, your commercial driving privilege will be disqualified for one year (three years if transporting hazardous material required to be placarded) if you refused to submit to a test under Chapter 724 to determine your alcohol concentration or the presence in your body of a controlled substance or drug while operating a motor vehicle in a public place; or if an analysis of your breath or blood under Chapter 524 determines that you had an alcohol concentration of 0.08 or more while operating a motor vehicle, other than a commercial motor vehicle, in a public place.

# DRIVER LICENSE REINSTATEMENT FORM

Name _____ DL No. _____ DOB _____

Address _____

You are required to pay a $125 fee to reinstate your driver license. Payment must be made in the form of a cashier's check or money order made payable to the Texas Department of Public Safety. Please complete this form and return it, along with your reinstatement fee, to the Texas Department of Public Safety at the following address: DRIVER IMPROVEMENT BUREAU, PO BOX 15999, AUSTIN TX 78761-5999.

## AVISO DE SUSPENSIÓN
## PERMISO DE CONDUCIR PROVISIONAL

DIC-25S (Rev. 10/09)

SUBJECT'S NAME _____     DL/ID NO./STATE _____     DOB _____

ADDRESS _____

PHYSICAL DESCRIPTION (if unlicensed)   Race: _____   Sex: _____   Height: _____   Weight: _____   Eyes: _____   Hair: _____

DATE OF ARREST: _____   TIME OF ARREST: _____   COUNTY OF ARREST: _____

**SU LICENCIA, PERMISO O PRIVILEGIO PARA MANEJAR UN VEHÍCULO MOTORIZADO O UNA EMBARCACIÓN SERÁ SUSPENDIDO O NEGADO, CON VIGENCIA A CUARENTA (40) DÍAS A PARTIR DE LA FECHA EN QUE RECIBE ESTE AVISO POR CUALQUIERA DE LAS SIGUIENTES RAZONES:**

**ADULTO:**

☐ **USTED SE NEGÓ** a proporcionar una(s) muestra(s) de aliento o sangre después de haber sido detenido por motivo de un delito que prohibe el manejo de un vehículo motorizado o una embarcación estando intoxicado, bajo la influencia del alcohol o bajo la influencia de una sustancia controlada.

☐ **USTED PROPORCIONÓ** una muestra de aliento o sangre después de haber sido detenido por motivo de un delito relacionado con el manejo de un vehículo motorizado o una embarcación, y un análisis de la muestra indicó una concentración de alcohol de, 0,08 ó mayor

**MENOR (Menor de 21 años):**

☐ **USTED SE NEGÓ** a proporcionar una(s) muestra(s) de aliento o sangre después de haber sido detenido por motivo de un delito que prohibe el manejo de un vehículo motorizado o una embarcación estando intoxicado, bajo la influencia del alcohol o bajo la influencia de una sustancia controlada

☐ **USTED PROPORCIONÓ** una muestra de aliento o sangre después de haber sido detenido por motivo de un delito relacionado con el manejo de un vehículo motorizado o una embarcación, y un análisis de la muestra indicó uno de los siguientes resultados: una concentración de alcohol de, 0,08 ó mayor, o una cantidad perceptible de alcohol.

☐ **A USTED NO SE LE SOLICITÓ** una muestra después de haber sido detenido por motivo de un delito relacionado con el manejo de un vehículo motorizado o una embarcación debido a que se pudo detectar o medir la presencia de alcohol por otros medios.

> **En caso de que su licencia de conducir haya sido confiscada, este documento le servirá de permiso de conducir provisional, estando sujeto a las mismas restricciones y anotaciones que su licencia de conducir de Tejas. En caso de tener una licencia comercial este permiso le autoriza a manejar vehículos motorizados comerciales. Este permiso no le concede ninguna autoridad para conducir si no tiene una licencia de conducir de Tejas, o si su licencia de conducir de Tejas esté vencida, suspendida, revocada, cancelada o descalificada. Este permiso tiene una vigencia de 40 días a partir de la fecha en que se le fue entregado, fecha que consta más adelante en este documento. En caso de solicitar una audiencia referente a este caso, este permiso tendrá vigencia hasta que el juez de derecho administrativo correspondiente haya pronunciado su decisión final al respecto.**

Licencia de conducir confiscada:   ☐ **Si**   ☐ **No**   En caso negativo, explicar porqué _____

