**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MARY YOUNG, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-03888 |
| | § | |
| TEXAS SOUTHERN UNIVERSITY, | § | |
| *Defendant.* | § | |

_____

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

_____

TO THE HONORABLE JUDGE ALFRED H. BENNETT:

Defendant, Texas Southern University ("Defendant," "TSU" or the "University"), hereby moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, and respectfully shows the Court the following:

**I. INTRODUCTION**

This is a sex discrimination, harassment/hostile work environment, and retaliation case brought by the former chief of police at TSU, Plaintiff Mary Young ("Young") under Title VII of the Civil Rights Act. All claims fail both as a matter of law and the undisputed material facts.

As for Young's harassment/hostile work environment claim, the record evidence shows she was never harassed for being female, nor did she experience a hostile work environment as a matter of law—much less because she is a woman.

In addition, the record shows that the fact that Young is female played absolutely no role in any adverse employment action taken by the University, nor did any action qualifying as "protected activity" under Title VII. Mary Young did not engage in any Title VII protected activity,

and even if she had done so, the record evidence shows no causal nexus between any action alleged by Young to be "protected activity" and any adverse employment action.

Rather, the University acted entirely appropriately in response to an anonymous complaint alleging that Young had violated TSU policy in approving unauthorized pay for certain TSU officers, a thorough investigation confirming Young had violated more than one University policy, and Young's acts of defiance in response to being placed on administrative leave while the University considered possible appropriate disciplinary action. These are legitimate, non-discriminatory and non-retaliatory reasons for all actions challenged in this suit, and Young cannot demonstrate they are mere pretext for discrimination or retaliation.

Further, while Young has alleged that former TSU President Lesia Crumpton-Young ("Crumpton-Young") conspired with the author of the anonymous complaint to effectuate her removal as police chief, the record evidence shows this allegation to be pure fiction. Crumpton-Young had no role in the filing or investigation of the anonymous complaint. And she did not make the decisions to place Young on administrative leave, terminate her employment, or report how her discharge should be classified to the Texas Commission on Law Enforcement ("TCOLE"). Accordingly, Young's theory of her discrimination and retaliation claims—that she experienced adverse employment actions because Crumpton-Young was biased against female police officers—which Crumpton-Young also vehemently denies—or sought to retaliate against her for decisions with respect to her security detail—which as discussed below did not occur as Young portrays in her Complaint—completely falls apart.

This case is very simple and most appropriate for summary judgment. There is no disputed genuine issue of material fact, and no rational factfinder could rule that Young was harassed for being a woman, suffered a hostile work environment, retaliated against for Title VII "protected

activity," or otherwise discriminated against because she was a woman. Accordingly, for these reasons discussed in additional depth below, TSU respectfully requests the Court grant this Motion and render summary judgment for Defendant on all of Plaintiff's claims.

## II. Nature and Stage of the Proceeding

Young initiated this action against TSU on October 12, 2023. (Dkt. #1). TSU filed its Original Answer and Affirmative Defenses on November 11, 2023. (Dkt. #6). The discovery period closed on February 28, 2025. (Dkt. #23). Defendant moved under Rule 12(c) for judgment as a matter of law and to dismiss Young's state law claims on October 10, 2024, and that matter is still pending without ruling.[1] *See* (Dkt. #27). Defendant now moves for summary judgment under Rule 56 on all of Plaintiff's claims.

This case is set for trial beginning the two-week period of June 30, 2025 (Dkt. #23). Defendant has moved to extend the deadlines in this case, in part, to allow the Court sufficient time to rule on this Motion, which is based on good cause and in the interest of judicial economy and conservation of judicial and party resources. *See* (Dkt. #41).

## III. Statement of Issues to be Decided by the Court

1. Does Young's claim of harassment/hostile work environment fail as a matter of law and undisputed facts?

2. Has Young failed to establish a *prima facie* case of retaliation?

3. Has the University articulated a legitimate, non-discriminatory and non-retaliatory reason or reasons for its decisions?

