# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MARY YOUNG, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-03888 |
| | § | |
| TEXAS SOUTHERN UNIVERSITY, | § | |
| *Defendant.* | § | |

## DECLARATION OF LESIA CRUMPTON-YOUNG

I, Lesia Crumpton Young, have personal knowledge or knowledge based on my review of business records of Texas Southern University ("TSU"), of all statements below. I hereby make the following declaration under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. My name is Lesia Crumpton Young. I am at least 18 years old, of sound mind, and competent to make this declaration. The facts stated in this declaration are within my personal knowledge and are true and correct.

2. I formerly served as the President of TSU from June 2021 – June 2023.

3. I never advised Mary Young that I favored male police officers over female officers. I never told Mary Young that I felt more comfortable working with male officers. I never told Mary Young that I preferred male police officers.

4. I never ignored or rejected Mary Young's policing recommendations unless they were agreed to, endorsed, or approved by a male officer. I never instructed Mary Young to advise if a male officer had approved her proposals before approving them. I never called any out-of-state male police official to approve police advice by Mary Young. I never called male TSU officers instead of Mary Young to provide governing advice on policing matters for the university. I never told Mary Young that I trusted the opinions of male officers over female officers. And I never asked male police officers to endorse Mary Young's recommendations.

5. I can recall an instance in which I called a "male" police chief, but I did not do so because he was "male" and Mary Young was a "female" whose recommendation I rejected because she was a "female." I called this "male" police chief because he was the chief of the Houston Police Department, and I needed to obtain assurance and additional information from the Houston Police Department regarding potential threat level and possible support that could be provided to TSU Police in protecting the campus and community environment if a certain concert at

homecoming in 2022 became a security threat. Chief Finner had told me on a previous occasion to call him if I needed anything. In this instance, there were divergent opinions about whether to invite a certain artist to homecoming to perform a concert. The VP for Student Success and SGA President were strongly advocating to select the concert artists and Mary Young recommended against inviting this artist. After getting additional information from Chief Finner, discussing the matter with the TSU Board Chair, VP for Student Success, SGA President and other university administrators, I determined to follow Mary Young's recommendation, and this concert artist was not selected to perform.

6. On one occasion I had a conversation with Mary Young regarding the fact that Captain Etheridge one of the female police officers had aired concerns about the budget in an informal lunch meeting with leaders of HPD and the TSU board chair. I informed Mary Young that this meeting was not the proper forum to have this conversation. I did not respond this way because the police officer in question was female. I would have addressed the inappropriate nature of this conversation with Mary Young in her role as the Police Chief regardless of the officer's gender.

7. Mary Young never confronted me and accused me of sex or gender discrimination while I served in the role of President. Nor did she file any official complaints or grievances with university HR or compliance offices

8. I never invited male police officers to come to the TSU Presidential Residence late at night for un-official events or activities. TSU police officers would officially patrol near the Presidential Residence, check the security of the doors, gates, etc., the security detail was responsible for returning the President safely to the Resident after university events, meetings, alumni events, or board events, community activities, etc. On instances, when university, board, alumni, or other events were held at the Presidential Residence, TSU police officers were typically present. Mary Young was responsible for assigning the officers to the Presidential security detail. Officers serving on the Presidential Detail included both males and females. I never asked Mary Young to assign only male officers to the Presidential Detail.

9. On one occasion, my oldest daughter, who lived in Baltimore, called Daren Barnett, who was in charge of the Presidential security detail at the time, to inform him that I quickly departed from the Presidential Residence late at night to search for my younger daughter because I feared for her safety. This call was made because it was late and she was fearful for our safety and it was customary to notify Presidential Detail.

10. In addition, apart from the following, I have no knowledge of any male TSU Police officer "physically arranging the clothing [I] was wearing." At the Presidential Inauguration Gala I had to walk upstairs to access the stage to make a comment at the podium. At the time, I was not aware that this occurred because I was wearing a formal gown with a long train, but later the TSU

Board of Regents Chairman told me that Daren Barnett, a member of the Presidential security detail, had moved the train of my gown as I began to walk up the stairs. I was subsequently told that he moved the gown to prevent me from tripping as I walked up the stairs.

11. I have never given any TSU police officer an expensive personal gift. However, my husband and I did purchase minor pieces of attire for the officers assigned to my Presidential security detail to wear while guarding me in plain clothes, including ties, and cowboy hats for their attendance at the rodeo. I also gave small gifts to multiple TSU cabinet members, staff, and employees, on Christmas and other times throughout the year when appropriate, including Mary Young.

