12/7/2022 9:24 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 70770203
By: CAROL WILLIAMS
Filed: 12/7/2022 9:24 AM

# EXHIBIT K

**CAUSE NO. 2022-77744**

| | | |
|---|---|---|
| **MARY YOUNG,** | § | **IN THE DISTRICT COURT OF** |
| *Petitioner,* | § | |
| | § | |
| v. | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| **TEXAS SOUTHERN** | § | |
| **UNIVERSITY,** | § | |
| **AND RESPONSIBLE AGENTS,** | § | |
| *Defendants.* | § | **127TH JUDICIAL DISTRICT** |

## DEFENDANT TEXAS SOUTHERN UNIVERSITY'S RESPONSE IN OPPOSITION TO MOTION FOR CONTEMPT AND TO ENFORCE EMERGENCY TEMPORARY RESTRAINING ORDER

Without waiving the jurisdictional defenses on the basis of sovereign immunity asserted in its Plea to the Jurisdiction, its arguments and evidence regarding the impropriety of the invalid Temporary Restraining Order ("TRO") or subsequent orders based thereon, and its right to seek the dissolution of the TRO (and/or a mandamus action to have it set aside), Texas Southern University (the "University") files this Response in Opposition to Plaintiff's Motion for Contempt and to Enforce Emergency Temporary Restraining Order. As the University's Plea to the Jurisdiction demonstrates, Plaintiff's lawsuit is barred for lack of subject matter jurisdiction based on sovereign immunity. But even if sovereign immunity did not bar Plaintiff's claims, (1) the TRO was not binding of the University when it placed Plaintiff on paid administrative leave and (2) even if the TRO was binding, being placed on paid administrative leave is not an "adverse employment action", and thus the University did not violate the TRO. The University respectfully requests the Court deny Plaintiff's Motion for Contempt, grant the University's Plea to the

Jurisdiction, and dismiss Plaintiff's claims.

The Motion for Contempt hinges on an invalid and unenforceable TRO and is rife with misrepresentations of law and fact. Because sovereign immunity bars Plaintiff's lawsuit, and the Motion for Contempt establishes no grounds for holding the University in contempt, it should be denied.

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, who is currently on paid administrative leave due to safety issues concerning her involvement with the University, committed fraud against the University by implementing and sanctioning an overtime and payroll abuse scheme that cost the University and taxpayers thousands of dollars in officer hours that were not actually worked. As the conclusion of Internal Audit Investigation Report stated:

> **Conclusion**
>
> Based upon the internal audit investigation procedures performed, the allegation received is substantiated and related to two (2) distinct types of additional compensation that Chief of Police Mary Young authorized verbally and when she signed the weekly time reporting packages provided by the DPS timekeeper. These compensation types are described below. Neither of these compensation types were discussed or approved by TSU Human Resources, the President, or the Board of Regents. MAPP 02.02.01 Pay Guidelines for Staff Employees requires review of pay adjustments by Human Resources.
>
> Compensation Types Involved in this Internal Audit Investigation:
>
> - "Lead Officer" compensation – This compensation is a flat $25/hour of additional compensation for security officers and dispatchers that were designated as the Lead Officer for a shift where their immediate supervisor was absent. Officers were instructed by the DPS Timekeeper Redaction and/or Chief Young to use code HRSTLDR in the special events section of the weekly time report and record the actual number of hours worked as "Lead Officer" but to record it for different hours; either before their shift worked, after their shift worked, or on their day off.
> - Field Training Officer compensation – This is an additional two (2) hours pay at the respective officer's overtime hourly rate, for each day that they were training an officer. This additional compensation was to complete paperwork associated with assessing an officer's performance during training.