**Fecha de entrega del aviso:** _____

_____
Officer's Signature

_____
Officer's Printed Name

_____
Agency

_____
Telephone No.

**FOR DEPARTMENT USE ONLY**

**DATOS PARA EL CONDUCTOR**

**Usted puede solicitar una audiencia para disputar la suspensión: por teléfono, llamando al (800) 394-9913, por fax al (512) 424-2650, o por escrito al Departamento de Seguridad Público de Tejas, enviando su carta a la siguiente dirección: Texas Department of Public Safety, Driver Improvement Bureau, PO Box 4040, Austin, Texas 78765-4040.** Deben constar en toda la correspondencia los siguientes datos: su nombre completo; su fecha de nacimiento; el número de su licencia de conducir y el estado en el que fue expedida; la dirección donde actualmente recibe su correo; los números de teléfono de su casa y donde se le puede localizar durante el día; la fecha de su arresto y el condado donde fue detenido; la agencia que lo arrestó y el oficial responsable; si el examen no fue aprobado, fue rehusado o no fue solicitado, y cualquier otra información solicitada por el Departamento. Sírvase indicar si prefiere que su audiencia se celebre en persona o por teléfono. **El Departamento de Seguridad Pública de Tejas debe recibir su solicitud para una audiencia dentro de un plazo máximo de quince (15) días a partir de la fecha en que usted recibe, o se supone que haya recibido, el aviso de suspnsión. Los que no solicitan la audiencia dentro de este plazo renuncian automáticamente su derecho a tener una audiencia.** Se le comunicará la fecha, la hora y el lugar de su audiencia. Además de los pagos que pudieran corresponder por ley, deberá pagar $125 en concepto de la reactivación de su licencia al: Texas Department of Public Safety, Driver Improvement Bureau, PO Box 15999, Austin, Texas 78761-5999. Al dorso encontrará una explicación de los períodos de suspensión y las referencias estatutarias.

**DPS Copy—White**                    **Driver's Copy—Yellow**

# DURACIÓN DE LOS PERÍODOS DE SUSPENSIÓN

**ADULTOS:**

Se negó a proporcionar una(s) muestra(s) de aliento o sangre después de haber sido detenido por motivo de un delito que prohíbe el manejo de un vehículo motorizado o una embarcación estando intoxicado, bajo la influencia del alcohol o bajo la influencia de una sustancia controlada según lo dispuesto por el capítulo 724 del Apéndice del Código de Transporte de Tejas:

| | |
|---|---|
| 180 DÍAS | Primer delito |
| 2 AÑOS | Si ha sido suspendido anteriormente por haber rehusado tomar o no haber aprobado el examen del aliento o la sangre, o si ha sido suspendido anteriormente por una condena de DWI (manejar en estado de embriaguez), asalto en estado de embriaguez u homicidio impremeditado en estado de embriaguez durante los 10 años anteriores a la fecha del arresto. |

Proporcionó una muestra de aliento o sangre con una concentración de alcohol de 0,08 ó mayor después de haber sido detenido por cometer un delito según las Secciones 49.04, 49.07 ó 49.08 del Código Penal, relacionado con el manejo de un vehículo motorizado o una embarcación, según lo dispuesto por el capítulo 524 del Apéndice del Código de Transporte de Tejas:

| | |
|---|---|
| 90 DÍAS | Primer delito |
| 1 AÑO | Si ha sido suspendido anteriormente por haber rehusado tomar o no haber aprobado el examen del aliento o la sangre, o si ha sido suspendido anteriormente por una condena de DWI (manejar en estado de embriaguez), asalto en estado de embriaguez u homicidio impremeditado en estado de embriaguez durante los 10 años anteriores a la fecha del arresto. |

**MENORES (MENORES DE 21 AÑOS DE EDAD):**

Se negó a proporcionar una(s) muestra(s) de aliento o sangre después de haber sido detenido por motivo de un delito que prohíbe el manejo de un vehículo motorizado o una embarcación estando intoxicado, bajo la influencia del alcohol o bajo la influencia de una sustancia controlada según lo dispuesto por el capítulo 724 del Apéndice del Código de Transporte de Tejas:

| | |
|---|---|
| 180 DÍAS | Primer delito |
| 2 AÑOS | Si ha sido suspendido anteriormente por haber rehusado tomar o no haber aprobado el examen del aliento o la sangre, o si ha sido suspendido anteriormente por una condena de DWI (manejar en estado de embriaguez), asalto en estado de embriaguez u homicidio impremeditado en estado de embriaguez durante los 10 años anteriores a la fecha del arresto. |