4. If so, has Young failed to produce evidence showing those reasons are pretext for sex discrimination or retaliation?

---

[1] Young withdrew her state law claims, which the Court recognized, but there has been no ruling on the 12(c) arguments against Young's federal claims. *See* (Dkt. #37).

## IV. SUMMARY OF THE ARGUMENT

Young cannot establish a harassment/hostile work environment claim because no one ever harassed her for being a woman. Isolated incidents of Crumpton-Young merely asking questions of males: 1) do not rise to the level of a hostile work environment under the law and moreover, 2) are not supported by evidence demonstrating a causal nexus between President Crumpton-Young's conversations and the fact that Young is a woman.

Young also has not alleged—nor does the record evidence show—that she was retaliated against for opposing any conduct made unlawful by Title VII. She never complained to her employer of discrimination; she simply told members of the President's security detail to stop carrying her purse or accompanying her on errands since those were not duties of peace officers. This—and any other conceivable conversation Young had with her officers—is not "protected activity," and even if it were, the record shows Young cannot establish any causal nexus between this issue and any adverse employment action by TSU's former President, Crumpton-Young, as alleged.

As for both her discrimination and retaliation claims, under the well-known *McDonnell Douglas* burden-shifting framework, TSU has met its burden of production to show legitimate, non-discriminatory and non-retaliatory reasons for its actions. Namely, TSU's internal auditor conducted an investigation which found that Young had violated TSU policies and authorized pay increases for certain officers without approval. When placed on administrative leave for this issue, Young refused to comply and insubordinately continued to come to campus and refused to stop acting as chief in violation of a direct order. Devi Bala—Young's direct supervisor—took appropriate action, and no rational factfinder could conclude the University's explanations are mere pretext, and that the real reasons for Young's adverse employment actions are intentional

discriminatory animus against females or retaliation for nonexistent protected activity. Under the record evidence cited below, there is no triable issue for a jury. This matter is most appropriate for resolution from the Court. Accordingly, TSU respectfully requests the Court issue summary judgment for Defendant on this case in its entirety.

## V. EXHIBITS

In support of this Motion, the University relies on the following attached evidence all of which is incorporated herein by reference as if set forth in full.

| Exhibit | Description |
|---------|-------------|
| A | Declaration of Lesia Crumpton-Young |
| B | Declaration of Darlene Brown and Attachments |
| C | Declaration of Hao Le |
| D | Declaration of Bobby Brown |
| E | Business Records Declaration of Darlene Brown |
| F | Deposition Transcript of Lesia Crumpton-Young |
| G | Deposition Transcript of Mary Young and Exhibits |
| H | Invalid Temporary Restraining Order |
| I | Defendant's Amended Response to Plaintiff's Motion to Compel in Cause No. 2022-77744 |
| J | Temporary Restraining Order expired on December 21, 2022 |
| K | Defendant's Response to Plaintiff's Motion for Contempt and to Enforce Emergency Temporary Restraining Order, in Cause No. 2022-77744 |
| L | EEOC Charge of Discrimination |

## VI. STATEMENT OF UNDISPUTED FACTS

### A.    About TSU

TSU is a public institution of higher education. Tex. Educ. Code § 106.01. The government of TSU is vested in a board of nine regents. *Id*. at § 106.11. This power includes the ability to appoint officers and employees and prescribe their duties, as well as to remove "any professor,

instructor, tutor, or other officer or employee connected with the institution when, in its judgment, the best interests and proper operation of the institution requires it." *Id*. at § 106.31.

## B.    TSU receives an anonymous complaint against Mary Young.

At all times relevant to this case, the President of TSU was Lesia Crumpton-Young. Ex. A at ¶ 2. Mary Young was the chief of police. (Dkt. #12 at ¶ 1). Mary Young's direct supervisor was Devi Bala, the Vice President of Business & Finance/Chief Financial Officer (Ex. A at ¶¶ 20–21); (Ex. G-1); (Ex. C at ¶ 6). Mary Young did not directly report to President Crumpton-Young. (Ex. A at ¶ 20).