12. Mary Young alleges that Daren Barnett traveled out of town incognito under the name of the president's husband of which she provides no evidence or offers any factual contextual information. This is absolutely a false allegation and is not true.

13. Mary Young alleges that Daren Barnett and I exchanged overt statements of affection between one another and with the officer's coworkers of which she provides no evidence or offers any factual contextual information. This is absolutely a false allegation and is not true.

14. Mary Young alleges that "The relationship between Crumpton-Young and the officer was so worrisome that public members of the TSU Board of Regents complained to Plaintiff to intervene and stop the inappropriate conduct of which she provides no evidence or offers any factual contextual information. This is absolutely a false allegation and is not true.

15. I first learned that an anonymous complaint had been filed against Mary Young while I was on vacation in Mexico in July 2022. I received a call from the chair of the Board of Regents and the chair of the Board's personnel committee who informed me that a complaint against Mary Young had been filed through the university's Ethicspoint hotline and that they had decided to immediately start an investigation that would be handled by the university's internal auditor. I played no role in this decision. In fact, the Board informed me that I was not to get involved in this matter. Thus, I did not get involved.

16. I am aware that Acting Internal Auditor, Darlen Brown, was enlisted by the TSU Board to perform an investigation of the complaint. I did not participate in Darlene Brown's investigation. To the best of my knowledge, Darlene Brown independently performed her investigation and determined that Mary Young had violated TSU policies.

17. I do not know who filed the anonymous complaint against Mary Young. I did not file the complaint, nor did I assist or otherwise participate in the filing of this complaint.

18. Mary Young alleges that I retaliated against her because she allegedly interfered with an allegedly "improper personal relationship with a TSU officer." of which she provides no evidence or offers any factual contextual information. This is absolutely a false allegation and is not true because I have NEVER had an "improper personal relationship with a TSU officer." I have no knowledge of this. I have no knowledge of any interference by Mary Young with any relationship with any police officer.

19. After Darlene Brown provided a copy of her investigation report to the TSU Board of Regents, which found that Mary Young had violated TSU policies, the TSU Board informed me of the report findings and I was given a preliminary draft copy of the report.

20. Mary Young never directly reported to me in my role as University President. I did not make the decision to place Mary Young on administrative leave with pay, nor did Mary Young's supervisor need my approval to make the decision to place Mary Young on administrative leave with pay.

21. After Mary Young was placed on administrative leave with pay, I became aware that Mary Young had disregarded her supervisor's express instruction to refrain from being on campus grounds, attending University-sanctioned events, and utilizing University-owned items. I became aware that Mary Young had been present on campus after being placed on administrative leave on more than one occasion, as was told to me by the Acting Chief of Police, General Counsel, VP of Business and Finance, as well as others who saw her on campus. I personally saw her on campus during the December 2022 commencement as did some members of the TSU Board. Her repeated violation of administrative leave policies caused significant disruptions on campus which led to confusion, divisiveness, dissention, acrimony, concerns about safety, and job security among the officers. She was threatening officers, individually and in-person as well as creating a hostile and toxic work environment where officers were disengaged and threatening to resign. I was told that she refused to return her university vehicle and other university items as well. During this period, Mary Young behaved as if she was above the law. She made it impossible for the Acting Chief of Police to control her behavior. These issues became a major concern for myself, cabinet members, the acting Chief of Police, HR, and others on campus. The administration simply couldn't ignore her blatant disregard for following the administrative leave policies which was jeopardizing the safety and security of campus. Devi Bala her supervisor at this time, had to make the decision to terminate Mary Young's employment as a result of her blatant disregard for following University policies. VP Bala acted well within her authority to terminate this employee for her actions.

22. VP of Business and Finance, General Counsel, Acting Chief of Police and HR personnel and other cabinet members consulted with me at various times while trying to manage these unusually difficult issues that were occurring on campus due to the heinous actions of Mary Young.

23. I did not participate in the decision-making regarding any information provided to the Texas Commission on Law Enforcement with respect to Mary Young's separation of employment from TSU, including the decision to report it as a general, dishonorable, or honorable discharge.

24. Mary Young's allegation that I was biased against female police officers—and her specifically because she is a woman—is completely false! On multiple occasions, I stated that I was proud to work with females and proud that TSU had a female police chief. As President of TSU, I was proud to work with multiple female Provosts and Vice Presidents.

My name is Lesia Crumpton-Young. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Orange County, Florida on April 27, 2025.

_____
Lesia Crumpton-Young, Declarant