> In applying the TSU MAPP 02.05.06 definition of fraud, Chief of Police Mary Young committed fraud against TSU through authorizing payments for hours not worked when she authorized two (2) hours of overtime to Field Training Officers each day that they had an officer assigned to them, even if it did not take the full two hours each day to complete the paperwork.
>
> The police officers that recorded time for Field Officer Training paperwork when they did not actually work the two hours constitutes fraudulent reporting. Officers stated that they did complete the required paperwork, but it did not always take the full two hours. An example of the Weekly Time Sheet is included in Appendix C.
>
> The Chief of Police told the "Lead Officers" that they were to record their actual hours worked in the top section of the Weekly Time Report and then use the special code and record their same hours in the bottom section of the Weekly Time Report.
>
> The DPS timekeeper instructed individuals that served as "Lead Officers" that they were to record the actual hours worked as normal hours on the top section of the Weekly Time Report. They then were to record the same number of hours on a different time period, or a different day than actually worked using a specially created code on the bottom section of the Weekly Time Report. This code identified that they were acting as the supervisor for the respective number of hours and should receive the flat $25/hour for those hours. The result is that for each day the respective officer filled in for the supervisor, they worked an eight-hour shift but recorded 16 hours; eight of the hours were paid at the standard hourly rate and eight hours were paid at the $25/hour rate. This constitutes fraudulent reporting because it gives the appearance that the individual worked additional hours when they did not. An example of the Weekly Time Sheet is included in Appendix C.
>
> Individuals that recorded time for "Lead Officers" as instructed by the DPS timekeeper documented their time worked incorrectly.

Plaintiff abused her power, used the University's police force in improper ways, refused to follow the University's clear instructions on what she is and is not allowed to do, continues to violate the conditions of her paid administrative leave, has made various misrepresentations to multiple Harris County judges and the media, and presents an ongoing threat to the safety and welfare of the University and its faculty, staff, and students.

The day before a scheduled meeting between Plaintiff's counsel and the University concerning her employment, Plaintiff filed an improper request for a temporary restraining order in an attempt to delay her termination and garner sympathetic press with false allegations against the University's President and other members of the University. She now continues her campaign through her Motion for Contempt.

Before the TRO was entered and/or the University had actual knowledge of the TRO, the University placed Plaintiff on administrative leave with pay. Thereafter,

the University was notified that, after the ancillary judge's power expired, she entered the TRO; however, no writ of injunction had been issued and, at the time of this filing, the University still has not been served with the requisite writ. This single fact—that the University did not have the requisite actual notice of the TRO when it placed Plaintiff on administrative leave with pay—disposes of Plaintiff's entire Motion for Contempt. The University respectfully requests the Court deny Plaintiff's Motion for Contempt, grant the University's Plea to the Jurisdiction, and dismiss Plaintiff's claims for lack of subject matter jurisdiction.

## ARGUMENT AND AUTHORITIES

I. **Sovereign immunity bars any ruling from this Court enforcing the TRO.**

As the University's Plea to the Jurisdiction demonstrates, sovereign immunity bars Plaintiff's claims for lack of subject matter jurisdiction. The Court did not have jurisdiction to enter the TRO against the University and it does not have jurisdiction to enter an order enforcing the TRO or rule on Plaintiff's Motion for Contempt.

II. **Even if the University's sovereign immunity did not apply to bar Plaintiff's claims, the TRO was not binding on the University when it placed Plaintiff on administrative leave with pay.**

At the hearing on Plaintiff's TRO on November 30, 2022, ancillary judge Morris told the parties that she would issue a ruling by midnight—after which her power as ancillary judge expired. When no such order was issued by the next morning on December 1, the University placed Plaintiff on administrative leave with pay and notified her on at 2:45 p.m. Fifteen minutes later, the Harris County District Court civil ancillary clerk emailed attorneys for Plaintiff and the University the TRO, which was signed by Judge Morris on December 1, despite the fact her power as ancillary

judge expired on November 30 and she did not receive the consent of any judge to transfer her docket within the timeframe she was serving as ancillary judge. *See* Tex. Gov't Code § 24.003(b-1). Four minutes later, Plaintiff's counsel emailed the University's general counsel the TRO, stating that the bond had been posted and requesting the University "take no further action against Chief Mary Young." According to the Harris County District Clerk's website, the bond was posted on December 2.