Proporcionó una muestra de aliento o sangre con una concentración de alcohol de 0,08 o mayor o con una cantidad perceptible de alcohol, después de haber sido detenido por cometer un delito relacionado con el manejo de un vehículo motorizado o una embarcación según las Secciones 49.04, 49.07 ó 49.08 del Código Penal, o la Sección 106.041 del Código de Bebidas Alcohólicas, según lo dispuesto por el capítulo 524 del Apéndice del Código de Transporte de Tejas:

| | |
|---|---|
| 60 DÍAS | Primer delito |
| 120 DÍAS | Si ha sido condenado anteriormente por haber cometido un delito relacionado con el manejo de un vehículo motorizado o una embarcación según las Secciones 49.04, 49.07 ó 49.08 del Código Penal, o la Sección 106.041 del Código de Bebidas Alcohólicas. |
| 180 DÍAS | Si ha sido condenado dos veces o más anteriormente por haber cometido un delito relacionado con el manejo de un vehículo motorizado o una embarcación según las Secciones 49.04, 49.07 ó 49.08 del Código Penal, o la Sección 106.041 del Código de Bebidas Alcohólicas. |

**PORTADORES DE LA LICENCIA DE CONDUCIR COMERCIAL (CDL):** Conforme al Cap. 522 del An. del Código de Transp. de Tejas, su privilegio para manejar vehículos comerciales quedará descalificado por un año (tres años en caso de transportar material peligroso que requiere letrero) si se niega a tomar la prueba según Cap. 724 para determinar la concentración de alcohol que tiene en la sangre o la presencia en su cuerpo de alguna sustancia controlada o droga mientras operaba un vehículo motorizado en un lugar público; o si un análisis de su aliento o sangre según Cap. 524 determina que tenía una concentración de alcohol de 0,08 ó mayor mientras operaba un vehículo motorizado, que no fuera vehículo motorizado comercial, en un lugar público.

---

## FORMULARIO PARA LA REACTIVACIÓN DE LA LICENCIA DE CONDUCIR

Nombre: _____

Nº de la licencia de conducir: _____  Fecha de nacimiento: _____

Dirección: _____

La reactivación de la licencia de conducir se logra mediante el pago de $125. El pago debe efectuarse por medio de cheque bancario o giro postal a nombre de: Texas Department of Public Safety. Sírvase completar este formulario y enviarlo, junto con el pago correspondiente a la reactivación de su licencia, a la siguiente dirección:

> DRIVER IMPROVEMENT BUREAU
> TEXAS DEPARTMENT OF PUBLIC SAFETY
> PO BOX 15999
> AUSTIN TX 78761-5999

**STATUTORY WARNING**
**COMMERCIAL MOTOR VEHICLE OPERATORS**

DIC-55 (Rev. 9/01)

SUBJECT'S NAME                                    DL NO./STATE                    DOB

PHYSICAL DESCRIPTION (if unlicensed) Race: _____ Sex: _____ Height: _____ Weight: _____ Eyes: _____ Hair: _____

DATE OF ARREST: _____ TIME OF ARREST: _____ COUNTY OF ARREST: _____

There is probable cause to believe that you were driving a commercial motor vehicle while having alcohol, a controlled substance, or a drug in your system. You will be asked to give a specimen of your breath, blood, and/or urine. The specimen will be analyzed to determine the alcohol concentration or the presence of a controlled substance, drug, dangerous drug, or other substance in your body.

If you refuse to give the specimen, or if you provide a specimen that discloses an alcohol concentration of 0.04 or greater, you will be immediately placed out of service for 24 hours. Your privilege to operate a commercial motor vehicle will be disqualified or denied for one year (three years if transporting a hazardous material required to be placarded) or for life as provided by law, whether or not you are subsequently prosecuted for this offense.

You may request a hearing on the disqualification. This request must be received by the Texas Department of Public Safety at its headquarters in Austin, Texas, no later than 15 days after you receive or are presumed to have received notice of disqualification or denial. The request can be made by written demand, fax, or other form prescribed by the Department.

A person who operates a commercial motor vehicle while having any measurable or detectable amount of alcohol in his/her system must be placed out of service for 24 hours.

I certify that I have informed you both orally and in writing of the consequences of refusing to submit to the taking of a specimen or providing a  specimen. I have provided you with a complete and true copy of this statutory warning.

I am now requesting a specimen of your      ☐ **Breath**      ☐ **Blood**      ☐ **Urine**

   ☐ Subject refused to allow the taking of a specimen and further refused to sign below as requested by this officer.

      OR

   ☐ Subject refused to allow the taking of a specimen as evidenced by his/her signature below.

_____
Subject's Signature

_____
Officer's Signature

_____
Officer's Printed Name

_____
Agency

_____
Telephone No.

| FOR DEPARTMENT USE ONLY |
| --- |
|  |

**DPS Copy—White**          **Driver's Copy—Yellow**

**566**   POLICIES AND PROCEDURES                    Texas Southern University **Department of Public Safety**