In July 2022, President Crumpton-Young was called while she was on vacation in Mexico by the TSU chair of the Board of Regents and chair of the Board's personnel committee who informed her that a complaint against Mary Young had been filed through the University's Ethicspoint hotline and that they had decided to immediately start an investigation that would be handled by the University's internal auditor. (Ex. A at ¶ 15). President Crumpton-Young was not involved in this decision, and in fact the Board informed her that she was to not get involved. *Id*. So, she did not. *Id*.; (Ex. B at ¶ 4).

The complaint was received by TSU's hotline in or around April 14, 2022. (Ex. B at ¶ 2). The University's Chief Compliance Officer DeAnna Nwanko reviewed the complaint and forwarded it to the Chief Audit Executive, Charla Parker-Thompson, for discussion and direction on how to proceed. (Ex. B at ¶ 3). Nwanko began the investigation by interviewing TSU police officers and obtaining payroll files. *Id*. In or around July 10, 2022, the TSU Board asked Darlene Brown, who stepped in as Acting Chief Audit Executive, to perform an investigation of the anonymous complaint, which had alleged that Mary Young had authorized pay increases for certain officers without the President's or Board authorization. (Ex. B at ¶¶ 1, 3).

**C.** **TSU investigates and concludes Mary Young violated policy.**

Brown continued her investigation and prepared a final report, which made the following conclusions: the allegation was substantiated and related to two distinct types of additional compensation that Young authorized verbally and when she signed weekly time reporting packages. (Ex. B-2 at 6). These compensation types were not discussed or approved by TSU Human Resources, the President, or the Board of Regents. *Id*. Under TSU policy, pay guidelines for staff employees requires Human Resources review of pay adjustments. *Id*. TSU policy defines "fraud" to include authorizing payment for hours not actually worked. *Id*. at 6. Thus, Brown found that Young had committed fraud against TSU when she authorized certain officers to receive two hours of overtime for Field Training Officers each day they had an officer assigned to them, even if it did not take the full two hours each day to complete the paperwork. *Id*. at 7. Brown also found that Young authorized these officers to use a special code to receive an additional $25 per hour and report an additional 8 hours of work somewhere on their timesheet—though they were not working during those time slots—when they were acting as supervisors or "lead officers" on a shift where their immediate supervisor was absent. *Id*. at 6–7. These actions were found to be a violation of TSU policy and resulted in a loss to the University of $27,960.82. *Id*. at 5–11 (finding violations of MAPP policy numbers 02.05.05, 02.02.01, and 02.02.03). Finally, Brown found that Young had also violated MAPP policy 02.05.06 by interfering with her investigation of this matter by questioning certain officers about their time recording after she had been told by Brown not to speak to officers about this matter. *Id*. at 8; *see also* (Ex. G at 59:13–25). Brown provided a copy to her report to the Board of Regents, Crumpton-Young, and Lisa McBride. (Ex. B at ¶ 5).

**D.    TSU responds appropriately to the conclusions of the internal auditor.**

After receiving the conclusions of the report, after adequate time for deliberation, Devi Bala, Young's direct supervisor, placed Young on administrative leave on December 1, 2022. (Ex. G-1); (Ex. G at 8:17 – 9:8); (Ex. C at ¶ 5); (Ex. A at ¶¶ 20–21). The University appointed the sergeant with the academic qualifications for the position of chief, Bobby Brown, to serve as Acting Chief of Police at TSU. (Ex. D at ¶ 3).