### TRO TIMELINE



The TRO was unenforceable—due not only to the Court's lack of subject matter jurisdiction but also due to the lack of an issued writ of injunction—when the University placed Plaintiff on administrative leave with pay for several reasons. First, the University did not have the requisite actual notice of the TRO when it placed Plaintiff on administrative leave with pay. *See* Tex. R. Civ. P. 683 ("Every order granting an injunction and every restraining order . . . **is binding only upon the parties to the action**, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them **who receive actual notice of the order** by personal service or otherwise.") (emphases added).

The University cannot be in contempt for violating a TRO of which it had no notice, as required by Rule 683 of the Texas Rules of Civil Procedure. *See Ex parte Conway*, 419 S.W.2d 827, 828 (Tex. 1967) (notice is a jurisdictional prerequisite for enforcement of order). Additionally, because the order was not granted ex parte—as the University's counsel attended the hearing—Plaintiff cannot claim that the TRO is enforceable without providing the University notice. *Compare* Tex. R. Civ. P. 680. A finding of contempt is further unwarranted because no writ has been issued and served on the University as required by Texas Rules of Civil Procedure 687–689. *See* Tex. R. Civ. P. 687(f) ("The requisites of a writ of injunction, which apply equally to a temporary restraining order, include the requirement that it be 'be dated and signed by the clerk officially and attested with the seal of his office and the date of its issuance must be indorsed thereon.'"); Tex. R. Civ. P. 688 (The clerk is to issue the writ "[w]hen the petition, order of the judge and bond have been filed."); Tex. R. Civ. P. 689 ("The officer receiving a writ of injunction shall indorse thereon the date of its receipt by him, and shall forthwith execute the same by delivering to the party enjoined a true copy thereof. The officer must complete and file a return in accordance with Rule 107.").

The Fourteenth Court of Appeals has held that "these procedural requirements [concerning the injunctive writ] are mandatory." *See In re Guardianship of Chang*, 635 S.W.3d 444, 448–49 (Tex. App.—Houston [14th Dist.] 2021, pet. denied). In *Chang*, the court of appeals reversed sanctions imposed by the trial court for violation of a TRO, finding there was no enforceable TRO when the alleged violative conduct

took place because the bond had not yet been posted and no writ of injunction had been issued or served on the enjoined party. *Id*. The trial court's TRO enjoined a daughter from travelling with her elderly mother out of the county. The daughter was notified of the TRO the same day it was entered but flew with her mother to China the next day where they remained for a month and a half. *Id*. at 446. The appeals court found that, as a matter of law, there was no enforceable TRO when the conduct took place because no bond was posted and no writ was issued. *Id*. at 448.

Here, the University did not even have actual notice of the TRO when it placed Plaintiff on administrative leave with pay. Nor was the bond posted or injunctive writ issued. The writ remains unissued. Moreover, to the extent Plaintiff attempts to distinguish the University's conduct that placed her on administrative leave with pay from its enforcement of the conditions attendant to same (*e.g.*, staying off campus), that argument fails. The *status quo* for Plaintiff at the time the TRO was entered was administrative leave with pay. Thus, Plaintiff's attempt to rewrite the TRO to revoke her placement on administrative leave with pay is wholly improper. Furthermore, if that argument was correct, the Fourteenth Court of Appeals in *Chang* would have found the daughter in violation of the TRO for continuing to travel with her mother for the month-and-almost-a-half after the bond was posted and writ was issued. The Fourteenth Court of Appeals did not do so.

Because the TRO was (and remains) non-binding on the University, the University is not in contempt of the TRO. The Court should deny Plaintiff's motion.

### III. Administrative leave with pay is not an adverse employment or disciplinary action.

The actions Plaintiff complains that the University took—placing her on administrative leave with pay and the attendant directions and orders that she remain off campus and refrain from utilizing the University's property—are not enjoined by the TRO which prohibits the University from:

- threatening to, attempting to, purporting to, or taking **any adverse employment or disciplinary action against Petitioner** until the court can conduct a hearing on Petitioner's request for a temporary injunction and/or permanent injunction in this case;

- utilizing the unsigned, untimely, and anonymous complaint against Petitions for **any adverse employment or disciplinary action**; and

- taking any further actions, or failing to take necessary actions, that would damage, impair, frustrate, put at risk, jeopardize, and/or delay in any way the completion of the items addressed in sections (a) and (b) above.