TSU instructed Young to remain off campus while on leave. (Ex. G at 11:9 – 13:4); (Ex. G-1, G-2, G-3). Young did not comply with this directive, but instead violated the terms of her administrative leave and instead continued to come to campus and act as chief. (Ex. G at 15:1 – 20:4, 25:3 – 26:18, 36:12 – 37:7); (Ex. D at 4–8); (Ex. A at ¶ 21); (Ex. C at ¶¶ 7–8). Young continued to attend University-sanctioned events and used University-owned items, in violation of the terms of her administrative leave. (Ex. G-1); (Ex. G at 20:5 – 23:12); (Ex. D at ¶ 6). This created a toxic work environment where the officers were confused as to who was the chief and feared they would lose their jobs and contemplated resignation. (Ex. A at ¶ 21); (Ex. C at ¶ 8); (Ex. G-2); (Ex. G-3); (Ex. D at ¶¶ 3–8). Young behaved above the law and made it unusually difficult for the University to manage the issues in the police department. (Ex. A at ¶ 22); (Ex. D at ¶¶ 3, 5–8); (Ex. G at 34:21 – 35:5). The Acting Chief of Police in particular was stymied by Young in multiple ways when he attempted to perform his duties. *Id*.

On January 9, 2023, Devi Bala officially terminated Mary Young's employment at TSU for violating the terms of her administrative leave, based on her actions creating dissension within the University in December, and based on the internal audit determination. (Ex. A at ¶ 21); (Ex. C at ¶ 9); (Ex. G at 27:19 – 28:15); (Ex. G-3). The University left a copy of the termination notice at Young's residence. (Ex. G at 27:19 – 28:15).

E.      **Young attempts to block TSU from disciplining her in state court.**

Young, under a plainly erroneous reading of state law, attempted to temporarily restrain the University from taking any adverse action against her, arguing that she was immune from discipline because these incidents were prompted by an anonymous, rather than a signed complaint.[2] Ex. H. She received a state court temporary restraining order ("TRO") on December 1, 2022, but the University did not receive notice of the TRO until after placing Young on leave. (Ex. H at 3). Further, the TRO was invalid and void because the state court judge lacked the power to issue the TRO on December 1. (Ex. H at 4–5); (Ex. I at 2); (Ex. K at 2, n.1). Accordingly, TSU was not barred from taking any disciplinary action against Young when it placed her on administrative leave on December 1, 2022.

On December 7, 2022, Young obtained another TRO that prevented any further disciplinary action, but this TRO expired on December 21, 2022. (Ex. J at 2); (Ex. K at 2). The University filed a plea to the jurisdiction based on its sovereign immunity on December 5, 2022, and appealed the state court's perceived implicit denial of the plea on December 8, 2022. *Texas S. Univ. v. Young*, No. 01-22-00913-CV, 2023 WL 2874133, at *1 (Tex. App.—Houston [1st. Dist.] Apr. 11, 2023), *pet. denied*, 682 S.W.3d 886 (Tex. 2023). While on appeal, Young did not obtain an extension of the TRO or an injunction from the court of appeals. (Ex. K at 4). Thus, in the

---

[2] Under the Texas Supreme Court's opinion in *Colorado County v. Staff*, section 614.022 of the Texas Government Code allows peace officers to be disciplined after being made the subject of anonymous complaints, and simply requires a state agency or law enforcement agency to provide the peace officer a copy of a complaint signed by an individual such as Darlene Brown. *See* 510 S.W.3d 435, 449–53 (Tex. 2017). Darlene Brown signed and provided a copy of the complaint to Young before any disciplinary action. (Ex. E). But Young argued the University was hamstrung and illogically incapable of taking any action against her because the complaint was anonymous and Darlene Brown signed the complaint and provided a copy of that complaint to Mary Young. *See* (Dkt. #12 at ¶ 22).

absence of any state court order in effect barring it from doing so, TSU terminated Young's employment on January 9, 2023. *Id.*

**F.    Young makes unsubstantiated allegations of discrimination and retaliation after-the-fact.**

After failing to prevent TSU from terminating her employment in state court, Young then attempted to make this case a civil rights matter by filing a charge of discrimination with the Equal Employment Opportunity Commission on April 20, 2023. (Ex. L). In January of that year, in response to the question of whether she believed or alleged that she had been terminated because of her race or gender, she responded "no." Roland S. Martin, Bethune-Cookman Controversy, "Tyree Nichols Bodycam Released To Family, TX TSU Police Chief Fired" at 1:56:04–13, *available at* https://www.youtube.com/watch?v=mzrJhWKpSmg (last visited April 27, 2025). She communicated that she believed that the anonymous complaint had been filed because she "did exactly what [she] was told" in response to a "direct order" and told the TSU officers on the TSU President's security detail not to act like the President's personal assistants or accompany her on personal errands, but rather to act as peace officers. *Id.* at 1:36:31–37:35, 1:40:01–41:30, 1:42:28–45:51; *see also* (Ex. G 115:15 – 130:4); (Ex. D at ¶¶ 13–14).