*See* TRO at pp. 2–3 (emphases added).

In her Motion for Contempt, Plaintiff makes no attempt to explain how being placed on administrative leave with pay is an "adverse employment or disciplinary action" against her. Nor does she cite to any authority in support of same. To the contrary, the authority is clear that administrative leave with pay is not an adverse employment or disciplinary action. *Esparza v. Univ. of Tex. at El Paso*, 471 S.W.3d 903, 909 (Tex. App.—El Paso 2015, no pet.) (citing authority holding that suspensions with pay are not adverse employment actions under state and federal employment laws, including *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (holding a police officer suffered no adverse employment action where he was temporarily

placed on paid administrative leave), *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 891–92 (8th Cir. 2005) (holding that investigatory suspension with pay was not adverse employment action); *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) (holding that "a suspension *with* pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action")).

Similarly, the University's directives and orders that Plaintiff remain off campus and refrain from utilizing University property during her administrative leave with pay also do not constitute adverse employment or disciplinary action. *See Jones v. Tex. Dep't of Public Safety*, 2022 WL 318585 (Tex. App.—Austin Feb. 3, 2022, no pet.) (holding that DPS's directives to officer to not come to the office or interact with employees in the office, turn in weapons, and to not take any actions as a peace officer did not constitute an "adverse employment decision against her.").

Because the University's actions do not constitute an "adverse employment or disciplinary action against her," they are not enjoined by the TRO. Accordingly, these actions can neither provide the basis for a contempt finding against the University nor be revoked through Plaintiff's requested enforcement of the TRO. The motion should be denied.

## **CONCLUSION**

Defendant Texas Southern University respectfully requests the Court deny Plaintiff's Motion for Contempt and his request to enforce the TRO, grant its Plea to the Jurisdiction and dismiss Plaintiff's claims, and for all other relief to which it may be entitled.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

CHRISTOPHER D. HILTON
Chief for General Litigation Division

*/s/ Daniel Coolidge*
DANIEL COOLIDGE
Assistant Attorney General
Texas Bar No. 24113693
daniel.coolidge@oag.texas.gov

*/s/ Benjamin S Lyles*
BENJAMIN S. LYLES
Assistant Attorney General
Texas Bar No.  24094808
Benjamin.Lyles@oag.texas.gov

General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667

***COUNSEL FOR DEFENDANTS***

## **CERTIFICATE OF SERVICE**

      I certify that on December 6, 2022, *Texas Southern University's Response in Opposition to Plaintiff's Motion for Contempt and to Enforce Emergency Temporary Restraining Order* was filed and served on the following attorneys of record via EFileTexas.gov and/or as shown below:

Benjamin L. Hall, III                       *Via eFileTexas*
William L. Van Fleet, II
Ryan Finnegan
The Hall Law Group, PLLC
530 Lovett Blvd.
Houston, Texas 77006

*Counsel for Plaintiff*

                                               */s/ Daniel Coolidge*
                                               DANIEL COOLIDGE
                                               Assistant Attorney General

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nicole Myette on behalf of Daniel Coolidge
Bar No. 24113693
nicole.myette@oag.texas.gov
Envelope ID: 70770203
Status as of 12/7/2022 9:32 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| Rosalinda Luna | | Rosalinda.Luna@oag.texas.gov | 12/7/2022 9:24:26 AM | SENT |
| Benjamin S.Lyles | | benjamin.lyles@oag.texas.gov | 12/7/2022 9:24:26 AM | SENT |
| John DanielCoolidge | | daniel.coolidge@oag.texas.gov | 12/7/2022 9:24:26 AM | SENT |
| Nicole Myette | | nicole.myette@oag.texas.gov | 12/7/2022 9:24:26 AM | SENT |
| Ryan Finnegan | | rfinnegan@thlf.us | 12/7/2022 9:24:26 AM | SENT |
| Hall Law | | myteam@thlf.us | 12/7/2022 9:24:26 AM | SENT |
| Benjamin Hall | | bhall@thlf.us | 12/7/2022 9:24:26 AM | SENT |