But the story Young tells in her Complaint is very different. There she appears to allege that the President and one of the members of TSU's security detail were having a sexual or romantic relationship and the President was thereby harassing him. *See* (Dkt. #12 at ¶¶ 38–39). Those allegations are plainly contradicted by the record evidence showing the President was not engaged in *quid pro quo* harassment of any peace officer in violation of Title VII, nor did Young take any protected activity based on such belief. (Ex. A at ¶ 18); (Ex. L. at ¶ 1); (Ex. G at 115:15 – 130:4). Young's other allegations, exaggerations, and embellishment of what she claims was

"inappropriate" are also plainly revealed to be false. *Compare id. with* (Ex. A at ¶¶ 8–15); (Ex. D. at ¶¶ 14, 15); *see esp.* (Ex. G at 115:15 – 130:4). Likewise, Young's after-the-fact allegations of a hostile work environment based on her status as a woman are contradicted by her own testimony. *Compare* (Dkt. #12 at ¶ 42) *with* (Ex. A at ¶¶ 1–7); (Ex. D at ¶¶ 9–12); (Ex. L. at 12–14).

Finally, with respect to her after-the-fact allegation that President Crumpton-Young had a preference for male officers leading to a hostile work environment for her as a female police chief, Crumpton-Young denies ever making the statement that she preferred male police officers to female police officers in one lunch meeting approximately one year before these events transpired. (Ex. A at ¶¶ 3, 24). Further, Young admitted, in conflict yet again with her allegations, that Crumpton-Young never told Young that she would require her to advise her whether her recommendations were endorsed by a male officer. *Compare* (Dkt. #12 at ¶ 1) *with* (Ex. G at 94:22 – 95:23); (Ex. A at ¶ 4). Young never confronted Crumpton-Young over this matter. *Compare* (Dkt. #12 at ¶ 15) *with* (Ex. A at ¶ 7); (Ex. G at 143:13–23). And Crumpton-Young emphatically denies that she had such motivation and ignored or rejected Young's policing recommendations unless they were agreed to, endorsed by, or approved by a male officer. *Compare* (Dkt. #12 at ¶ 1) *with* (Ex. A at ¶ 4). Rather, Crumpton-Young was proud that TSU had a female police chief. (Ex. A at ¶ 24). And the record shows any preference—even if it existed, was not the cause of any adverse employment action. *See infra* §§ C, D.

## VII. Legal Standard for Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). For this analysis, the evidence is examined in the light most favorable to the nonmovant. *Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir. 1999). But "[w]here critical evidence

is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant, summary judgment is appropriate." *Alton v. Texas A&M Univ.,* 168 F.3d 196, 199 (5th Cir. 1999). "If the record as a whole could not lead a rational jury to find for the nonmoving party, there is no genuine issue for trial and summary judgment is warranted." *Wheeler v. Miller,* 168 F.3d 241, 247 (5th Cir. 1999).

Further, at summary judgment, discrete Title VII discrimination and retaliation claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Reed v. Neopost USA, Inc.,* 701 F.3d 434, 439 (5th Cir. 2012). To survive a summary judgment motion, a plaintiff must first present a *prima facie* case of discrimination or retaliation. *Id.* Upon a showing of a *prima facie* case, an inference of discrimination is established, and "the burden shifts to the employer to show a legitimate, nonretaliatory reason" for the adverse employment action. *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346-47 (5th Cir. 2013). This burden is one of production, not persuasion; it "can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000). The burden then shifts back to the plaintiff to make an ultimate showing that the employer's proffered reason is pretextual. *Autry*, 704 F.3d at 346–47. If a Plaintiff provides direct evidence of discrimination, "the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." *Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1066 (5th Cir. 2023) (citing *Etienne v. Spanish Lake Truck & Casino Plaza, LLC*, 778 F.3d 473, 476 (5th

Cir. 2015)).

**VIII. ARGUMENT**

**A.    Young cannot prevail on her harassment/hostile work environment claim.**

To establish a *prima facie* case of hostile work environment, Young must adduce evidence capable of establishing: (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) the harassment complained of was based on her status as a woman; (4) the harassment complained of affected a term, condition, or privilege of her employment; and (5) TSU knew or should have known of the harassment and failed to take prompt remedial action. *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). If the harassment is committed by the plaintiff's supervisor, the plaintiff need only satisfy the first four elements. *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 354 (5th Cir. 2001), *abrogated on other grounds by Vance v. Ball State University*, 570 U.S. 421 (2013). Young cannot establish elements (2) and (4) because she was not harassed so *ipso facto* no harassment could have affected a term, condition, or privilege of her employment. She cannot establish element (3) because she cannot demonstrate that any complained-of action was based on her status as a woman.

**1.   The record shows Young did not experience harassment.**

"A workplace environment is hostile when it is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009). "Simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges that can survive a plea to the jurisdiction." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007). To be sufficiently severe or pervasive to alter the conditions of employment, the conduct must be both objectively and subjectively offensive. *See*

*E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). The "mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment . . . ." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). Instead, a plaintiff must show more than a few incidents of discriminatory enmity; "there must be a steady barrage of opprobrious [discriminatory] comments." *McCray v. DPC Indus., Inc.*, 942 F. Supp. 288, 293 (E.D. Tex. 1996); *see also National R.R. Passenger Corp.*, 536 U.S. at 116. To determine whether conduct is objectively offensive, courts consider the totality of the circumstances. *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011). This includes "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Id.* (quotation marks and citation omitted).

Plaintiff claims that her working environment was hostile because Dr. Crumpton-Young did not entirely submit to Plaintiff's policing advice and in her perception, sought confirmation of Plaintiff's advice from male officers. *See* (Dkt. #12 at ¶15). The conduct Plaintiff complains about, even if true, does not rise to the level of harassment that is actionable under a hostile work environment theory. *See Dediol*, 655 F.3d at 441; *Alaniz*, 591 F.3d at 771; *Turner*, 476 F.3d at 348; *Stingley*, 836 F. App'x at 288. Further, the record evidence confirms that Young complains of no more than "ordinary tribulations of the workplace" … for which Title VII offers no redress." *See Cooper v. Walgreen Co.*, No. 3:11CV240 DPJ-FKB, 2012 WL 1906545, at *2–*3 (S.D. Miss. May 25, 2012) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *see also Thomas v. S. Farm Bureau Cas. Ins. Co.*, No. 07–960, 2011 WL 201293, at *6 (M.D.La. Jan. 18, 2011) ("[W]ithout more, negative performance reviews, pay raise denials, and requiring an employee to

obtain supervisory approval before implementing certain job tasks, when such approval was not previously required … are not sufficiently severe, pervasive, offensive and/or abusive to constitute a hostile work environment under Title VII."); *Robinson v. Paulson*, No. CIV.A. H-06-4083, 2008 WL 4692392, at *18 (S.D. Tex. Oct. 22, 2008) ("Generally, heightened scrutiny of an employee by a supervisor is not harassment that can support a hostile work environment claim"); *see also Loperena v. Mayorkas*, No. 1:21-CV-59, 2023 WL 7928701, at *9 (S.D. Tex. Oct. 16, 2023), *rep. and rec. adopted*, No. 1:21-CV-00059, 2023 WL 7926806 (S.D. TEx. Lov. 16, 2023); *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 810 (8th Cir. 2008) (concluding that unspecific claims that defendant "interfered with [plaintiffs'] work on a daily to weekly basis; embarrassed, isolated, and ostracized them; closely scrutinized and criticized their work; and increased their workload" did not suffice to establish a hostile work environment claim).

Actions such as that alleged here, that are rationally related to work performance and not physically threatening, humiliating, or even offensive do not satisfy the hostile work environment standard. *Porto v. Chevron NA Expl. & Prod. Co.*, No. CV H-17-1419, 2018 WL 3559103, at *15 (S.D. Tex. July 24, 2018). Accordingly, even outright criticism—which is not alleged—of Young's performance would not have sufficed to show a hostile work environment. *See Credeur v. Louisiana Through Office of Attorney General*, 860 F.3d 785, 796 (5th Cir. 2017) (citing *Kumar v. Shinseki*, 495 F. App'x 541, 543 (5th Cir. 2012) (criticism in the workplace and threats to employee's job did not constitute actionable harassment)). The record evidence contains not more than a scintilla of evidence substantiating Young's allegations, much less showing a hostile work environment towards her as a woman. *See*, *e.g.,* (Ex. A at 1–7, 24). For these reasons, Young cannot establish elements (2) and (4), and the Court should issue summary judgment for Defendant on Young's harassment/hostile work environment claim.

**2. The record shows Young cannot tie any action alleged to comprise a "hostile work environment" to her status as a woman.**

Even if Young could satisfy elements (2) and (4), she cannot establish element (3) and show that Crumpton-Young sought policing advice from male police officers in discrete instances *because* Young was a woman. The record lacks more than a scintilla of evidence of such causal nexus. (Ex. A at ¶¶ 1–9). For this additional reason, the Court should issue summary judgment for Defendant on Young's harassment/hostile work environment claim.

**B. Young cannot state a *prima facie* retaliation claim.**

To make out a *prima facie* case for retaliation, a plaintiff must establish that: "(1) [she] engaged in protected activity, as described in Title VII; (2) [she] suffered an adverse employment action; and (3) a causal nexus exists between the protected activity and the adverse employment action." *Mota v. Univ. of Tex. Hous. Health Sci.* Ctr., 261 F.3d 512, at 519 (5th Cir. 2001). An employee has engaged in activity protected by Title VII if she has either (1) opposed any practice made an unlawful employment practice' by Title VII or (2) made a charge, testified assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (quoting 42 U.S.C. §2000e-3(a)). An informal complaint to an employer may only constitute "protected activity" if the employee had a "good faith" belief that she was opposing conduct made unlawful by Title VII. *Cavazos v. Springer*, No. CIV. A. B-06-058, 2008 WL 2967066, at *7 (S.D. Tex. Aug. 1, 2008). Further, complaints "that do not complain of conduct protected by Title VII do not constitute protected activities under the statute." *Id*.

**1. Young did not engage in protected activity under Title VII.**

Young alleges that she was retaliated against because—in response to direction from the Board of Regents—she informed one or more TSU police officers on the TSU President's security

detail not to act like the President's personal assistants. (Dkt. #12 at 3); *see also* Roland S. Martin, Bethune-Cookman Controversy, "Tyree Nichols Bodycam Released To Family, TX TSU Police Chief Fired" at 1:36:31–37:35, 1:40:01–41:30, 1:42:28–45:51, *available at* https://www.youtube. com/ watch?v=mzrJhWKpSmg (last visited April 27, 2025).

Self-evidently, this is not "protected activity" under Title VII. And the record shows Young: 1) never had a subjective good faith belief—much less an objectively reasonable good faith belief—that President Crumpton-Young was violating Title VII, 2) never opposed any conduct prohibited by Title VII, and 3) never even made any complaint in opposition to Title VII-prohibited conduct *to her employer*—as are all required to demonstrate conduct that qualifies as "protected activity" under the opposition clause of Title VII's retaliation provisions. (Ex. A at ¶¶ 7–14); (Ex. G at 115:15 – 130:4, 141:8 – 142:1); (Ex. D at ¶¶ 13–14). Her Title VII retaliation claim is *wholly* frivolous, and the Court should render summary judgment for Defendant on this claim.

## 2. Young cannot show any causal nexus between what she alleged constituted "protected activity" and the University's actions.

President Crumpton-Young was not, as Plaintiff alleged, involved in filing the complaint against her. (Ex. A at ¶ 15); (Ex. B at ¶ 4); (Ex. C at ¶¶ 5–9). Accordingly, Young's theory of her Complaint—that her superior at TSU, President Crumpton-Young, conspired to have a complaint filed against her leading to discipline and ultimate removal because Young had instructed the members of TSU's security detail not to act like personal assistants—has no merit. Further, Crumpton-Young did not make the subsequent adverse employment decisions. *Id*. In addition, the complaint was filed on March 24, 2022. Ex. B-1. The record shows Young spoke to the members of the President's security detail about not acting like personal assistants in April 2022, thus

destroying any causal nexus between at least this conversation and Crumpton-Young based on the timeline alone. (Ex. D at ¶14). For these multiple reasons, Young is incapable of stating a *prima facie* case, and the Court should render summary judgment for Defendant on Young's retaliation claim.

### C.    Young cannot prevail on her discrimination or retaliation claims because TSU had legitimate, non-discriminatory, non-retaliatory reasons for all its actions.

TSU is entitled to summary judgment because it had legitimate, non-discriminatory, and non-retaliatory reasons for every action it took. *See Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) ("If the employer produces any evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action, then the employer has satisfied its burden of production."). Violation of an employer's policies is legitimate, non-discriminatory reason for an adverse employment action. *Rice v. Kaufman & Broad Home Corp.*, No. 4:08-CV-237-A, 2009 WL 2523737, at *3 (N.D. Tex. Aug. 18, 2009) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086 (5th Cir. 1995)); *see also Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, (5th Cir. 2001); *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006). Likewise, so is an employee's failure to obey a direct order from superiors. *See LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007) (finding reason satisfied second step of *McDonnell Douglas*).

Here, the University placed Young on administrative leave after its auditor provided a detailed investigative report finding that she had approved pay for certain officers that was not authorized and had violated policy by questioning officers about the subject of the investigation while it was underway. (Ex. B-2). After being notified that she had been placed on leave and was required to remain off campus, she refused to comply with the terms of her administrative leave.

(Ex. A at ¶ 21); (Ex. C at ¶ 9); (Ex. G at 27:19 – 28:15); (Ex. G-3). After the turmoil her insubordination caused, the University separated Young's employment. *Id.*

For these reasons, TSU has met its burden of production to show that neither discrimination against her because she was a woman, nor retaliation under Title VII, was the reason for any alleged adverse employment action. Defendant has carried its burden of production, and any presumption of discrimination or retaliation prompted by the *prima facie* case "simply drops out of the picture." *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993); *see also Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996).

**D.    Young cannot show direct evidence of discrimination, nor can she demonstrate that TSU's legitimate, non-discriminatory and non-retaliatory reasons are pretext for an illegal motivation.**

"Once a Title VII case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999). The key inquiry is whether the employer acted with discriminatory motive. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). "It is possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003).

Given the record evidence, Young cannot show a causal nexus between "protected activity" or intentional bias against women and any adverse employment action. For these additional reasons, the Court should render summary judgment for Defendant on both Young's discrimination and retaliation claims.

## IX. Conclusion and Prayer

For the reasons stated herein, the Court should grant Defendant's Motion for Summary Judgment in full and dismiss all of Plaintiff's claims with prejudice.

Respectfully submitted,

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

*/s/ Joseph Keeney*
JOSEPH KEENEY
State Bar No. 24092616
SDTX No. 3850268
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4090
Facsimile: (512) 320-0667
Joseph.Keeney@oag.texas.gov

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2025, the foregoing document was e-filed with the Clerk of the Court using the CM/ECF system, which will send electronic notice of filing to counsel of record.

/s/ Joseph Keeney
JOSEPH KEENEY
Assistant Attorney General